UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIAGEO NORTH AMERICA, INC.,

      Plaintiff,

v.

W.J. DEUTSCH & SONS LTD. d/b/a
DEUTSCH FAMILY WINE & SPIRITS, and
BARDSTOWN BARREL SELECTIONS LLC,

      Defendants.

Case No.

## COMPLAINT

Plaintiff Diageo North America, Inc. ("Diageo" or "Plaintiff"), by its attorneys Jenner & Block LLP, for its complaint against Defendants W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits and Bardstown Barrel Selections LLC (collectively "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This case involves the willful acts of trademark infringement, unfair competition, and dilution by a direct competitor of Diageo who redesigned the bottle and label for a line of its whiskey beverage products in order to knock off the appearance and unfairly trade on the reputation of Diageo's extremely popular BULLEIT® brand bourbon and rye whiskey.

2.     Defendants' manufacture, advertisement, promotion, and sale of competitive products in the packaging described above constitutes trademark infringement under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); dilution under section 360-*l* of the New York General Business Law; deceptive acts

and practices under section 349 of the New York General Business Law; and trademark infringement and unfair competition under New York common law.

## PARTIES

3.     Plaintiff Diageo North America, Inc., is a Connecticut corporation with a principal place of business at 801 Main Avenue, Norwalk, Connecticut 06851.  Diageo also has a place of business within this District at 530 Fifth Avenue, New York, New York 10036.

4.     On information and belief, Defendant W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits is a New York corporation with a principal place of business at 201 Tresser Boulevard, Suite 500, Stamford, Connecticut 06901.  Deutsch Family Wine & Spirits is identified as the distributor on the website for the infringing products at issue herein.

5.     On information and belief, Defendant Bardstown Barrel Selections LLC is a Delaware limited liability company with an address in care of Deutsch Family Wine & Spirits, 201 Tresser Boulevard, Suite 500, Stamford, Connecticut 06901.  On information and belief, Bardstown Barrel Selections LLC is the owner, in whole or in part, of the trademarks and related intellectual property rights associated with the infringing products at issue herein and has authorized or approved their manufacture, advertisement, promotion, or sale directly or indirectly by itself or through its related entities.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over federal claims under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).  This Court has subject-matter jurisdiction over state-law claims under 28 U.S.C. §§ 1338(b) and 1367.

7.     This Court has personal jurisdiction over Defendant W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits under section 301 of the New York Civil Practice Law and

Rules because, upon information and belief, it is incorporated in this state.  This Court has personal jurisdiction over Defendant Bardstown Barrel Selections LLC under section 302(a) of the New York Civil Practice Law and Rules because, upon information and belief, the causes of action arise from Defendant Bardstown Barrel Selections LLC's direct or indirect transaction of business within this state and contracting to supply infringing goods in this state, including by transacting business and/or contracting with Defendant W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits, a New York corporation.  On information and belief, Defendant Bardstown Barrel Selections LLC directly or indirectly has advertised, distributed, and sold the infringing products at issue in this action to customers located within this state thereby committing tortious conduct in this state.  In addition, upon information and belief, Defendant Bardstown Barrel Selections LLC has committed infringing acts outside of this state causing injury to Diageo within this state, and Defendant Bardstown Barrel Selections LLC regularly does or solicits business, engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed, in this state, or expects or should reasonably expect the infringing acts at issue herein to have consequences in this state and derives substantial revenue from interstate commerce.

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Diageo's claims occurred in this District. For example, on information and belief, Defendants directly or indirectly have advertised, distributed, and sold the infringing products at issue within this District.  In addition, Diageo maintains an office in this District, and witnesses and documents related to this litigation are located in this District.

## FACTUAL ALLEGATIONS

### *Diageo and Its Rights in the Bulleit Design Mark and Trade Dress*

9.      Diageo, the world's leading premium spirits company, directly and indirectly manufactures, advertises, distributes, and sells various alcohol beverages under various world-famous and iconic brand names, including SMIRNOFF®, TANQUERAY®, GUINNESS®, JOHNNIE WALKER®, and CAPTAIN MORGAN®, among many others.

