

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
DIAGEO NORTH AMERICA, INC.,

        Plaintiff/
        Counterclaim-
        Defendant

  - against -

W.J. DEUTSCH & SONS LTD. d/b/a
DEUTSCH FAMILY WINE & SPIRITS, and
BARDSTOWN BARREL SELECTIONS LLC,

        Defendants/
        Counterclaim-
        Plaintiffs.
- - - - - - - - - - - - - - - - - -X

17 Civ. 4259 (LLS)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/23/18

    Diageo North America, Inc. ("Diageo") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of the second, third, and fourth counterclaims pleaded by Deutsch Family Wine & Spirits, and Bardstown Barrel Selections LLC (collectively, "Deutsch").

    For the following reasons, the motions are denied.

## BACKGROUND

    The plaintiff/counterclaim-defendant is Diageo, the owner of the Bulleit brand family of whiskeys. Diageo has registered the trade dress of Bulleit bottles, Reg. No. 3,075,812. The defendant/counterclaim-plaintiff is Deutsch, a direct competitor of Diageo and owner of the Redemption brand family of whiskeys.

On June 6, 2017, Diageo filed its first complaint against Deutsch, alleging trademark and trade dress infringement, unfair competition, and trademark dilution by Deutsch's Redemption bottle and label design. The complaint claims that "the Bulleit Design Mark and Trade Dress are inherently distinctive and non-functional, and have come to be associated exclusively with Diageo and identifying the source of Diageo's products." (Compl. ¶ 14). It includes a side-by-side picture of a Redemption bottle and a Bulleit bottle, to illustrate Diageo's claim that the overall appearance of the Redemption bottles is strikingly similar to the Bulleit bottles. (Id. ¶ 27).



Specifically, Diageo alleges:

> Defendants' revised product packaging incorporates the distinctive, non-functional elements of the Bulleit Design Mark and Trade Dress, including: (a) clear canteen-shaped glass bottle with rounded shoulders; (b) embossed brand name above the label; (c) arched text in the top line of the embossed brand name; (d) convex text divider between components of the embossed brand name (e.g. "REDEMPTION" separated from "WHISKEY REVIVAL"); (e) arrow-shaped text divider on the label; (f) border of parallel lines on the label; and (g) cork bottle cap with black top.

(Id. ¶ 26).

Deutsch filed an answer and counterclaims. (Doc. No. 19). Diageo moved to dismiss Deutsch's counterclaims. (Doc. No. 27). Deutsch then filed an amended answer and counterclaims, alleging four counterclaims seeking: (i) declaratory judgment of non-infringement and invalidity, (ii) cancellation of Diageo's registration on the ground that its bottle shape is unprotectable as being functional, (iii) cancellation of the same registration on the ground it had been abandoned, and (iv) its cancellation on the ground of fraud. (Doc. No. 34). Diageo moved again to dismiss the second, third, and fourth counterclaims.[1] (Doc. No. 35). Diageo's motions to dismiss are the motions at issue here.

---

[1] In its motions to dismiss the counterclaims, Diageo stated that it will file its answer to Deutsch's first counterclaims following the ruling on these motions.

# DISCUSSION

The Trademark Act sets forth the grounds for cancellation of an otherwise incontestable trademark: "At any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently." 15 U.S.C. § 1064(3). These challenges are equally applicable to each of the original and amended set of counterclaims, and the following analysis applies equally to both.

A product's trade dress must be assessed under what has been called the anti-dissection rule, which means it must be appraised "as a whole, not from its elements separated and considered in detail." Estate of P.D. Beckwith, Inc. Comm'r of Patents, 252 U.S. 538, 545-46 (1920). The focus must be on the combination of the product's elements, not "dissected" one by one. See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 32 (2d Cir. 1995) ("Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry.").

## Functionality

A claimed trade dress is "essential" if it is "dictated by the functions to be performed by the article." Christian

-4-

Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 219 (2d Cir. 2012) (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 850 n.10 (1982)). A feature which affects the cost or quality by permitting "the article to be manufactured at a lower cost" or constituting "an improvement in the operation of the goods" is also considered "functional." Id. (citations and internal quotation marks omitted).

