# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIAGEO NORTH AMERICA, INC., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | **Case No.** 1:17-CV-04259-LLS |
| W.J. DEUTSCH & SONS LTD. d/b/a DEUTSCH FAMILY WINE & SPIRITS, and BARDSTOWN BARREL SELECTIONS LLC, | |
| Defendants/Counterclaim Plaintiffs. | |

### <u>Diageo North America Inc.'s Proposed Counter-Findings of Fact</u>

Pursuant to Rule 4(A) of the Court's Individual Practices and the Court's Order dated October 2, 2020, Diageo submits the following proposed counter-findings of fact in response to the proposed findings of fact submitted by Defendants W. J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits and Bardstown Barrel Selections LLC (collectively, "Deutsch"). In the following chart, Deutsch's proposed findings are contained in the column on the left, and Diageo's responses and proposed counter-findings are in the column on the right.

Diageo reserves the right to supplement its counter-findings of ultimate fact and supporting witnesses and evidence as trial preparation continues.

| **Deutsch's Proposed Findings** | **Response** |
|---|---|
| 1. Diageo's predecessor, Joseph E. Seagram & Sons (Seagram), wanted a new bottle design for Bulleit based on a frontier whiskey theme, concept, or appearance. Seagram hired Steve Sandstrom to redesign the Bulleit bottle, and he did so by copying an old bottle in an antique shop, altering it slightly to meet the 750ml size requirement, and | **CONTESTED.**<br><br>Contested as incomplete with respect to the asserted fact that Seagram wanted a new bottle design for Bulleit based on a frontier whiskey theme, concept, or appearance. Diageo presents the counter-finding that Sandstrom was also instructed to create something with a unique appearance that would stand apart from |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| putting the Bulleit name on it in raised lettering. | other brands in the market. *See* Bello Decl.[1] ¶ 5, Ex. 3 (Sandstrom Affidavit ¶ 3); Mot. Servodidio Decl. ¶ 2, Ex. A (Bulleit Tr. 151:15–153:8, 167:3–12); Bello Decl. ¶ 4, Ex. 2 (2015 Bulleit Affidavit ¶ 12); Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 102:10–103:15).<br><br>Further contested with respect to the asserted fact that Sandstrom copied an old bottle he found in an antique shop and only altered it slightly. Diageo presents the counter-finding that Sandstrom discovered a "very unique" antique bottle and made substantial additional modifications to that bottle in his design, including (1) changing the size and scale, (2) changing the glass color, (3) reducing imperfections, (4) adding an embossed design, (5) adding a distinctive label, and (6) adding a cork closure. *See* Mot. Servodidio Decl. ¶ 3, Ex. B (Sandstrom Tr. 56:7–57:8, 67:2–17, 74:1–11, 75:22–76:8, 80:2–12, 211:2–212:9; Bello Decl. ¶ 5, Ex. 3 (Sandstrom Affidavit ¶¶ 7–10, Ex. C). |
| 2. Diageo obtained Registration Number 3,075,812 ("812 Registration") for a whiskey bottle design (the "Bulleit Bottle Design") containing the words "BULLEIT BOURBON FRONTIER WHISKEY" and a depiction of a bottle as shown in the drawing below for "alcoholic beverages, namely, distilled spirits." Diageo alleged that, "The mark consists of three-dimensional configuration of a bottle that is used to contain the goods, as well as a label design and protruding words and designs. The label design with ridged edges is claimed as a feature of the mark. The protruding words, BULLEIT BOURBON FRONTIER WHISKEY, the protruding line below BULLEIT BOURBON, and the four protruding dots below FRONTIER | **PARTIALLY CONTESTED.**<br><br>Diageo presents the counter-finding that on April 4, 2006, the U.S. Patent and Trademark Office ("PTO") issued U.S. Registration Number 3,075,812 (the "'812 Registration") for the overall appearance of the Bulleit packaging (the "Bulleit Trade Dress"). *See* Mot. Servodidio Decl. ¶ 22, Ex. U (File Wrapper at 29). The '812 Registration protects Diageo's rights in the overall appearance of the Bulleit Trade Dress. |

---

[1] All defined terms and exhibits have the same meaning as in Diageo's Reply Statement of Undisputed Facts, ECF No. 168, and Diageo's Opposition to Deutsch's Statement of Undisputed Facts, ECF No. 156, as submitted with the parties' summary judgment motions.

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| WHISKEY are all also claimed as features of the mark." The '812 Registration excludes the shape of the cylindrical neck and cap by displaying them in dotted lines, and it does not contain any size restriction.<br><br> | |
| 3.  Diageo identified these elements of its alleged Bulleit Trade Dress or Bulleit Bottle Design as follows in its Complaint:<br><br>a.  Clear canteen-shaped glass bottle with rounded shoulders;<br><br>b.  Embossed brand name above the label;<br><br>c.  Arched text in the top line of the embossed brand name;<br><br>d.  Convex text divider between components of the embossed brand name (e.g. "BULLEIT BOURBON" separated from "FRONTIER WHISKEY");<br><br>e.  Arrow-shaped text divider on the label;<br><br>f.  Border of parallel lines on the label; and<br><br>g.  Cork bottle cap with black top. | **CONTESTED.**<br><br>Diageo contests the statement as incomplete and presents the counter-finding that Diageo's Complaint claimed the combination of these elements as part of the overall appearance of the Bulleit packaging, and attached a photograph illustrating the Bulleit Trade Dress.  *See* Compl., ECF No. 1, ¶¶ 12–13 & Ex. A. |
| 4.  According to the American Bottles and Flasks and Their Ancestry, "[t]he | **CONTESTED.** |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| bottle   form for which the name flask is reserved [] is one whose cross-section is elliptical or ovate, whose convex or flat sides rise to a shoulder or taper directly into a narrow short neck, and whose capacity is rarely over a quart and usually not over a pint. This type may not have been introduced until the 1600s, and then presumably it was called a pocket bottle." Bottles with an oblong, flask shape have been used continuously since at least the 1700's, if not earlier. | Diageo presents the counter-finding that there are a wide variety of shapes and sizes of "flasks." *See* Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 260:12–261:22); *see also* Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 555:17–21); Mot. Servodidio Decl. ¶ 11, Ex. J (Kremer Tr. 119:3–10).<br><br>Diageo presents the additional counter-finding that there are "a million [ ] variations" of different shapes of spirits bottles.  *See* Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 555:17–21); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 260:12–261:13); Mot. Servodidio Decl. ¶ 14, Ex. M (Provini Tr. 319:5–18).<br><br>Diageo further contests the statement in its entirety because it is irrelevant and not part of a set of facts that are sufficient to sustain a judgment in Deutsch's favor, as required by the Court's individual practices. |
| 5.      All of the Bulleit Bottle Design features claimed by Diageo are generic because they are commonly used and serve cost saving or other functional purposes thereby making the design as a whole non-distinctive and incapable of acquiring distinctiveness or secondary meaning. | **CONTESTED.**<br><br>Diageo presents the counter-finding that on March 30, 2012, the PTO announced that the '812 Registration had become incontestable pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. § 1058. *See* Mot. Servodidio Decl. ¶ 22, Ex. U (File Wrapper at p. 18); Mot. Servodidio Decl. ¶ 24, Ex. W (DIAGEO000081064).    An incontestable registration is conclusive evidence of the validity of the registered mark.<br><br>Diageo presents the additional counter-finding that the Bulleit Trade Dress is both inherently distinctive and has acquired distinctiveness and secondary meaning among consumers. *See* Bello Decl.  ¶¶ 13–57, Exs. 4–26; Opp. Servodidio Decl. ¶ 3, Ex. 2 (Kilgore Tr. 319:4–320:5, 321:2–323:10); Grow Decl. Ex. 30 (KWS000033, at 8); Mot. Servodidio Decl. ¶ 25, Ex. X (Pl.'s Dep. Ex. 88 (DFWS00070594), at 25); Mot. Servodidio Decl. ¶ 27 Ex. Z (Pl.'s Dep. Ex. 90 |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | (DFWS00080611), at DFWS00080621); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 82:11–83:25, 139:4–142:3); DIAGEO000020181; Mot. Servodidio Decl. ¶ 28 Ex. AA (Pl.'s Dep. Ex. 67 at DFWS00082059); Mot. Servodidio Decl. ¶ 11 Ex. J (Kremer Tr. 110:3–17, 158:5–19, 162:20–163:18); Mot. Servodidio Decl. ¶ 29 Ex. BB (Pl.'s Dep. Ex. 98 at DFWS00036076).<br><br>Diageo presents the additional counter-finding that the design features in the Bulleit Trade Dress are not functional and generate additional costs and complexities associated with production. Mot. Servodidio Decl. ¶ 7, Ex. F (Giuliani Tr. 19:19–20:14, 20:19–21:4, 25:15–26:15, 26:18–27:4, 108:5–25, 109:7–24); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 424:9–19, 546:6–10); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 282:18–283:4); Mot. Servodidio Decl. ¶ 14, Ex. M (Provini Tr. 174:6–24); Mot. Servodidio Decl. ¶ 21, Ex. T (Sooy Tr. 150:15–151:4).<br><br>Diageo presents the additional counter-finding that Seagram redesigned the Bulleit bottle to be "unique" and a "departure" from the other whiskey products at the time. Grow Decl. Ex. 1 (Sandstrom Aff., DIAGEO000069853, ¶¶ 3, 6); Grow Decl. Ex. 13 (Bulleit Aff., DIAGEO000072441, ¶ 56); Grow Decl. Ex. 14 (Bulleit Aff., DIAGEO000072822, ¶ 12).<br><br>Diageo additionally contests the statement because the statement that elements of the Bulleit Trade Dress are used by other brands is irrelevant and is not part of a set of facts that are sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 6. Diageo never made substantially exclusive use of any of the features of the Bulleit Bottle Design because, long before and after the Bulleit Bottle Design was first used, hundreds of distilled spirits companies have sold their products in | **CONTESTED.**<br><br>Diageo presents the counter-finding that Diageo owns an incontestable registration for the Bulleit Trade Dress, which is conclusive evidence of Diageo's exclusive use of the |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| functional flask shaped containers having oblong or oval shapes, rounded shoulders, clear glass or plastic bottles, reverse tapers, embossed or raised lettering, arched text, text dividers, labels with borders, black tops, and cork closures. | Bulleit Trade Dress.  *See* Mot. Servodidio Decl. ¶ 22, Ex. U (File Wrapper at 18).<br><br>Diageo presents the additional counter-finding that Diageo has made exclusive use of the overall appearance of the Bulleit Trade Dress since Diageo acquired the Bulleit brand in 2001.  *See* Evidence cited in Response No. 5, *supra*.<br><br>Diageo presents the additional counter-finding that the Bulleit Trade Dress has won numerous awards since it was released into the U.S. market.  *See* Bello Decl. ¶ 5, Ex. 3 (Sandstrom Affidavit ¶ 11); Bello Decl. ¶ 3, Ex. 1 (2011 Bulleit Affidavit ¶ 57); Bello Decl. ¶ 13 & Ex. 4 (Graphis Design Annual 2001 excerpts); Bello Decl. ¶ 17, Ex. 6 (award compilation).<br><br>Diageo presents the additional counter-finding that Deutsch's employees and hired consultants have repeatedly acknowledged the strength of the Bulleit Trade Dress.  *See* Mot. Servodidio Decl. ¶ 25, Ex. X (Pl.'s Dep. Ex. 88 (DFWS00070594), at 25); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 83:6–85:20, 139:4–142:3, 246:6–247:2, 348:6–349:3); Mot. Servodidio Decl. ¶ 10, Ex. I (McCarthy Tr. 127:22–129:13); Mot. Servodidio Decl. ¶ 27 Ex. Z (Pl.'s Dep. Ex. 90, at DFWS00080621); Mot. Servodidio Decl. ¶ 28, Ex. AA (Pl.'s Dep. Ex. 67, at DFWS00082059); Mot. Servodidio Decl. ¶ 11, Ex. J (Kremer Tr. 110:3–17, 158:5–19, 162:20–163:18); Mot. Servodidio Decl. ¶ 29, Ex. BB (Pl.'s Dep. Ex. 98, at DFWS00036076); Mot. Servodidio Decl. ¶ 12, Ex. K (Boone Tr. 158:28–159:14); Mot. Servodidio Decl. ¶ 30, Ex. CC (Pl.'s Dep. Ex. 119, at DFWS00034032); Mot. Servodidio Decl. ¶ 8, Ex. 6 (Steffanci Tr. 142:19–145:11, 160:2–161:9, 293:3–15, 351:13–353:8); Mot. Servodidio Decl. ¶ 31, Ex. DD (Pl.'s Dep. Ex. 71, at DFWS00040834); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 222:13–224:12); Mot. Servodidio Decl. ¶ 32, Ex. EE (Pl.'s Dep. Ex. 133, at DFWS00071859). Mot. |

