# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

DIAGEO NORTH AMERICA, INC.,

       Plaintiff,

v.

W.J. DEUTSCH & SONS LTD. d/b/a
DEUTSCH FAMILY WINE & SPIRITS, and
BARDSTOWN BARREL SELECTIONS LLC,

       Defendants.

Case No. 1:17-cv-04259-LLS

# MEMORANDUM OF LAW IN OPPOSITION TO DEUTSCH'S MOTION TO EXCLUDE THE TESTIMONY OF BRYAN VAN UDEN

Susan J. Kohlmann
Gianni P. Servodidio
Jacob D. Alderdice
Allison N. Douglis
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, NY 10022
Phone 212-891-1600
Fax   212-891-1699

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.     Diageo's Damages Claims ....................................................................... 3

    B.     Deutsch's Failure to Substantiate its Claimed Costs ............................... 3

    C.     Expert Discovery Schedule ...................................................................... 4

    D.     Van Uden's Report. ................................................................................. 5

          1.     Relevant Background and Deutsch's Infringing Revenue ......................... 5

          2.     Deutsch's Costs ........................................................................ 6

    E.     Reilly's Rebuttal Report .......................................................................... 6

    F.     Van Uden's Deposition Testimony and Further Opinions ..................... 8

ARGUMENT ........................................................................................................................ 9

    I.    Van Uden Is Qualified, and Provides Relevant and Reliable Testimony Based on Accepted Principles. ........................................................................................... 10

    II.    Van Uden May Testify about the Criticisms of His Own Opinion ................................ 13

    III.   Deutsch Cannot Relitigate Its Failed "Actual Damages" Challenge. ............................. 15

    IV.   Deutsch's Other Arguments Regarding a Factual Narrative and Legal Conclusions Are Meritless. ................................................................................................. 16

CONCLUSION ..................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)......................................................................................10

*AU New Haven, LLC v. YKK Corp.*,
   2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019) ...........................................................11

*Cary Oil Co. v. MG Refin. & Mktg., Inc.*,
   2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003)............................................................13

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*,
   2018 WL 4253181 (S.D.N.Y. Sept. 5, 2018).............................................................15

*Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*,
   855 F.3d 163 (3d Cir. 2017).......................................................................................11

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
   2020 WL 5366319 (N.D. Cal. Sept. 8, 2020) ...........................................................10

*Fendi Adele S.r.l. v. Burlington Coat Factory Warehouse Corp.*,
   2010 WL 11586698 (S.D.N.Y. Aug. 9, 2010)...........................................................11

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020)............................................................17

*George Basch Co. v. Blue Coral, Inc.*,
   968 F.2d 1532 (2d Cir. 1992).....................................................................................15

*GlobeRanger Corp. v. Software AG USA, Inc.*,
   2015 WL 3648577 (N.D. Tex. June 11, 2015) ..........................................................10

*Harkabi v. SanDisk Corp.*,
   2012 WL 2574717 (S.D.N.Y. June 20, 2012) ...........................................................13

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013).........................................................................................16

*Lakah v. UBS AG*,
   2016 WL 10839568 (S.D.N.Y. Jan. 20, 2016) .........................................................12

*Lutes v. Kawasaki Motors Corp., USA*,
   2015 WL 1395898 (D. Conn. Mar. 25, 2015) ..........................................................14

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
    885 F.2d 1 (2d Cir. 1989)..................................................................................11

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)..............................................................................17

*Middle Market Fin. Corp. v. D'Orazio*,
    2002 WL 31108260 (S.D.N.Y. Sept. 23, 2002)..............................................12

*Monroe-Trice v. Unum Employee Short-Term Disability Plan*,
    2003 WL 68033 (S.D.N.Y. Jan. 8, 2003) ........................................................14

*Polo Fashions, Inc. v. Extra Special Prods., Inc.*,
    1980 WL 30287 (S.D.N.Y. Mar. 5, 1980) .......................................................16

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
    988 F. Supp. 2d 395 (S.D.N.Y. 2013)..............................................................17

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
    2015 WL 3916271 (S.D.N.Y. June 25, 2015) ...........................................11, 13

*Shea v. Long Island R.R. Co.*,
    No. 05 CIV. 9768 (LLS), 2009 WL 1424115 (S.D.N.Y. May 21, 2009)...........9, 10

*Snyder v. Wells Fargo Bank, N.A.*,
    594 F. App'x 710 (2d Cir. 2014) ......................................................................18

*Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*,
    630 F. Supp. 2d 255 (E.D.N.Y. 2008) ..............................................................16

*Williams Consolidated I, Ltd. v. Smith*,
    2009 WL 10698215 (S.D. Tex. Oct. 19, 2009)...........................................17, 18

**Statutes**

15 U.S.C. § 1117..................................................................................................10, 12

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)........................................................................................13, 14

Fed. R. Civ. P. 37(c)(1)............................................................................................13

