# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

DIAGEO NORTH AMERICA, INC.,
     Plaintiff,

v.

W.J. DEUTSCH & SONS LTD. d/b/a
DEUTSCH FAMILY WINE & SPIRITS, and
BARDSTOWN BARREL SELECTIONS LLC,
     Defendants.

Case No. 1:17-cv-04259-LLS

## MEMORANDUM OF LAW IN OPPOSITION TO DEUTSCH'S MOTION TO <u>EXCLUDE THE TESTIMONY OF PHILIP G. HAMPTON, II</u>

Susan J. Kohlmann
Gianni P. Servodidio
Jacob D. Alderdice
Allison N. Douglis
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, NY 10022
Phone 212-891-1600
Fax   212-891-1699

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

BACKGROUND .........................................................................................................2
     A.     Hampton's Report on PTO Practices and Procedures ................................ 2
     B.     Krugman's and Saidman's Reports ......................................................... 6
     C.     The Expert Rebuttal Reports.................................................................... 7

ARGUMENT ..............................................................................................................8

  I.    PTO Expert Hampton's Testimony Is Straightforwardly Admissible. ...............................9

  II.   Hampton's Testimony is Relevant and Does Not Offer Improper Legal
       Conclusions.........................................................................................................13

  III.  Hampton's Rebuttal Opinions Are Proper. ........................................................16

  IV.  Hampton's Challenged Deposition Testimony Is Admissible To The Extent
       Deutsch Questions Hampton On Similar Issues. ...............................................18

CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred E. Mann Found. for Sci. Rsch. v. Cohclear Corp.*,
  2014 WL 12586105 (C.D. Cal. Jan. 3, 2014) ...................................................9–10

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
  2017 WL 3528606 (D. Del. Aug. 16, 2017) ............................................................14

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002).................................................................................8, 9

*Ass Armor, LLC v. Under Armour, Inc.*,
  2016 WL 7156092 (S.D. Fla. Dec. 8, 2016) .........................................................14

*Bausch & Lomb, Inc. v. Alcon Lab'ys, Inc.*,
  79 F. Supp. 2d 252 (W.D.N.Y. 2000).........................................................9, 14, 15

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ...................................................11, 13

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996).......................................................................................9

*Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
  2011 WL 6754051 (W.D.N.Y. May 27, 2011) .....................................................9, 14

*Design Ideas, Ltd. v. Meijer, Inc.*,
  2018 WL 3539441 (C.D. Ill. July 23, 2018) ..........................................................10

*Deutsch v. Novartis Pharms. Corp.*,
  768 F. Supp 2d 420 (E.D.N.Y. 2011) ....................................................................11

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
  741 F. Supp. 2d 1165 (C.D. Cal. 2010) ................................................................16

*In re: Gen. Motors LLC Ignition Switch Litig.*,
  2015 WL 9480448 (S.D.N.Y. Dec. 29, 2015) .......................................................19

*Genband US LLC v. Metaswitch Networks Corp.*,
  2016 WL 7645444 (E.D. Tex. Jan. 8, 2016)..........................................................10

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
  87 F. Supp. 3d 928 (N.D. Cal. 2015) ....................................................................10

*Ideal World Mktg., Inc. v. Duracell, Inc.*,
     15 F. Supp. 2d 239 (E.D.N.Y. 1998) ........................................................................14

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
     996 F.2d 577 (2d Cir. 1993).....................................................................................13

*Sanders v. Mt. Sinai Sch. of Med.*,
     418 F. Supp. 2d 339 (S.D.N.Y. 2005).......................................................................14

*Scott v. Chipotle Mexican Grill, Inc.*,
     315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................16

*Shea v. Long Island R.R. Co.*,
     No. 05 CIV. 9768 (LLS), 2009 WL 1424115 (S.D.N.Y. May 21, 2009)..............8, 9

*In re Wellbutrin SR Antitrust Litig.*,
     2010 WL 8425189 (E.D. Pa. Mar. 31, 2010).............................................................14

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)................................................................................................16

McCarthy on Trademarks & Unfair Competition (5th ed.) .......................................9, 13

**INTRODUCTION**

Plaintiff Diageo North America, Inc. ("Diageo") opposes this motion ("Deutsch Mot.") by Defendants Deutsch Family Wine & Spirits and Bardstown Barrel Selections LLC (collectively, "Deutsch") to exclude Philip G. Hampton, II from testifying as an expert witness for Diageo in this case.  Hampton will testify about the U.S. Patent and Trademark Office ("PTO")'s practices and procedures with respect to trademark and design patent applications.  His testimony will aid the jury's understanding of these processes and facilitate its ability to assess disputed issues in this case, including Deutsch's baseless counterclaims that Diageo misrepresented the distinctiveness of the Bulleit Trade Dress before the PTO and that the Bulleit Trade Dress is functional, abandoned, and non-distinctive.

