# Exhibit 2

ATTORNEYS' EYES ONLY – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIAGEO NORTH AMERICA, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> W.J. DEUTSCH & SONS, LTD d/b/a DEUTSCH FAMILY WINE & SPIRITS and BARDSTOWN BARREL SELECTIONS LLC. <br><br> Defendants/Counterclaim Plaintiffs. | Case No. 1:17-CV-04259-LLS |

## REBUTTAL EXPERT REPORT OF PHILIP G. HAMPTON, II

### APRIL 12, 2019

**EXPERT REPORT OF PHILIP G. HAMPTON, II IN RESPONSE TO
THE EXPERT REPORTS OF GARY D. KRUGMAN AND PERRY J. SAIDMAN**

I.   **INTRODUCTION**

1. This constitutes a Rebuttal Expert Report prepared by me, Philip G. Hampton, II, pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), in connection with the above-referenced matter. This is the second expert report that I have prepared in this matter – on March 1, 2019, I provided an expert report containing my expert opinions and testimony regarding certain issues raised in the instant matter (the "Hampton Report").

2. I have been retained by counsel on behalf of the plaintiff, Diageo North America, Inc. ("Diageo"), to offer my expert opinions and testimony in rebuttal to certain opinions contained in the Expert Reports of Gary D. Krugman (the "Krugman Report"), and Perry J. Saidman ("the Saidman Report") provided on behalf of the Defendants, W.J. Deutsch & Sons, Ltd. And Bardstown Barrel Selections LLC (collectively, "Deutsch"), on March 1, 2019.

3. As an expert rebuttal witness for Diageo, I continue to be compensated at the rate of $750.00 per hour. My compensation does not depend on the outcome of this litigation, and I have no financial interest in that outcome. My qualifications are set forth in the Hampton Report.

4. The opinions stated in this Rebuttal Report are based on my education, background, knowledge and experience with trademark practice and procedure, the documents identified in Exhibit 4 to my opening report, and my review and analysis the Krugman and Saidman Reports.

5. I reserve the right to expand upon or modify my opinions and/or offer additional opinions in response to any information that becomes available to me in connection

with any matters raised by Defendants and/or any opinions provided by any other experts retained by Defendants.

## II. OVERVIEW OF OPINIONS

6. I have reviewed the Krugman Report and found that while much of the report offers a synopsis of trademark law, the background sections are so misleading such that a trier of fact, accepting Mr. Krugman's testimony, might be led to an incorrect decision regarding Deutsch's defenses regarding functionality, abandonment and fraud. Similarly, when discussing the purported appropriateness of those defenses, the Krugman Report again relies on misleading or incomplete descriptions.

7. I also reviewed the Saidman Report in which Mr. Saidman opines that the allowance of the '271 and '272 design patent applications should have no effect on the functionality defense pled by Deutsch. As explained below, it is my opinion that the allowance of the Defendant's design patent applications creates a presumption that the '812 Registration is not invalid for functionality.

## III. THE KRUGMAN REPORT MISINFORMS AS TO USPTO LEGAL STANDARDS

### A. Misleading Background Information

8. Diageo's trademark at issue consists of the Bulleit Trade Dress, *i.e.*, the overall appearance of the Bulleit whiskey bottle. Because whiskey is a liquid, a whiskey bottle is not the configuration of the product itself, but rather the configuration of its container—*i.e.*, product packaging. Therefore, references in ¶27 of the Krugman Report to "a configuration of the

goods themselves" is a red-herring, likely to confuse the trier of fact as to the nature of the trademark at issue in this case.[1,2]

9. Mr. Krugman's testimony at ¶29 of the Krugman Report that "most such configurations are not considered inherently distinctive" is unsupported by any record evidence or context. In my experience, there a substantial number of distinctive packaging configurations that are approved for registration by the USPTO without proof of secondary meaning.

