# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DIAGEO NORTH AMERICA, INC.,

      Plaintiff/Counterclaim Defendant,

v.

                                   **ECF CASE**

W.J. DEUTSCH & SONS LTD d/b/a
DEUTSCH FAMILY WINE & SPIRITS,
and                             Case No. 1:17-cv-04259-LLS
 BARDSTOWN BARREL SELECTIONS LLC,

      Defendants/Counterclaim Plaintiffs.

**REBUTTAL REPORT OF PERRY J. SAIDMAN**

1.      My expertise and experience in design patent law are set forth in paragraphs 1-7 of my Expert Report of March 1, 2019.  My updated c.v., reflecting a recent publication, is attached.

2.      I have been asked to opine on portions of the Expert Report of Philip G. Hampton, II dated March 1, 2019 ("the Hampton report").  In particular, this rebuttal report is directed towards responding to paragraphs 60-64 of the Hampton report, which I have reviewed carefully.  I have also reviewed Mr.

Hampton's c.v. attached to his report as Exhibit 1.


3.      Notably, Mr. Hampton's c.v. indicated no experience with design patents.  In a search I conducted of United States Patent & Trademark (USPTO) records, Mr. Hampton's name does not appear on the cover of any design patents.


4.      In paragraph 60 of the Hampton report, he quotes the claim of Design Patent Application No. 29/613,271 ("the '271 application") as "the original ornamental design for a Bottle".  This quote is inaccurate.  The correct claim is: "the ornamental design for a Bottle, as shown and described".

The word "shown" in the claim refers to Figs. 1-10 of the '271 application. Figures 1-10 show the claimed Bottle in 10 different views, all of which must be taken into account when considering the patentability of the claim.

The "and described" language in the claim refers to the statement: "The broken lines in Figures 1-9 are for environmental purposes only and form no part of the claimed design."  Subject matter in broken lines is not to be considered by the USPTO in determining the patentability of the claim.  Note that Figure 10 was not included in this statement because Figure 10 has no broken lines.


5.      In addition, paragraph 60 of the Hampton report refers to the claim as being "for the accused Redemption bottle depicted above".  This is not accurate.

The accused Redemption bottle, depicted in Defendants' Exhibit 33, includes a large black label having the words "REDEMPTION Rye" prominently displayed, along with other verbiage.  The large black square label is not part of the drawings in the '271 application which is therefore not for the accused REDEMPTION bottle.

Moreover, the REDEMPTION Rye bottle to which the Hampton report refers includes embossed text both above and below the large black label, and embossed text is not shown in Figs. 1-10 of the '271 application.

Finally, as noted in paragraph 16 of my Expert Report of March 1, 2019, the '271 application does not claim a clear glass bottle, and my understanding is that the REDEMPTION bottle is clear glass.

For all of these reasons, it is a mischaracterization to say that the '271 application is "for the accused Redemption bottle".

6.     Even if the '271 application can be said to cover the accused Redemption bottle (which it does not per paragraph 5 above), the Redemption bottle is quite dissimilar to the Bulleit bottle (shown in Defendants' Exhibit 30) since the bottle claimed in the '271 application includes among other features a prominent concavity on the rear of the bottle, which, as noted in paragraph 17 of my Expert Report of March 1, 2019, was likely an important basis for the examiner allowing the '271 application. The Bulleit bottle has no such concavity.  Thus, the bottle

claimed in the '271 application has no bearing on the issues in this case.

7.    Paragraph 62 of the Hampton report states:

"The Redemption Design Patent Application claims as part of the invention the ornamental design for the Redemption bottle including the frontal view of the medicine shape of the bottle with rounded shoulders depicted below:"

The above quote refers once again to the design claimed in the '271 application as "for the Redemption bottle", which it is not, as noted in paragraph 5 above.

Moreover, there is no support for the statement above that the frontal view of the bottle in the '271 application is for a "medicine shape".

In addition, illustrating just the frontal view is misleading, since the '271 application includes 10 figures. Since patentability of a claimed design takes into account all figures shown in the application, illustrating just the frontal view is misleading, since six views (Figs. 2, 3, 4, 6, 9 & 10) of the '271 application clearly illustrate the concavity referred to in paragraph 6 above, a concavity which makes the bottle very dissimilar to the Bulleit bottle.

