# Exhibit 4

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - -x

4   DIAGEO NORTH AMERICA, INC.,:

5           Plaintiff,          :

6   v.                          :  CASE NO. 1:17-CV-04259-LLS

7   W.J. DEUTSCH & SONS, LTD    :

8   D/b/a DEUTSCH FAMILY WINE   :

9   & SPIRITS and BARDSTOWN     :

10  BARREL SELECTIONS, LLC,     :

11           Defendants.        :

12  - - - - - - - - - - - - - -x

13

14

15

16       Videotaped Deposition of PHILIP HAMPTON, II

17                   Washington, D.C.

18                Friday, June 4, 2019

19                     9:34 a.m.

20

21

22

23  Job No.:  30396

24  Pages 1 through 286

25  Reported by:  Cassandra E. Ellis, RPR

1        Q     Is that the ridged edge?

2              MR. SERVODIDIO:  Objection,

3        vague and ambiguous, outside the

4        scope.

5        A     I don't believe it is the

6     ridged edge.

7        Q     And is the arrow-shaped text

8     divider on the label depicted anywhere in

9     the drawing of the mark that appears on

10    the `812 registration?

11       A     I -- I said it's not depicted

12    on the image of the Bulleit bottle in the

13    `812 registration.

14       Q     And is it -- withdrawn.

15             It's your position that even

16    though the element of arrow-shaped

17    text divider on the label is not

18    depicted in the drawing of the mark

19    for the `812 registration that the

20    element is still protected by the `812

21    registration?

22       A     I believe --

23             MR. SERVODIDIO:  Object to

24       form, outside the scope.

25       A     Again, I believe the -- that

```
 1    element is part of the label design which

 2    is claimed.

 3        Q     And it's your position that the

 4    use of the words "label design"

 5    sufficiently covers the elements of

 6    arrow-shaped text divider on the label?

 7              MR. SERVODIDIO:  Vague and

 8        ambiguous, outside the scope.

 9        A     I think, in this situation, it

10    does.

11        Q     How so?

12        A     I think that the label is part

13    of the overall Trade Dress of the Bulleit

14    bottle.  And, you know, everything on the

15    label is -- is not separately called out.

16    But I think it is -- that the label is

17    the label, and what is on the label is

18    part of the registration, and that

19    includes the arrow-shaped text divider on

20    the label.

21        Q     And what other elements of the

22    label does that include that are not

23    expressly called out in the description

24    of the mark or the drawing of the mark?

25              MR. SERVODIDIO:  Objection,
```

1      beyond the scope of the opening

2      rebuttal reports, asked and

3      answered.

4      A      There appears to be other

5    things on that label, but my eyesight is

6    such that I can't make it out.

7      Q      Understood.

8             I think there is a bigger

9    picture in the file wrapper, that we

10   marked previously as Exhibit 42.  If you

11   go to the second to last page you might

12   be able to see that one better.

13     A      Okay.

14     Q      Do you see any words on the

15   page Diageo 38094 that are included in

16   the label for the Bulleit Bourbon

17   packaging but are not expressly

18   identified in the `812 registration?

19     A      Kentucky straight bourbon

20   whiskey.

21     Q      Anything else?

22     A      I can't make out the something,

23   something, the Bulleit Distilling

24   Company.

25     Q      Mm-hmm.  And is it your opinion

1   that all of those words are also

2   contained in and protected by the `812

3   registration?

4          MR. SERVODIDIO:  Objection,

5      compound, outside the scope of

6      opening and expert reports, vague

7      and ambiguous, confusing.

8      A    I believe that the `812

9   registration covers the Bulleit Trade

10  Dress.  And the Bulleit Trade Dress is --

11  the Bulleit Trade Dress includes the

12  label, so it would include the words on

13  the label.

14     Q    Understood.

15          And have you seen the -- a

16  Bulleit product in the marketplace

17  before?

