UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIAGEO NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> W.J. DEUTSCH & SONS LTD. d/b/a DEUTSCH FAMILY WINE & SPIRITS, and BARDSTOWN BARREL SELECTIONS LLC, <br><br> Defendants. | Case No. 1:17-cv-04259-LLS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DIAGEO'S MOTION TO
<u>EXCLUDE THE TESTIMONY OF MATTHEW G. EZELL</u>**

Susan J. Kohlmann
Gianni P. Servodidio
Jacob D. Alderdice
Allison N. Douglis
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, NY 10022
Phone 212-891-1600
Fax    212-891-1699

**INTRODUCTION**

In its opening brief ("Diageo Mot."), Diageo demonstrated that the Court should exclude from trial the testimony, expert report, and survey evidence of Deutsch's survey expert Matthew Ezell because the survey's cumulative flaws severely diminish its reliability and probative value. Specifically, (1) Ezell relied on an improperly broad universe of survey respondents and (2) Ezell failed to replicate market conditions through use of an "Eveready" survey and unrealistic stimulus. In its opposition brief ("Deutsch Opp."), Deutsch has failed to justify Ezell's flawed survey design, instead devoting much of its brief to changing the subject and renewing its baseless critiques of Diageo's survey expert Hal Poret. Diageo respectfully requests that the Court grant its motion to exclude Ezell's testimony, report, and survey evidence.

**I.   Deutsch Cannot Justify Ezell's Over-Inclusive Survey Universe.**

In its opening motion, Diageo explained that Ezell's failure to include *any* price screening question for respondents was fatal to the reliability and probative value of his survey. *See* Diageo Mot. at 7–9. It is black-letter law that where a case involves "forward confusion" (*i.e.*, the mistaken belief that the junior user's product is affiliated with the senior user's product), "the proper universe to survey is composed of the potential buyers of the *junior* user's goods or services." 6 McCarthy on Trademarks & Unfair Competition § 32:159 (5th ed. 2020); *see also, e.g.*, *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 322 (S.D.N.Y. 2000) (observing that when the junior user is allegedly "selling its products as if they come from the senior user," "the relevant market consists of the junior user's customers").

There is no dispute that Redemption is a high-end or "super-premium" American Whiskey brand that is not sold for less than $10 per bottle. *See, e.g.*, Decl. of Gianni P. Servodidio in Further Supp. of Diageo's Mot. to Exclude Test. of Matthew G. Ezell ("Servodidio Reply Decl."), Ex. 1 (Rebuttal Distilled Spirits Industry Expert Report of C. Drew DeSarno) at 46–47; Servodidio

1

Reply Decl. Ex. 2 (Expert Witness Report of Martin A. Jones) ("Jones Report") at 20.  In fact, Deutsch's own pre-litigation marketing expert, Richard Boone, designed a survey for Deutsch to test the new Redemption packaging that excluded any respondents not willing to pay at least $20 per bottle at retail, *see* Servodidio Reply Decl. Ex. 3 (DFWS00036073, at 00036075).  What is more, there is no evidence whatsoever that the Accused Redemption products identified in Diageo's complaint are ever sold for more than $40, and Deutsch cites none.[1]  Notably, Deutsch's rebuttal expert Michael Rappeport did not dispute Poret's decision to exclude potential survey participants who would only pay over $39.99 for a 750-milliliter bottle of bourbon. *See* Servodidio Mot. Decl. Ex. 5 (Rebuttal Report of Dr. Michael Rappeport) ("Rappeport Rebuttal Report"), ECF No. 235-21, at 2–3, 6.  Yet notwithstanding these clear-cut pricing parameters, Ezell's survey universe simply omits any screening questions based on the price of Redemption—a glaring error that, combined with other irregularities, supports exclusion of the survey.