10.     One of Diageo's flagship products is BULLEIT® brand premium whiskey.  The origin of this brand derives from the Bulleit family of Kentucky.  The Bulleit Distilling Company was founded in 1987 by Thomas Ewing Bulleit, Jr.  His great-great-grandfather Augustus Bulleit was a tavern owner who made a "high-rye" whiskey between 1830 and 1860—the days of the "Old West."  After establishing this business, Augustus Bulleit subsequently vanished during a trip to New Orleans.  Inspired by his forebearers, Tom Bulleit developed and sold a high-rye whiskey made with high-quality ingredients to create a distinctive and smooth taste.

11.     In 2001, Diageo acquired BULLEIT® whiskey and all of the trademark and trade dress rights and related goodwill associated with the business.  Since that time, Diageo has continued to distribute, market, and sell BULLEIT® premium whiskey in the tradition of Tom Bulleit and the Bulleit family.

12.     Since at least as early as 1999 and long prior to Defendants' infringing acts, Diageo's BULLEIT® whiskey has been sold in a distinctive canteen-shaped bottle featuring embossed lettering with the names BULLEIT and FRONTIER WHISKEY in capital letters appearing above the label.  The overall "vintage" look of the product is intended to indirectly evoke the rugged look and feel of the American Frontier.  This distinctive packaging (hereinafter the "Bulleit Design Mark and Trade Dress") is depicted below and attached as <u>Exhibit A</u>:



13.     The elements of the Bulleit Design Mark and Trade Dress comprise a distinctive combination of features including:

a.      Clear canteen-shaped glass bottle with rounded shoulders;

b.      Embossed brand name above the label;

c.      Arched text in the top line of the embossed brand name;

d.      Convex text divider between components of the embossed brand name (e.g. "BULLEIT BOURBON" separated from "FRONTIER WHISKEY");

e.      Arrow-shaped text divider on the label;

f.      Border of parallel lines on the label; and

g.      Cork bottle cap with black top.

14.     As described further below, the Bulleit Design Mark and Trade Dress are inherently distinctive and non-functional, and have come to be associated exclusively with Diageo and identifying the source of Diageo's products.

15.     In recognition of the distinctive appearance, Diageo's BULLEIT® whiskey bottle design and packaging has received numerous industry awards including a Communication Arts Design Award in 1999, the Silver Clio Award in 2000, a Graphis Design Annual Award in 2001, a Beverage Package Design Best of Show Award in 2002, a Double Gold Medal for packaging design in the San Francisco World Spirits Competition in 2006, and a Gold Medal for packaging design from the Beverage Testing Institute in 2009.  BULLEIT® whiskeys also won Double Gold Medals for packaging design in the San Francisco World Spirits Competition in 2011 and 2013 for BULLEIT® Rye and BULLEIT® Bourbon 10 Year Old, respectively, both of which are marketed and sold under the Bulleit Design Mark and Trade Dress.

16.     BULLEIT® whiskeys also are renowned for high quality and superior taste. BULLEIT® Bourbon has won numerous awards, including Gold Medals in the Beverage Testing Institute's International Review of Spirits in 2002, 2007, 2008, 2010, 2011, and 2012; a Double Gold Medal in the San Francisco World Sprits Competition in 2016; Gold Medals in the San Francisco World Spirits Competition in 2004, 2007, 2011, and 2012; a Finalist award and "Extraordinary, Ultimate Recommendation" accolade in the Ultimate Spirits Challenge in 2012; a Bartender's Best Award (U.K.) in 2014; the Best Bourbon Readers' Choice Award from About.com in 2014; recognition as one of the Top 50 Spirits of 2013 in *Wine Enthusiast* magazine; and a "Superb" rating from F. Paul Pacult's *Spirit Journal* in 2011.  Other award-winning BULLEIT® products include BULLEIT® Rye and BULLEIT® Bourbon 10 Year Old.