Despite the anti-dissection rule, the whole is composed of its parts, and Deutsch legitimately lists and describes the function of each:

- "The clear glass used for the BULLEIT Bottle is functional and, therefore, not worthy of protection, because it allows prospective purchasers to view the color of the contents of the bottle." (Am. Countercls. ¶ 20).

- The oval, "old 'medicine bottle' shape" is "not original and purely functional because the rounded shoulders facilitate the controlled pouring of the contents of the bottle" and "facilitates carrying the bottle in a pocket" (Am. Countercls. ¶ 21).

- "The arched embossed text used for the mark BULLEIT on Diageo's bottle is functional because (a) embossing is a means of displaying words more prominently on the surface of a bottle, (b) it allows those with impaired vision to recognize a brand by using the sense of touch and (c) it allows the bottle to be identified if the labels such as the crude one on the BULLEIT bottle become detached." (Am. Countercls. ¶ 24).

- "The borders of allegedly parallel lines used on the label for the BULLEIT Bottle and lined borders in general are common generic shapes that are functional because they merely frame and enhance the appearance of the words and designs on bottles and labels and they allow manufacturers to draw purchasers' attention

and give emphasis to the trademarks and descriptive
text displayed on a bottle; and the borders also
enable prospective purchasers to focus on such words."
(Am. Countercls. ¶ 26).

- The cork bottle caps are functional "because cork
expands and serves to prevent spillage of liquid
contained in whiskey and other bottles." (Am.
Countercls. ¶ 27).

This articulated presentation of the attributes of the bottle is not a violation of the anti-dissection rule, but a statement of the foundation for the conclusion that the combination of elements is a functional whole. The underlying policy is that an element that is necessary for the design to work is one that must be open to all comers. Jeffrey Milstein, Inc., 58 F.3d at 32 ("the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable").

The motion to dismiss Deutsch's second counterclaims for cancellation on the ground of functionality is denied.

### Abandonment

The Trademark Act provides that a trademark shall be deemed "abandoned":

> When any course of conduct of the owner, including
> acts of omission as well as commission, causes the
> mark to become the generic name for the goods or
> services on or in connection with which it is used or
> otherwise to lose its significance as a mark.

15 U.S.C. § 1127. Deutsch argues that the Bulleit trade dress has lost its significance as a mark because "Diageo has openly

acquiesced in the use of various bottle designs containing combinations of the same features found in its Reg. No. 3075812." (Am. Countercls. ¶ 61). Deutsch attaches exhibits that show scores of medicine bottles which appear to be similar to the Bulleit bottle, including representative images of third-party alcohol bottles with clear glass (Ex. A), rounded shoulders (Ex. B), embossed words (Ex. C), arched text (Ex. D), text dividers (Ex. E), label borders (Ex. F), cork caps (Ex. G), black caps (Ex. H), and medicine bottle shapes with vertical sides (Ex. I). Its brief includes a picture of a Highland Park whiskey bottle, displaying a combination of several elements of the Bulleit trade dress: clear glass, arched embossed text, and a cork bottle cap. (Doc. No. 37 at 13).

Diageo concedes that tolerating pervasive third-party use of a trademark may result in abandonment, Hermes Int'l v. Lederer de Paris Fifth Avenue, Inc., 219 F.3d 104, 110 (2d Cir. 2000), but argues that such a claim here is inapplicable because Diageo "is not required to police every conceivably related use" of the Bulleit trade dress. New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 331 (S.D.N.Y. 2010) (citation omitted).

Nevertheless, Deutsch provides a strong showing of a plethora of bottles of similar designs containing combinations of the same pocket flask shape and features, and markedly

similar trade dress to the Bulleit bottle. A factfinder could readily conclude that Diageo has not enforced any rights it had to claim originality in the Bulleit bottle design.

The motion to dismiss Deutsch's third counterclaims for cancellation on the ground of abandonment is denied.