Servodidio Decl. ¶ 33, Ex. FF (Pl.'s Dep. Ex. 106 (DFWS00047936), at 5)).

Diageo presents the additional counter-finding that Deutsch's employees have acknowledged that the Bulleit Trade Dress has shaped consumer perceptions of whiskey and whiskey packaging. *See* Mot. Servodidio Decl. ¶ 33, Ex. FF (Pl.'s Dep. Ex. 106 (DFWS00047936, at 5); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 348:6–349:3).

Diageo presents the additional counter-finding that, other than Redemption, no spirits brand in use in the market has the same combination of features that make up the Bulleit Trade Dress such that it has a similar overall appearance to the Bulleit Trade Dress. *See* Grow Decl. Ex. 203 (Bello Tr. 203:7–234:9); Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 197:24–198:6, 258:8–260:9 (distinguishing Bib & Tucker)); Opp. Servodidio Decl. ¶ 6, Ex. 5 (Provini Tr. 335:4–15 (distinguishing Bib & Tucker)); Opp. Servodidio Decl. ¶ 8, Ex. 7 (Bello Tr. 206:15–19 (distinguishing Bib & Tucker)); Opp. Servodidio Decl. ¶ 12, Ex. 11 (Sooy Tr. 212:11–215:16 (distinguishing Bib & Tucker and Singleton)); Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 61:9–62:15, 66:14–67:5 (distinguishing Fireball), 98:17–99:7 (distinguishing Plymouth Gin), 217:17–22 (distinguishing Highland Park), 223:5–7 (distinguishing Maker's Mark 46), 224:22–225:4 (distinguishing Old Camp), 226:17–24 (distinguishing Pogue)); Mot. Servodidio Decl. ¶ 3, Ex. B (Sandstrom Tr. 173:4–17 (distinguishing Fireball)); Mot. Servodidio Decl. ¶ 18, Ex. Q (Krugman Tr. 165:21–167:9, 169:8–17, 170:13–18 (distinguishing Dr. McGillicuddy's, Fireball, and St. Peter's), 271:25–274:9 (distinguishing Plymouth Gin, Highland Park, Cougar Bourbon, and Black Bottle Scotch, among others)); Mot. Servodidio Decl. ¶ 10, Ex. I (McCarthy Tr. 130:19–131:11 (distinguishing Maker's Mark 46), 132:22–133:8 (distinguishing Whistle

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Pig)); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 621:21–622:20 (distinguishing Cougar), 624:5–625:2 (distinguishing Collingwood)).<br><br>Diageo presents the additional counter-finding that many of the spirits brands raised by Deutsch in the asserted fact are outside the American whiskey category, and thus are not in competition with Bulleit and are irrelevant to the distinctiveness of the Bulleit Trade Dress. Jones Decl. ¶ 3, Ex. 1 (Jones Expert Report at 18–19); *see* Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 322:15–19); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 83:21–84:10); Mot. Servodidio Decl. ¶ 19, Ex. R (DeSarno Tr. 126:6–18); Opp. Servodidio Decl. ¶ 3, Ex. 2 (Kilgore Tr. 366:8–367:3). |
| 7.      Many third party bottles have dimensions that are very similar to the Bulleit Bottle Design including Plymouth gin, Manatawny whiskey, Highland Park whiskey, Fireball whiskey, Myers's rum, Bib & Tucker whiskey, and Singleton whiskey. | **CONTESTED.**<br><br>Diageo presents the counter-finding that none of the cited brands resemble the overall appearance of the Bulleit Trade Dress or rely on the same distinctive elements of the Bulleit Trade Dress. *See* Mot. Servodidio Decl. ¶ 5, Ex. D (Basner Tr. 92:22–94:2 (Myers's), 28:18–29:18, 181:21–182:3, 186:13–23 (Fireball)); Mot. Servodidio Decl. ¶ 18, Ex. Q (Krugman Tr. 169:8–17 (Fireball), 198:4–199:5 (Myers's), 271:25–274:9 (Plymouth and Highland Park)); Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 61:9–62:15, 66:14–67:5 (Fireball), 98:17–99:7 (Plymouth), 217:17–22 (Highland Park)); Mot. Servodidio Decl. ¶ 3, Ex. B (Sandstrom Tr. 173:4–17 (Fireball)); Grow Decl. Ex. 16 at 2 (DFWS00148194) (Manatawny's current design); Mot. Servodidio Decl. ¶ 15, Ex. N (Manginelli Tr. 48:2–15 (Manatawny's current design)); Opp. Servodidio Decl. ¶ 12, Ex. 11 (Sooy Tr. 212:11–215:16 (Bib & Tucker and Singleton)); Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 197:24–198:6, 258:8–259:4 (Bib & Tucker)); Opp. Servodidio Decl. ¶ 6, Ex. 5 (Provini Tr. 335:4–15 (Bib & Tucker)); |