Local Civil Rule 6.3..................................................................................................16

McCarthy on Trademarks & Unfair Competition (5th ed. 2020) ...................................14

## INTRODUCTION

Plaintiff Diageo North America, Inc. ("Diageo") opposes this motion ("Deutsch Mot.") by Defendants Deutsch Family Wine & Spirits and Bardstown Barrel Selections LLC (collectively, "Deutsch") to exclude Bryan Van Uden from testifying as an expert witness with respect to the amount of damages to which Diageo is entitled from Deutsch.  Van Uden's expert opinions on damages—specifically on the amount of Deutsch's ill-gotten profits from the sale of its infringing products that should be disgorged—are of the type routinely accepted in trademark actions.  Van Uden is highly qualified to offer these opinions, as he has been qualified as an expert on damages in numerous cases; his opinion on the amount of damages is undisputedly relevant to this action; and he reached his opinions based on regularly accepted principles for calculating damages.

Deutsch first argues that Van Uden's damages opinion should be excluded wholesale merely because Deutsch disagrees with his determination that Deutsch failed to substantiate certain claimed costs.  But it is *Deutsch's* burden to prove its deductible costs, and it failed to do so. Deutsch has never produced any of its underlying accounting records; it provided a prepared-for-litigation summary of alleged additional costs after the close of discovery in order to prevent Diageo from questioning its corporate representative on this very topic.  Deutsch also wrongly asserted attorney work product objections during the deposition of its rebuttal damages expert, Robert Reilly, in another effort to prevent Diageo from understanding factual information about Deutsch's claimed costs and profits.  And Deutsch identified new witnesses with knowledge of alleged deductions after the close of discovery.  Deutsch's attempt to exclude Diageo's damages expert from opining on disgorgement of profits is a brazen attempt to exploit its litigation misconduct and provides no colorable basis for exclusion.

1

Second, Deutsch seeks to prevent Van Uden from testifying in response to Deutsch's rebuttal damages expert Reilly, because Van Uden did not set forth those criticisms in a reply report.  However, the parties' expert discovery schedule, endorsed by the Court, did not permit experts to serve reply reports and contemplated that all expert opinions would be addressed during deposition discovery.  Deutsch deposed Van Uden and had every opportunity to question him about all his opinions in this case.  Under established precedent, Van Uden may respond to criticisms of his opinions made by Deutsch's rebuttal expert, as this testimony falls within the same subject matter of his opening report.  The Court can and should address the proper scope of expert testimony based on an actual record at trial, not through an improper *Daubert* challenge.

Third, Deutsch improperly seeks to relitigate its meritless argument that Diageo is not entitled to a jury trial because Deutsch claims Diageo is not seeking actual damages in this action, though it is.  However, the Court expressly considered and rejected this argument over three months ago.  The time for reconsideration of that decision has passed and the Court should once again reject Deutsch's efforts to relitigate a claim that it had found to be lacking in any merit.

Deutsch's other half-hearted arguments are baseless.  Deutsch argues that Van Uden cannot set forth a "factual narrative," but Diageo will not be calling him to introduce the evidence cited in his report, and he is entitled to refer to those facts where they are relevant to his opinions on damages.  And Deutsch argues that Van Uden cannot testify to "legal conclusions," but, unlike several Deutsch experts, Van Uden does not offer any legal conclusions.  At most, he describes the basis for an award of disgorgement of Deutsch's profits as damages, as background for opining on those damages.  This is plainly uncontroversial ground for a damages expert.

Ultimately, Deutsch has identified no flaws in Van Uden's methodology at all—let alone any flaws so severe as to warrant exclusion of his testimony.  Deutsch's motion should be denied.

## BACKGROUND

### A.    Diageo's Damages Claims

Since the inception of this action, Diageo has pled and preserved a number of damages claims against Deutsch.  In its Complaint, Diageo seeks all damages sustained "as a result of Defendants' infringement and dilution of Diageo's Bulleit Design Mark and Trade Dress and their deceptive acts," and requests disgorgement of profits and trebled damages for Deutsch's bad-faith infringement.  Compl., ECF No. 1, at 20 ¶¶ 4–5.

As the Court recently held in affirming Diageo's right to a jury trial, Diageo has preserved these claims throughout the case and it has produced documents and witness testimony supporting its damages, including evidence on Diageo's sales, the directly competitive nature of the products, and actual confusion.  *See* Mem. Endorsement, ECF No. 199.