Deutsch's motion to exclude Hampton simply disregards the well-established role of PTO experts in intellectual property cases and should be readily denied.  Hampton's testimony on practices and procedures of the PTO fits squarely within the type of PTO expert testimony that courts regularly allow because it does not usurp the role of the Court in instructing the jury on the law or the role of the fact finder in resolving disputed factual issues.  Hampton's testimony is relevant, reliable and meets all the hallmarks of proper expert testimony under *Daubert*.  At bottom, Deutsch's arguments reflect mere disagreement with Hampton's conclusions, which does not justify exclusion.

The Court should similarly reject Deutsch's improper attempt to turn the law on its head by excluding Hampton's testimony because he declined to offer inadmissible conclusions about the legal substance of Diageo's trademark application.  It is firmly established that although a PTO expert can provide relevant and helpful background for the jury on PTO *procedures*, such an expert cannot offer legal opinions.  Thus, just as the Court should prevent Deutsch's PTO expert from

offering inadmissible legal opinions, the Court should reject Deutsch's motion to exclude Hampton for adhering to the proper role of a PTO expert and not opining on the merits of Deutsch's fraud claim.

Deutsch's other arguments for exclusion fare no better.  Deutsch argues that Hampton's rebuttal opinions should be excluded because they do not adequately refute Deutsch's experts' opinions.  While these arguments are manifestly false, as with the other issues Deutsch raises, none of these criticisms warrants exclusion of Hampton's opinions, but rather should more appropriately be addressed through proper cross-examination at trial.  And, to the extent Deutsch additionally challenges statements made by Hampton in his deposition, those statements were made in direct response to questioning posed *by Deutsch*, and do not reflect the testimony Hampton will offer at trial absent similar prompting by Deutsch's counsel.  Deutsch's motion should be denied in its entirety.

## **BACKGROUND**

On March 1, 2019, Deutsch and Diageo each disclosed experts—Gary Krugman for Deutsch and Hampton for Diageo—to testify on proceedings of the U.S. Patent and Trademark Office ("PTO") relating to Diageo's 2004 application to register the Bulleit Trade Dress and the PTO's issuance of U.S. Trademark Registration No. 3,075,812 (the "'812 Registration") for the Bulleit Trade Dress.  Hampton and Deutsch's expert Perry Saidman also addressed PTO proceedings relating to a 2017 design patent application for the Redemption bottle design (design patent application no. 29/613,271, or the "'271 Redemption Bottle Application").  Deutsch and Diageo later disclosed rebuttal reports by each of these experts.

### A.    **Hampton's Report on PTO Practices and Procedures**

Deutsch has argued that Diageo's registration is invalid and that Diageo committed fraud on the PTO.  More specifically, Deutsch alleges both that Diageo fraudulently misrepresented the

distinctiveness of the Bulleit Trade Dress in proceedings before the PTO to obtain the '812 Registration and that the Bulleit Trade Dress is not subject to protection because it is functional and has been abandoned. *See* Defs.' Am. Answer, Aff. Defenses & Countercls. 12–13, 27–32, ECF No. 34 ("Amended Counterclaims"). To enable the jury to assess the validity of Deutsch's arguments, Diageo retained Hampton, a well-regarded PTO expert, to provide background on the PTO's practices and procedures to aid the jury in understanding the examination history of the '812 Registration.

Hampton served as the Assistant Commissioner for Trademarks at the PTO from 1994 to 1998 and has otherwise worked as an intellectual property attorney with a focus on patents, trademarks, and unfair competition since 1980. *See* Decl. of Gianni P. Servodidio in Supp. of Mot. to Exclude Testimony of Gary Krugman ("Krugman Mot. Servodidio Decl."), Ex. 2 (Expert Report of Philip G. Hampton, II) ("Hampton Report"), ECF No. 229-2, ¶¶ 7–9. In his capacity as Assistant Commissioner for Trademarks, he managed day-to-day operations and policy at the Trademark Office, including exercising significant oversight of trademark examining procedures. *See id.* ¶¶ 10–11, 14. Deutsch does not challenge Hampton's qualifications to opine on PTO practices and procedures.

Hampton's expert report describes the requirements for trademark applications and standards applied by the PTO during the examination process. *Id.* ¶¶ 28–30. Hampton's expert report also describes the procedures through which an application is reviewed by a PTO Examining Attorney. *See id.* ¶¶ 31–38. For example, Hampton explains the significance of an "office action," which, under the Trademark Manual of Examination Procedures, is the vehicle by which an Examining Attorney explains the grounds for refusing an application. *See id.* ¶ 35. He further explains the processes by which an applicant may submit arguments in response to an Examining

Attorney's grounds for refusal, after which the Examining Attorney may either accept those arguments (and approve the trademark for publication in the Official Gazette) or reject those arguments (and issue a "final office action" that may be subject to a motion for reconsideration or appeal to the Trademark Trial and Appeal Board).  *Id.* ¶¶ 36–37.

After providing his opinion on the PTO's general practices and procedures for responding to trademark applications, Hampton's expert report opines on how the examination history of the '812 Registration was consistent with routine application practice he has observed in his years of experience.  *Id.* ¶¶ 41–58.