10. Mr. Krugman's testimony in ¶30 of the Krugman Report regarding the requirements to show acquired distinctiveness under Section 2(f) of the Trademark Act is irrelevant and misleading. Since the '812 Registration became incontestable under 15 U.S.C § 1065 in 2012, its validity cannot be challenged on the grounds that it was not/is not distinctive or that it lacks secondary meaning.[3]

11. Moreover, Mr. Krugman's testimony at ¶30 of the Krugman Report regarding the existence of third party uses of the same or similar container configurations is misleading. When evaluating whether similar container configurations exist in the relevant market, the Examining Attorney will consider the overall appearance of the trade dress. TMEP § 1207.01(b)(iii). In this case, the Examining Attorney never referenced any third-party bottles containing the combination of features claimed in the '812 Registration and thus likely never found any such containers.

---

[1] It is black letter trademark law that while product configurations can never be inherently distinctive, product packaging can be. *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 212-13 (2000).
[2] At ¶28 of the Krugman Report, Mr. Krugman implies that to be inherently distinctive, product packaging must be "unique." However, the word "unique" does not appear in the TMEP as being a prerequisite to a finding of inherent distinctiveness.
[3] A trademark is deemed to be incontestable upon the acknowledgement by the USPTO that it has received a Declaration under Section 15 U.S.C. § 1065 of the Lanham Act attesting that the mark has been in continuous use for five consecutive years since its registration date.

12. Mr. Krugman's statement at ¶46 that Diageo "refused to submit a drawing showing the entire bottle design in dotted lines" is incorrect. Diageo's response to the Office Action was merely a routine argument of an applicant seeking to justify the scope of the protection being sought, which the Examining Attorney could then accept or reject. In the case of the '812 Registration, the Examining Attorney accepted Diageo's arguments and allowed for the medicine bottle-shaped bottle design to be included as part of the overall mark.[4]

B. **Lack of Evidentiary Support for Opinions**

13. In ¶¶49, 51 and 52 of the Krugman Report, Mr. Krugman concludes that Deutsch's defenses of functionality, abandonment and fraud were "properly raised by Defendants in the context of this civil action."[5] But Mr. Krugman fails to cite to any evidence that would support the proper raising of those defenses.

14. The Krugman Report is devoid of any facts or evidence that could lead one to find the entirety of Bulleit Trade Dress is functional or has been abandoned. Similarly, the Krugman Report does not cite to any facts or evidence that Diageo engaged in fraud on the Trademark Office. Instead, Mr. Krugman's "opinion" is merely a restatement of the undisputed point that the Trademark Act permits a party to challenge an incontestable registration on the various grounds set forth in the statute. *See* 15 U.S.C. § 1115.

---

[4] Mr. Krugman's discussions of "waiver" and piecemeal examination in his report are similarly misleading. Contrary to Mr. Krugman's statement that piecemeal examination is "not uncommon" (¶47), piecemeal examination is in fact rare, probably happening in fewer than 5 out of every 1000 cases.

[5] Moreover, Mr. Krugman's assertion that district courts give no deference to the Examining Attorney's determination of registrability in *ex parte* examination of trademark applications is incorrect, particularly within the Second Circuit. *See* 6 McCarthy on Trademarks and Unfair Competition § 32:95 (5th ed.) ("The Second Circuit Court of Appeals has stated that while the Patent and Trademark Office's *ex parte* refusal to register defendant's mark because of plaintiff's registration is not conclusive on likelihood of confusion, it is entitled to great weight"). *See, e.g., Cross Commerce Media, Inc, v. Collective, Inc.*, 841 F.3d 155, 165-166 (2d Cir. 2016).

## V. THE DEUTSCH DESIGN PATENTS SUPPORT A DETERMINATION THAT THE CONFIGURATION OF THE BULLEIT WHISKEY BOTTLE IS NOT FUNCTIONAL

15. While not entirely clear, the Saidman Report appears to have been submitted to challenge the legal relevance of U.S. Design Patent Application Nos. 29/613,271 ("the '271 application") and 29/613,272 ("the '272 application") to the functionality claim asserted by Defendants against Diageo's Bulleit Trade Dress Registration. Based on my review of his report, there are several serious flaws to Mr. Saidman's challenge.