Representative Figs. 4 and 10 from the '271 application clearly show the concavity:



FIG. 4

FIG. 10

8.      Paragraph 63 of the Hampton report states:

> "Under USPTO practices and procedures, an application for a
> design patent may only be filed for non-functional features of a
> product.  35 U.S.C. 171; 37 C.F.R. 15.41."

It is a misstatement to say that an application for a design patent may only
be filed for non-functional features of a product. There is no pre-requisite to the
filing of a design patent application. Design patent applications may be filed for
all different kinds of products, whether they have functional and/or non-
functional features. Moreover, such a filing is not tantamount to an admission
that the claimed design has features that are non-functional.  In fact, all products
that are the subject of a filed design patent application have functional features;
the design application is examined to determine whether the overall design is
functional.

As stated by the Court of Appeals for the Federal Circuit:

> While we agree that certain elements of the device were functional, their functionality did not preclude those elements from having protectable ornamentation.

*Sport Dimension, Inc. v. Coleman Co.,* 820 F.3d 1316, 1321 (Fed. Cir. 2016).

9.      Functional features of a design do not disqualify it for design patent protection.  In other words, all claimed designs by their very nature include functional features, the presence of which does not preclude the design from being protected by a design patent.  It is the associated *appearance* of those functional features that count, and are properly the subject of a design patent.

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312 (Fed. Cir. 2015).

10.      Paragraph 63 of the Hampton report cites 35 U.S.C. 171 as support for the statement:

> "Under USPTO practices and procedures, an application for a design patent may only be filed for non-functional features of a product. 35 U.S.C. 171; 37 C.F.R. 15.41."

35 U.S.C. 171 states:

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The words "functional" and "non-functional" do not appear in Sec. 171. In fact, those words appear nowhere in the patent statute (35 U.S.C.).

Thus, 35 U.S.C. 171 does not support the statement in paragraph 63 of the

Hampton report.

11.     Paragraph 63 of the Hampton report also cites 37 C.F.R. 15.41 as support

for the statement:

> "Under USPTO practices and procedures, an application for a
> design patent may only be filed for non-functional features of a
> product. 35 U.S.C. 171; 37 C.F.R. 15.41."

However, 37 C.F.R. 15.41 does not exist.

Thus, the non-existent 37 C.F.R. 15.41 does not support the statement in

paragraph 63 of the Hampton report.

12.     When someone files a design patent application they are not conceding

that the design is nonfunctional.  Design patent applications are examined for

functionality, see The Manual of Patent Examining Procedure (M.P.E.P.)

1504.01(c) [R.07.2015].

13.     M.P.E.P. 1504.04(c) [R-07.2015] states:

> To be patentable, a design must be "primarily ornamental." "In
> determining whether a design is *primarily functional or primarily
> ornamental* the claimed design is viewed in its entirety, for the
> ultimate question is not the functional or decorative aspect of each
> separate feature, but the overall appearance of the article, in
> determining whether the claimed design is dictated by the
> utilitarian purpose of the article." See *L. A. Gear Inc. v. Thom McAn
> Shoe Co.*, 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed. Cir. 1993)
> (emphasis in original). The court in *Norco Products, Inc. v. Mecca*

*Development, Inc.*, 617 F.Supp. 1079, 1080, 227 USPQ 724, 725 (D. Conn. 1985), held that a "primarily functional invention is not patentable" as a design.

…

While ornamentality must be based on the entire design, "[i]n determining whether a design is primarily functional, the purposes of the particular elements of the design necessarily must be considered." See *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 240, 231 USPQ 774, 778 (Fed. Cir. 1986).

14.     All designs by definition consist of functional and ornamental features. This is because a patentable design must be "for an article of manufacture" (35 U.S.C. 171), and articles of manufacture inherently include functional features. As noted in paragraph 13 above, the USPTO examiner undertakes an evaluation of the features, and is instructed to weigh the functional features against the ornamental features to order to arrive at a conclusion of whether the design is primarily functional or primarily ornamental.  In other words, just because there's an ultimate determination by the examiner that a design is primarily ornamental does not negate the fact that the design – every design - has functional features.  Therefore, the bottle design in the '271 application includes functional features.