18     A    Yes, I have.

19          MR. SERVODIDIO:  Asking the

20     witness to give me a chance to

21     make an objection before -- I know

22     we want to get out of here, but

23     give me a chance to object.

24          MS. KOROTKIN:  It gets hard.

25          MR. SERVODIDIO:  Vague and

1           ambiguous as to product.   There

2           are many Bulleit products.   You

3           can answer.

4     BY MS. KOROTKIN:

5           Q      Well, we can ask a different

6     way.

7                  Have you had occasion to see a

8     Bulleit Bourbon bottle in the 750

9     milliliter size in the marketplace

10    before?

11          A      Yes.

12          Q      And sitting here today, do you

13    recall what the neck of that product

14    looked like, was it covered by anything?

15                 MR. SERVODIDIO:   Objection,

16          compound, vague and ambiguous.

17          A      I think some of it may have

18    been covered by -- the neck is -- but I

19    think some of it was covered by black

20    wrapper or something.

21                 MS. KOROTKIN:   Mm-hmm.

22          Yeah.  I have something that can

23          help us.  Hold on one second.

24          Just show you what's been

25          previously marked as Exhibit 30.

```
 1              (Previously marked Exhibit
 2         No. 30 was identified.)
 3    BY MS. KOROTKIN:
 4         Q     This is photographs a Bulleit
 5    Bourbon bottle.
 6         A     Yep.
 7         Q     And what do you -- how would
 8    you describe the feature at the top of
 9    the bottle?
10              MR. SERVODIDIO:  Objection,
11         irrelevant, outside the scope.
12         A     What do you mean, the feature
13    at the top of the bottle?
14         Q     You mentioned there being
15    plastic at the top of the bottle.
16         A     Well, I mean, it looks like
17    there's plastic over -- over -- over -- I
18    know there's plastic over the cap,
19    because I opened it, and -- and so that
20    would be, I guess, the feature.  I mean,
21    it kind of covers up -- I think it's -- I
22    think there's a -- it's -- first time I
23    opened it up, kind of interesting that
24    it's cork and not a normal screw cap.
25    Maybe I was used to drinking cheaper
```

```
 1    liquor usually.

 2        Q      Understood.

 3               And is it your opinion that the

 4    plastic that covers the bottle cap is

 5    also part of the Trade Dress?

 6               MR. SERVODIDIO:  Objection,

 7        vague and ambiguous.

 8        A      I believe that -- that it is,

 9    again, part of the Trade Dress, as a

10    whole, but it is not separately

11    protectable.

12        Q      Understood.

13               And quickly going through these

14    elements in paragraph 22 of your report,

15    for the Bulleit Trade Dress, the first

16    bullet point identifies a clear,

17    canteen-shaped glass bottle, with rounded

18    shoulders; do you see that?

19        A      Yes.

20        Q      Is it your opinion that that

21    element is separately protected by the

22    `812 registration?

23               MR. SERVODIDIO:  Objection,

24        vague and ambiguous, outside the

25        scope.
```

1      A      I believe it is part of the --

2   of the -- yes, I believe it is part of

3   the Trade Dress of the `812.

4      Q      And is it protected by the `812

5   registration as a standalone feature?

6             MR. SERVODIDIO:  Asked and

7        answered, vague and ambiguous,

8        outside the scope, and calls for a

9        legal conclusion.

10     A      I believe it -- I mean, it's --

11  it -- the canteen shape is the -- is

12  the -- the shape of the bottle.  That is

13  part of the Trade Dress.  Whether, you

14  know, it is -- I don't know if you could

15  say it would be separately protected,

16  because I don't know how you would

17  separately protect that, an element of --

18  of -- of Trade Dress, because at the end

19  of the day you have to look at a Trade

20  Dress as the -- as the entire image.  I

21  mean, it's -- like in two pesos you

22  couldn't take out the sombrero and say

23  that is where a sombrero might not have

24  been separately protected.  It was part

25  of the overall Trade Dress.