   Deutsch's attempts to salvage this defect in Ezell's universe are after-the-fact excuses, with no grounding in market reality or Ezell's own thought process when designing the survey—as

---

[1] The examples Deutsch cites of Redemption 750-milliliter products selling for above $40 all concern "Tyler's Mistake" or "Wheated Bourbon," two limited-release products, or the Redemption "Barrel Proof" and "The Ancients" products, which are sold in different packaging. *See* Decl. of Michael Grow in Supp. of Deutsch's Mot. for Summ. J. ("MSJ Grow Decl.") Exs. 158, 162, ECF Nos. 139-58, 139-62 (showing "Tyler's Mistake," "Barrel Proof" and "The Ancients"); Decl. of Gianni P. Servodidio in Supp. of Diageo's Mot. to Exclude Test. of Matthew G. Ezell ("Servodidio Mot. Decl.") Ex. 4 (Rebuttal Report of Hal Poret) ("Poret Rebuttal Report"), ECF No. 235-20, at 8 (showing "Wheated Bourbon"); Nino Kilgore-Marchetti, *New Redemption Whiskey Born from a "Mistake"*, Whiskey Wash (Aug. 16, 2018), https://thewhiskeywash.com/whiskey-styles/american-whiskey/new-redemption-whiskey-born-mistake/; Nino Kilgore-Marchetti, *Redemption Whiskey Brand Adds Its First Wheated Bourbon*, Whiskey Wash (June 19, 2017), https://thewhiskeywash.com/whiskey-styles/bourbon/redemption-whiskey-brand-adds-first-wheated-bourbon/; Nino Kilgore-Marchetti, *Redemption Whiskey Adds Some Premium Barrel Proof Bottlings*, Whiskey Wash (Oct. 5, 2017), https://thewhiskeywash.com/whiskey-styles/american-whiskey/redemption-whiskey-adds-new-premium-barrel-proof-bottlings/; Nino Kilgore-Marchetti, *New Redemption Bourbon a Super Old Timer at 36 Years Old*, Whiskey Wash (Nov. 20, 2017), https://thewhiskeywash.com/whiskey-styles/american-whiskey/new-redemption-bourbon-super-old-timer-36-years-old/.

evidenced by Deutsch's failure to cite any deposition testimony from Ezell to substantiate these new arguments. First, Deutsch's citation to higher prices for certain Bulleit products to criticize Poret's universe misses the point, as the proper universe consists of Redemption purchasers, and in any event, the standard Bulleit product line is sold within the same range as Redemption.[2] Second, the attempt to challenge Poret's price range by noting that other whiskey brands may be sold at different price points is a red herring—as discussed above, as a matter of basic survey design, the relevant universe must target likely purchasers of Redemption, not higher-end whiskey brands. And third, Deutsch cites no evidence to support its baseless claim that the number of value purchasers of whiskey below the price of Redemption "is very small." *Cf.* Deutsch Opp. at 2. In fact, there is an entire category of extremely popular "value" or "budget" brands sold for approximately $10 and under. *See, e.g.*, Distilled Spirits Council, 2018 Economic Briefing 22 (Feb. 12, 2019), https://www.distilledspirits.org/wp-content/uploads/2019/02/Distilled-Spirits-Council-Annual-Economic-Briefing-Feb-12-2019-FINAL-1.pdf (stating that approximately 3.8 million of the 24.5 million total cases of bourbon and rye purchased in 2018 were in the "value" category, or about 15.5%).[3]

Ultimately, all of these excuses expose the inherent flaw in the design of Ezell's survey universe. As he admitted in his deposition, the absence of any screener questions based on price

---

[2] In Deutsch's small set of examples of Bulleit 750-milliliter products being sold for greater than $40, the product was either a limited release or the product was sold for between $41 and $43. *See* MSJ Grow Decl. Ex. 156, ECF No. 139-56 (showing Bulleit limited-release "Barrel Strength" showing for $62.99); MSJ Grow Decl. Ex. 155, ECF No. 139-55 (showing limited-release Bulleit "10-Year Straight" selling for $49.99 and "Barrel Strength" selling for $79.99); Poret Rebuttal Report at 8, 11 (showing Bulleit selling for $41.99—but discounted to $33.99—and $42.99).