17.     In recognition of its exclusive rights in the Bulleit Design Mark and Trade Dress,

Diageo is the owner of U.S. Registration No. 3,075,812 (hereinafter the "'812 Registration") as

shown below:

| Mark | Reg. No. (Reg. Date) | Goods | First Use Date |
|---|---|---|---|
|  | 3,075,812 (Apr. 4, 2006) | Alcoholic beverages, namely, distilled spirits | Feb. 5, 1999 |

18.     The '812 Registration is valid and subsisting, and has become incontestable

pursuant to 15 U.S.C. § 1065.  The '812 Registration is conclusive evidence of the validity and

non-functionality of the mark and Diageo's exclusive right to use this mark in commerce for

distilled spirits.  A true and correct copy of the Certificate of Registration for this mark is

attached as Exhibit B.

19.     Throughout its long history, Diageo, by itself and through its predecessors and

related companies, has invested tens of millions of dollars to advertise and promote BULLEIT®

whiskey and the associated Bulleit Design Mark and Trade Dress.  These widespread and

substantial marketing activities have occurred through multiple forms of media including in

commercials, in print publications, via the Bulleit.com website, and through popular social media sites such as Facebook, Instagram, and Twitter.

20.     Diageo's promotional activities consistently have focused the attention of consumers on the distinctive appearance of the Bulleit Design Mark and Trade Dress as a means to readily identify Diageo as the source of the product.  As a result of these efforts, as well as the inherently distinctive nature of the mark and trade dress, Diageo's Bulleit Design Mark and Trade Dress have become powerful source identifiers that are closely and exclusively associated with Diageo's BULLEIT® whiskey.  Representative examples of Diageo's advertisements reflecting the prominent use of the Bulleit Design Mark and Trade Dress are annexed hereto as Exhibit C.

21.     Diageo's marketing efforts have been incredibly successful.  BULLEIT® brand premium whiskeys are among the fastest-growing brands in the entire spirits industry. BULLEIT® premium whiskeys are sold throughout the United States in a wide variety of retail channels including liquor stores, mass retail outlets, grocery stores, bars, clubs, and other retail locations.

22.     As a result of the above-referenced advertising, promotion, and sales, as well as the high quality of the products, Diageo's Bulleit Design Mark and Trade Dress have become strong, famous trademarks throughout the United States, and represent substantial and valuable goodwill belonging exclusively to Diageo.

### *Defendants' Infringement of the Bulleit Design Mark and Trade Dress*

23.     Upon information and belief, Defendant W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits produces and sells a competitive line of premium whiskey beverages under the "Redemption" brand name.  Upon information and belief, the "Redemption" name is owned by Defendant Bardstown Barrel Selections LLC.

24.    For years, Defendants and/or their predecessors and related companies marketed and sold Redemption whiskey products in cylinder-shaped bottles with a sleek and modern appearance, depicted in Exhibit D and reproduced below:



25.    Long after the Bulleit Design Mark and Trade Dress had become well known among consumers as identifying BULLEIT® whiskey, Defendant W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits purchased the Redemption whiskey product line, and Defendants thereafter revised the bottle and label design for Redemption whiskey products to closely mimic the distinctive appearance of Diageo's Bulleit Design Mark and Trade Dress (hereinafter the "Accused Products").  An example of Defendants' revised bottle and label are shown in Exhibit E and reproduced below adjacent to the BULLEIT® packaging which is attached as Exhibit A:



26.     Defendants' revised product packaging incorporates the distinctive, non-functional combination of elements of the Bulleit Design Mark and Trade Dress, including: (a) clear canteen-shaped glass bottle with rounded shoulders; (b) embossed brand name above the label; (c) arched text in the top line of the embossed brand name; (d) convex text divider between components of the embossed brand name (e.g. "REDEMPTION" separated from "WHISKEY REVIVAL"); (e) arrow-shaped text divider on the label; (f) border of parallel lines on the label; and (g) cork bottle cap with black top.