**Fraud**

Deutsch alleges that the registration should be cancelled because it was procured by fraud on the Patent and Trademark Office ("PTO"). According to Deutsch, Diageo falsely claimed in its registration application that the Bulleit bottle design was distinctive. Deutsch alleges:

> 69. In an email dated July 20, 2005, the Examining Attorney put Diageo on notice of the invalidity of its alleged design in an email to Applicant's attorney stating explicitly that the "bottle is non-distinctive" and the bottle and cap must be presented in dotted lines."
>
> 70. The bottle outline shown in Diageo's alleged BULLEIT Bottle mark should have been depicted in the drawing submitted with the application in broken lines and Diageo should have stated that the bottle design is not part of the mark, but it refused to do so.
>
> 71. Although it had actual notice of the invalidity of its design, in view of third-party use and actual notice from the PTO, Diageo falsely alleged that the "bottle shape is readily identifiable and distinguishable from all others in the industry," when in fact Diageo knew that many third parties were using similar medicine bottle shapes having sloped shoulders.

* * *

73. When Diageo applied to register its alleged BULLEIT Bottle mark, Diageo knew that the mark as a whole and the design features claimed by Diageo as a part of its mark were and are functional, in widespread use and incapable of serving individually or collectively as a source indicating trademark.

\* \* \*

77. When it filed its applications to register its alleged BULLEIT Bottle mark, Diageo had actual knowledge that it had not made substantially exclusive use of the mark as a whole or the individual design features in its alleged mark that were and still are functional, in widespread use and incapable of serving individually or collectively as a source indicating trademark.

78. In the application filed by Diageo to register its alleged BULLEIT Bottle mark containing the design features that were and still are functional, in widespread use and incapable of serving individually or collectively as a source indicating trademark, Diageo falsely declared under penalty of perjury that it had the exclusive right to use the mark and that no other person had the right to use those marks.

79. These declarations submitted by Diageo to the PTO were materially false.

80. At the time Diageo made these materially false allegations to the PTO, it knew they were false.

81. Diageo made the false statements concerning its alleged mark with a deliberate intent to deceive the Patent and Trademark Office.

82. The PTO relied upon the materially false allegations made by Diageo or its predecessor in connection with its application to register its alleged BULLEIT Bottle mark.

83. But for the materially false allegations relating to the alleged BULLEIT Bottle mark, the PTO never would have issued Reg. No. 3075812.

(Am. Countercls. ¶¶ 69-71, 73, 77-83). This adequately pleads knowing and purposeful fraud on the patent office and, if unexplained or overcome by a contrary showing of the facts, would state a claim on which relief could be granted.

Deutsch "has attached samples to its counterclaim complaint showing numerous third party medicine bottle type containers like that used by Diageo and numerous third-party tapered flask-style containers like that used by Deutsch." (Deutsch's brief, Doc. No. 37 at 18). Although Diageo need not police every conceivably related use of the Bulleit bottle design, Deutsch's many samples of strikingly similar third-party bottles suffice to plead claims of fraud on the PTO for falsely claiming that the Bulleit bottle shape was distinctive.

Nor is Deutsch required to allege that Diageo had knowledge that third parties had legally superior rights in their similar products. The basis for Deutsch's fraud counterclaim is broader than Diageo's claim of exclusive rights, and challenges Diageo's allegedly false statement that its bottle design is distinctive, not widely used, and non-functional. (Am. Countercls. ¶¶ 72-78).

Deutsch also adequately alleges that Diageo had no reasonable basis for its belief that the Bulleit bottle shape was entitled to registration. Not only do Deutsch's exhibits plausibly support a showing of widespread use, but Deutsch also

makes a particularized allegation that the PTO Examining Attorney warned, in an email to Diageo, that the Bulleit bottle design is non-distinctive and that the bottle and cap should be presented in dotted lines, as a disclaimer of exclusive rights in the bottle shape. (Am. Countercls. ¶¶ 67-69). The claim that Diageo lacked a reasonable basis for asserting that it had superior rights to the design cannot be dismissed as a matter of law.

The motion to dismiss Deutsch's fourth amended counterclaim for cancellation on the ground of fraud is denied.

## CONCLUSION

The motions to dismiss Deutsch's second, third, and fourth counterclaims (Doc. Nos. 27, 35) are denied.

So ordered.

Dated: New York, New York
January 23, 2018

_Louis L. Stanton_
LOUIS L. STANTON
U.S.D.J.