| | |
|---|---|
| | Opp. Servodidio Decl. ¶ 8, Ex. 7 (Bello Tr. 206:15–19 (Bib & Tucker)).<br><br>Diageo presents the additional counter-finding that Plymouth Gin, Myers's Rum, Singleton scotch, and Highland Park scotch are outside the American whiskey category and thus are not in competition with Bulleit.  *See* Jones Decl. ¶ 3, Ex. 1 (Jones Expert Report at 18–19); Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 297:12–15, 322:15–19); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 83:21–84:10); Mot. Servodidio Decl. ¶ 19, Ex. R (DeSarno Tr. 126:6–18); Opp. Servodidio Decl. ¶ 3, Ex. 2 (Kilgore Tr. 366:8–367:3).<br><br>Diageo further contests the entire statement on the grounds that the dimensions of these bottles are irrelevant and this is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor as required by the court's individual practices. |
| 8.      The Bulleit Bottle Design is virtually identical in shape and size to stock bottles, such as the Philadelphia flask, which have been sold for decades by glass container companies. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the Bulleit Bottle Design is different from the "Philadelphia flask" in both shape and overall commercial impression. *See* DFWS00135762, at 00135762–64.<br><br>Diageo further contests the entire statement on the grounds that it is irrelevant because it does not reflect the use of the flask by American whiskey companies, and it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor as required by the court's individual practices. |
| 9.      Diageo never enforced its alleged rights in the Bulleit Bottle Design and never objected to the use of any stock bottles or other third party spirits bottles, except those used for Manatawny and Dr. McGillicuddy's whiskey. Diageo dropped its objections to | **CONTESTED.**<br><br>Diageo presents the counter-finding that Diageo monitors the release of third-party products that may be similar in their overall appearance to the Bulleit Trade Dress such that they could lead to consumer confusion, and takes action where appropriate.  *See* Bello |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| these bottles after the makers of these products made minor alterations to their designs. | Decl. ¶ 47; Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 356:10–357:4); Mot. Servodidio Decl. ¶ 5, Ex. D (Basner Tr. 110:20–111:16).<br><br>Diageo presents the additional counter-finding that Diageo demanded that NOAH Spirits LLC, the manufacturer of Manatawny Whiskey, cease and desist from use of new packaging that was confusingly similar to the Bulleit Trade Dress. *See* Bello Decl. ¶¶ 48, 49; Mot. Servodidio Decl. ¶ 15, Ex. N (Manginelli Tr. 38:19–40:3). Diageo presents the further counter-finding that NOAH Spirits LLC agreed to change its bottle design to a different shape in response to the demand, *see* Bello Decl. ¶ 49, Ex. 23, which was "quite different" from the previously used bottle shape, *see* Servodidio Decl. ¶ 15, Ex. N (Manginelli Tr. 48:2–15).<br><br>Diageo presents the additional counter-finding that Diageo filed a trademark infringement lawsuit against Sazerac Company, Inc., the owner of Dr. McGillicuddy's, for use of packaging in a new line of flavored whiskey products that confusingly resembled the overall appearance of the Bulleit Trade Dress. *See* Bello Decl. ¶¶ 50–53, Exs. 24 & 25. Diageo presents the further counter-finding that as a result of the lawsuit, Sazerac agreed to change the embossing and label design for its flavored whiskey products. *See* Bello Decl. ¶ 53, Ex. 25. |
| 10. In its Complaint against Deutsch, Diageo admitted that the Bulleit Trade Dress was not original or distinctive by conceding that it had the overall 'vintage' look intended to indirectly evoke the rugged look and feel of the American Frontier. | **CONTESTED.**<br><br>Diageo presents the counter-finding that Diageo never admitted that the Bulleit Trade Dress was not original or distinctive in its Complaint, and in fact described the Bulleit Trade Dress as distinctive. Compl., ECF No. 1, ¶ 12.<br><br>Diageo presents the counter-finding that there are limitless ways to convey a vintage, frontier, historical, or American West appearance without copying the specific elements of the |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Bulleit Trade Dress in a confusingly similar manner. *See* Opp. Servodidio Decl. ¶ 10, Ex. 9 (DeSarno Tr. 24:14–25:7, 98:11–25); Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 145:10–20); Opp. Servodidio Decl. ¶ 3, Ex. 2 (Kilgore Tr. 192:18–194:4).<br><br>Diageo presents the additional counter-finding that the Bulleit Trade Dress is distinctive and well-recognized by consumers. *See* Response Nos. 5 & 6, *supra*. |
| 11.      History,      heritage,      and authenticity are used by many manufacturers as emotional triggers for consumers of alcoholic beverages products, especially whiskey and many brands employ bottle designs that reference and draw inspiration from the same historical sets of flask shaped packaging elements that are most appealing to consumers. | **CONTESTED.**<br><br>Diageo presents the counter-finding that there are limitless ways to convey a vintage, frontier, historical, or American West appearance without copying the specific elements of the Bulleit Trade Dress in a confusingly similar manner. *See* Response No. 10, *supra*.<br><br>Additionally contested as to the statement that flask-shaped elements are necessarily most appealing to consumers.  Diageo presents the counter-finding that there are "a million [ ] variations" of different shapes of spirits bottles. *See* Response No. 4, *supra*.<br><br>Additionally contested as to the statement that many brands draw inspiration from the same historical sets of flask-shaped packaging elements.  Diageo presents the counter-finding that there are a wide variety of shapes and sizes of "flasks." *See* Response No. 4, *supra*. |
| 12.      Every claimed feature of the Bulleit Bottle Design and the Redemption bottle design adopted in 2016 (the "Current Redemption Bottle Design") is completely different, and, whether viewed separately or in their entirety, no feature is the same. Compared to the oval Bulleit Bottle Design, the Current Redemption Bottle Design has many differences including the following: a hip flask shape with a concave rather than oval back; wider shoulders; narrower base; greater shoulder to heel taper; shorter height; heavier | **CONTESTED.**<br><br>Diageo presents the counter-finding that the Current Redemption Bottle Design is confusingly similar in overall commercial impression to the Bulleit Trade Dress, and that individual features of the Current Redemption Bottle Design are confusingly similar to the Bulleit Trade Dress, including the following primary similarities: (1) the products' same canteen bottle shapes; (2) the similar embossing designs appearing on the top half of |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

weight; shorter and wider neck; front and back labels that differ in size, shape, color, positioning, design, and font style; embossing with different words displayed in a different size and style of lettering, in a horizontal line with additional words displayed in an oval shape around it, and with an embossed rye frond below the label.

the packaging, with arched embossing; (3) the identical embossed convex text dividers separating the embossed brand names; and (4) similar vintage-styled labels, with parallel-lined borders.  *Compare, e.g.*, Compl. Ex. A, ECF No. 1-1, *with* Compl. Ex. E, ECF No. 1-5.

Diageo presents the additional counter-finding that Deutsch repeatedly took steps toward copying the Bulleit Trade Dress and recognized that the Current Redemption Bottle Design and the Bulleit Trade Dress are similar, *inter alia*:

- After recognizing in the January 2016 focus groups that the Bulleit Trade Dress was consumers' "frame of reference for whiskey packaging," Deutsch revised its design brief to incorporate several of the elements of the Bulleit Trade Dress, and explicitly told its designer to recommend bottle shapes "similar to Bulleit."  *See* Opp. Servodidio Decl. ¶ 20, Ex. 19 (DFWS00083055, at DFWS00083062).

- Deutsch instructed Berlin Packaging LLC, its glass design company, to use Bulleit bottles as "reference standards" in manufacturing its prototype.  *See* Opp. Servodidio Decl. ¶23, Ex. 22 (DFWS00034343, at DFWS00034347).

- Deutsch instructed Berlin to make changes to its design to make it more similar to Bulleit, including adjusting its height, taper, and shoulder height. *See* Opp. Servodidio Decl. ¶ 22, Ex. 21 (DFWS00053227, at DFWS00053233, DFWS00053236; Grow Decl. Ex. 33 (DFWS00026937).