### B.    Deutsch's Failure to Substantiate its Claimed Costs

In order to establish its right to recover Deutsch's profits, Diageo timely served discovery requests seeking documents reflecting Deutsch's "profits from sales of the Accused Products," from the date of first use in commerce to the present.  *See* Decl. of Gianni P. Servodidio in Supp. of Diageo's Opp. to Mot. to Exclude Testimony of Bryan Van Uden ("Servodidio Decl.") Ex. 1 (Pl.'s First Set of Doc. Requests) ¶ 25.  In response, Deutsch produced only one, narrow spreadsheet in support of its costs and revenues.  *See* Decl. of Michael Grow ("Grow Decl.") Ex. 10, ECF No. 223-10 (DFWS00140401).  Deutsch's 30(b)(6) witness, Tom Steffanci, testified that the spreadsheet was prepared for this litigation, and that Deutsch prepares more detailed profit-and-loss, or "P&L," data for the brand in its ordinary course of business.  Servodidio Decl. Ex. 2 (Transcript of Deposition of Thomas Steffanci) ("Steffanci Tr.") 525:2–25, 526:24–528:20.  Immediately following the deposition, Diageo requested the more detailed P&L documents kept

3

in Deutsch's ordinary course of business.  *See* Servodidio Decl. Ex. 3 (Nov. 27, 2018 email from Jacob D. Alderdice to Michael A. Grow).

Deutsch did not produce those documents, or any other documents kept in the ordinary course of business, to support its claimed costs.  Instead, after the close of party discovery, Deutsch produced additional created-for-litigation spreadsheets listing millions of dollars in new costs.  *See* Grow Decl. Ex. 12 (DFWS00155433).  Deutsch also disclosed new fact witnesses, including senior Deutsch employees whom Deutsch identified, for the first time, as individuals whom Deutsch was planning to call regarding Deutsch's revenue, profits and losses, and expenses.  *See* Servodidio Decl. Ex. 4 (Defs.'/Countercl. Pls.' Am. Initial Disclosures) at 4.

### C.   Expert Discovery Schedule

On December 20, 2018, the parties stipulated to and the Court so ordered a schedule for the exchange of expert reports in this case: the parties would serve expert disclosures and opening expert reports by February 15, 2019, the parties would serve rebuttal expert reports by March 22, 2019, and the parties would complete expert discovery and depositions by April 25, 2019. Stipulation & Scheduling Order for Remaining Dates, ECF No. 58.  The parties subsequently extended these deadlines, but at all times the schedule contemplated that no reply reports would be exchanged, and that all depositions would take place following the exchange of rebuttal reports. Accordingly, the parties understood and agreed that any opinions that an opening expert formed about criticisms of their own opinions set forth in the rebuttal reports could be explored in their deposition.

4

D.      **Van Uden's Report**

On March 1, 2019, Diageo disclosed Bryan Van Uden as an expert on monetary remedies. *See* Servodidio Decl. Ex. 5 (Expert Report of Bryan M. Van Uden) ("Van Uden Report"), ¶ 4.[1] Van Uden is a Certified Licensing Professional and Master Analyst in Financial Forensics whose additional qualifications include, among other things, twenty years of experience providing financial consulting expertise in valuations, dispute analysis, and other business strategies.  Van Uden Report, Attachment 1.

As shown in his report, Van Uden reviewed the evidence in the case and conducted an analysis of Deutsch's infringing revenues and the appropriate costs that that should be deducted. He then arrived at the opinion that Deutsch's profits subject to disgorgement were approximately $12.9 million through March 2019.  *Id.* ¶ 8.  Van Uden will update his report to reflect ongoing sales of infringing products to date.  *Id.* ¶ 8 n.4.

1.      *Relevant Background and Deutsch's Infringing Revenue*

In his report, Van Uden included a background section on Diageo's entitlement to damages. *Id.* ¶ 16; *see id.* ¶¶ 17–49.  With citations to record evidence throughout, this background section included facts describing Deutsch's infringement that bore relevance to damages, including that Deutsch targeted Bulleit after its acquisition of Redemption, seeking, among other things, to have Redemption placed next to Bulleit on retail stores shelves, *id.* ¶¶ 29–31; that Redemption's sales performance was initially disappointing, and Deutsch employees attributed the slow sales to its original packaging, *id.* ¶¶ 32–39; and that Deutsch re-designed its packaging to look more like the

---

[1] Although Deutsch submitted the Van Uden Report in its motion to exclude his testimony, Deutsch did not include its attachments and exhibits.  Accordingly, Diageo includes the report and its exhibits in full, as Exhibit 5 to the Servodidio Declaration.

Bulleit Trade Dress, *id.* ¶¶ 40–44.  Van Uden noted that immediately after Deutsch released its infringing packaging, its average monthly sales sharply increased.  *Id.* ¶ 45.

Van Uden next assessed the financial records produced by Deutsch.  *Id.* ¶ 52.  Van Uden noted that the only financial records produced by Deutsch in discovery were a small number of spreadsheets which were not "the types of records that are maintained in the ordinary course of business."  *Id.*  Van Uden found that from November 2016, when Deutsch began selling the infringing packaging, through its estimated revenues of March 2019, Deutsch generated revenues of $27.3 million from the sale of the infringing Redemption products.  *Id.* ¶ 53.