- First, Diageo submitted an application signed by its counsel Eliot Basner, who executed the required oath verifying that to the best of his knowledge, all of the statements made in the application were true and no other person or entity had the right to use the mark in commerce. *See* Declaration of Michael Grow ("Grow Decl.") Ex. 4 (DFWS000038015) ("File Wrapper"), ECF No. 219-4, at 000038086; Hampton Report ¶ 41.

- Second, the Examining Attorney issued an Office Action on April 11, 2005, (i) confirming that the Examining Attorney had "searched the Office records and [had] found no similar registered or pending mark which would bar registration"; (ii) asking Diageo to submit a new drawing page to "identify all features that are claimed in the mark," such as through outlining the bottle shape with dotted lines; and (iii) requiring Diageo to disclaim the use of the words "bourbon" and "whiskey" as used separately from the claimed mark and to submit a claim of ownership for two prior trademark registrations.  *See* File Wrapper, ECF No. 219-4, at 000038074–75; Hampton Report ¶¶ 42–43.  The Examining Attorney did not at this stage refuse to issue the registration on the grounds that the claimed mark was functional or non-distinctive.  *See id.*

4

- Third, counsel for Diageo communicated with the Examining Attorney about the acceptability of a proposed new drawing page, after which the Examining Attorney sent an additional email stating that the bottle shape was "non-distinctive" and therefore the outline of the bottle must be presented in dotted lines, and providing examples of "similar non-distinctive bottle designs." *See* File Wrapper, ECF No. 219-4, at 000038070; Hampton Report ¶ 44.

- Fourth, outside counsel for Diageo then responded to the April 11, 2005 Office Action by (1) submitting a new drawing; (2) amending the application to include the required disclaimer of the words "bourbon" and "whiskey"; (3) claiming ownership in the two prior registrations; (4) arguing that any rejection for lack of distinctiveness had been waived by failure to raise it in the original Office Action; and (5) arguing that rejection for lack of distinctiveness was substantively incorrect because the Bulleit bottle shape was in fact distinctive. *See* File Wrapper, ECF No. 219-4, at 000038064–000038073; Hampton Report ¶¶ 53–54.  As part of this response, Diageo's counsel argued that the Bulleit bottle shape was distinctive because it evoked an 1800s medicine bottle, and cited design awards and positive press attention that the bottle design had received as further evidence of distinctiveness. *See* File Wrapper, ECF No. 219-4, at 000038068–000038073; Hampton Report ¶ 54.

- Following these communications, the Examining Attorney noticed the claimed Bulleit Trade Dress for publication.  *See* File Wrapper, ECF No. 219-4, at 000030860.

Among other commentary to provide context for these proceedings, Hampton's report opines that Diageo's response to the Office Action was "typical of the kinds of legal arguments presented by applicants during the course of trademark prosecution before the USPTO," and that based on his experience, "it is very common for applicants to distinguish third party references cited by

Examining Attorneys and to specifically point out to Examining Attorneys why their marks are distinctive and entitled to registration."  Hampton Report ¶ 55.

Hampton also commented on the '271 design patent application, filed in 2017, that claimed an "original ornamental design for a Bottle" for the Redemption packaging.  *See id.* ¶¶ 60–64.  The application included declarations of assignment by named inventors Tom Steffanci (Deutsch's president) and Courtney Provini and Jennifer Thomason (Deutsch employees), and claimed as part of the invention the front view of the Redemption bottle shape.  *See* Decl. of Gianni P. Servodidio in Supp. of Diageo's Opp'n to Mot. to Exclude Test. of Philip G. Hampton, II ("Hampton Opp. Servodidio Decl."), Ex. 1 (Design Patent Application No. 29/613,271) (DFWS00133074, at 00133182–'83, 00133203).  Hampton explained that under PTO practices and procedures, "an application for a design patent may only be filed for non-functional features of a product," so executing a declaration of assignment of a design patent application under oath constituted a representation that the shape of the bottle was not functional.  Hampton Report ¶¶ 63–64.

## B.  Krugman's and Saidman's Reports

With respect to the '812 Registration proceedings, Deutsch offered a report from Gary Krugman, a former PTO examining attorney.  Krugman provided certain background information about PTO practices.  *See* Grow Decl. Ex. 5, ECF No. 219-5 (Expert Report of Gary D. Krugman) ("Krugman Report") ¶¶ 22–23, 34–35.  However, Krugman also opined on contested legal issues and governing standards—for example, suggesting that "with respect to marks which comprise a configuration of the container or packaging for the goods[,] . . . most such configurations are not considered inherently distinctive and would be protectable only upon a showing of acquired distinctiveness."  *Id.* ¶¶ 27–30.  Diageo has moved to exclude Krugman from testifying as to the validity of the '812 Registration or to general legal standards.  *See* Mem. of Law in Supp. of

Diageo's Mot. to Exclude Certain Testimony of Gary D. Krugman, ECF No. 228 ("Krugman Exclusion Mot.").