16. First, the Saidman Report omits any mention of the fundamental statutory framework that informs the current analysis: *i.e.* design patents may only cover new, ornamental and ***non-functional subject matter***. 35 U.S.C. § 171.[6]

17. Second, while the Saidman Report acknowledges that "design patent drawings define the subject matter of the design patent for which exclusivity is sought," Report at 14, Mr. Saidman fails to cite any of the drawings from the '271 application that clearly show the objected to bottle shape. Such as, for example, Figure 5 of the '271 application discloses a medicine bottle-shaped bottle with rounded shoulders. This drawing clearly corresponds to the Redemption bottle at issue in this case:

---

[6] Mr. Saidman opines that the standard for determining trade dress non-functionality is very different from the standard for determining design patent non-functionality. Mr. Saidman agrees that "alternative designs" is a relevant factor for both but suggests that alternative designs is the only factor relevant to design patent non-functionality. But according to the Federal Circuit, "where the existence of alternative designs is not dispositive of the [non-functionality] inquiry, the district court may look to several other factors for its analysis: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patens; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329-30. Thus, a comparison of the full design patent non-functionality standard set forth in *Ethicon* with the trade dress non-functionality standard set forth in *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 1340-41, shows a great deal of similarity between the design patent and the trade dress non-functionality standards.



FIG. 5

18.     Notably, the shape of the Redemption bottle shown in Figure 5 of the '271 Application (including the rounded shoulders and taper) is ***not presented in dotted lines***. Thus, the specific shape of the bottle is being claimed by Defendants as part of the ornamental, non-functional subject matter of the application. Manual of Patent Examining Procedure ("MPEP") §§ 1503.01-02.

19.     Mr. Saidman seeks to avoid the clear relevance of the '271 and '272 applications by observing that the bottles set forth in the design patent applications are not lined to reflect "transparency," whereas the BULLEIT bottle at issue is made of "clear glass." But this observation is irrelevant since Defendants have argued that the ***medicine bottle shape*** of the BULLEIT bottle depicted in the '812 Registration is functional and transparency, or the lack thereof, is irrelevant to that argument. *See* Defendants' Amended Interrogatory Responses at 14

("bottles containing a common oval or oblong shape and rounded shoulders of the type shown in … Reg. No. 307582 are all functional"). However, the '271 application clearly discloses a medicine bottle-shape having rounded shoulders and taper, that has a strikingly similar *shape* to the Bulleit bottle, as a non-functional, ornamental design.[7]

20.    Mr. Saidman concludes his analysis by proclaiming that the "design patent applications claiming concavity was an important basis for the examiner allowing the applications." There are two problems with this proclamation – first, it is given without even a modicum of support, and second, it is antithetical to black letter design patent law "in determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety …" MPEP § 1504.01(c).[8]

21.    Finally, while beyond the scope of an expert report, Mr. Saidman's public policy arguments regarding the standards for trade dress and design patent non-functionality are misleading. Trade dress rights may last longer than design patent protection, but only if the owner of the trade dress rights, itself, continuously uses the trade dress in commerce, whereas the owner of design patent rights never has to use its design patent for the design patent to be enforceable. Moreover, trade dress rights are limited to particular goods and services, *i.e.*, trade dress rights can only be enforced when the third party is using the trade dress for related goods and services, whereas there are no limitations under design patent law.[9]

---

[7] "Since a design patent is granted only for non-functional designs, it may be presumptive evidence of non-functionality," McCarthy § 7.93.
[8] *See also L.A. Gear Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article.")
[9] For example, Diageo can only enforce its trade dress against the use of the mark for related goods and services, whereas Defendants could enforce design patent rights against anyone using the Redemption bottle shape – if a third party started selling kitty litter in a bottle shaped like the BULLEIT /Redemption bottle, Defendants alone would have a case of action.

22. In sum, in connection with Deutsch's design patent application for the Redemption liquor bottle design, the United States Patent and Trademark Office determined that the shape of the Redemption liquor bottle was ornamental and non-functional. Since the shape of the Redemption liquor bottle is clearly similar to the shape of the BULLEIT liquor bottle and design patents may only cover new, ornamental and non-functional subject matter, Mr. Saidman's report does not support his opinion that the allowance of the '271 and '272 applications are irrelevant to the functionality claim asserted by Defendants against Diageo's Bulleit Trade Dress Registration.

Date: 04/12/19                                   _____
                                                 Philip G. Hampton, II