15.     In paragraph 64 of the Hampton report, it is stated that:

 "[W]hen the Defendant's representatives executed the declarations of assignment … they represented to the USPTO … that the shape of the REDEMPTION bottle – and any similar medicine bottle

shaped liquor bottle – was not functional."

First, there is nothing in the so-called declaration of assignment (a copy appears below) that represents that the design of the '271 application was not functional.  The only things attested to by the inventors in the declaration of assignment are that: (a) the application was made by us; (b) we are original joint inventors; and (c) we have reviewed and understand the contents of the specification, including the claims.

**Declaration/Assignment**
Bottle
0000045.0142 (131302)

**DECLARATION**

As a below named inventor, the undersigned hereby declares that the above-identified application was made or authorized to be made by me and that this declaration is directed to: the attached application, or United States application or PCT International application number 29/613,271 filed on August 9, 2017.

The undersigned believes that he/she is the original inventor or an original joint inventor of a claimed invention in the application.

The undersigned hereby states that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment specifically referred to above.

The undersigned hereby declares that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both. The undersigned acknowledge the duty to disclose information that is material to patentability as defined in 37 C.F.R. 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT International filing date of the continuation-in-part application.

**ASSIGNMENT**

The undersigned, having made the above invention and in consideration of and in exchange for good and valuable consideration, for which receipt is acknowledged, the undersigned hereby assigns to the Assignee, noted below, including its successors, assigns, heirs, administrators, all of the undersigned's right, title and interest in and to the above-titled invention, any and all patent applications therefore and to any and all patents which may evolve therefrom. The undersigned also assigns all of their right, title and interest in and to said invention in all foreign countries, all applications for Letters Patent in foreign countries on said invention and any Design Patents which may evolve therefrom, including the right to claim International Convention priority. The undersigned further agrees to execute any papers or perform any acts required to establish, vest or protect the Assignee's rights therein or required by Assignee to obtain said patent, without any additional payment therefore.

Assignee:    Berlin Packaging, LLC
Address      525 West Monroe, Suite 1350 Chicago, IL 60661

(1)    Inventor Name:    Liam Hawry              Country of Citizenship _____

City and State of Residence      Chicago, IL

Inventor's signature _____    Date 8/9/17

(2)    Inventor Name:    Cortney Provini          Country of Citizenship   US

City and State of Residence      Dumont, NJ

Inventor's signature _____    Date 8.22.17

When an inventor signs a declaration such as that shown above, he/she is not required to be familiar with the law, and thus their signatures do not imply a legal finding or conclusion.

Second, there is no basis for asserting that the design claimed in the '271 application was a medicine bottle, or a liquor bottle.  It could be any type of bottle.

Third, there is no basis for asserting that the design of the '271 application covers any similar bottle.  The USPTO does not determine infringement, which ultimately determines what a claimed design covers.  Such a determination can only be made during litigation by a court that reviews the issued design patent and analyzes the prior art in order to determine the meaning and scope of the design patent claim, which is then compared to an accused design.  The only assertion in the design patent claim is that it covers the design "as shown and described".

Fourth, any assertion in a design patent application that the claim covers similar designs would be rejected by the USPTO:

> "The use of language such as "or the like" or "or similar article" in the title [and claim] … is indefinite when it refers to the area of articles defining the subject matter of the design." M.P.E.P.  1503.01 [R-08.2017]).

All statements made herein and on my own knowledge are true and all statements made herein on information and belief are believed to be true, and these statements are made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

April 18, 2019             /Perry J. Saidman/

                                       Perry J. Saidman

**Perry J. Saidman**

SAIDMAN **DESIGNLAW** GROUP, LLC
8601 Georgia Avenue, Suite 603
Silver Spring, Maryland 20910
O:  301-337-3223 | M: 202-236-0753
*perry.saidman@designlawgroup.com*

**POSITIONS:**

1990 - Present:   Founder - SAIDMAN **DESIGNLAW** GROUP, LLC, a law firm specializing in legal issues involving designs and product configurations.

1980 - 1990:   Founding partner - Saidman, Sterne, Kessler & Goldstein, Washington, D.C., 1980-1986, Managing Partner;  1987-1990, head of Industrial Design Group.

**EDUCATION:**

1973 - J.D. (with honors), National Law Center, The George Washington University, Washington, D.C.