DIAGEO NORTH AMERICA vs W.J. DEUTSCH & SONS LTD                 Job 30396
Philip Hampton June 04, 2019                                    Page 60

1             It's just like here, you know,

2    it is part of the overall Trade Dress or,

3    in the old days, we said getup of the --

4    of the bottle.

5        Q      Understood.

6             And does the `812 registration

7    cover all versions of a clear,

8    canteen-shaped glass bottle, with rounded

9    shoulders?

10            MR. SERVODIDIO:   Objection,

11        calls for a legal conclusion,

12        outside the scope, vague and

13        ambiguous.

14        A    No.

15        Q    Why not?

16        A    Because the --

17            MR. SERVODIDIO:   Same --

18        same objections, outside the

19        scope, vague and ambiguous, calls

20        for a legal conclusion, outside

21        the scope of the report.

22        A    Because the Trade Dress is more

23    than just a canteen shape.  I mean,

24    they're -- we put out a number of

25    elements that are part of the Trade

1   Dress, so you can't -- so, you know, it

2   -- I cannot say unequivocally that a

3   canteen -- a canteen-shaped glass bottle,

4   that -- that -- that -- Bulleits -- I

5   cannot say that the Bulleit Trade Dress

6   would cover all clear glass,

7   canteen-shaped bottles, with rounded

8   shoulders.

9        Q       Understood.

10               Does the `812 registration

11   cover -- withdrawn.

12               Is there any size limitation

13   for the clear, canteen-shaped glass

14   bottle, with rounded shoulders,

15   element of the `812 registration?

16               MR. SERVODIDIO:  Object to

17        form, vague and ambiguous as to

18        size limitation, calls for a legal

19        conclusion.

20        A       Again, the answer's yes and no.

21   And it's -- and I -- I say -- and the

22   reason is, you know, I -- size is a very

23   nebulous word, and I think that if you

24   greatly alter the dimensions of the -- of

25   the can- -- of the canteen shape then you

1   will not -- then it would not depict the

2   Bulleit Trade Dress.

3        Q       Understood.

4                And just so I understand

5   you, when you say, "the dimensions,"

6   which dimensions are you referring to?

7        A       I'm referring to almost all the

8   dimensions, I mean, there's -- there's a

9   certain, you know, I don't want to say

10  width, you know, but the -- I mean, the

11  canteen-shaped bottle is in certain

12  proportions.  If you change some of those

13  proportions you would change, in my mind,

14  the -- you might still have a canteen

15  shape, but you would not have a canteen

16  shape depicted in -- in -- in the `812

17  registration.

18       Q       Understood.

19               And is it your opinion that the

20  `812 registration covers the Bulleit

21  bottle packaging in a 375 milliliter

22  size?

23               MR. SERVODIDIO:  Object to

24       form, vague and ambiguous, outside

25       the scope, calls for a legal

1        conclusion.

2        A      I cannot recall seeing a 375

3    milliliter bottle, so I have no opinion.

4        Q      Okay.  You would agree with me

5    that `812 registration isn't limited to a

6    750 milliliter size canteen-shaped

7    bottle?

8             MR. SERVODIDIO:  Objection,

9        compound, vague and ambiguous,

10       calls for a legal conclusion as to

11       limited.

12       A      No, so long as that other size

13   bottle had the same proportions as the

14   bottle depicted in the `812 registration.

15       Q      Understood.

16             Also on paragraph 22, your

17   second bullet point for the Bulleit

18   Trade Dress, is:  Embossed brand name

19   above the label.  Is it your opinion

20   that that element covers any embossed

21   brand name above the label?

22             MR. SERVODIDIO:  Objection,

23       outside the scope.

24       A      Again, it cannot cover -- no.

25   Well, maybe I should not say again.  No

1    is the answer.

2         Q      What embossed brand name does

3    it cover?

4              MR. SERVODIDIO:  Object to

5         form, vague and ambiguous.