[3] Deutsch argues that only a small number of Poret's initial survey respondents fell in the range of only being willing to purchase value bourbon, suggesting that this can be extrapolated to Ezell's results. *See* Deutsch Opp. at 8–9. This gets it exactly backwards. Poret properly excluded respondents likely to only purchase low-priced bourbon and his data cannot be used to draw any conclusions about that segment of the market.

3

forecloses any empirical analysis of how many respondents who qualified for his study would *never* have purchased a bottle of Redemption at its retail price. *See* Servodidio Reply Decl. Ex. 4 (Transcript of Deposition of Matthew Ezell) ("Ezell Tr.") 176:13–177:8 ("[W]e don't know one way or the other if a hypothetical purchaser of bourbon costing under 10 dollars was included or excluded from [our] survey."). Because the only confusion that is relevant in this case is the confusion of prospective purchasers of Redemption, Ezell's survey does not satisfy the criteria for reliability and should be excluded. *See supra* page 1.

      Finally, perhaps recognizing that Ezell's failure to screen respondents for price was plain error, Deutsch instead warps the case law to argue that courts prefer an over-inclusive universe to an under-inclusive one, so Ezell's survey should still be admitted. Deutsch Opp. at 10. This is again inconsistent with the opinion of Deutsch's rebuttal expert Michael Rappeport, who specifically (and erroneously) criticized Poret for what he perceived as an overbroad universe that should have set the minimum that participants were willing to pay for a 750-milliliter bottle of bourbon at $20 rather than $10. *See* Diageo Mot. at 4, 8–9. Equally important, *not one* of the cases Deutsch cites stands for the proposition that an over-inclusive universe is categorically preferable to an under-inclusive one. *See Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 221 F. Supp. 2d 457, 461 (S.D.N.Y. 2002) (holding that "*even* a survey with an 'overbroad' universe may still have probative value," but not addressing what the effect of an under-inclusive universe would be (emphasis added)); *Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 253 (S.D.N.Y. 1999) (criticizing universe for being under-inclusive by excluding "a substantial portion of the total universe of the products' potential customers" and over-inclusive by failing "to properly discriminate between purchasers of 'prestige fragrance' brands as opposed to those who purchase just any fragrance"); *Jaret Int'l, Inc. v. Promotion in Motion, Inc.*, 826 F. Supp. 69, 73 (E.D.N.Y.

4

1993) (excluding survey in part because it "minimiz[ed] the probability" that a fair sampling of the defendant's potential purchasers were excluded by surveying consumers at a mall where only the plaintiff's products were sold). Instead, courts regularly exclude or criticize surveys for over-inclusive universes—including where, like here, there is clear striation in the prices consumers are willing to pay for the general category of product. *See* Diageo Mot. at 7–8; *see also* Jones Report at 19–20.[4]

## II. Deutsch Cannot Justify Ezell's Wholesale Failure to Replicate Market Conditions.

Ezell's survey suffers from another set of flaws that, in conjunction with the flawed survey universe, merit exclusion: in several respects, the survey wholly failed to replicate market conditions. *See* Diageo Mot. at 9–15.

*First*, Diageo's opening motion explained that where parties' products are in direct competition and are often sold side-by-side on the same shelves, even in a case involving a well-known mark like the Bulleit Trade Dress, a "Squirt" survey format is superior to the "Eveready" format Ezell used, since only the Squirt format resembles market conditions where consumers are exposed to a variety of products in rapid succession. *See* Diageo Mot. at 9–13; *Louis Vuitton*

---

[4] Deutsch also launches a new attack on *Poret's* survey universe in this opposition, despite not having raised this point at all in its motion to exclude Poret's testimony. Specifically, Deutsch argues that Poret should have only screened respondents for whether they identified as being likely to purchase a bottle of bourbon in the next six months, rather than also including respondents who said they had already purchased such a bottle in the previous six months. Deutsch Opp. at 3–4. But it was reasonable to use past purchases of a consumer product as a heuristic for whether someone was a member of the appropriate survey universe. *See, e.g.*, *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266, 282 (S.D.N.Y. 2006) (acknowledging that for products where "past users are good proxies for future purchasers," surveying past purchasers is adequate); *see also* Servodidio Reply Decl. Ex. 5 (Transcript of Deposition of Hal Poret) ("Poret Tr.") 172:4–173:8 (noting, among other things, that "past purchase is often the best indicator of future purchase for . . . products that are repeatedly purchased"). In contrast, the case that Deutsch cites for this point excluded a survey in part for only surveying past purchasers of *large arcade game machines* for use in restaurants and other establishments, where such an inference of likely repeat purchases could not be made. *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984).