27.     The overall appearance of Defendants' revised product packaging is strikingly similar to that of Diageo's BULLEIT® whiskey and copies the same vintage style and appearance of the Bullet Design Mark and Trade Dress.  In connection with the launch of their new packaging, Defendants further began to brand their product as "pre-prohibition" whiskey

and referred to the "saloon era" in online marketing.  Defendants' design firm also has acknowledged in public statements that Defendants' revised packaging was intended to "communicate the whiskey's premium positioning and pay visual homage to pre-Prohibition spirits containers"—a thinly veiled reference to the market positioning and trade dress of Diageo's BULLEIT® whiskey.

28.     The Accused Products and Diageo's BULLEIT® whiskey are direct competitors and are likely to be marketed and sold to the same prospective consumers.  Indeed, the Accused Products include a "high-rye" bourbon, in the vein of BULLEIT® Bourbon.  The Accused Products and Diageo's BULLEIT® whiskey are also sold through the same channels of trade and are sold and/or presented to consumers in direct proximity to each other.  In fact, the Accused Products and BULLEIT® whiskey can be found directly adjacent to each other on the same shelves in retail liquor stores.  These factors are highly likely to lead consumers to believe mistakenly that the products are related or that Diageo has sponsored, approved, licensed, or otherwise endorsed the Accused Products.

29.     The timing of Defendants' marketing and sale of the Accused Products is no coincidence.  Defendants were well aware of the commercial success of Diageo's BULLEIT® whiskey as well as Diageo's extensive use, advertising, and promotion of the Bulleit Design Mark and Trade Dress and consumers' strong association of this mark and trade dress with Diageo.

30.     Upon information and belief, Defendants redesigned the bottle and label for the Accused Products in a conscious effort to trade on the enormous goodwill and cachet represented by the Bulleit Design Mark and Trade Dress.

31.      Given that Defendants' Accused Products closely copy and imitate the distinctive, non-functional features comprising the Bulleit Design Mark and Trade Dress, the

marketing and sale of these competitive products is highly likely to cause confusion as to the source, sponsorship, origin, and affiliation of the parties' respective products including without limitation by causing prospective purchasers of the products to believe mistakenly that the Accused Products are a type of BULLEIT® whiskey and that they have been licensed or authorized by Diageo.

32.     On information and belief, Defendants engaged in the foregoing conduct in bad faith, with full knowledge of Diageo's superior rights, and in a deliberate and willful attempt to infringe Diageo's rights and to trade on Diageo's vast goodwill in its Bulleit Design Mark and Trade Dress.

33.     Diageo has attempted to get Defendants to voluntarily cease their infringing activity, but Defendant W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits has refused to alter the packaging for the Accused Products.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))

34.     Diageo repeats and incorporates by reference the allegations contained in paragraphs 1 to 33 as if fully set forth herein.

35.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products bearing a close replica of the registered Bulleit Design Mark and Trade Dress in commerce is likely to cause confusion, to cause mistake, or to deceive, in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

36.     On information and belief, Defendants' infringement of Diageo's federally registered Bulleit Design Mark and Trade Dress is willful, deliberate, and in bad faith.

37.     Diageo has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Diageo's trademark

rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

38.     Due to Defendants' violations of the Lanham Act, Diageo is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SECOND CLAIM FOR RELIEF

**(Trade Dress Infringement Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

39.     Diageo repeats and incorporates by reference the allegations contained in paragraphs 1 to 38 as if fully set forth herein.

40.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products constitute the use in commerce, on or in connection with Defendants' goods, of words, terms, names, symbols, devices, or combinations thereof, false designations of origin, and false or misleading descriptions or representations of fact, that are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Diageo, and/or as to the origin of Defendants' goods and commercial activities with, their sponsorship by, or their approval by Diageo, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41.     On information and belief, Defendants' infringement of the Bulleit Design Mark and Trade Dress is willful, deliberate, and in bad faith.