- Deutsch Marketing Director Jennifer Thomason admitted that Deutsch

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

|  | wanted Bulleit and Redemption to be the same height so that they would have the "same presence on the shelf" Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 287:10–288:14). |
|  | • Consumers in the March 2016 focus groups informed Deutsch that its new BT design looked like Bulleit, Opp. Servodidio Decl. ¶ 3, Ex. 2 (Kilgore Tr. 319:11–323:10). |
|  | • Ms. Thomason also noted during the design process that the Redemption design was "looking pretty similar" to Bulleit, which she thought was "good," *see* Opp. Servodidio Decl. ¶ 27, Ex. 26 (DFWS00071815). |
|  | • In April 2016, senior Deutsch personnel discussed internally whether the Redemption design was too close in appearance to Bulleit such that it was not "original" and was a "copycat." *See* Opp. Servodidio Decl. ¶ 28, Ex. 27 (DFWS00071065); Opp. Servodidio Decl. ¶ 6, Ex. 5 (Provini Tr. 300:6–302:24); Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 244:20–245:2, 249:8–18, 250:18–252:4); Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 450:20–451:2); DFWS00052806. |
|  | Diageo presents the additional counter-finding that immediately following the release of the new Redemption design, consumers and commentators noted that the new Redemption design was similar to Bulleit. Opp. Servodidio Decl. ¶ 29, Ex. 28 (DFWS00084034); Opp. Servodidio Decl. ¶ 30, Ex. 29 (DFWS00031574); Opp. Servodidio Decl. ¶ 31, Ex. 30 (Pl.'s Dep. Ex. 105); Opp. Servodidio Decl. ¶ 32, Ex. 31 (DFWS00069204). |
|  | Diageo presents the additional counter-finding that consumers have already been confused by |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | the similarities between the Current Redemption Bottle Design and the Bulleit Trade Dress. *See* Bello Decl. ¶ 56, Ex. 26, at ¶¶ 9, 13–17; Mot. Servodidio Decl. ¶ 16, Ex. O (Schuler Tr. 33:5–11). |
| | Diageo presents the additional counter-finding that there is a substantial likelihood of confusion between the Current Redemption Bottle Design and the Bulleit Trade Dress. *See* Poret Decl. Ex. 1 (Poret Report). |
| | Diageo further contests the statement about individual features of the design as irrelevant and as not part of a set of facts that are sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 13.     There are over 99 separate and distinct differences between the Bulleit Bottle Design and the Current Redemption Bottle Design, beginning with the capitalized word marks BULLEIT and REDEMPTION, which are the most prominent features visible to consumers. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the Bulleit Trade Dress and the Current Redemption Bottle Design are confusingly similar for the reasons discussed *supra* Response No. 12. |
| 14.     Both the Redemption and Bulleit word marks are displayed multiple times on the bottle and labels, and they are the main source identifiers for all of the parties' whiskey products, including bourbon, rye, high rye, and barrel strength products. | **CONTESTED.**<br><br>Diageo presents the counter-finding that other aspects of the Bulleit Trade Dress serve as important source identifiers, including its shape, embossing, label, and other design elements. *See* Mot. Servodidio Decl. ¶ 27, Ex. Z (Pl.'s Dep. Ex. 90, at DFWS00080621); Mot. Servodidio Decl. ¶ 28, Ex. AA (Pl.'s Dep. Ex. 67, at DFWS00082062). |
| 15.     The Bulleit and Redemption word marks are different in sight, sound, meaning, and connotation. | **CONTESTED.**<br><br>Diageo contests this statement on the grounds that differences between the Bulleit and Redemption words by themselves are irrelevant to whether the Current Redemption |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Bottle Design, as a whole, is confusingly similar to the Bulleit Trade Dress, and on the grounds that this is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the Court's individual practices. |
| 16.     The main label on the Current Redemption Bottle Design is square and centered on the front of the bottle, whereas the main label on the Bulleit Bottle Design is rectangular and wraps around the bottom portion of the bottle. | **CONTESTED.**<br><br>Diageo contests this statement as incomplete and presents the counter-finding that the Current Redemption Bottle Design uses a similar rectangular border of parallel lines, and has a similar vintage style to the Bulleit Trade Dress. *Compare, e.g.*, Compl. Ex. A, ECF No. 1-1, *with* Compl. Ex. E, ECF No. 1-5. |
| 17.     Diageo and Deutsch compete in the spirits segment of the alcoholic beverage market, which includes whiskey, gin, rum, vodka, tequila, brandy, and liqueurs, all of which can be found next to or in close proximity to Bulleit in retail stores and bars. And nearly all of these types of spirits are at least sometimes sold in oblong or flask shaped bottles. | **CONTESTED.**<br><br>Diageo presents the counter-finding that Bulleit and Redemption compete in the American whiskey category, and that Deutsch has identified the category as such and has identified Bulleit as Redemption's primary competitor. *See* Mot. Servodidio Decl. ¶ 25, Ex. X (DFWS000070594, at 3, 25).<br><br>Diageo presents the additional counter-finding that in retail liquor stores, Bulleit whiskeys are typically placed next to American whiskeys. *See* Mot. Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 322:15–323:22); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 83:21–84:23).<br><br>Diageo presents the additional counter-finding that Deutsch recommends placement of Redemption next to Bulleit.   *See* Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 92:8–23, 361:5–25); Servodidio Decl. ¶ 34, Ex. GG (Pl.'s Dep. Ex. 107, at DFWS00080764–67); *see also* Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 83:21–84:23).<br><br>Diageo additionally contests this statement on the grounds that it is irrelevant that other types of spirits, or even American whiskeys, are at least sometimes sold in oblong or flask-shaped |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | bottles, and on the grounds that this is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 18.      The facts obtained in discovery show that (a) the majority of consumers are not shopping exclusively for whiskey, (b) flavored whiskey buyers will migrate to unflavored whiskey, (c) most shoppers expect flavored whiskeys to be shelved alongside unflavored whiskeys and (d) consumers are exposed to the oblong or flask shape bottles in all spirits categories. | **CONTESTED.**<br><br>Diageo presents the counter-finding that liquor stores typically shelve products either by specific narrow category (*e.g.,* rye whiskey, bourbon whiskey) or by brand within a broader category of spirits (*e.g.,* placing all Bulleit line extensions next to Redemption line extensions within an American whiskey section). Mot. Servodidio Decl. ¶ 34, Ex. GG (DFWS00080752, at DFWS00080764–67); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 75:3–78:5, 83:9–85:20); Grow Decl. Ex. 245 (DIAGEO000017439 at 71); Eisman Decl. ¶ 3, Ex. 2.<br><br>Diageo incorporates its counter-findings set forth in Response Nos. 6 and 17, *supra.*<br><br>Diageo additionally contests this statement as irrelevant, because the stated facts do not have to do with consumer decisions at the point of purchase for Bulleit or Redemption whiskey, and as not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 19.      The Bulleit Bottle Design shape and label do not have the memorability or uniqueness required for it to be an asset or a potential asset and very few brands have such a bottle shape. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the overall appearance of the Bulleit Trade Dress and its individual elements are both inherently distinctive and have acquired distinctiveness. *See* Response Nos. 5 and 6, *supra.*<br><br>Diageo presents the additional counter-finding that Deutsch officers, employees, and third-party consultants have repeatedly emphasized the importance of the Bulleit Trade Dress in affecting Bulleit's brand perception, including noting that Bulleit has "strong packaging" and that it was "amazing how much everyone loves |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