2.     *Deutsch's Costs*

Van Uden next turned to the amount of costs which he opined should be deducted from Deutsch's revenues, in order to arrive at infringing profits.  Van Uden noted that it is Deutsch's burden to "prove all elements of cost or deduction claimed" attributable to the infringing products. *Id.* ¶¶ 51, 54.  Nonetheless, Van Uden analyzed the spreadsheets of alleged costs that Deutsch prepared for this litigation and produced after the close of discovery and allowed for a deduction for the cost of goods sold.  *Id.* ¶ 55.  However, for the other costs listed in the spreadsheet, such as various line items of alleged marketing expenses, Van Uden found that it was "unclear if some of the produced marketing expenses are allocations or fixed expenses which may not be solely attributable to the Redemption branded products."  *Id.*  Lacking any clarification from Deutsch as to the necessary connection between the other costs and the infringing Redemption products, Van Uden concluded that he could not deduct those costs.  *Id.*

E.     **Reilly's Rebuttal Report**

On April 12, 2019, Deutsch disclosed its rebuttal expert Robert Reilly, who provided three baseless critiques of Van Uden's report and advocated for an outcome where Deutsch earned

virtually no profits despite generating over $27 million in infringing revenues.  *See generally* Servodidio Decl. Ex. 6 (Rebuttal Report of Robert F. Reilly) ("Reilly Report").

First, Reilly concluded that if Deutsch had not re-designed the Redemption packaging, it still would have sold $15.1 million of Redemption-branded products in the original packaging during the same time period.  *Id.* ¶ 32.  Reilly reached this number by arbitrarily selecting other monthly sales growth rates, such as from sales of the infringing product, and applying them forward to the hypothetical sales of the original packaging during the infringing period.  *Id.* ¶ 48.[2] Reilly then subtracted this artificially inflated "but for" revenue number from Deutsch's actual infringing revenues of $27.3 million, arriving at $12.2 million in infringing revenue.  *Id.* ¶ 52.

Second, Reilly deducted millions of dollars in costs that Deutsch claimed in its belatedly-produced and litigation-generated spreadsheets.  *See id.* ¶ 57; *id.* Ex. 3 (exhibit relying entirely on the costs listed in DFWS00155433).  Reilly deducted all costs listed in the spreadsheet without any other support, such as the full cost of the salaries of numerous Deutsch employees, arrived at an implausibly low profit margin of 3.9 percent, and reduced the remaining $12.2 million in infringing revenue to arrive at $471,000 in infringing profits.  Reilly Report ¶¶ 67–70.  As his "due diligence" for relying on these costs, Reilly simply held two or three telephone calls in which Deutsch personnel informed him the costs were accurate, and then deducted all costs from Deutsch's infringing revenues.  *Id.* ¶ 57; Servodidio Decl. Ex. 7 (Transcript of Deposition of Robert F. Reilly) ("Reilly Tr.") 235:16–236:21.

---

[2] For example, Reilly relied for his projections on the initial growth rate of Redemption right after its acquisition (despite the fact that Deutsch acquired it as a very small brand and began increasing distribution, rendering this growth rate unrepresentative of the continued sales prospects), and the growth rate of the infringing products (despite Deutsch personnel acknowledging the infringing packaging performed far better than the original packaging).  Reilly Report ¶ 48.

At his deposition, Reilly testified that he did not review any underlying documents to support those costs, and Deutsch improperly instructed Reilly not to answer when asked about the content of those calls, despite the fact that he relied on those few calls as the entirety of his due diligence in verifying Deutsch's created-for-litigation spreadsheet.  Reilly Tr. 67:4–68:3.  Reilly reviewed no actual cost evidence for any of the deductions, but instead simply "deducted what was on [the spreadsheet], period, full stop."  *Id.* 251:11–17.[3]  Thus, although Reilly testified that best practices required relying on "contemporaneous documents" that are "prepared in the normal course of business," his own review failed to adhere to those processes.  *Id.* 33:2–20, 251:11–17.[4]

Third, Reilly argued that Van Uden erred by failing to "consider the degree of confusion" between Bulleit and Redemption in reducing the amount of damages.  Reilly Report ¶¶ 76–77.  Referring to this as the "confusion factor," Reilly relied on the flawed confusion survey conducted by Deutsch's expert Matthew Ezell, which found a 1 percent confusion rate, and multiplied his remaining $471,000 by 1 percent to arrive at his final profit disgorgement number of $5,000.  *Id.* ¶¶ 74–75.

### F.    Van Uden's Deposition Testimony and Further Opinions

On May 29, 2019, Deutsch took Van Uden's deposition.  In his deposition, Van Uden noted that he had formed opinions regarding Mr. Reilly's report and was fully prepared to testify about them.  Servodidio Decl. Ex. 8 (Transcript of Deposition of Bryan M. Van Uden) ("Van Uden Tr.")