With respect to the '271 Redemption Bottle Application for a design patent, Deutsch offered a report from Perry Saidman, an intellectual property attorney, who opined on whether that application "affect[s] the functionality defense pled by the Defendants/Counterclaim Plaintiffs." Grow Decl. Ex. 6, ECF No. 219-6 (Expert Report of Perry J. Saidman) ("Saidman Report") ¶ 9. In his expert report, Saidman does not purport to testify to PTO practices or procedures, instead opining solely on purported distinctions between the legal standard for functionality in the design patent context as opposed to the trade dress context. *See generally id.* As with Krugman's testimony, Diageo has moved to exclude Saidman from testifying on the legal implications of whether the '271 Redemption Bottle Application affects Deutsch's claim that the Bulleit Trade Dress is functional. *See* Mem. of Law in Supp. of Diageo's Mot. to Exclude the Testimony of Perry Saidman, ECF No. 214 ("Saidman Exclusion Mot.").

### C.    The Expert Rebuttal Reports

In his rebuttal report, Hampton responded to both Krugman's and Saidman's initial reports, explaining that portions of both were irrelevant and misleading. As relevant here, with respect to the Krugman report, Hampton opined that Krugman's reference to third-party packaging that purportedly shared similarities to the Bulleit Trade Dress was misleading because the Examining Attorney "never referenced any third-party bottles containing the combination of features claimed in the '812 Registration and thus likely never found any such containers." Hampton Opp. Servodidio Decl. Ex. 2 (Expert Rebuttal Report of Philip G. Hampton, II) ("Hampton Rebuttal Report") ¶ 11. He also explained that Krugman incorrectly stated that Diageo "refused to submit a drawing showing the entire bottle design in dotted lines," since Diageo had in fact argued in response that it was not required to disclaim the shape of the bottle. *Id.* ¶ 12. Ultimately, the

record showed that "the Examining Attorney accepted Diageo's arguments and allowed for the medicine bottle-shaped bottle design to be included as part of the overall mark." *Id.*

In his rebuttal to Saidman, Hampton explained—in response to Saidman's erroneous statement to the contrary—that the functionality standard in the design patent context is similar to the functionality standard in the trade dress context. *See* Hampton Rebuttal Report ¶¶ 16–17 & n.6. Hampton also explained that Saidman's focus on whether the design patent application sought a patent for a bottle design that *exactly* matched the Redemption bottle was irrelevant, since Deutsch had argued that the shape of the Bulleit bottle is functional standing alone and an application for a design patent for a bottle with a similar shape contradicted that argument. *Id.* ¶ 19.[1]

## ARGUMENT

The Supreme Court "held in *Daubert* that under Rule 702 'the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Shea v. Long Island R.R. Co.*, No. 05 CIV. 9768 (LLS), 2009 WL 1424115, at *3 (S.D.N.Y. May 21, 2009) (Stanton, J.) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). The "inquiry envisioned by Rule 702 is . . . a flexible one, and the gatekeeping inquiry must be tied to the facts of a particular case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (internal quotation marks and citations omitted). A court should allow an expert to testify if the

---

[1] Krugman and Saidman also submitted rebuttal reports in response to Hampton's opening report. Krugman opined further on whether other bottles shared characteristics with the Bulleit Trade Dress and on the distinctiveness of the Bulleit Trade Dress. *See* Krugman Mot. Servodidio Decl. Ex. 4, ECF No. 229-10 (Rebuttal Expert Report of Gary D. Krugman) ("Krugman Rebuttal Report") ¶¶ 15–19. Saidman reiterated his argument that the '271 Redemption Bottle Application is irrelevant to whether the Redemption bottle shape is functional. *See* Hampton Opp. Servodidio Decl. Ex. 3 (Expert Rebuttal Report of Perry J. Saidman) ("Saidman Rebuttal Report") ¶ 5. Diageo's motions to exclude also address the improper opinions and legal testimony disclosed in these rebuttal reports. *See* Krugman Exclusion Mot., ECF No. 228, at 7–11; Saidman Exclusion Mot., ECF No. 214, at 6–9.

testimony is "relevant and (1) presented by a qualified expert, (2) based upon sufficient facts or data, and (3) the product of reliable principles and methods." *Shea*, 2009 WL 1424115, at *3 (citing Fed. R. Evid. 702).

"Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quotation marks and citations omitted). When a party disagrees with an expert's conclusions, it may use "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to address that evidence at trial. *Amorgianos*, 303 F.3d at 267.

## I.   PTO Expert Hampton's Testimony Is Straightforwardly Admissible.

It is well settled that a PTO expert "can assist the judge and jury about matters such as the technical aspects of applying for and obtaining a federal trademark registration." 4 McCarthy on Trademarks & Unfair Competition § 23:2.75 (5th ed.). Courts regularly admit testimony from PTO experts in patent and trademark infringement cases to speak to PTO practices and procedures, where such practices are relevant to the claims at issue. *See, e.g.*, *Bausch & Lomb, Inc. v. Alcon Lab'ys, Inc.*, 79 F. Supp. 2d 252, 255, 258 (W.D.N.Y. 2000) (holding that testimony on "general procedures involved in the patent application process . . . may be helpful to the jury, and is therefore admissible," but excluding testimony on patent invalidity); *Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, 2011 WL 6754051, at *4–5 (W.D.N.Y. May 27, 2011), *report and recommendation adopted without modification*, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) (allowing testimony as to PTO "rules, practices, and procedures"); *Alfred E. Mann Found. for Sci.*

*Rsch. v. Cohclear Corp.*, 2014 WL 12586105, at *9 (C.D. Cal. Jan. 3, 2014) (allowing testimony "as to background information and the PTO's procedures").