1968 - M.S.E., The Moore School of Electrical Engineering, University of Pennsylvania, Philadelphia, PA  (Ford Foundation Fellowship).

1967 - B.S.E.E., School of Engineering and Applied Science, The George Washington University, Washington, D.C. (four year Trustee Scholarship).

**CAREER HIGHLIGHTS:**

■   Represented successful plaintiff/patentee at trial level and on appeal in *Avia Group International v. L.A. Gear California, Inc.*, 853 F.2d 1557, 7 USPQ2d 1548 (Fed. Cir. 1988) - The Court of Appeals for the Federal Circuit affirmed the lower court's findings of validity, willful infringement and attorney fees based upon two design patents, all on a motion for summary judgment.

■   Authored *amicus curiae* brief on behalf of Apple Inc. in *en banc* rehearing of *Egyptian Goddess v. Swisa* before U.S. Court of Appeals for the Federal Circuit  (2008)

■   Authored *amicus curiae* brief in *Samsung v. Apple* before U.S. Supreme Court (2016).

■   Adjunct Professor of Law, George Washington University Law School (teaching Design Law).

■   Member, Special Subcommittee of AIPLA Industrial Designs Committee studying the Fashion Bill legislation and drafting resolution for the AIPLA Board of Directors.

■   Testified before U.S. House of Representatives, Judiciary Committee, in hearing on "Design Patents & Auto Replacement Parts" (H.R. 3059), March, 2010.

■   Founder and Executive Director of the Design Registration League, a coalition of companies,

associations and individuals  (founded 2007)  with the goal of enacting a *sui generis* design registration law.

- ■ Founder and First Chair of the Industrial Designs Committee (established in 1988) of the American Intellectual Property Law Association

- ■ Keynote speaker and panel discussion leader at the First National Conference on Industrial Design Law & Practice, March, 1989 in Baltimore, Maryland.

- ■ Founder and Co-Chair, Design Protection Section, Industrial Designers Society of America.


*AMICUS CURIAE* **BRIEFS:**

Brief for *Amici Curiae* Bison Designs, LLC; Deckers Outdoor Corporation; Design Ideas, Ltd.; Kohler Co.; KRC Capital B.V.; Lutron Electronics, Inc.; Method Products, PBC; Novo Nordisk, Inc.; Nuelle, Inc.; Nuvasive, Inc.; Oakley, Inc.; Sun Products Corporation; SZ DJI Technology Ltd.; and Thule Group in Support of Respondent Apple Inc., *Samsung Electronics Co., Ltd., et al., v. Apple Inc.*, in the Supreme Court of the United States, August 5, 2016.

Brief for *Amici Curiae* Design Ideas, Ltd., Novo Nordisk, Inc., Lutron Electronics, Inc., NuVasive, Inc., Method Products, PBC, Oakley, Inc., Deckers Outdoor Corporation, and Kohler, Inc. in Support of Plaintiff-Appellee, *Apple Inc. v. Samsung Electronics Co., Ltd. et al.*, in the United States Court of Appeals for the Federal Circuit, August 4, 2014.

Brief for *Amicus Curiae* Apple Inc. in Support of Petition for Rehearing En Banc, *Richardson v. Stanley Works, Inc.*, No. 2009-1354, United States Court of Appeals for the Federal Circuit, April 22, 2010.

Brief for *Amicus Curiae* Apple Inc., *Egyptian Goddess, Inc., et al v. Swisa, Inc.*, et al. in the United States Court of Appeals for the Federal Circuit, February 5, 2008.


**MISCELLANEOUS:**

- ■ Design Law Mediator.  Member, World Intellectual Property Organization  (WIPO) Arbitration and Mediation Center List of Neutrals.  Member, INTA Panel of Neutrals.
- ■ Member, Washington Ethical Society.
- ■ Registered to practice before U.S. Patent and Trademark Office.
- ■ Member of:  Intellectual Property Owners Association  (Design Rights Committee); American Intellectual Property Law Association  (Founder & Member, Industrial Designs Committee);  Industrial Designers Society of America  (Founder & Member, Design Protection Committee);   the International Trademark Association (INTA)  (Design Rights Subcommittee).