6         A      It would -- it would cover an

7    embossed brand name of a spirits bottle

8    that had a clear canteen shape, an arched

9    line above the text, and possibly some of

10   the other elements that I depicted.

11              Again, you can't -- you don't

12   necessarily have to have all the

13   elements, but you have to have more than

14   one, I believe.

15        Q      And is it your position that

16   the `812 registration just covers the

17   idea of embossed brand names above a

18   label?

19              MR. SERVODIDIO:  Vague and

20        ambiguous as to idea, outside the

21        scope.

22        A      That's my -- that's my request

23   is what do you mean by idea?

24        Q      Well, I believe you said

25   it's -- the `812 registration the

1    embossed brand name element isn't limited

2    to one specific brand name?

3                  MR. SERVODIDIO:  Objection,

4         vague and ambiguous.

5         A     Did I say that?

6                  MR. SERVODIDIO:  Misstates

7         his --

8                  MS. KOROTKIN:  I may have

9         misunderstood what you said.

10   BY MS. KOROTKIN:

11        Q     I think I -- my question,

12   before, was -- I can just read it back.

13                  I said:  What embossed brand

14   name does it cover.  And you said:  It

15   would cover an embossed brand name of

16   a spirits bottle that had a clear

17   canteen shape, and arched line above

18   the text, and possibly some of the

19   other elements that I depicted.

20   Again, you can't -- you don't

21   necessarily have to have all the

22   elements, but you have to have more

23   than one, I believe.

24        A     So what's your --

25                  MR. SERVODIDIO:  So what's

1          the question?

2    BY MS. KOROTKIN:

3          Q     Does the `812 registration

4    cover the idea of an embossed brand name

5    above the label?

6               MR. SERVODIDIO:  I'm going

7          to say, still, object, vague and

8          ambiguous as to idea, outside the

9          scope of the report, calls for a

10         legal analysis.

11         A     Yeah, I don't know what you

12   mean by cover the idea.

13         Q     Do you believe that `812

14   registration gives Diageo exclusive

15   rights to the use of an embossed brand

16   name above a label on a bottle?

17              MR. SERVODIDIO:  Outside the

18         scope, calls for -- obviously

19         calls for a legal conclusion,

20         beyond the scope.

21         A     No, it -- it -- Diageo does not

22   have exclusive rights for any brand name

23   above a label.  But unless that brand

24   name above the label is part of a clear,

25   canteen-shaped glass bottle, with rounded

1      shoulders, and -- and -- and there is

2      some sort of arching text above the top

3      line of the embossed brand name.

4          Q     Understood.

5                So for each of the elements

6      you've identified in paragraph 22 of your

7      opening report, as constituting the

8      Bulleit Trade Dress, is it fair to say

9      you believe that Diageo does not own

10     exclusive rights to any one of those

11     elements separate and apart from the

12     others?

13                MR. SERVODIDIO:  Object,

14          vague and ambiguous, calls for a

15          legal conclusion, outside the

16          scope of the report, misstates his

17          testimony.

18                THE WITNESS:  After all

19          that, I'm going to need you to

20          repeat the question because I

21          don't quite understand the last

22          part of it.

23     BY MS. KOROTKIN:

24          Q     Okay.  Well, we can also just

25     go through them one by one.  It might

1    make it simpler.

2                   I believe you may have

3    answered this already, but just to

4    confirm, is it your opinion that

5    Diageo does not own exclusive rights

6    to the standalone element of a clear,

7    canteen-shaped glass bottle, with

8    rounded shoulders?

9                   MR. SERVODIDIO:  Objection,

10        asked and answered, vague and

11        ambiguous, outside the scope of

12        the report.

13        A     I agree, Diageo does not have

14   exclusive rights to a clear,

15   canteen-shaped glass bottle, with rounded

16   shoulders.

17        Q     And do you agree that Diageo

18   does not own exclusive rights to the

19   standalone element of an embossed brand

20   name above the label?