5

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 574, 633 (S.D.N.Y. 2007). Deutsch attempts to justify Ezell's use of the Eveready format through generic assertions that the Eveready format is a "gold standard" for survey design. Deutsch Opp. at 11. This is belied by Deutsch's own rebuttal expert, Michael Rappeport, who confirmed that in this context the Squirt format "is an appropriate form for a survey in this case." Rappeport Rebuttal Report at 2; *see also* Diageo Mot. at 4.

In any event, although Deutsch relies heavily on cases where Eveready surveys have been permitted in the case of competing products, the vast majority concerned products that were not sold in immediate proximity. *See Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 448 (S.D.N.Y. 2017) (finding that products were "sold in different venues"); *3M Co. v. Mohan*, 2010 WL 5095676, at *5, *19–20 (D. Minn. Nov. 24, 2010) (finding that products were sold on separate websites); *Bd. of Regents of Univ. of Hous. Sys. v. Hous. Coll. of L.*, 214 F. Supp. 3d 573, 593–94 (S.D. Tex. 2016) (addressing separate webpages of different academic institutions); *Kroger Co. v. Lidl US, LLC*, 2017 WL 3262253, at *5 (E.D. Va. July 31, 2017) (addressing products marketed in the parties' separate stores); *see also Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 361 (S.D.N.Y. 2015) (finding that parties offered "fundamentally different services"); Diageo's Mem. of Law in Opp'n to Deutsch's Mot. to Exclude Test. of Hal Poret ("Diageo Poret Opp."), ECF No. 254, at 14–15. In one case, the court did not address the propriety of the Eveready format at all, *Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1179–80 (C.D. Cal. 2010). In contrast, multiple courts have recognized that the proximity of the products bears on whether an Eveready format is appropriate. *See* Diageo Mot. at 10.

Critically, Deutsch also has no rejoinder to Diageo's argument that Ezell's overbroad survey universe compounded the problems with the Eveready format. *See* Diageo Mot. at 13. The

6

premise of Eveready is that consumers will have some preexisting familiarity with the senior user's product, making it even more essential that survey participants actually be members of the universe of potential purchasers. *See id.* The flaws with Ezell's survey universe and survey format are troubling standing alone; together, they mean that the survey shines no light on whether *potential purchasers* are likely to be confused by the Redemption bottle.

*Second*, Ezell's survey inappropriately presented respondents with a contrived view of the Redemption bottle from three different angles simultaneously. *See* Diageo Mot. at 13–14. This contravened case law holding that survey stimuli must generally replicate marketplace conditions. *See id.* at 13; *see also Coty Inc.*, 277 F. Supp. 3d at 450 (criticizing defendant's survey that displayed product "in an unrealistic manner and setting . . . . that allowed respondents to see all faces of the packaging at once"). It also flew in the face of guidance from Deutsch's pre-litigation expert Boone, who had confirmed that a survey of consumer impressions of bottles should only present the front views of those bottles because that view reflected "in-store reality" and other views would be "forced." Servodidio Mot. Decl., Ex. 11 (DFWS00035893). Tellingly, Deutsch *does not mention Boone at all in its briefing*, let alone offer any reason to conclude that his recommendation was flawed. There is no justification for Ezell's unrealistic survey stimulus.