42.     Diageo has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Diageo's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

43.     Due to Defendants' violations of the Lanham Act, Diageo is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## THIRD CLAIM FOR RELIEF

### (Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

44.     Diageo repeats and incorporates by reference the allegations contained in paragraphs 1 to 43 as if fully set forth herein.

45.     Diageo's Bulleit Design Mark and Trade Dress are famous and distinctive and have been so for many years prior to the first sale of the Accused Products by Defendants.

46.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce is likely to impair the distinctive quality of, and harm the reputation of, Diageo's famous Bulleit Design Mark and Trade Dress.

47.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce is likely to cause dilution by blurring the exclusive association consumers have when exposed to the Bulleit Design Mark and Trade Dress, that is, consumer identification of the Bulleit Design Mark and Trade Dress as originating from a single source, namely Diageo.

48.     Moreover, because the Accused Products are not subject to Diageo's quality control standards, Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products is likely to cause dilution by tarnishing the reputation that Diageo has built up and enjoys in its superior-quality whiskey sold under the Bulleit Design Mark and Trade Dress.

49.     The acts and conduct of Defendants complained of herein constitute dilution by blurring and dilution by tarnishment in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

50.     On information and belief, Defendants' acts of dilution by blurring and tarnishment are willful, deliberate, and in bad faith.

51.     Diageo has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Diageo's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

52.     Due to Defendants' violations of the Lanham Act, Diageo is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CLAIM FOR RELIEF

### (Dilution Under Section 360-*l* of the New York General Business Law)

53.     Diageo repeats and incorporates by reference the allegations contained in paragraphs 1 to 52 as if fully set forth herein.

54.     Diageo's Bulleit Design Mark and Trade Dress are famous and distinctive marks that have been well known among relevant New York consumers as identifying Diageo's BULLEIT® whiskey since long prior to Defendants' infringing acts at issue herein.

55.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce is likely to impair the distinctive quality of, and harm the reputation of, Diageo's famous Bulleit Design Mark and Trade Dress.

56.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce is likely to cause dilution by blurring the exclusive association consumers have when exposed to the Bulleit Design Mark and Trade Dress, that is, consumer identification of the Bulleit Design Mark and Trade Dress as originating from a single source, namely Diageo.

57.     Moreover, because the Accused Products are not subject to Diageo's quality control standards, Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products is likely to cause dilution by tarnishing the reputation that Diageo has built up and enjoys in its superior-quality whiskey sold under the Bulleit Design Mark and Trade Dress.

58.     The acts and conduct of Defendants complained of herein constitute dilution by blurring and dilution by tarnishment in violation of section 360-*l* of the New York General Business Law.

59.     On information and belief, Defendants' acts of dilution and tarnishment are willful, deliberate, and in bad faith.

60.     Diageo has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Diageo's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

61.     Due to Defendants' violations of New York law, Diageo is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FIFTH CLAIM FOR RELIEF

**(Deceptive Acts and Practices Under Section 349 of the New York General Business Law)**

62.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 61 as if fully set forth herein.

63.     Defendants committed unfair and deceptive acts and practices through the Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce in a manner intended and likely to cause confusion among consumers as to the source, sponsorship, affiliation, or endorsement of those products.

64.     Defendants' unfair and deceptive acts and practices were performed in the conduct of business, trade, or commerce.

65.     Defendants' unfair and deceptive acts and practices were directed toward consumers within this state.

66.     Defendants' unfair and deceptive acts and practices were materially misleading and likely to impact consumer purchasing decisions.

67.     Defendants' unfair and deceptive acts and practices were the proximate cause of injury to Diageo.

68.     On information and belief, Defendants' unfair and deceptive acts and practices were willful, deliberate, and in bad faith.

69.     Defendants' actions have injured Diageo and caused it to suffer monetary damages in an amount to be proven at trial.