|  |  |
|---|---|
|  | the Bulle[i]t package." *See* Evidence cited in Response No. 6, *supra*. |
| 20.    Since Deutsch launched the Current Redemption Bottle Design in November 2016, it has received no misdirected communications or other evidence of actual confusion among consumers despite the fact that during that time, Diageo has sold over 20 million 750mL bottles in the Bulleit Bottle Design and Deutsch has sold over 1.8 million 750mL bottles in the Current Redemption Bottle Design. | **CONTESTED.**<br><br>Diageo presents the counter-finding that consumers have already been confused by the similarities between the Current Redemption Bottle Design and the Bulleit Trade Dress. *See* Bello Decl. ¶ 56, Ex. 26, at ¶¶ 9, 13–17; Mot. Servodidio Decl. ¶ 16, Ex. O (Schuler Tr. 33:5–11).<br><br>Diageo presents the additional counter-finding that there is a substantial likelihood of confusion between the Current Redemption Bottle Design and the Bulleit Trade Dress. *See* Poret Decl. Ex. 1 (Poret Report). |
| 21.    A likelihood of confusion survey conducted among a nationally representative sample of approximately one thousand individuals across the United States, and found that a negligible one percent of respondents gave answers indicating possible confusion. | **CONTESTED.**<br><br>Diageo presents the counter-finding the confusion survey conducted by Deutsch's expert contains numerous significant flaws rendering its conclusion unreliable, including, among others, the use of an improper survey method that does not replicate marketplace conditions, the use of an improper stimulus that was rejected by Deutsch's own pre-litigation survey consultant, and the failure to screen applicants properly. *See* Poret Decl. ¶ 4, Ex. 2 (Poret Rebuttal Report).<br><br>Diageo presents the additional counter-finding that a likelihood of confusion survey that did not have these methodological flaws found a substantial likelihood of confusion between the two products. *See* Poret Decl. Ex. 1 (Poret Report). |
| 22.    Before and soon after Deutsch acquired the Redemption whiskey brand, its employees recognized serious design flaws in the "Original Redemption Bottle Design," which made it prone to breakage and led consumers to believe it more closely resembled a container for olive oil or vodka | **CONTESTED.**<br><br>Diageo presents the counter-finding that prior to Deutsch's January 2016 focus groups, Deutsch viewed the Original Redemption Bottle Design as "attractive." Opp. Servodidio |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| than whiskey. Deutsch's research showed that consumers did not like the Original Redemption Bottle Design because of its shape. | Decl. ¶ 15, Ex. 14 (DFWS00032530, at DFWS32530).<br><br>Diageo presents the additional counter-finding that bartenders and consumers preferred the Original Redemption Bottle Design "from a usability standpoint" because it had a "great shape" for fitting behind the bar and in stores, and had a "[s]lender neck" that was "easily gripped by all." Opp. Servodidio Decl. ¶ 16, Ex. 15 (DFWS00033732); *see also* Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 87:22–89:11).<br><br>Diageo presents the additional counter-finding that there are several leading brands that employ tall, cylindrical packaging, including High West, (ri)1, and Eagle Rare. *See, e.g.*, Mot. Servodidio Decl. ¶ 25, Ex. X (DFWS00070594, at 26); Mot. Servodidio Decl. ¶ 26, Ex. Y (DFWS00060314, at DFWS00060329). |
| 23.   Deutsch created a new hip flask design for the Redemption bottle, the Current Redemption Bottle Design, that was different than any other on the market and research showed it was more appealing to customers than the old bottle. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the bottle design was not different from any other on the market because Deutsch copied the Bulleit Trade Dress, and the resulting Redemption bottle design was confusingly similar to the Bulleit Trade Dress. *See* Response No. 12, *supra*. |
| 24.   Diageo and Deutsch have sourced some of their whiskey from the same contract distiller MGP in Indiana, and the Current Redemption Bottle Design's packaging and product is not inferior in quality or in any other way as compared to Bulleit. | **CONTESTED.**<br><br>Diageo presents the counter-finding that Redemption products do not adhere to Diageo's high standards for quality control and have led to the tarnishment of Diageo's name and reputation. *See* Opp. Servodidio Decl. ¶ 32, Ex. 31 (DFWS00069204). |
| 25.   Diageo's documents and research describe consumers of its Bulleit whiskey as sophisticated or experienced drinkers. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the Bulleit and Redemption products are sold at a variety of retail stores and on-premise |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | accounts nationwide, at a relatively inexpensive retail price range of $20 to $40, to a wide range of consumers, including those who are inexperience and unsophisticated. *See* Mot. Servodidio Decl. ¶ 34, Ex. GG (DFWS00080752, at DFWS00080762); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 355:13–19); Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 183:7–184:20).<br><br>Diageo presents the additional counter-finding that its internal research shows that over 60% of the growth of the Bulleit brand in 2015 was from "New Buyers Entering Whiskey," and research indicates that while the separate "Irish Whiskey" and "Scotch" categories attract more loyal shoppers, the bourbon category drives "traffic" and "many shoppers to the aisle." Grow Decl. Ex. 245 (DIAGEO000017439, at 111, 126). |
| 26.   Diageo's research shows that (1) whiskey is not an impulse item because the majority of whiskey shoppers are careful in that they spend from at least two to over five minutes in the whiskey aisle before making a purchase; (2) 54% of whiskey shoppers report more than 10 years of experience drinking whiskey; (3) the majority of consumers consider themselves experts and are not shopping exclusively for whiskey; (4) 64% of customers select their brand even before visiting the store; (5) over a third of consumers (36%) will leave a store if it does not carry their desired brand; and (6) Bulleit drinkers are well educated and don't buy unknown brands to save money. | **CONTESTED.**<br><br>Diageo presents the counter-finding that its internal research shows that over 60% of the growth of the Bulleit brand in 2015 was from "New Buyers Entering Whiskey," and research indicates that while the separate "Irish Whiskey" and "Scotch" categories attract more loyal shoppers, the bourbon category drives "traffic" and "many shoppers to the aisle." Grow Decl. Ex. 245 (DIAGEO000017439, at 111, 126).<br><br>Diageo presents the additional counter-finding that its internal research suggests that a substantial proportion of whiskey consumers overall are not experienced in drinking whiskey and are not looking for a particular brand. *See* Grow Decl. Ex. 245 (DIAGEO000017439, at 60–61, 82).<br><br>Diageo presents the additional counter-finding that the Redemption products are sold through the same channels of trade as Bulleit, at the same relatively inexpensive price point to the same target consumers, and, at Deutsch's |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | request, are often placed directly next to each other on the store shelf.  *See* Mot. Servodidio Decl. ¶ 34, Ex. GG (DFWS00080752, at DFWS00080762–67); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 355:13–19); Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 183:7–184:20); Mot. Servodidio Decl. ¶ 25, Ex. X (DFWS00070594, at 25, 42); Opp. Servodidio Decl. ¶ 38, Ex. 37 (DFWS0005725; DFWS00063277; DFWS60134; DIAGEO000075738); Eisman Decl. ¶ 3, Ex. 2. |
| 27.    Bourbon and rye whiskey products sold using the Bulleit Bottle Design and the Current Redemption Bottle Design are relatively expensive, selling at prices ranging from $18 – $80 and $20 – $70 per 750 mL bottle, respectively. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the primary "base tier" Bulleit and Redemption products are sold at retail at a relatively inexpensive price range of $20 to $40, to a wide range of consumers, including those who are inexperienced and unsophisticated.  *See* Mot. Servodidio Decl. ¶ 34, Ex. GG (DFWS00080752, at DFWS00080762); Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 355:13–19); Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 183:7–184:20). |
| 28.    Deutsch has never used any words resembling Bulleit on its Current Redemption Bottle Design. | **UNCONTESTED.** |
| 29.    All of the Bulleit Bottle Design features that Diageo is seeking to protect are generic in that they are widely used by third parties and each feature serves a cost saving or other functional purpose. | **CONTESTED.**<br><br>*See* Response Nos. 5 & 6, *supra.* |
| 30.    Diageo provided no empirical evidence showing that the generic and functional features of the Bulleit trade dress, even in combination, have ever acquired the high degree of fame required for dilution protection, before or after Deutsch began using its Current Redemption Bottle Design. | **CONTESTED.**<br><br>Diageo presents the counter-finding that as a result of the sales, advertising, and promotion of the Bulleit Trade Dress for more than 20 years, the trade dress has come to be closely associated with the Bulleit brand image and it is one of the most iconic and famous packages on the market. *See* Bello Decl. ¶ 26; Mot. |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Servodidio Decl. ¶ 4, Ex. C (Bello Tr. 385:6–386:19); Bello Decl. ¶¶ 27–35, Exs. 12–18.<br><br>Diageo presents the additional counter-finding that the Bulleit Trade Dress has been the subject of numerous media articles and has received numerous awards. Bello Decl. ¶¶ 36–37, 44 & Ex. 17, at Slide 14; Ex. 18, at DIAGEO000007142-44; Ex. 19; Ex. 22.<br><br>Diageo presents the additional counter-finding that the Bulleit Trade Dress has appeared in numerous popular television shows and movies from 2005 to the present, including the popular frontier-era HBO television show *Deadwood*, several nationally released films, and dozens of network television shows with millions of viewers each. Bello Decl. ¶ 38, Ex. 20.<br><br>Diageo presents the additional counter-finding that the Bulleit Trade Dress is distinctive and well-recognized by consumers. *See* Response Nos. 5, 19, *supra*. |
| 31.     Diageo provided none of the requisite evidence that the design features of the Current Redemption Bottle Design are substantially identical, individually or collectively, to the Bulleit Bottle Design. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the overall appearance of the Current Redemption Bottle Design is confusingly similar to the Bulleit Trade Dress. *See* Response Nos. 12–13, *supra*. |
| 32.     Diageo offered no evidence that Redemption whiskey or its Current Redemption Bottle Design is inferior in any way to Bulleit whiskey and no other evidence that the sale of Redemption products in the Current Redemption Bottle Design has tarnished Diageo's Bulleit Bottle Design or goodwill in any way. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the Current Redemption Bottle Design and the Bulleit Trade Dress are sufficiently similar to support a dilution claim. *See* Response Nos. 12–13, *supra*.<br><br>Diageo presents the additional counter-finding that Redemption products do not adhere to Diageo's high standards for quality control and have led to the tarnishment of Diageo's name |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | and reputation.  *See* Opp. Servodidio Decl. ¶ 32, Ex. 31 (DFWS00069204). |
| 33.  Diageo has offered no evidence that Deutsch portrays its Redemption products at issue in this litigation in an unwholesome or unsavory context. | **UNCONTESTED.** |
| 34.  Diageo has offered no evidence that any attributes of the Current Redemption Bottle Design have ever been associated in the minds of purchasers with Bulleit. | **CONTESTED.** Diageo presents the counter-finding that immediately following the release of the new Redemption design, consumers and commentators noted that the new Redemption design was similar to Bulleit. Opp. Servodidio Decl. ¶ 29, Ex. 28 (DFWS00084034); Opp. Servodidio Decl. ¶ 30, Ex. 29 (DFWS00031574); Opp. Servodidio Decl. ¶ 31, Ex. 30 (Pl.'s Dep. Ex. 105); Opp. Servodidio Decl. ¶ 32, Ex. 31 (DFWS00069204). Diageo presents the additional counter-finding that consumers have already been confused by the similarities between the Current Redemption Bottle Design and the Bulleit Trade Dress.  *See* Bello Decl. ¶ 56, Ex. 26, at ¶¶ 9, 13–17; Mot. Servodidio Decl. ¶ 16, Ex. O (Schuler Tr. 33:5–11). Diageo presents the additional counter-finding that there is a substantial likelihood of confusion between the Current Redemption Bottle Design and the Bulleit Trade Dress.  *See* Poret Decl. Ex. 1 (Poret Report). |
| 35.  Diageo did not allege or offer any evidence of any action by Deutsch that created any danger to the public's health or safety or any risk of misleading consumer. And there is no evidence that the Current Redemption Bottle Design poses a danger or that Diageo has been injured in any way by the Current Redemption Bottle Design. | **CONTESTED.** Diageo presents the counter-finding that Diageo has sustained damages from Deutsch's sale of the confusingly similar Redemption Bottle Design, including lost sales, diminished value of the brand and trade dress, and lost good will.  *See* Bello Dep. Tr. 401–403; Response No. 34, *supra*; Expert Report and Testimony of Bryan Van Uden. |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| 36.      Diageo admitted it has no exclusive rights in any of the following functional elements of the Bulleit Bottle Design: the canteen shape of the bottle, a clear glass bottle, rounded shoulders, embossing on the glass, arched text, parallel border lines on a label, or cork closures. | **CONTESTED.**<br><br>Diageo presents the counter-finding that Diageo owns an incontestable registration for the Bulleit Trade Dress, which includes the overall appearance of a vintage canteen-style bottle, prominent embossed glass lettering with arched text covering a large area above the label, a vintage label with a border design of parallel lines, and a cork enclosure with a black cap.   Bello Decl. ¶¶ 12, 15; Mot. Servodidio Decl. ¶ 22, Ex. U (File Wrapper at 29); Bello Dep. Tr. 92:11–16, 178:13–18, 235:8–14, 380:22–24.<br><br>*See* Response Nos. 5 & 6. |
| 37.      Clear glass is functional because (1) it allows consumers to see the liquid in the bottle, including its color and (2) unlike plastic or metal, it is durable and non-reactive to changes in climate or temperature. | **CONTESTED.**<br><br>Diageo presents the counter-finding that clear glass is not functionally required for a whiskey bottle and that there are whiskey and spirits bottles that do not use clear glass.  *See* Grow Decl. Exs. 68 (Plymouth Gin), 72 (Singleton & Myers's), 114 (Singleton).<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 38.      Oblong or flask bottles with tapered sides are functional because: (1) they have wider faces than round or square bottles, which permits product owners to display their trademarks in larger letters and on a single line; (2) they are easier to transport and can be placed in a pocket without undue bulging; and (3) they take up less packaging space than round bottles, and are less expensive to package. | **CONTESTED.**<br><br>Diageo presents the counter-finding that there are many distilled spirits bottled in round or square bottles, which display trademarks in a single line, and are easily transported.  *See* DFWS00174554 (Jack Daniel's), DIAGEO000078293 (Jim Beam), DIAGEO000078349 (Templeton), DIAGEO000078313 (Maker's Mark), DIAGEO000078341 (Rittenhouse Rye), DIAGEO000078267 (Early Times), DIAGEO000078321 (Old Forester), |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