---

[3] Reilly also had little to no understanding of the substance of the costs he was deducting, and, most crucially, whether they were only related to the sales of the infringing product; for example, he deducted 100 percent of several employees' salaries without any knowledge of who they were, or if they only worked on the infringing products.  Reilly Tr. 305:23–306:23.   Reilly also did not even know if the costs information he was relying on represented actual costs or forecasted costs.  *Id.* 135:8–136:7.

[4] Diageo will file an appropriate motion to exclude Deutsch from relying on belatedly disclosed and unsupported costs evidence or from relying on any expert opinions shielded from discovery though improper assertions of work product protection.

23:12–17.  However, Deutsch deliberately elected not to question Van Uden about any of his opinions on Reilly's criticisms.  Deutsch's counsel instead objected to Van Uden having formed opinions about Reilly's rebuttal report and argued on the record that Van Uden's defense of his own opinions would be "beyond the scope of [his report]."  *Id.* 23:18–24:8.

Although Deutsch chose not to specifically ask about the Reilly Report, Deutsch did ask questions related to Reilly's criticisms, and Van Uden testified about his disagreement with Reilly's approach and methodology.  As to the concept of "but for" revenue, he testified that all of Deutsch's revenue from the sale of its infringing products constitutes infringing revenue, and that was the only revenue he relied upon.  *Id.* 91:22–92:11.  As to the costs, he testified that any costs being deducted from revenue must be "directly related" to the sale of the infringing product, and "actually incurred."  *Id.* 95:9–24.  Thus, any marketing expenses or employee salary costs must be "properly allocated and properly apportioned" such that they relate only to the infringing product; "if [the employees] were working on something else, you don't get to hit the full cost as a Redemption cost."  *Id.* 99:18–22.  Finally, Van Uden testified that it was inappropriate to deduct from the infringing profits based on results from a likelihood of confusion survey, noting that he had "never seen it allowed or done," and that it conflates a liability issue—the likelihood of confusion—with damages.  *Id.* 100:23–102:2.

## ARGUMENT

The Supreme Court "held in *Daubert* that under Rule 702 'the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *Shea v. Long Island R.R. Co.*, No. 05 CIV. 9768 (LLS), 2009 WL 1424115, at *3 (S.D.N.Y. May 21, 2009) (Stanton, J.) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  The "inquiry envisioned by Rule 702 is . . . a flexible one, and the gatekeeping inquiry must be tied to

the facts of a particular case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (internal quotation marks and citations omitted).  A court should allow an expert to testify if the testimony is "relevant and (1) presented by a qualified expert, (2) based upon sufficient facts or data, and (3) the product of reliable principles and methods."  *Shea*, 2009 WL 1424115, at *3 (citing Fed. R. Evid. 702).

**I.      Van Uden Is Qualified, and Provides Relevant and Reliable Testimony Based on Accepted Principles.**

Courts regularly permit damages experts to testify in support of damages claims in intellectual property disputes, including Van Uden himself.  *See, e.g.*, *Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 2020 WL 5366319, at *20 (N.D. Cal. Sept. 8, 2020) (admitting Van Uden's expert testimony on lost profits in a patent infringement case); *GlobeRanger Corp. v. Software AG USA, Inc.*, 2015 WL 3648577, at *14 (N.D. Tex. June 11, 2015) (upholding jury verdict based on Van Uden's damages testimony in trade secret misappropriation case).  Accordingly, Van Uden is qualified to opine in this case.  Notably, Deutsch does not question Van Uden's qualifications.

The relevance of Van Uden's opinions on disgorgement cannot be disputed.  Under the Lanham Act, remedies for trademark and trade dress infringement include monetary damages; specifically, a prevailing plaintiff "shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  "In assessing [the defendant's] profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  *Id.*  Thus, the text of the statute expressly shifts the burden to a trademark defendant to come forward with evidence supporting any claimed costs.  *Id.*

In order to discharge that burden, a defendant "must prove not only that it has borne the particular cost or expense but also that the cost or expense is attributable to its unlawful sales."

10

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989).  In other words, the defendant "must establish that the costs were related to the production, distribution or sale of the infringing product."  *Fendi Adele S.r.l. v. Burlington Coat Factory Warehouse Corp.*, 2010 WL 11586698, at *4 (S.D.N.Y. Aug. 9, 2010) (internal quotation marks omitted).

Here, Van Uden properly reviewed Deutsch's spreadsheets and identified the gross revenues for the sales of infringing product.  Van Uden Report ¶¶ 52–53.  Going further, he reviewed a spreadsheet of alleged costs produced by Deutsch and the relevant deposition testimony of Deutsch's 30(b)(6) witness and concluded that Deutsch had failed to substantiate various other costs under well-accepted accounting principles. *Id.* ¶¶ 52, 55 & n.102.  He expressly noted his opinion and questions about Deutsch's failure to demonstrate its costs in both his report and deposition.