Courts also routinely hold that it is appropriate to comment on PTO practices and procedures as applied to the facts of a specific patent or trademark application. *See, e.g.*, *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 946–47 (N.D. Cal. 2015) (allowing expert in patent litigation to testify to "the general practices and procedures" of the PTO as well as "the particular patent application at issue"); *Design Ideas, Ltd. v. Meijer, Inc.*, 2018 WL 3539441, at *3 (C.D. Ill. July 23, 2018) (allowing testimony about "PTO trademark practices and procedures" and about other marks that had been registered without a relevant type of disclaimer); *Genband US LLC v. Metaswitch Networks Corp.*, 2016 WL 7645444, at *2 (E.D. Tex. Jan. 8, 2016) (allowing expert to "opine about PTO procedure, customary practices in the PTO, and any procedural facts relevant to inequitable conduct in this case").

Here, Hampton's opinions fall squarely within these boundaries of permissible PTO expert testimony. As discussed above, he will testify on the PTO's general procedures for trademark registration, including the significance of an initial Office Action and the procedural legitimacy of responding to such an action with legal and factual arguments that the Examining Attorney is free to accept or reject. *See* Hampton Report ¶¶ 35–38. He will also clarify specific aspects of the registration process, including the nature of the oath requirement. *See id.* ¶ 30. Given that the jury is "likely to be uninformed on the subject of trademark applications," *Meijer*, 2018 WL 3539441, at *3, this testimony will undoubtedly be helpful to the jury's evaluation of whether Diageo's trade dress application resulting in the '812 Registration defrauded the PTO by misrepresenting the distinctiveness of the Bulleit Trade Dress, as Deutsch argues, or whether Diageo properly presented arguments for the Bulleit bottle's distinctiveness that the Examining Attorney was well

equipped to assess, as Diageo argues.   Similarly, Hampton's testimony on design patent applications and their relevant oath requirements will be helpful in allowing the jury to assess whether Deutsch's president and employees affirmed under oath in the '271 Redemption Bottle Application that the Redemption bottle design was non-functional and therefore eligible for a design patent, and whether that fact undercuts Deutsch's argument that identical characteristics of the Bulleit Trade Dress are functional.  *See* Hampton Report ¶¶ 61–64.

Deutsch's arguments for exclusion are meritless: they amount to mere disagreement with Hampton's conclusions or description of PTO procedure, and are incorrect to boot.  *See Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp 2d 420, 441 (E.D.N.Y. 2011) ("To the extent [a party] disagrees with the conclusions reached by [the opposing party's expert], this is an avenue for cross-examination and not an appropriate basis for exclusion."); *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2011 WL 6288415, at *12 (S.D.N.Y. Dec. 15, 2011) ("Plaintiffs' mere disagreement with [the opposing expert's] conclusions is insufficient to render her opinions inadmissible *ipse dixit*.").  Deutsch does not even attempt to cite case law establishing that it is appropriate to exclude expert testimony on this basis.[2]

Instead, Deutsch first argues that Hampton should be excluded because he "incorrectly stated that the PTO examining attorney assigned to the Bulleit Application . . . did not issue any refusal to register the Alleged Bulleit Trade Dress" due to a supposed "failure to recognize" that the April 11, 2005 Office action refused to register the Bulleit Trade Dress because the Examining Attorney deemed the Bulleit Trade Dress functional or non-distinctive.  *See* Deutsch Mot. at 4.  As an initial matter, Deutsch's argument that Hampton should be excluded because it disagrees with

---

[2] Tellingly, Deutsch argues over and over that Hampton's testimony should be excluded because it is "incorrect."  *See, e.g.*, Deutsch Mot. at 3 (repeatedly referencing supposedly "incorrect analysis"); *id.* at 4 ("Mr. Hampton incorrectly stated . . . ."); *id.* at 5 (referencing a supposedly "incorrect analysis" and "erroneous conclusion").