**PUBLICATIONS:**

 "The Ornamental/Functional Dichotomy in Design Patent Law is Akin to the Idea/Expression Dichotomy in Copyright Law", 78 *BNA's Patent, Trademark & Copyright Journal* 199, June 12, 2009.

"Functionality and Design Patent Validity and Infringement", 91 *Journal of the Patent and Trademark Office Society (JPTOS)* 313, May, 2009.

"Design Patents Sunk in International Seaway", 83 *BNA's Patent, Trademark & Copyright Journal* 278, December 23, 2011.

"Describing A Design – When Enough is Enough!", 97 *Journal of the Patent and Trademark Office Society (JPTOS)* 256 (2015).

"The Demise of the Functionality Doctrine in Design Patent Law", 92 *Notre Dame L. Rev.* 1471 (2017).

"Determining the 'Article of Manufacture' Under 35 U.S.C. § 289", 99 *J. Pat. & Trademark Off. Soc'y.* 349 (2017).

"Design Patent Damages:  A Critique of the Government's Proposed 4-Factor Test for Determining the 'Article of Manufacture' " *IP Theory, Maurer School of Law, Indiana University (*Vol. 8, Issue 1, Article 3) (2019).


**PRESENTATIONS/SPEECHES:**

*"Egyptian Goddess Exposed"*, Eleventh Annual Richard C. Sughrue Symposium on Intellectual Property Law & Policy, University of Akron School of Law, Akron, OH, March 9, 2009.

*"Design Patents in the 21st Century:  Did Egyptian Goddess Miss the Boat?"*, USC Gould School of Law 2009 Intellectual Property Institute, Beverly Hills, CA, March 17, 2009.

*"Protection of Trade Dress and Product Design"*, International Trademark Association's 131st Annual Meeting, Seattle, WA, May 18, 2009.

*"Functionality and Design Patent Infringement: Jilted By Our Egyptian Goddess"*, American Intellectual Property Law Association Annual Meeting, Washington, DC, October 16, 2009.

*"Design Patents"*, Japanese Intellectual Property Association, 2009 Seminar, Washington, DC, October 29, 2009.

*"Best Practices for Protecting Product Shapes and Designs: Design Patent and Trade Dress Perspectives"*, 23rd Annual Texas State Bar Advanced Intellectual Property Law CLE Workshop, Austin, Texas, March 3, 2010.

*"Design Law Today - The Interplay of Trade Dress, Copyright, and Design Patent Law"*, D.C. Bar, March 11, 2010.

*"Functionality,* Egyptian Goddess*, and the Point of Novelty: A Non-Obvious Combination"*, USPTO Design Day, April 6, 2010.

*"Optimizing U.S. Design Patent and Trade Dress Protection and Enforcement in Light of the* Egyptian Goddess *en banc Federal Circuit Opinion"*, INTA Annual Meeting, Boston, MA, May 23, 2010.

*"Strategic Use of Design Patents – Utility & Design Patent Overlap – Update on* Egyptian Goddess*",* 11th Annual Silicon Valley Advanced Patent Law Institute, Palo Alto, CA, December 9-10, 2010.

*"The Latest Skinny on Design Patents – Including* Egyptian Goddess *Update"*, Kansas Bar Association, Intellectual Property CLE, Overland Park, Kansas, May 6, 2011.

*"Gypped by* Egyptian Goddess*"*, AIPLA Industrial Designs Committee, October 20, 2011.

3

*"Strategic Use of Design Patents – Including* Egyptian Goddess *Update"*, 16th Annual Advanced Patent Law Institute, University of Texas School of Law, Austin, Texas, October 28, 2011.

*"Latest Information About U.S. Design Protection"*, Japan Patent Office, Tokyo, Japan, October 31, 2011.

*"Latest Information About U.S. Design Protection"*, INFOPAT lecture, Tokyo, Japan, November 1, 2011.

*"Latest Information About U.S. Design Protection"*, Asian Patent Agents Association  (APAA), Tokyo, Japan, November 2, 2011.

*"Introduction to U.S. Design Law"*, All China Patent Attorneys Association  (ACPAA), Beijing, China, November 8, 2011.

*"Design Patent Prosecution Before the USPTO"*, All China Patent Attorneys Association  (ACPAA), Beijing, China, November 8, 2011.