21                  MR. SERVODIDIO:  Objection,

22        calls for a legal conclusion,

23        outside the scope of the report.

24        A     I agree with that statement.

25        Q     And do you agree that Diageo

1    does not own exclusive rights to the

2    standalone element of arched text in the

3    top line of the embossed brand name?

4            MR. SERVODIDIO:  Objection,

5        calls for a legal conclusion,

6        outside the scope of the report.

7        A     I agree with that statement.

8        Q     And do you agree that Diageo

9    does not own exclusive rights to the

10   standalone element of convex text divider

11   between components of the embossed brand

12   name, e.g., Bulleit Bourbon separated

13   from Frontier Whiskey?

14           MR. SERVODIDIO:  Objection,

15       calls for a legal conclusion,

16       outside the scope of the report.

17       A     I agree with that, too.

18       Q     And do you agree with the

19   statement that Diageo does not own

20   exclusive rights to the standalone

21   element of arrow-shaped text divider on

22   the label?

23           MR. SERVODIDIO:  Objection,

24       calls for a legal conclusion,

25       outside the scope.

1        A     I agree with that, too.

2        Q     And do you agree with the

3    statement that Diageo does not own

4    exclusive rights in the standalone

5    element of border of parallel lines on

6    the label?

7              MR. SERVODIDIO:   Same

8        objections.

9        A     Same agreement.

10       Q     And do you agree that Diageo

11   does not own exclusive rights to the

12   standalone element of cork bottle cap

13   with a black top?

14             MR. SERVODIDIO:   Same

15       objections.

16       A     I agree.

17             MS. KOROTKIN:   Okay.   We can

18       take a quick break.   I think we've

19       been going for an hour and a half.

20             THE VIDEOGRAPHER:   This is

21       the end of disk number one in the

22       deposition of Philip Hampton, II.

23       The time is now 10:58 a.m.   We are

24       off the record.

25             (Recess.)

1           THE VIDEOGRAPHER:  This is

2       the beginning of disk number two

3       in the deposition of Philip

4       Hampton, II.  The time is now

5       11:13 a.m.  We are back on the

6       record.

7   BY MS. KOROTKIN:

8       Q     Thank you.  We're back on the

9    record, Mr. Hampton.

10            We were talking a bit earlier

11   about the definition of the Bulleit Trade

12   Dress.  And I think I just have one or

13   two more questions for you there.

14            I notice in paragraph 21 of

15   your opening report you've identified a

16   product, Bulleit Bourbon, that includes

17   an orange label; is that correct?

18       A     Yes.

19       Q     And is it your opinion that the

20   color orange of the label is an element

21   included in the Bulleit Trade Dress?

22            MR. SERVODIDIO:  Object to

23       form, outside the scope, calls for

24       a legal conclusion.

25            THE WITNESS:  Repeat your

1    BY MS. KOROTKIN:

2          Q     Is there a USC CFR MPEP or case

3    law authority that you can point to, to

4    answer that question?

5               MR. SERVODIDIO:  Object to

6          form, vague and ambiguous.

7          A     There is probably no specific

8    case law, because, you know, once the

9    presumption is there if the application

10   does not register, because it is late --

11   because it -- the design is later found

12   to be functional, clearly the presumption

13   is -- is loss.

14               But -- and I don't think

15   there's any case law that says that.  I

16   mean, there wouldn't be any need for case

17   law to say it.

18               MR. SERVODIDIO:  Can I just

19          interrupt?  Can you let us know

20          how long we're on the record.

21               THE VIDEOGRAPHER:  Five

22          hours --

23               MR. SERVODIDIO:  Sorry, go

24          ahead.

25               THE VIDEOGRAPHER:  About

1          five hours and 50 minutes.

2               MR. SERVODIDIO:  Thank you.

3    BY MS. KOROTKIN:

4          Q     Do you believe that the

5    presumption you've provided an opinion

6    about would apply if an applicant

7    withdraws its application from allowance

8    and submits an IDS with references

9    disclosing functionality of some or all

10   of the features claimed in the drawings?