Instead, Deutsch offers a slapdash assortment of arguments to support Ezell's decision to use this "forced" presentation of the bottle. It cites deposition testimony from one of its experts, Thomas Sooy, to the effect that in some circumstances "photos fail[] to capture as much as the actual bottles." *See* Deutsch Opp. at 16. But that testimony had nothing to do with the ability to view multiple angles of a bottle: Sooy, whom Deutsch has presented as an expert in glass manufacture and design, testified as to supposed functional advantages of the Bulleit Trade Dress, such as the shoulder radius. Servodidio Reply Decl. Ex. 6 (Expert Report of Thomas E. Sooy) at

7

3–4.[5]  Sooy therefore testified in his deposition that he does not "like to look at photos" because "you can't tell a lot about it from the photo, in my opinion."  *See* Decl. of Michael Grow Ex. 14, ECF No. 240-14 (Deposition of Thomas Sooy) 171:6–13.  This testimony has nothing to do with what types of stimuli are appropriate for an internet survey of customers—a format both parties' survey experts used in this case.

Deutsch also recapitulates the same arguments it made in its motion to exclude Poret's testimony, to the effect that federal regulations presume that consumers read products' back labels.  This argument is unavailing for all of the reasons explained in Diageo's opposition to Deutsch's motion.  *See* Diageo Poret Opp., ECF No. 254, at 19–20.  Deutsch's theory across its briefing appears to be that if the parties' products have different content on their back labels, this obviates any otherwise confusing similarity between the overall commercial impression of the parties' trade dress.  But the Second Circuit has recognized that even where packaging contains a disclaimer explicitly dispelling confusion between the parties' products—something Deutsch does not, and cannot, argue here—what matters is *how a product will be displayed* to consumers on store shelves.  *See Charles of the Ritz Grp. Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1320, 1322 (2d Cir. 1987) (approving of district court finding that a survey was not required to use a version of product packaging with a new disclaimer because of evidence that the display was positioned in a way that some consumers still could not see the disclaimer); *see also Clinique Lab'ys, Inc. v. Dep Corp.*, 945 F. Supp. 547, 557 (S.D.N.Y. 1996) ("[W]ere customers to see and read the entire display, confusion might be dispelled.  The evidence suggests, however, that the display materials might not be seen.").

Nor is it relevant that Diageo's survey expert Poret presented multiple views of a product

---

[5] Because the four-page Sooy Report does not contain page numbers, all references to page numbers are to the ECF pagination.

8

to survey participants in other cases. *See* Deutsch Opp. at 5. In his deposition, Poret offered a principled rationale for when to present multiple views of a product to survey participants as opposed to only one view: he testified that presenting only the front view in this context offered the "best, most realistic replication of the most typical marketplace conditions for consumers," whereas he might present more than one view in contexts where "the typical way that a consumer" views a product "involves them seeing it from multiple angles and perspectives." Poret Tr. 90:19–91:3, 96:22–99:18; *see also id.* 142:19–143:5 (testifying that presenting the front view only of alcohol bottles to survey participants "is a pretty well-accepted practice in the alcohol industry"). Deutsch's defense of Ezell's stimulus ignores this logic and contradicts the advice of Deutsch's own pre-litigation survey expert.

## CONCLUSION

Based on the foregoing and as set forth in its opening brief, Diageo respectfully requests that the Court preclude Deutsch from presenting the testimony, expert report, and survey evidence of Matthew Ezell at trial.

Dated:   New York, New York
         January 26, 2021                        Respectfully submitted,

                                         By: /s/Gianni P. Servodidio_____
                                             Susan J. Kohlmann
                                             Gianni P. Servodidio
                                             Jacob D. Alderdice
                                             Allison N. Douglis
                                             JENNER & BLOCK LLP
                                             919 Third Avenue, 38th Floor
                                             New York, NY 10022
                                             Phone 212-891-1600
                                             Fax  212-891-1699
                                             gservodidio@jenner.com

                                             *Attorneys for Plaintiff Diageo North America, Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2021, true and correct copies of the foregoing Reply Memorandum of Law in Support of Motion to Exclude the Testimony of Matthew G. Ezell, and the accompanying Reply Declaration of Gianni P. Servodidio and exhibits attached thereto were filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

                                                /s/ Jacob D. Alderdice
                                                  Jacob D. Alderdice