70.     Diageo has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Diageo's rights,

business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

71.     Due to Defendants' violations of section 349 of the New York General Business Law, Diageo is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement and Unfair Competition)

72.     Diageo repeats and incorporates by reference the allegations contained in paragraphs 1 to 71 as if fully set forth herein.

73.     Defendants' unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce is likely to cause confusion among purchasers as to the source, sponsorship, affiliation, or endorsement of those products.

74.     Through their advertising and sale of the Accused Products, Defendants have unfairly misappropriated the significant commercial advantage belonging to Diageo by trading on the name and reputation of Diageo's Bulleit Design Mark and Trade Dress for their competing line of whiskey beverages.

75.     On information and belief, Defendants' unfair competition was willful, deliberate, and in bad faith.

76.     Diageo has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Diageo's rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

77.     Due to Defendants' unfair competition, Diageo is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## DEMAND FOR JURY TRIAL

78.     Diageo hereby demands a trial by jury as to all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Diageo prays for a judgment as follows:

1.     That Defendants, and their respective officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, or any of them, who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be preliminarily and then permanently restrained and enjoined, pursuant to 15 U.S.C. §§ 1116, 1125(c), and New York law, from:

      a.     Directly or indirectly infringing Diageo's Bulleit Design Mark and Trade Dress or using any mark or trade dress that is confusingly similar thereto in any manner, including but not limited to manufacturing, distributing, advertising, selling, or offering for sale any products that infringe or bear such trademarks or trade dress;

      b.     Manufacturing, producing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing any products that copy, reproduce, or bear any colorable imitations of Diageo's Bulleit Design Mark and Trade Dress, or any mark or trade dress that is confusingly similar thereto;

    c.       Using in Defendants' business, or in connection with the marketing, distribution, offering for sale, or sale of any products, any copy, reproduction, or colorable imitation of Diageo's Bulleit Design Mark and Trade Dress that causes or is likely to cause dilution of the Bulleit Design Mark and Trade Dress; and

    d.       Doing any other act or thing that is likely to cause persons to believe that Defendants' goods or commercial activities originate with, or are licensed, sponsored, or authorized by, Diageo;

2.       That Defendants be ordered, pursuant to 15 U.S.C. § 1116, to file with the Court and to serve on counsel for Diageo, within 30 days after the entry of judgment herein, a written report under oath setting forth in detail the manner in which Defendants have complied with the injunction ordered by the Court;

3.       That Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition all labels, signs, prints, packages, wrappers, receptacles, advertisements, and promotional materials depicting or marketing the Accused Products, and all plates, molds, matrices, electronic files, and other means of making the same;

4.       That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a) and New York law, to pay to Diageo all of their profits from the sale of the Accused Products, and that such profits be enhanced on the basis of Defendants' willful infringement and dilution of Diageo's Bulleit Design Mark and Trade Dress;

5.       That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a) and New York law, to pay to Diageo all damages sustained by Diageo as a result of Defendants' infringement and dilution of Diageo's Bulleit Design Mark and Trade Dress and their deceptive acts, and that such award be trebled on the basis of Defendants' willful infringement, dilution, and deceptive acts;

6.      That Defendants be ordered, pursuant to 15 U.S.C. § 1117(a) and New York statutory and common law, to pay to Diageo its attorneys' fees and the costs and expenses of this action;

7.      That Diageo be awarded pre-judgment and post-judgment interest; and

8.      That Diageo be granted such other and further relief as is just and proper.


Respectfully submitted,

JENNER & BLOCK LLP


By: /s/ Gianni P. Servodidio
    Susan J. Kohlmann (SK-1855)
    Gianni P. Servodidio (GS-0713)
    919 Third Avenue
    New York, NY 10022-3908
    +1 212 891 1600
    skohlmann@jenner.com
    gps@jenner.com

    *Attorneys for Plaintiff,*
    *Diageo North America, Inc.*

DATED: June 6, 2017