DIAGEO000078281 (George Dickel), and others.

Diageo presents the additional counter-finding that any given variation of an oblong or flask bottle with tapered sides is not functional and that there are "a million [ ] variations" of different shapes of spirits bottles, including of oblong or flask bottles with tapered sides. *See* Opp. Servodidio Decl. ¶ 2, Ex. 1 (Steffanci Tr. 555:17–21); Mot. Servodidio Decl. ¶ 11, Ex. J (Kremer Tr. 119:3–10); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 260:12–261:13); Mot. Servodidio Decl. ¶ 14, Ex. M (Provini Tr. 319:5–18).

As to whether oblong or flask bottles uniquely facilitate transport, Diageo presents the additional counter-finding that neither the 750ml Bulleit Trade Dress nor the 750ml Redemption Bottle Design can be placed in a pocket at all, let alone without bulging. *See* Compl. Ex. A, ECF No. 1-1; Compl. Ex. E, ECF No. 1-5. Diageo presents the further counter-finding that bartenders and consumers preferred the Original Redemption Packaging "from a usability standpoint" because it had a "great shape" for fitting behind the bar and in stores, and had a "[s]lender neck" that was "easily gripped by all." Opp. Servodidio Decl. ¶ 16, Ex. 15 (DFWS00033732); *see also* Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 87:22–89:11).

Diageo presents the additional counter-finding that the Bulleit bottle shape in particular is not functional, because it is made from a unique and proprietary mold that is more costly than using a stock bottle and because a round bottle—as opposed to the Bulleit canteen shape—is the easiest shape of glass bottle to manufacture in terms of cost and complexity. *See* Mot. Servodidio Decl. ¶ 7, Ex. F (Giuliani Tr. 19:19–20:14, 109:7–24); Mot. Servodidio Decl. ¶ 2, Ex. A (Bulleit Tr. 101:17–102:25); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 424:9–19); Mot. Servodidio Decl. ¶ 21, Ex. T

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | (Sooy Tr. 83:14–85:15, 138:25–140:18); Expert Report and Testimony of Glenn May.<br><br>Diageo further contests this statement in its entirety on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 39.   Other spirits makers have admitted that oblong or oval bottle shapes are functional by disclaiming exclusive rights in the shape in their trademark registrations. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the disclaimer of a particular component of a trademark registration, by an "other spirit maker," does not constitute an admission of functionality.   *See* Expert Report and Testimony of Phil Hampton.<br><br>Diageo contests this statement in its entirety, as whether manufacturers of different spirits with different packaging disclaimed exclusive rights to the shapes of their bottles (and the reasons for such disclaimers) is irrelevant and not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 40.   During Prohibition and pre-Prohibition American history, whiskey was sold in generic medicine type bottles or functional oblong flask shaped bottles with round shoulders, and embossing on clear glass with cork closures. | **CONTESTED.**<br><br>Diageo presents the counter-finding that there are limitless ways to convey a vintage, frontier, historical, or American West appearance without copying the specific elements of the Bulleit Trade Dress in a confusingly similar manner. *See* Opp. Servodidio Decl. ¶ 10, Ex. 9 (DeSarno Tr. 24:14–25:7, 98:11–25); Opp. Servodidio Decl. ¶ 5, Ex. 4 (Thomason Tr. 145:10–20); Opp. Servodidio Decl. ¶ 3, Ex. 2 (Kilgore Tr. 192:18–194:4).<br><br>Deutsch incorporates the counter-findings set forth in Response No. 5, *supra*, regarding functionality. |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Diageo additionally contests this statement in its entirety, as whether whiskey was sold in this manner in the Prohibition and pre-Prohibition era is irrelevant and not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 41.      Research shows that consumers expect and prefer oval flask designs for whiskey and spirits because of their masculine shape and association with the pre-Prohibition era and Old West in America. | **CONTESTED.**<br><br>Diageo presents the counter-finding that consumers do not exclusively expect or prefer oval flask designs for whiskey and spirits, as exhibited by the fact that other leading American whiskey brands do not use oval flask designs for their bottles.  *See* DFWS00174554 (Jack Daniel's), DIAGEO000078293 (Jim Beam), DIAGEO000078313 (Maker's Mark), DIAGEO000078285 (High West), DIAGEO000078349 (Templeton), DIAGEO000078341 (Rittenhouse Rye), and others.<br><br>Diageo incorporates the counter-findings set forth in Response No. 4, *supra*, regarding the wide variety of shapes and designs within the "oval" and "flask" category.<br><br>Deutsch incorporates the counter-findings set forth in Response Nos. 5 & 6, *supra*, regarding the fact that Deutsch's research showed that consumers prefer Bulleit's packaging and Bulleit's packaging has shaped perceptions for whiskey and whiskey packaging.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 42.      Rounded shoulders are functional because: (1) they are resistant to breakage from the impact and vertical load | **CONTESTED.** |