Courts routinely allow a damages expert to testify with respect to this precise kind of calculation in cases involving a disgorgement of profits.  *See, e.g.*, *AU New Haven, LLC v. YKK Corp.*, 2019 WL 1254763, at *24–26 (S.D.N.Y. Mar. 19, 2019) (allowing plaintiff's damages expert to testify as to disgorgement of defendant's profits in patent infringement case; defendants did not even move to exclude the disgorgement portion of the expert's opinion); *River Light V, L.P. v. Lin & J Int'l, Inc.*, 2015 WL 3916271, at *7 (S.D.N.Y. June 25, 2015) (relying on the plaintiff's expert's "calculation, from Defendants' own records" regarding the defendant's gross sales for the plaintiff's damages award for trademark infringement); *see also Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 177 (3d Cir. 2017) (stating that an award of the defendant's profits under the Lanham Act should be substantiated by, *inter alia*, "expert testimony").  Van Uden's damages opinions are relevant, and rely on regularly accepted methodologies, accounting principles, and reliable data.

11

Deutsch's main argument to exclude Van Uden's damages opinion is that he should have credited Deutsch with more deductible costs in assessing profits.   Deutsch Mot. at 13–15.   However, as noted above, it is the *defendant*'s burden to "prove all elements of cost or deduction claimed."   15 U.S.C. § 1117(a).   Van Uden deducted the costs of goods sold attributable to the infringing packaging, but did not believe it was appropriate to deduct other costs which Deutsch failed to substantiate—and, indeed, concealed during discovery. While Deutsch's disagreement with Van Uden for not deducting its unsupported costs may be explored through cross-examination, it proves no colorable claim for exclusion of Van Uden's testimony.   *Lakah v. UBS AG*, 2016 WL 10839568, at *2 (S.D.N.Y. Jan. 20, 2016) (holding that argument that expert's "report fails to take into account material information . . . . may be raised on cross-examination and merely would affect the weight of [the expert's] testimony rather than its admissibility"); *Middle Market Fin. Corp. v. D'Orazio*, 2002 WL 31108260, at *7 (S.D.N.Y. Sept. 23, 2002) ("Whether omitted facts should have been considered is a classic subject of cross-examination.").

Equally meritless is Deutsch's disingenuous suggestion that Van Uden should be excluded because Deutsch is willing to stipulate as to its infringing revenues and costs of goods sold. Deutsch Mot. at 16.   Deutsch fails to mention that it has retained its own damages expert and intends to present fact witnesses and expert testimony at trial claiming millions of additional "costs" disclosed to Diageo for the first time after the close of discovery in the form of created-for-litigation spreadsheets.   *See generally* Reilly Report and supporting exhibits.   Thus, Deutsch is advocating for a one-sided trial presentation stripping Diageo of the ability to challenge Deutsch's efforts to minimize its damages exposure.   Putting aside these improper tactics, Van Uden's testimony is not a matter of basic math.   His testimony rests on years of accounting experience and professional judgment in ascertaining the proper costs that may be deducted from

12

infringing revenues in a Lanham Act case.  *See* Van Uden Report, Attachment 1; *River Light V*, 2015 WL 3916271, at *7 (relying on expert who opined on revenues and cost deductions in trademark infringement case).

Deutsch has failed to present any critique that warrants the exclusion of Van Uden's reliable and generally accepted damages opinions, and its motion should be denied.

## II.    Van Uden May Testify about the Criticisms of His Own Opinion.

Deutsch also seeks to prevent Van Uden from responding to Deutsch's rebuttal expert's unfounded criticisms of Van Uden's own opinions.  *See* Deutsch Mot. at 15.  This request is contrary to law and to the stipulated expert discovery schedule ordered in this case.

It is well-established that Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, which provides that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," does not "limit an expert's testimony simply to reading his report."  *Harkabi v. SanDisk Corp.*, 2012 WL 2574717, at *4 (S.D.N.Y. June 20, 2012) (denying motion to strike expert's trial testimony based on demonstratives not contained within report).  Rather, the "rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."  *Id.*  And Rule 37(c)(1), which precludes the introduction of new opinions at trial "unless the failure [to identify the information or witness] was substantially justified or harmless," Fed. R. Civ. P. 37(c)(1), "demonstrates that these rules are not designed to prohibit a witness from testifying about anything not explicitly mentioned in his Rule 26 disclosure, but rather to protect one party from being blindsided by another party with new opinions never before discussed."  *Cary Oil Co. v. MG Refin. & Mktg., Inc.*, 2003 WL 1878246, at *4–5 (S.D.N.Y. Apr. 11, 2003) (denying motion to strike expert testimony that was not contained in report because it "related directly" to the opinions expressed in the report, and

because even if the opinions were new, the defendants "are now on notice about these opinions more than a month before trial and thus have ample time to prepare effective cross examination").