his conclusions is wrong as a matter of law.  Although that alone is a sufficient basis to reject
Deutsch's argument on this point, it is also worth noting that Deutsch is incorrect on the facts.
Deutsch's assertion is based on a misreading of the Office Action, which contained a routine
request for a new drawing page to clarify which *portions* of the image of the Bulleit Bottle
constituted the Bulleit Trade Dress and whether or not Diageo intended to claim the shape of the
bottle as part of the mark.  *See* File Wrapper, ECF No. 219-4, at 000038074–75.  This was not—
as Deutsch wrongly alleges—an initial finding that the bottle shape was non-distinctive.  To the
contrary, there was a separate section in that same Office Action that addressed the initial finding
of non-distinctiveness, and that request from the Examining Attorney was limited to a request to
disclaim the words "bourbon" and "whiskey"—not the shape of the bottle.  *See id.* at 000038075.
In any event, as Hampton states in his report, the Examining Attorney issued a subsequent email
requesting disclaimer of the bottle shape and it is commonplace for applicants to present counter-
arguments to an Examining Attorney's initial finding of non-distinctiveness.  *See* Hampton Report
¶¶ 44, 55.  So, even if the Examining Attorney had initially found the Bulleit bottle shape to be
non-distinctive in the April 11 Office Action, Diageo was entitled to attempt to convince the
Examining Attorney to change his mind later in the proceedings.  *See id.* ¶ 55.  For Deutsch to
seek exclusion on the grounds that Hampton made some "mistake" in describing the foregoing
prosecution history is absurd.

Deutsch also faults Hampton for "overlook[ing]" that the Bulleit bottle shape is not
distinctive when discussing Diageo's arguments to the contrary before the Examining Attorney.
*See* Deutsch Mot. at 6.  Here, Deutsch merely retreads Deutsch's well-worn legal arguments about
how Diageo's bottle design is not distinctive.  *See* Defs.' Am. Answer, Affirmative Defenses &

Countercls., ECF No. 34, ¶¶ 65–85.[3]  But, to the extent that Deutsch argues that Hampton's testimony is unreliable because it failed to adopt Deutsch's conclusory legal arguments about distinctiveness, which is plainly is not a proper basis for a *Daubert* challenge, this cannot be grounds for excluding Diageo's expert.  *See, e.g.*, *AFTRA Ret. Fund*, 2011 WL 6288415, at *12. Additionally, as discussed in the next section, Hampton does not analyze whether Diageo's arguments to the Examining Attorney were substantively correct as a matter of trademark law because it is the province of the Court, not expert witnesses, to advise the jury on the law so that they can resolve the factual issues to be tried.

## II.   Hampton's Testimony is Relevant and Does Not Offer Improper Legal Conclusions.

Deutsch argues that Hampton's testimony should also be excluded as irrelevant for focusing on "the process that Diageo followed rather than the substance of its response."  Deutsch Mot. at 10; *see id.* at 9–11.  In other words, Deutsch suggests that Hampton should be excluded because he does not directly opine on whether Diageo committed fraud on the PTO.  Deutsch's effort to exclude Hampton's testimony on this ground reflects a fundamental misunderstanding of the purpose—and limits—of PTO expert testimony.  Hampton's testimony is relevant precisely because it will aid the jury in understanding the PTO processes that Deutsch relies upon in bringing its fraud claim.

---

[3] Although beyond the proper scope of a *Daubert* motion, Deutsch is flatly wrong that the design of an 1800s medicine bottle cannot be a distinctive component of the overall trade dress for whiskey packaging sold in the twenty-first century.  It is black-letter law that distinctiveness of a trademark must be evaluated in the context of the goods or services covered by the mark.  *See* 2 McCarthy on Trademarks & Unfair Competition § 11:64 (5th ed.) ("The distinctiveness of a mark cannot be determined in the abstract, but only by reference to the goods or services upon which the mark is used."); *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 583 (2d Cir. 1993) (stating that "a court examines the context in which the words constituting the mark are used" when evaluating distinctiveness).  A bottle used centuries ago for a different product can be highly distinctive when used in a different context—as found by the Trademark Office in this very case.

The case law draws a clear line between permissible and impermissible PTO expert testimony. A PTO expert may testify to PTO policies and procedures because such testimony would be relevant and helpful to jurors likely to be unfamiliar with such processes. *See supra* pages 9–10. Conversely, it is impermissible to testify on legal requirements or on whether a party complied with those requirements, as doing so would "invade the province of the court to determine the applicable law and to instruct the jury as to that law." *Bausch & Lomb*, 79 F. Supp. 2d at 257; *see also Degelman Indus.*, 2011 WL 6754051, at *4–5 (allowing testimony on PTO procedures but barring testimony that, among other things, the "Plaintiff and its representatives failed to disclose material information to the PTO"); *Ideal World Mktg., Inc. v. Duracell, Inc.*, 15 F. Supp. 2d 239, 244 n.2 (E.D.N.Y. 1998) (barring testimony from trademark attorney expert who sought to offer purely legal analysis). This is consistent with the "well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions." *Sanders v. Mt. Sinai Sch. of Med.*, 418 F. Supp. 2d 339, 341–42 (S.D.N.Y. 2005).[4]

Deutsch now faults Hampton because—unlike Deutsch's expert Krugman—Hampton does not actually opine on whether Diageo committed fraud or whether the Bulleit bottle shape is distinctive. In Deutsch's view, Hampton should have focused on evaluating "the substance of [Diageo's] response" to the Examining Attorney and presented a legal opinion on the merits.[5] *See*