*"U.S. Design Patent Infringement"*, All China Patent Attorneys Association  (ACPAA), Beijing, China, November 8, 2011.

*"Strategic Use of Design Patents – Including* Egyptian Goddess *Update"*, 7th Annual Advanced Patent Law Institute, U.S. Patent & Trademark Office, Alexandria, Virginia, January 20, 2012.

*"Strategic Issues in U.S. Design Protection:  Choosing Between Trade Dress, Design Patent and Copyright"*, INTA Annual Meeting, Washington, DC, May 7, 2012.

*"Functionality:  The U.S. Perspective"*, INTA Design Protection Conference, Copenhagen, Denmark, September 10, 2012.

*"Enforcement:  The U.S. Perspective"*, INTA Design Protection Conference, Copenhagen, Denmark, September 11, 2012.

*"Conflict Between Patents & Trade Dress in the U.S. - Past, Present & Future"*, INTA Design Protection Conference, Copenhagen, Denmark, September 11, 2012.

*"Functionality at the Intersection of Patents & Trademarks"*, All Ohio Annual Institute on Intellectual Property, Cleveland and Cincinnati, Ohio, September 20-21, 2012.

*"The Aftermath of* Egyptian Goddess*"*, All Ohio Annual Institute on Intellectual Property, Cleveland and Cincinnati, Ohio, September 20-21, 2012.

*"The Scope of U.S. Design Patents in The Aftermath of* Egyptian Goddess*"*, The Future of Design Law, University of Oxford, England, November 2-3, 2012.

*"U.S. Design Law Exposed! Functionality, Infringement and Design Registration"*, The Institute of Trade Mark Attorneys, Marks & Clerk LLP, Manchester, England, November 5, 2012.

*"Life After* Egyptian Goddess*"*, Chartered Institute of Patent Attorneys, Class 99 Blog, Chartered Institute of Patent Attorneys Hall, London, England, November 6, 2012.

4

*"Trade Dress and Design Patents"*, 4th Annual Intellectual Property Symposium, The Florida Bar CLE, West Palm Beach, FL, March 22, 2013.

*"U.S. Design Patent Infringement & Functionality"*, Stanford Program in Law, Science & Technology, Stanford Law School, April 5, 2013.

*"Functionality:  Design Patent v. Trade Dress Comparison"*, *"U.S. Design Patent Infringement"*, *"Design Patent Overlap with Other Bodies of Law"*, Design Patents:  Modernizing an Old Property Interest, Suffolk University Law School Center, Boston MA, November 22, 2013.

*"Best Practices in Design Patent Prosecution in View of* In re Owens, *and What Lies Ahead"*, 18th Advanced Patent Law Institute, University of Texas Law School, Austin, TX, October 31, 2013.

*"Design Patents:  The Good, The Bad, and The Ugly"*, 10th Annual Advanced Patent Litigation Course, Texas Bar CLE, San Antonio, TX, July 17, 2014.

*"Functionality is Dead"*, Design Law 2014, George Washington University Law School, November 21, 2014.

*"Design Patents:  The Good, The Bad, and The Ugly"*, 10th Annual Advanced Patent Law Institute, University of Texas, USPTO, Alexandria, VA, March 12-13, 2015.

*"Functionality"*, Fourth Annual Naples Patent Law Experts Conference, The University of Akron School of Law, Naples, FL, February 8, 2016.

*"Anticipation"*, Design Law 2016, George Washington University Law School, October 14, 2016.

*"Functionality"*, 2016 Notre Dame Law Review Symposium, University of Notre Dame Law School, South Bend, Indiana, Nov. 11, 2016.

*"Mock Oral Argument:  How Prosecution Affects Enforcement"*, USPTO Design Day, April 25, 2017.

*"Protecting Designs in the U.S.:  Major Factors in Evaluating Trade Dress, Copyright and Design Patent Protection"*, INTA 2017 Annual Meeting, Barcelona, Spain, May 22, 2017.

*"The Demise of the Functionality Doctrine in Design Patent Law"*, 2017 IP Colloquium, Center for Intellectual Property Research, Indiana University Mauer School of Law, August 24, 2017.

*"Design Patents:  Anticipation, Functionality & Damages"*, 27th All Ohio Annual Institute on Intellectual Property, Cleveland and Cincinnati, Ohio, September 13-14, 2017.