11              MR. SERVODIDIO:  Object to

12         form, outside the scope,

13         incomplete hypothetical.

14         A     Possibly.

15         Q     And do you believe that the

16   presumption should be withdrawn if the

17   applicant merely abandoned its design

18   patent applications because it concluded

19   that they improperly claimed functional

20   subject matter?

21              MR. SERVODIDIO:  Object to

22         form, incomplete hypothetical.

23         A     Maybe.

24              MS. KOROTKIN:  Subject to

25         the right to ask follow-up

```
 1            questions I have no further

 2            questions for Mr. Hampton.

 3                  MR. SERVODIDIO:  Okay.

 4            We're going to have some

 5            follow-up, but I'd like to take a

 6            break.

 7                  MS. KOROTKIN:  Okay.

 8                  THE VIDEOGRAPHER:  The time

 9            is now 4:57 p.m.  We're off the

10            record.

11                  (Recess.)

12                  THE VIDEOGRAPHER:  The time

13            is now 5:10 p.m.  We are back on

14            the record.

15                  MR. SERVODIDIO:  Hi,

16            Mr. Hampton.  I just have a few

17            follow-up questions for you.

18                      EXAMINATION

19      BY MR. SERVODIDIO:

20            Q    Can I ask you to look at your

21      opening report, which has been marked as

22      plaintiff's Exhibit 280, and look at

23      paragraph 22.

24                  MS. KOROTKIN:  Defendants'

25            280.
```

```
 1    BY MR. SERVODIDIO:

 2         Q    Defendants' 280, can you turn

 3    to paragraph 22?

 4         A    I got it.

 5         Q    Okay.  Do you recall this

 6    morning counsel for the defendants,

 7    Ms. Korotkin, asked you some questions

 8    about whether Diageo has exclusive rights

 9    in the elements of the Bulleit Trade

10    Dress that you list here in paragraph 22

11    to your report?

12         A    Yes, I do.

13         Q    Okay.  And do you remember she

14    asked you whether Diageo has exclusive

15    rights in the clear, canteen-shaped

16    bottle; do you remember that question?

17         A    Yes, I do.

18         Q    And do you remember you said,

19    yes, that Diageo does not have exclusive

20    rights in a clear, canteen-shaped bottle?

21              MS. KOROTKIN:  Object to

22    form, misstates the testimony.

23    BY MR. SERVODIDIO:

24         Q    You can answer.

25         A    Yes, I testified to that.
```

1          Q      Okay.  And she also asked you

2      whether Diageo had exclusive rights in

3      the other elements of the Trade Dress

4      that are identified in paragraph 22 of

5      your report; do you remember those

6      questions?

7          A      Yes, I do.

8          Q      And do you remember testifying

9      positively in response to her questions

10     that Diageo did not have exclusive rights

11     in those other Trade Dress elements

12     listed in paragraph 22?

13              MS. KOROTKIN:  Object to

14        form, vague, confusing, compound.

15   BY MR. SERVODIDIO:

16        Q      You can answer.

17        A      Yes.

18        Q      When counsel for Deutsch asked

19     you those questions this morning, about

20     the elements set forth in the Trade

21     Dress, in paragraph 22 of your report,

22     was she referring to any particular goods

23     or services?

24              MS. KOROTKIN:  Same

25        objections.

1    A    Her question was not limited to

2    any particular goods or services.

3    Q    Okay.  Would your answers to

4    the questions that counsel for Deutsch

5    asked you be different if you were asked

6    about Diageo's exclusive rights with

7    respect to distilled spirits?

8         MS. KOROTKIN:  Object to

9    form, vague, confusing, compound,

10   misstates the testimony.

11   BY MR. SERVODIDIO:

12   Q    You can answer.

13   A    Yes, my testimony would have

14   been different.

15   Q    And why is that?

16   A    Because no -- no -- no

17   trademark owner gets exclusive rights to

18   its trademark for all goods and services.