26

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| associated with bottle filling, sealing, and storage processes; (2) they cost less to make than square shouldered bottles; and (3) they facilitate pouring. | Diageo presents the counter-finding that bottles with rounded shoulders can take many different shapes. *See* Mot. Servodidio Decl. ¶ 21, Ex. T (Sooy Tr. 129:13–25, 189:5–22, 233:22–234:6). |
| | Diageo presents the additional counter-finding that there are "many, many" different kinds of rounded shoulders and no functional advantages to any particular type of rounded shoulders, including those of the Bulleit Trade Dress. *See* Mot. Servodidio Decl. ¶ 21, Ex. T (Sooy Tr. 232:15–234:6); May Decl. ¶ 3, Ex. 1 (May Report at 4–6). |
| | Diageo presents the additional counter-finding that the custom canteen-style tapered shape with muscular shoulders in the Bulleit Trade Dress adds costs and complexities from a manufacturing perspective. *See* Mot. Servodidio Decl. ¶ 7, Ex. F (Giuliani Tr. 19:19–20:14, 109:7–24); Servodidio Decl. ¶ 2, Ex. A (Bulleit Tr. 101:17–102:25); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 424:9–19); May Decl. ¶ 3, Ex. 1 (May Report at 8); Mot. Servodidio Decl. ¶ 21, Ex. T (Sooy Tr. 150:15–151:4). |
| | Diageo presents the additional counter-finding that the Original Redemption Bottle design was more functional for bartenders, and the new Redemption bottle, similar to Bulleit, had functional disadvantages in terms of storage and ease of pouring. *See* Opp. Servodidio Decl. ¶ 33, Ex. 32 (DFWS00071630). |
| | Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 43.    Embossing the brand name above the label on bottles is functional because | **CONTESTED.** |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| it allows consumers to see the brand name first and identifies source when labels are removed. | Diageo presents the counter-finding that embossing is not functional because other mechanisms, such as labeling, similarly allow consumers to "see [a] brand name first." *See* DFWS00174554 (Jack Daniel's), DIAGEO000078313 (Maker's Mark), DIAGEO000078305 (Knob Creek), DIAGEO000078273 (Evan Williams), DIAGEO000078329 (Old Overholt), DIAGEO000078321 (Old Forester), DIAGEO000078293 (Jim Beam), and others. |
| | Diageo presents the additional counter-finding that embossing is not functional because it does not serve as a substitute or replacement for a label. *See* Bello Decl. ¶ 39; Mot. Servodidio Decl. ¶ 9, Ex. H (Kilgore Tr. 370:24–371:25); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 324:16–326:7); Mot. Servodidio Decl. ¶ 14, Ex. M (Provini Tr. 112:14–19); Opp Servodidio Decl. ¶ 6, Ex. 5 (Provini Tr. 323:25–324:20). |
| | Diageo presents the additional counter-finding that there are numerous variants on embossing designs for whiskey bottles. *See* Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 241:24–242:2); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 318:14–320:19). |
| | Diageo presents the additional counter-finding that the particular embossing design used on the Bulleit Bottle has manufacturing complexities that make it more difficult to produce. *See* Mot. Servodidio Decl. ¶ 7, Ex. F (Giuliani Tr. 108:5–25). |
| | Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 44.    Embossing functions in an aesthetic way because it adds quality cues to a | **CONTESTED.** |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| bottle design by enhancing the perception in terms of a premium appearance. | Diageo presents the counter-finding that any particular variant of embossing is not functional because there are numerous variants on embossing designs for whiskey bottles. *See* Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 241:24–242:2); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 318:14–320:19).<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 45.    Arched or curved text is functional because it allows the use of larger letters in a mark within a particular width as opposed to marks displayed straight or horizontally. | **CONTESTED.**<br><br>Diageo presents the counter-finding that many, many brands do not rely on arched or curved text.  *See* DIAGEO000078349 (Templeton), DIAGEO000078285 (High West), DIAGEO000078329 (Old Overholt), DIAGEO000078313 (Maker's Mark), DIAGEO000078257 (Buffalo Trace), DIAGEO000078341 (Rittenhouse Rye), DIAGEO000078305 (Knob Creek), DIAGEO000078355 (Wild Turkey), DIAGEO000078273 (Evan Williams), DIAGEO000078321 (Old Forester), and others.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 46.    Arched or curved text is aesthetically functional and is a preferred design format because it can match the curvature of the rounded shoulders. | **CONTESTED.**<br><br>Diageo incorporates the counter-finding set forth in Response No. 45, *supra*.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 47.    Text dividers are ornamentally or aesthetically functional as they serve to separate and highlight brand names or elements of text or labels. | **CONTESTED.**<br><br>Diageo presents the counter-finding that many, many brands do not use text dividers on their bottle packaging.  *See* DIAGEO000078349 (Templeton), DIAGEO000078285 (High West), DIAGEO000078329 (Old Overholt), DIAGEO000078313 (Maker's Mark), DIAGEO000078265 (Dad's Hat), DIAGEO000078305 (Knob Creek), DIAGEO000078355 (Wild Turkey), DIAGEO000078273 (Evan Williams), DIAGEO000078281 (George Dickel), and others.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 48.    Outlining around a label functions as a means of (1) framing and directing consumer's attention to the brand name and other label wording and (2) because it is common in the spirits industry. | **CONTESTED.**<br><br>Diageo presents the counter-finding that many, many whiskey brands do not use parallel borders as outlines for their label. *See* DIAGEO000078349 (Templeton), DIAGEO000078285 (High West), DIAGEO000078313 (Marker's Mark), DIAGEO000078257 (Buffalo Trace), DIAGEO000078341 (Rittenhouse), DIAGEO000078343 (Russell's), DIAGEO000078265 (Dad's Hat), DIAGEO000078305 (Knob Creek), DIAGEO000078355 (Wild Turkey), DIAGEO000078247 (Booker's), DIAGEO000078273 (Evan Williams), DIAGEO000078267 (Early Times), |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

|  |  |
|---|---|
|  | DIAGEO000078293 (Jim Beam), DIAGEO000078245 (Blanton's), and others.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 49.    The border around the Bulleit Bottle Design label is aesthetically functional because it suggests a historical period and resembles an old piece of metal type. The outer border of the Bulleit Bottle Design's label was copied from an old typographic reference book. | **CONTESTED.**<br><br>Diageo presents the counter-finding that Sandstrom found the specific "type" for the "outer border" in a "typographic reference book" and used it as inspiration to create the overall design of the border. *See* Grow Decl. Ex. 207 (Sandstrom Dep. Tr. at 149:12–150:19).<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 50.    Black caps are aesthetically functional because they indicate quality. | **CONTESTED.**<br><br>Diageo presents the counter-finding that black caps are not functional and that there are many different colors, designs, and shades that can be and are used for bottle closures. *See* DIAGEO000081018 (Plymouth Gin), DIAGEO000078313 (Maker's Mark), DIAGEO000078285 (High West), DIAGEO000078245 (Blanton's), DIAGEO000078281 (George Dickel), DIAGEO000078283 (Heaven Hill), and others.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