Here, Van Uden provided an opening report opining on disgorgement, and Deutsch engaged Mr Reilly as a rebuttal expert.  Under the schedule agreed to by the parties, Van Uden was not permitted to serve a reply report in response to the opinions disclosed by Reilly.  Thus, the time for Deutsch to explore Van Uden's defense of his own opinions against Reilly's criticisms was at Van Uden's deposition.  But Deutsch expressly chose not to ask Van Uden in detail about his opinions on Reilly's calculations.  *See* Van Uden. Tr. 23:12–24:8.  Deutsch cannot claim surprise or prejudice now.  *See Lutes v. Kawasaki Motors Corp., USA*, 2015 WL 1395898, at *3 (D. Conn. Mar. 25, 2015) (denying the defendants' motion to preclude expert testimony because the defendants "had the opportunity to depose [the expert] on these very topics"). [5]

Moreover, because Reilly is a rebuttal expert, his opinions are, by necessity, about the "same subject matter" as Van Uden's report.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (describing rebuttal experts as opining "on the same subject matter" as the expert which they are rebutting). Accordingly, experts may plainly testify or otherwise respond to criticisms levied at their opinions. *See, e.g.*, *Monroe-Trice v. Unum Employee Short-Term Disability Plan*, 2003 WL 68033, at *2 (S.D.N.Y. Jan. 8, 2003) ("[I]f defendant's expert criticizes the assessments of [plaintiff's expert], plaintiff will be permitted to re-call the [expert] on rebuttal to respond to those criticisms.").  To allow otherwise would permit an illogical and unfair presentation at trial, in which Deutsch calls

---

[5] Moreover, Van Uden has reserved the right to supplement his report if Deutsch clarifies the as-of-yet unsupported costs it is claiming.  Van Uden Report ¶ 55.  Van Uden may also supplement his report once Deutsch meets its obligation to update its data regarding its infringing revenues, because Deutsch has continued to sell the infringing product since March 2019—the last date for which there is available sales data.  *See* 5 McCarthy on Trademarks & Unfair Competition §30:70 (5th ed. 2020) ("[T]he accounting period should be co-extensive with the period of infringement.").

its expert to launch unfounded attacks on Van Uden's opinion, and Van Uden is forbidden from responding.  Deutsch's attempt to create this unfair advantage should be denied.

### III.    Deutsch Cannot Relitigate Its Failed "Actual Damages" Challenge.

A large portion of Deutsch's motion to exclude Van Uden's testimony is not devoted to Van Uden at all.  Instead, Deutsch seeks to relitigate its baseless argument that Diageo should be precluded from seeking actual damages at trial.  Deutsch Mot. at 10–13.  But this is the same argument that the Court considered and rejected in September 2020, in denying Deutsch's motion to strike Diageo's jury demand.  *See* Deutsch Letter re: Request for Pre-Motion Conference, ECF 197 (letter motion raising the same arguments in this motion, including that Diageo "failed to substantiate any claim for any purported actual or compensatory damages"); Mem. Endorsement, ECF 199 (denying Deutsch's letter motion).

As this Court has found, Diageo has preserved and supported its claim for actual damages throughout this case.  *See* Diageo Response to Deutsch's Pre-Motion Letter, ECF 198.  As Van Uden states in his report, he is opining on the disgorgement of Deutsch's profits only.  Van Uden Report ¶ 6.  This disgorgement analysis provides support for Diageo's actual damages claim, because it is well established that "an award of defendant's profits has . . . served as a rough proxy measure of plaintiff's damages."  *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992).[6]

---

[6] Deutsch argues, without basis, that Diageo "misstates the law" when Diageo recites this Second Circuit precedent.  Deutsch Mot. at 12.  Deutsch then states that "the Second Circuit has held that a plaintiff cannot obtain 'defendant's profits' and then use those same profits as a proxy to estimate the 'plaintiff's damages,'" but Deutsch cites only three district court opinions which, in any event, do not support that proposition.  *Id.* at 13.  None of those cases contradicts the Second Circuit's decision in *George Basch* holding that the disgorgement of the defendant's profits may serve as a proxy for the plaintiff's damages; rather, they all prohibit the "double recovery" of *both* the plaintiff's lost profits and the defendant's profits.  *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, 2018 WL 4253181, at *1, *16–17 (S.D.N.Y. Sept. 5, 2018) (awarding nearly $10 million in the plaintiff's lost profits but declining to award the

Plainly, the Court should not permit Deutsch to relitigate this issue. Its motion is tantamount to a request for reconsideration that fails to meet the standards for any such motion and, in any event, is untimely. *See* Local Civil Rule 6.3 (requiring that a motion for reconsideration be filed within 14 days of the Court's decision on that motion); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)). This request should be summarily rejected.