---

[4] Courts in other circuits recognize a similar distinction. *See, e.g.*, *Ass Armor, LLC v. Under Armour, Inc.*, 2016 WL 7156092, at *3 (S.D. Fla. Dec. 8, 2016) ("In intellectual property cases, courts generally have determined that testimony by a PTO expert may include information regarding PTO procedures and policies and practices, but should not involve opinion on legal issues." (citation omitted)); *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 WL 3528606, at *6 (D. Del. Aug. 16, 2017) (distinguishing between testimony on PTO policies and procedures and "testimony on substantive trademark law"); *In re Wellbutrin SR Antitrust Litig.*, 2010 WL 8425189, at *6 (E.D. Pa. Mar. 31, 2010) (granting motion to exclude PTO expert testimony that would explain "specific areas of patent law" and not just "relevant background information").

[5] Deutsch also argues that Hampton improperly testifies to the truthfulness of Diageo's outside counsel when he argued to the Examining Attorney that the shape of the Bulleit bottle design was distinctive. *See*

Deutsch Mot. at 10.  But that is precisely the type of testimony that courts regularly reject, since testimony on disputed legal issues in the case (such as whether the Bulleit Trade Dress was distinctive relative to other bottles) invades the province of the court and the jury.  *See, e.g.*, *Bausch & Lomb*, 79 F. Supp. 2d at 257.  Indeed, this is a reason why *Krugman*'s testimony on these issues must be excluded, not a reason to exclude Hampton's testimony.  *See generally* Krugman Exclusion Mot., ECF No. 228.

Contrary to Deutsch's motion, Hampton's testimony properly describes the process followed by Diageo and its counsel in the prosecution of the '812 Registration.  This testimony is directly relevant to the fraud claim.  It will provide critical context for the jury to understand a complex process followed by the PTO in reviewing trademark applications including the common practice of issuing preliminary refusals known as "Office Actions."  This kind of neutral overview of the process is particularly important as Deutsch repeatedly has attempted to mischaracterize the initial refusal of the PTO as some definitive determination of the invalidity of the application.  *See, e.g.*, Defs.' Am. Answer, Affirmative Defenses & Countercls., ECF No. 34, ¶ 69 (wrongly claiming that "the Examining Attorney put Diageo on notice of the invalidity of its alleged design" in the July 20, 2005 correspondence).

Equally meritless is Deutsch's bizarre argument that Diageo's reference to the numerous design awards won by Bulleit (and Hampton's comment on those awards) is irrelevant to the legal arguments for distinctiveness Diageo presented in good faith to the Trademark Office.  Deutsch Mot at 11.  Deutsch cites no authority for this proposition because it defies all logic.  The Bulleit

---

Deutsch Mot. at 11.  This is simply wrong: the cited portion of Hampton's report does not opine on substance, but only on the fact that Diageo's lawyers were making arguments typical for trade dress applicants in that context.  Hampton Report ¶ 58.  Hampton does not opine either on Diageo's counsel's state of mind at the time he made the representation or on whether the Bulleit Trade Dress was in fact distinctive.

Trade Dress has received numerous design awards precisely because it was an uncommon and highly innovative design that merited recognition by Diageo's peers.  This is potent evidence of how the design was perceived in the market and therefore probative of inherent distinctiveness.  *See Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1176 (C.D. Cal. 2010) ("FIJI has won international awards for print and packaging excellence and design innovation in the food packaging industry, which is strong evidence that its packaging is unique or unusual in the field and not simply a variation on existing bottled water designs.").

### III.   Hampton's Rebuttal Opinions Are Proper.

Diageo has moved to exclude Krugman and Saidman's testimony and, to the extent those motions are successful, the Court need not address the propriety of Hampton's rebuttal opinions in response to those proffered experts.  However, to the extent that the Court declines to exclude Krugman and Saidman's testimony, it should readily reject Deutsch's arguments to exclude Hampton's rebuttal opinions.  Deutsch does not deny that Hampton's rebuttal report responds to portions of the Krugman and Saidman reports; Deutsch merely contends that Hampton failed to "properly rebut" these reports.  *See* Deutsch Mot. at 12; *id.* at 12–15.  As with Deutsch's core misunderstanding of the purpose of PTO experts, its arguments reflect a similarly deep misunderstanding of the purposes of expert rebuttal.

"Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party."  *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008)); *see* Fed. R. Civ. P. 26(a)(2)(D)(ii) (allowing expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party").  Here, Hampton's rebuttal testimony serves the dual purpose of continuing to

explain PTO procedures to put Deutsch's expert testimony into context and of refuting key aspects of that testimony.