19   So it's, like, black letter law that, you

20   know, you don't have rights, just because

21   you have a registration, you don't have

22   rights in everything.

23   Q    Do you believe that Diageo had

24   a valid basis, in connection with the

25   prosecution of the `812 registration, to

DIAGEO NORTH AMERICA vs W.J. DEUTSCH & SONS LTD                    Job 30396
Philip Hampton June 04, 2019                                       Page 261

```
 1      claim exclusive rights in a clear,

 2      canteen-shaped bottle?

 3          A     Restate the question, because

 4      you said the `8-112 and I don't think

 5      it's `8-112.

 6          Q     I'm sorry?  It's not the

 7      `8-112?  I think it is.

 8          A     It's `812 or `812.

 9          Q     Oh, yeah, you're right.

10              MS. KOROTKIN:  It's `812 is

11          a band.

12              MR. SERVODIDIO:  `8-112 is

13          wrong.  Let me try it again, then.

14  BY MR. SERVODIDIO:

15          Q     Do you believe that Diageo

16      had -- had a valid basis to claim

17      exclusive rights in a clear,

18      canteen-shaped bottle, glass bottles,

19      with rounded shoulders, for use in

20      connection with distilled spirits,

21      separate and apart from the other

22      elements of the -- of its Trade Dress

23      claimed in the `812 registration?

24              MS. KOROTKIN:  Object to

25          form, outside the scope of the
```

1          testimony and the report, lack of

2          foundation, compound.

3      A       Yes, I believe that Diageo had

4   and has a basis for claiming exclusive

5   rights in the shape of the bottle,

6   separate and apart from the overall Trade

7   Dress.

8      Q       And what's the basis for that

9   testimony, Mr. Hampton?

10     A       From the depositions that I

11  read it -- it appears that the shape of

12  the bottle was distinctive and that the

13  shape of the bottle was -- that the

14  bottle was particularly designed for --

15  for -- for whiskeys.

16             And the fact that the Patent

17  and Trademark Office agreed with Diageo,

18  once it made the argument that the bottle

19  was distinctive and evoked the memory of

20  a -- of a Frontier-style canteen or

21  medicine bottle.

22     Q       So is it possible that Diageo

23  could not have exclusive rights in a

24  clear, canteen-shaped glass bottle, with

25  rounded shoulders, for goods other than

1   distilled spirits, but have exclusive

2   rights with respect to that element for

3   distilled spirits?

4          MS. KOROTKIN:  Object to

5      form.

6      A     Yes, I think that that --

7   that -- that -- that's the -- that is

8   what is the case here, that Diageo has

9   exclusive rights in their can- -- in a

10  clear, canteen-shaped bottle for

11  distilled spirits.

12     Q     Right.  Now, in connection with

13  your review of the prosecution history of

14  the `812 registration is it your

15  understanding that Diageo is claiming

16  exclusive rights in the elements of its

17  Trade Dress separately, other than the

18  clear, canteen-shaped bottle, with

19  rounded shoulders?

20         MS. KOROTKIN:  Object to

21     form.

22     A     No.  I -- I do not believe that

23  Diageo is claiming exclusive rights in

24  any parts of its Trade Dress, separate

25  and apart from the Trade Dress as a

1    whole.

2         Q    Right.  Do you have an opinion,

3    one way or the other, whether Diageo has

4    exclusive rights in embossed brand names

5    above a label for use in connection with

6    goods other than distilled spirits?

7              MS. KOROTKIN:  Object to

8         form.

9              THE WITNESS:  Can I have

10        that question repeated.

11   BY MR. SERVODIDIO:

12        Q    Do you have an opinion, one way

13   or the other, whether Diageo is entitled

14   to claim exclusive rights in an embossed

15   brand name, above the label, for use in

16   connection with goods other than

17   distilled spirits?

18             MS. KOROTKIN:  Object to

19        form, misstates the Trade Dress,

20        vague, compound.