|  |  |
|---|---|
|  | sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 51.    Black on caps is functional because it is one of only a few basic colors available for use on cork closures. | **CONTESTED.**<br><br>Diageo presents the counter-finding that black caps and cork closures are not functional and that there are many different colors and shades that can be and are used for bottle closures. *See* Response No. 50, *supra*.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 52.    A cork closure is functional because (1) it has fewer manufacturing problems than screw caps, which can have leaking problems, as it does not require corresponding finish threads on the bottle neck; (2) it expands when wet; (3) it does not risk metal corrosion from the alcohol; and (4) it permits the alcohol to breathe. | **CONTESTED.**<br><br>Diageo presents the counter-finding that a cork closure is not functional because there are many different ways in which to style the closure of a whiskey bottle, including many different types of cork closures and screw caps. *See* Mot. Servodidio Decl. ¶ 7, Ex. F (Giuliani Tr. 25:18–20).<br><br>Diageo presents the additional counter-finding that a cork closure is not functional because it adds complexities and inefficiencies to the manufacturing process, and adds costs.  *See* Mot. Servodidio Decl. ¶ 7, Ex. F (Giuliani Tr. 25:15–26:15, 26:18–27:4); Mot. Servodidio Decl. ¶ 14, Ex. M (Provini Tr. 174:6–24); Mot. Servodidio Decl. ¶ 13, Ex. L (Thomason Tr. 282:18–283:4); Mot. Servodidio Decl. ¶ 8, Ex. G (Steffanci Tr. 546:6–10).<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | favor, as required by the court's individual practices. |
| 53.      A cork closures is aesthetically functional because it is a quality indicator. Screw caps are considered to be cheap, non-premium, and low-end; consumers do not see them as artisanal, handcrafted, or small batch, which consumers prefer. | **CONTESTED.**<br><br>Diageo incorporates the counter-findings set forth in Response No. 52, *supra*.<br><br>Diageo further contests this statement on the grounds that it is irrelevant to whether the Bulleit Trade Dress, taken as a whole, is functional, and that it is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 54.      When Diageo's in-house trademark attorney, signed the application for the Bulleit Bottle Design mark, he made the material false statement stated under oath that to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the statement was not false because no other person, firm, corporation, or association has the right to use the Bulleit Trade Dress in commerce or had that right at the time Diageo submitted the Bulleit Bottle Design mark application. *See* Response Nos. 5 & 6, *supra*.<br><br>Diageo presents the additional counter-finding that Elliot Basner, Diageo's Senior Counsel for Intellectual Property at the time, believed when signing the application that Diageo had the right to claim exclusive rights to the Bulleit Trade Dress. *See* Mot. Servodidio Decl. ¶ 5, Ex. D (Basner Tr. 151:14–152:5).<br><br>Diageo presents the additional counter-finding that after searching the records of the Trademark Office for any similar bottle designs, the PTO Examining Attorney noted that he "found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d)," which precludes registration where there are other registrations or applications that are confusing similar to the proposed application.  Mot. Servodidio Decl. ¶ 22, Ex. U (File Wrapper at p. 48). |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| 55.   After the USPTO examiner sent an office action to Diageo for the application for the '812 Registration requiring Diageo to disclaim the Bulleit Bottle Design shape by drawing in dotted lines, Diageo's outside lawyer responded by having Diageo disclaim exclusive rights in only the generic and functional neck and cap while simultaneously making the material false statement that the "bottle shape is unique and distinctive in the beverage alcohol industry. The bottle shape is readily identifiable and distinguishable from all others in the industry, and accordingly stands out as such on a store shelf or behind a bar even apart from the embossed wording and design elements. The design evokes an 1800s medicine bottle, and accordingly is inherently distinctive in the present context." | **CONTESTED.**<br><br>Diageo presents the counter-finding that its outside counsel believed that the Bulleit Trade Dress was unique at the time.  *See* Servodidio Decl. ¶ 6, Ex. E (Henley Tr. 167:3–8).<br><br>Diageo presents the additional counter-finding that Diageo's outside counsel was unaware at the time of the statement of any stock bottles or other spirits bottles that they believed resembled the Bulleit Trade Dress.  *See* Servodidio Decl. ¶ 6, Ex. E (Henley Tr. 42:13–43:1,  95:1–96:17,  119:8–120:13,  158:6–9, 166:8–167:8).<br><br>Diageo further contests the statement because the legal argument of outside counsel as to what constitutes a "unique and distinctive" bottle shape is irrelevant to whether Diageo committed fraud on the USPTO, and the stated fact is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 56.   Diageo had actual knowledge that its statement about the alleged uniqueness of the oblong oval Bulleit Bottle Design shape was false because (1) it knew of stock bottles and other spirits bottles that had the same oblong oval shape; (2) it described the Bulleit Bottle Design in generic terms including oblong, canteen-shaped, and as a medicine bottle design; (3) in January 2000, Diageo applied to register the same Bulleit Bottle Design in Canada and admitted that the shape was functional and generic by displaying it in dotted lines and by admitting that the particular three dimensional bottle shown in the drawing does not form part of the trademark; (4) in 2002, after Diageo acquired the Bulleit brand, Diageo's lawyers conducted a trademark search for bottle designs, which showed many prior applications and registrations for marks containing oblong oval shapes very similar to Bulleit with rights in those shapes disclaimed; and (5)     in | **CONTESTED.**<br><br>Diageo presents the counter-finding that all contemporaneous evidence in 2004 and 2005, including Diageo's internal presentations, sales sheets, and marketing materials touted the Bulleit trade dress, including its shape, as unique in the spirits market.  Bello Decl. ¶¶ 18–19, Ex. 7; Bello Decl. ¶ 20, Ex. 8; Bello Decl. ¶ 21, Ex. 9.<br><br>Diageo presents the additional counter-finding that at the time the relevant statements were made to the USPTO, Diageo's representatives believed that the Bulleit Trade Dress, including its shape, were unique.  *See* Bello Decl. ¶¶ 18–21, Exs. 7–9; evidence cited in Response Nos. 54–55, *supra*.<br><br>Diageo presents the additional counter-finding that Diageo's outside counsel stated to the PTO that the Bulleit bottle's shape is an |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| November 2003, Diageo's outside counsel began working on trademark applications for spirits products, all of which were marketed in oblong flask bottle shapes. | "inherently distinctive component" of the overall mark, that the shape is "unique and distinctive in the beverage alcohol industry" and thus stands out on a liquor store shelf or bark, and that the "design evokes an 1800s medicine bottle, and accordingly is inherently distinctive in the present context." Diageo's outside counsel also noted that the Bulleit Trade Dress had won design awards at that time, and attached articles that referenced the old-fashioned design of the Bulleit packaging and the design awards it had won. Mot. Servodidio Decl. ¶ 22, Ex. U (File Wrapper at pp. 40–41, 43–45).<br><br>Diageo presents the additional counter-finding that Basner and Diageo's outside counsel, who made the relevant statements to the USPTO, were unaware at the time of the application of any stock bottles or other spirits bottles that they believed resembled the Bulleit Trade Dress. *See* Mot. Servodidio Decl. ¶ 5, Ex. D (Basner Tr. 19:6–15, 28:14–29:18, 92:22–94:2, 151:14–152:5, 163:18–165:21, 181:21–182:3, 186:13–23); Mot. Servodidio Decl. ¶ 6, Ex. E (Henley Tr. 42:13–43:1, 95:1–96:17, 158:6–9, 119:8–120:13, 166:3–8); *see also* Opp. Servodidio Decl. ¶ 4, Ex. 3 (McCarthy Tr. 61:2–13. |
| 57.    Diageo's outside counsel made the material false statements regarding the Bulleit Bottle Design shape, with the goal of obtaining a registration despite knowing the statements were false, in response to an Office Action from the PTO refusing registration of the '812 Registration application unless Diageo disclaimed exclusive rights in the bottle shape. | **CONTESTED.**<br><br>Diageo incorporates its counter-findings set forth in Response No. 56, *supra.* |
| 58.    After reviewing the material false statements made by Diageo regarding the alleged distinctiveness of the bottle shape, the PTO withdrew the refusal to register, published the application for the '812 Registration for opposition on January 10, | **PARTIALLY CONTESTED.**<br><br>Uncontested that the USPTO reviewed Diageo's trademark application, published the application for the '812 Registration for |

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| 2006, and issued Registration No. 3,075,812 on April 4, 2006. | opposition on January 10, 2006, and issued Registration No. 3,075,812 on April 4, 2006.<br><br>Contested with respect to the statement that Diageo made material false statements regarding the distinctiveness of the bottle shape. *See* Response Nos. 55–57, *supra*. |
| 59.    The USPTO Examiner stated that it would not register the Bulleit Bottle Design trademark shown in the application for the '812 Registration unless the bottle shape was disclaimed in dotted lines because the bottle shape was not unique, and it would have maintained the refusal but for the material false statements made by Diageo. | **CONTESTED.**<br><br>Diageo presents the counter-finding that the Examining Attorney issued an Office Action, which is an initial response that may be overcome by argument by the applicant, and that the Examining Attorney agreed with Diageo's argument that the Bulleit Trade Dress was distinctive.    *See* Expert Report and Testimony of Phil Hampton.<br><br>Diageo incorporates the counter-findings in Response Nos. 55–57, *supra*. |
| 60.    The USPTO has rejected multiple applications for similarly shaped bottles on the grounds that they are non-distinctive or functional and required the applicants to disclaim the bottle shapes in order for their marks to be registered. | **CONTESTED**<br><br>Diageo presents the counter-finding that the PTO has granted numerous applications for bottle shapes without requiring the applicants to disclaim the bottle shapes. DIAGEO000081608; Krugman Dep. Tr. 216:16–25; Expert Report and Testimony of Phil Hampton.<br><br>Diageo contests the statement because the extent to which different products may have been deemed non-distinctive or functional by the USPTO is irrelevant to whether Diageo committed fraud on the USPTO, and the stated fact is not part of a set of facts sufficient to sustain a judgment in Deutsch's favor, as required by the court's individual practices. |
| 61.    Diageo has acknowledged the wide spread use of bottles having the same features it seeks to protect in this case. | **CONTESTED**<br><br>Diageo presents the additional counter-finding that, other than Redemption, no spirits brand in use in the market has the same combination of features that make up the Bulleit Trade |

36

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

| | |
|---|---|
| | Dress such that it has a similar overall appearance to the Bulleit Trade Dress. *See* Evidence cited in Response Nos. 5 & 6, *supra*.<br><br>Diageo presents the additional counter-finding that many of the spirits brands raised by Deutsch in the asserted fact are outside the American whiskey category, and thus are not in competition with Bulleit and are irrelevant to the distinctiveness of the Bulleit Trade Dress. *See* Evidence cited in Response No. 6, *supra*. |
| 62.      Diageo has openly acquiesced in the continued use of its Bulleit Bottle Design features by the owners of the Dr. McGillicuddy, Manatawny, and other marks which used similar functional oblong flask shaped bottles and other features claimed by Diageo as part of the Bulleit trade dress design. | **CONTESTED.**<br><br>Diageo incorporates the counter-findings set forth in Response Nos. 6–9, *supra*. |
| 63.      Diageo has actual knowledge of relevant third party bottles because it has hired many of its employees and outside research consultants to conduct marketplace surveillance. | **CONTESTED.**<br><br>Diageo incorporates the counter-findings set forth in Response Nos. 6, 7, 8, and 61, *supra*. |