## IV. Deutsch's Other Arguments Regarding a Factual Narrative and Legal Conclusions Are Meritless.

Deutsch also argues that Van Uden "cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." Deutsch Mot. at 16 (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)). But Diageo has no intention of presenting Van Uden "solely for the purpose of constructing a factual narrative." Van Uden simply cites record evidence throughout his report as factual predicates in aid of his expert testimony and as support for his expert opinions on the applicability of his theory of damages and support for his damages opinion, not to establish the underlying facts themselves.[7]

---

defendant's profits as an "impermissible overcompensation"); *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 264 (E.D.N.Y. 2008) (similar); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 1980 WL 30287, at *8 (S.D.N.Y. Mar. 5, 1980) ("Although 15 U.S.C. [§] 1117 suggests that both damages and profits may be awarded, [c]ourts have generally not awarded both damages based upon plaintiff's lost sales and defendants' profits attributable to those same sales under the infringing mark."). Any question of "double recovery" has no bearing on the admissibility of Van Uden's testimony and will be addressed at trial or by appropriate post-trial motions.

[7] In his report, Van Uden included a section titled "Relevant Background Facts and Timeline of Events," and stated that his "opinion relies on, and is subject to, the set of facts and documents presented to [him]." Van Uden Report ¶ 16, *see id.* ¶¶ 17–49. Van Uden also provided citations to record evidence throughout his report. *See generally id.*

16

Courts regularly permit experts to present "facts as the predicate for . . . opinion testimony." *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013) ("At trial, the factual assertions he relies on obviously would have to be supported by admissible evidence . . . ."); *see also Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 4251229, at *4–5 (S.D.N.Y. Feb. 19, 2020) (denying motion to exclude expert's opinion as "factual narratives" because he may "present [] facts as the predicate for his opinion testimony"). As another case cited by Deutsch states, the "appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events. And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013). Diageo intends to call witnesses to introduce those factual details, and Van Uden may properly refer to the facts as necessary background for his testimony. Accordingly, Deutsch's motion to exclude this testimony should be denied.

Finally, Deutsch moves to preclude Van Uden from "opining on the legal questions such as the standard for damages under Section 1117 of the Lanham Act and case law for damages calculations." Deutsch Mot. 18. Van Uden is not offering any legal opinions or conclusions; rather, his report merely referenced the standards that govern the damages opinions which he is offering. *See* Van Uden Report ¶ 50. This is standard practice, and a court has previously rejected the same argument as to Van Uden himself. In *Williams Consolidated I, Ltd. v. Smith,* 2009 WL 10698215 (S.D. Tex. Oct. 19, 2009)*,* the court rejected the defendants' contention that "Van Uden improperly expressed legal opinion in his report" by opining on the methods by which the plaintiff's damages may be calculated. *Id.* at *20. The court held that Van Uden "is not offering a legal conclusion in his report but, rather, simply chose certain models by which to perform his

calculations." *Id.*  The same is true here, in which Van Uden discusses the disgorgement model and how it is applied.

Van Uden's opinions diverge sharply from the cases Deutsch cites in support of this argument, and from the opinions of several of Deutsch's experts, who expressly offer legal conclusions and opinions.  For example, in *Snyder v. Wells Fargo Bank, N.A.*, 594 F. App'x 710 (2d Cir. 2014), the Second Circuit affirmed the exclusion of an expert's opinions that "went to ultimate issues for jury resolution"—in that case, the expert's opinion that the defendant's "contractual and fiduciary duties required it to implement" a particular strategy.  *Id.* at 714.  Deutsch has failed to explain how any of Van Uden's opinions are remotely similar, or how any of them go to "ultimate issues for jury resolution.  Deutsch argues without support that "[w]hich costs Deutsch can deduct from its profits and what is needed to support a plaintiff's theory of damages are legal questions."  Deutsch Mot. at 19.  Deutsch fails to explain why these are issues that are not within a damages expert's provenance; indeed, Deutsch fails to note that its own expert provides opinions on the same questions.

## CONCLUSION

Based on the foregoing, Diageo respectfully requests that the Court deny Deutsch's motion to exclude the testimony of Bryan Van Uden and his accompanying report.

Dated:   New York, New York
          January 12, 2020                                   Respectfully submitted,


                                                      By: /s/Gianni P. Servodidio
                                                         Susan J. Kohlmann
                                                         Gianni P. Servodidio
                                                         Jacob D. Alderdice
                                                         Allison N. Douglis
                                                         JENNER & BLOCK LLP
                                                         919 Third Avenue, 38th Floor

New York, NY 10022
Phone 212-891-1600
Fax  212-891-1699
gservodidio@jenner.com

*Attorneys for Plaintiff Diageo North
America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2021, true and correct copies of the foregoing Memorandum of Law in Opposition to the Motion to Exclude the Testimony of Bryan Van Uden and supporting declaration and exhibits were filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

_____/s/ Jacob D. Alderdice_____
Jacob D. Alderdice