For example, Hampton critiques Krugman's reliance on third-party uses of purportedly similar products as misleading for two reasons: (1) "[w]hen evaluating whether similar container configurations exist in the relevant market, the Examining Attorney will consider the overall appearance of the trade dress," and (2) the Examining Attorney did not reference any third-party bottles with the same combination of features claimed in the '812 Registration and therefore likely did not find any such bottles. Hampton Rebuttal Report ¶ 11. Deutsch complains that Krugman's testimony was focused on the existence of third-party bottles about which the Examining Attorney might not have known, so Hampton's testimony is "irrelevant." *See* Deutsch Mot. at 12. Even if this were a proper subject of testimony by Krugman—and it is not, *see* Krugman Exclusion Mot. at 7–11, ECF No. 228—Hampton's rebuttal is directly responsive. Specifically, it clarifies that the Examining Attorney would only consider the overall appearance of the trade dress and third-party products in determining whether any similar configurations existed, and that the fact that the Examining Attorney did not identify any indicated that he had not found any in his own searches.

Hampton also critiques Krugman's conclusion that Deutsch's defenses of functionality, abandonment, and fraud were "properly raised . . . in the context of this civil action," Krugman Report at 11–13, noting that Krugman "fails to cite to any evidence that would support the proper raising of those defenses." Hampton Rebuttal Report ¶¶ 13–14. Deutsch now avers that Krugman "did not opine on the validity of these defenses, just that they could be raised at any time." *See* Deutsch Mot. at 13. Given the expansive scope of Krugman's report and the ways in which Krugman attempts to pass judgment on the validity of Diageo's statements to the PTO, however, this rebuttal by Hampton is plainly responsive to Krugman's testimony.

Deutsch's remaining arguments, once more, simply fault Hampton for not adopting Deutsch's expert's factual and legal conclusions wholesale. Deutsch criticizes Hampton for disagreeing with Krugman's interpretation of the Examining Attorney's initial request that Diageo identify the claimed features of the mark and disclaim any other features in dotted lines. *See* Deutsch Mot. at 12. Deutsch also criticizes Hampton's conclusion—in response to Saidman—that the standard for functionality in the design patent context is relevant to the standard for functionality in the trade dress context, and further argues that none of the statements made in the '271 Redemption Bottle Application can be attributable to Deutsch despite Deutsch's president and employees having represented under oath the patentability of the bottle design. *See id.* at 14– 15. Hampton's testimony engages with and rejects each of these conclusions. *See* Hampton Rebuttal Report ¶ 12 (explaining that Diageo did not "refuse[] to submit a drawing" disclaiming the shape of the bottle, but rather presented counter-argument as it was entitled to do); *id.* at 16 n.6 (rebutting Saidman's functionality analysis); Hampton Report ¶¶ 61–64 (explaining that Deutsch's employees executed declarations of assignment representing to the PTO that the Redemption bottle design was patentable). These disputes between experts are proper areas for cross-examination and development at trial—not grounds for exclusion now.

## IV.   Hampton's Challenged Deposition Testimony Is Admissible To The Extent Deutsch Questions Hampton On Similar Issues.

Finally, Deutsch seeks to exclude testimony by Hampton about whether Diageo can claim exclusive rights in certain aspects of the Bulleit Trade Dress. *See* Deutsch Mot. at 8–9 (citing Hampton Tr. 256:3–259:13, 261:25–266:20). Deutsch correctly notes that Hampton's written reports do not opine on what rights Diageo has in the Bulleit Trade Dress. Deutsch does not mention that the deposition testimony Deutsch cites was elicited in response to direct questioning by Diageo's counsel *only after* Deutsch's counsel had already asked Hampton a series of questions

about whether and how Diageo could claim exclusive rights in individual features of the Bulleit Trade Dress.  *See* Hampton Opp. Servodidio Decl. Ex. 4 (Hampton Deposition Transcript) 53:3–70:16.  To the extent that Deutsch pursues this line of questioning at trial—which would be inappropriate precisely because "[t]his claim is a legal opinion on an ultimate issue" to be included in the Court's instructions to the jury, not answered by an expert, *cf.* Deutsch Mot. at 9—Diageo retains the right to object and to introduce additional testimony from Hampton on this issue.  *See, e.g.*, *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480448, at *7 (S.D.N.Y. Dec. 29, 2015) (holding that when a party "open[s] the door" by introducing a certain form of expert testimony, that party "cannot complain" when the opposing party offers similar testimony in response).

## CONCLUSION

Based on the foregoing, Diageo respectfully requests that the Court deny Deutsch's motion to exclude the testimony of Philip G. Hampton, II and his accompanying report and rebuttal report.

Dated:   New York, New York
         January 12, 2021                              Respectfully submitted,


                                         By: /s/Gianni P. Servodidio_____
                                             Susan J. Kohlmann
                                             Gianni P. Servodidio
                                             Jacob D. Alderdice
                                             Allison N. Douglis
                                             JENNER & BLOCK LLP
                                             919 Third Avenue, 38th Floor
                                             New York, NY 10022
                                             Phone 212-891-1600
                                             Fax  212-891-1699
                                             gservodidio@jenner.com

                                             *Attorneys for Plaintiff Diageo North America, Inc.*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2021, true and correct copies of the foregoing Memorandum of Law in Opposition to Deutsch's Motion to Exclude the Testimony of Philip G. Hampton, II and supporting declaration and exhibits were filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

_____/s/ Jacob D. Alderdice_____
Jacob D. Alderdice