21        A    No.

22        Q    Okay.  Do you have an opinion

23   whether Diageo has the exclusive rights

24   to use the elements of its Trade Dress,

25   other than a clear, canteen-shaped

1      bottle, separate and apart from the Trade

2      Dress for use in connection with

3      distilled spirits?

4               MS. KOROTKIN:  Object to

5          form.

6               THE WITNESS:  What was the

7          question again?

8    BY MR. SERVODIDIO:

9          Q      Do you have an opinion -- we

10     talked about the first element of a

11     clear, canteen-shaped glass bottle, with

12     rounded shoulders; do you remember that?

13         A      Yes, I do.

14         Q      Okay.  So now I'm asking you

15     about the other elements of the Trade

16     Dress that are listed in paragraph 22 of

17     your report.

18               Do you have an opinion whether

19     or not Diageo may claim exclusive rights

20     to those other elements, separate -- as

21     separately -- as separate elements, apart

22     from the Trade Dress, for use in

23     connection with distilled spirits?

24               MS. KOROTKIN:  Object to

25         form, compound.

1        A     No, I really don't -- I really

2     haven't looked at that.  I really don't

3     have an opinion on that.

4        Q     Right.  And do you understand

5     Diageo was claiming exclusive rights to

6     the elements separate -- the elements of

7     its Trade Dress listed in paragraph 22,

8     separate and apart from the entirety of

9     the Trade Dress?

10              MS. KOROTKIN:  Object to

11        form, vague as to time.

12        A     No.  I -- I -- I don't believe

13     that Diageo was claiming rights in the

14     separate elements of its Trade Dress,

15     separate and apart from the Trade Dress,

16     as a whole, except for the clear,

17     canteen-shaped glass bottle, with rounded

18     shoulders.

19              MR. SERVODIDIO:  Right.  I

20        have no further questions.

21              MS. KOROTKIN:  And I'll just

22        have one or two follow-up

23        questions.

24     ///

25     ///

```
 1                     EXAMINATION

 2   BY MS. KOROTKIN:

 3        Q     If I understand your testimony

 4   accurately, Mr. Hampton, is it fair to

 5   say you are now providing the opinion

 6   that Diageo has exclusive Trade Dress

 7   rights in standalone elements of a clear,

 8   canteen-shaped glass bottle, with rounded

 9   shoulders?

10             MR. SERVODIDIO:  Objection,

11         mischaracterizes his testimony.

12        A     My testimony is that I believe

13   that Diageo has the right to claim

14   exclusive rights in a clear,

15   canteen-shaped bottle, with rounded

16   shoulders, separate and apart for one's

17   Trade Dress, as a whole, for distilled

18   spirits.

19        Q     And what is the basis of that

20   opinion?

21        A     The basis of that opinion is

22   the fact that the -- the trade -- well,

23   the basis of that opinion are that the

24   Trade Dress, as registered, does not show

25   the bottle and dotted lines.  So it means
```

1    **CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC**

2       I, Cassandra E. Ellis, Registered Professional

3    Reporter, the officer before whom the foregoing

4    proceedings were taken, do hereby certify that the

5    foregoing transcript is a true and correct record of

6    the proceedings; that said proceedings were taken by

7    me stenographically and thereafter reduced to

8    typewriting under my supervision; and that I am

9    neither counsel for, related to, nor employed by any

10   of the parties to this case and have no interest,

11   financial or otherwise, in its outcome.

12       IN WITNESS WHEREOF, I have hereunto set my hand

13   this 19th day of June 2019.

14   My commission expires:

15   December 14, 2022

16

17

18   *Cassandra Ellis*

19   _____

20   CASSANDRA E. ELLIS, CSR-HI, CSR-VA, CCR-WA, CLR, RPR

21   REALTIME SYSTEMS ADMINISTRATOR

22   NOTARY PUBLIC IN AND FOR THE DISTRICT OF COLUMBIA

23

24

25