**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIAGEO NORTH AMERICA, INC.,

                  Plaintiff/Counterclaim Defendant,

      v.

W.J. DEUTSCH & SONS LTD. d/b/a DEUTSCH
FAMILY WINE & SPIRITS, and BARDSTOWN
BARREL SELECTIONS LLC,

              Defendants/Counterclaim Plaintiffs.

**ECF CASE**

Case No. 1:17-cv-04259-LLS

Hon. Louis L. Stanton

**ORAL ARGUMENT**
**REQUESTED**

## DEFENDANTS/COUNTERCLAIM PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF/COUNTERCLAIM DEFENDANT'S SURVEY EXPERT HAL PORET

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT .................................................................................................... 1

       A.    The Poret Survey Must Be Excluded Because it Failed to Replicate
             Marketplace Conditions .......................................................................... 1

             1.    The Poret Survey Used a Dissected Front-View Only Display That
                   Concealed Differences in the Parties Marks and Distinguishing
                   Information Mandated by Federal Regulation .......................................... 1

             2.    Poret's Front-View Only Survey Is Not Germane to Diageo's
                   Claimed Rights in a Three-Dimensional Canteen-Shaped Bottle ............. 5

             3.    The Poret Front-View Only Survey Ignores Second Circuit
                   Precedent and Diageo's Own Research that Spirits Consumers are
                   Sophisticated and Take Their Time ......................................................... 6

       B.    The Poret Survey Should Be Excluded Because It Used an Improper
             Control, a Biased Survey Format, Respondents Who Were Not Confused,
             and an Under-Inclusive Universe of Respondents ................................... 7

III.   CONCLUSION ................................................................................................ 12

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,*
    364 F. Supp. 3d 291 (S.D.N.Y. 2019) ..................................................................11

*Akiro LLC v. House of Cheatham, Inc.,*
    946 F. Supp. 2d 324 (S.D.N.Y. 2013) ....................................................................9

*Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.,*
    No. 15-CV-1092 (JMF), 2015 WL 845711 (S.D.N.Y. Feb. 26, 2015) ....................6

*Bodum USA, Inc. v. A Top New Casting, Inc.,*
    Case No. 16 C 2916, 2017 WL 6626018 (N.D. Ill. Dec. 28, 2017) ........................8

*In Matter of Car-Freshener Corp. v. Am. Covers, LLC,*
    No. 517CV00171, 2018 WL 8140766 (N.D.N.Y. Nov. 2, 2018) ...........................10

*Combe Inc. v. Dr. August Wolff GmBH & Co. KG Arzneimittel,*
    382 F. Supp. 3d 429 (E.D. Va. 2019) .....................................................................7

*Coty Inc. v. Excell Brands, LLC,*
    277 F. Supp. 3d 425 (S.D.N.Y. 2017) ..............................................................2, 3, 8

*Edison Bros. Stores, Inc. v. Cosmair, Inc.,*
    651 F.Supp. 1547 (S.D.N.Y. 1987) ........................................................................8

*Elizabeth Taylor Cosmetics Co. Inc. v. Annick Goutal, S.A.R.L.,*
    673 F. Supp. 1238 (S.D.N.Y. 1987) .......................................................................9

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt. Inc.,*
    618 F.3d 1025 (9th Cir. 2010) ................................................................................8

*Gross v. Bare Escentuals Beauty, Inc.,*
    641 F. Supp. 2d 175 (S.D.N.Y. 2008) ....................................................................8

*Gucci Am., Inc. v. Guess?, Inc.,* 831 F. Supp. 2d 723 (S.D.N.Y. 2011), *on
    reconsideration in part,* No. 09 CIV. 4373(SAS), 2011 WL 6326032
    (S.D.N.Y. Dec. 16, 2011) .........................................................................................6

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC,*
    335 F. Supp. 3d 566 (S.D.N.Y. 2018) ...................................................................10

*Kargo Glob., Inc. v. Advance Mag. Publishers, Inc.,*
    No. 06 Civ. 550(JFK), 2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) .......................8

*Kelly-Brown v. Winfrey*,
    95 F. Supp. 3d 350 (S.D.N.Y. 2015)........................................................................................8

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006)....................................................................................................8

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)................................................................................7, 8

*Nabisco v. Warner–Lambert Co.*,
    32 F. Supp. 2d 690 (S.D.N.Y. 1999)......................................................................................7

*Nail All., LLC v. Poly-Gel L.L.C.*,
    Case No. 17-CV-01026-FJG, 2019 WL 5295501 (W.D. Mo. June 27, 2019) ........................8

*NE OPCO, Inc. v. Am. Pad & Paper Co. of Del.*,
    No. 06 Civ. 12988(SHS)(RLE), 2011 WL 1582946 (S.D.N.Y. Apr. 26, 2011)....................6

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
    269 F.3d 114 (2d Cir. 2001)....................................................................................................6

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014)...........................................................................................................3, 4

*Samara Bros. Inc. v. Wal-Mart Stores, Inc.*,
    165 F.3d 120 (2d Cir. 1998), *rev'd on other grounds*, 529 U.S. 205 (2000)...........................6

*Saxon Glass Techs., Inc. v. Apple Inc.*,
    393 F. Supp. 3d 270 (W.D.N.Y. 2019), *aff'd*, 824 F. App'x 75 (2d Cir. 2020) .....................10

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999)..................................................................................................11

*Star Indus., Inc. v. Bacardi & Co. Ltd.*,
    412 F.3d 373 (2d Cir. 2005)....................................................................................................6

*Superior Consulting Servs., Inc. v. Shaklee Corp.*,
    No. 6:16-cv-2001-Orl-31GJK, 2018 WL 2087239 (M.D. Fla. May 4, 2018) ........................8

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011)....................................................................................8

*X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*,
    155 F. Supp. 2d 577 (E.D. Va. 2001) ....................................................................................6

**Statutes & Other Authorities**

Implementation of Alcoholic Beverage Labeling Act of 1988; Health Warning
    Statements (88f406p), T.D. ATF-294 (Mar. 1990) .............................................................1, 3

Shari S. Diamond, *Control Foundations: Rationale and Approaches*, Trademark
    and Deceptive Advertising Surveys, 212 (Shari S. Diamond & Jerre B. Swann
    (eds.), American Bar Association 2012)...................................................................................7

## I.    INTRODUCTION

Mr. Poret and his survey should be excluded for the following reasons that we will show below. First, the Poret Survey failed to replicate market conditions as it prevented respondents from seeing the parties' bottle design trademarks and trade dress as they appear in the marketplace, including the back label and shape. Second, the Poret Survey used an improper control, a biased survey format, respondents who were not confused, and an under-inclusive universe of respondents.

## II.    ARGUMENT

A.   <u>The Poret Survey Must Be Excluded Because it Failed to Replicate Marketplace Conditions.</u>

1.   <u>*The Poret Survey Used a Dissected Front-View Only Display That Concealed Differences in the Parties Marks and Distinguishing Information Mandated by Federal Regulation.*</u>

After extensive research, the federal government found that "consumers are accustomed to reading . . . back, and side labels . . . on alcoholic beverages . . . ." Implementation of Alcoholic Beverage Labeling Act of 1988; Health Warning Statements (88f406p), T.D. ATF-294 (Mar. 1990). This finding resulted in the promulgation of regulations requiring the display of health warnings and identifying information regarding the manufacturer or source of every alcoholic beverage product sold in this country. On the back labels for Bulleit and Redemption, their manufacturers' names are displayed even more prominently than the mandatory health warnings.



If a consumer wishes to sue the producer of Bulleit, it can easily find its name and location on the back label. And, if a consumer sued Diageo for injuries caused by Bulleit, Diageo would claim that the consumer was adequately informed of the health risks through the warning that is also displayed on the back label, which consumers are accustomed to reading. Consumers looking at the back label of the bottle will also see the back of bottle including its major differences.

Despite the finding by federal regulatory authorities, Diageo and Mr. Poret seek to justify their invalid survey methodology that used only a dissected front view of bottles by falsely claiming, without a scintilla of supporting evidence, that consumers do not look at the back of alcoholic beverage bottles. If Diageo is allowed to make this claim in Court, it is admitting that it knowingly places important health warnings at a location on its bottles where consumers will never see them. Of course, Diageo would never make such an admission in a product liability case because it knows consumers do read labels. Diageo has cited no authority permitting use of a dissected mark or trade dress in a survey and merely cites Mr. Poret's "experience" in survey research to justify admission of his misleading results. Similarly, Diageo has failed to cite any scientific study or other authority that permits violation of the ironclad rule against using a dissected mark in analyzing likelihood of confusion.[1]

---

[1] Diageo also claims that showing more than one view of a bottle is forced, citing *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 450 (S.D.N.Y. 2017). Mem. of Law in Opp. to Deutsch's Mot. to Exclude the Test. of Hal Poret ("Diageo Opp. Br.") 17, ECF No. 254. But, in that case, the court specifically found that "consumers were

Diageo seeks to divert attention from its misleading survey results by claiming that the inadmissible, non-scientific, qualitative research done by Deutsch's marketing consultant focused only on the front of the bottle. However, Deutsch is not seeking to have that survey admitted in this case and, unlike Diageo, it provided actual bottles to these participants. *See* Grow Decl. Ex. 1 (Dep. Tr. of Sigal Kremer) at 91:4-12, 144:14-16. That research consisted of non-projectable consumer reaction tests. These tests did not require the rigorous application of acceptable scientific standards required for likelihood of confusion surveys. Indeed, the research was not done to measure likelihood of confusion but rather to gauge the <u>initial</u> impressions of potential consumers on the front labels designs plus the bottle designs.[2]

Diageo also claims that the federal government's finding on consumer interaction with back labels does not matter because agencies do not have the same <u>perspective</u> as competitors. *See* Diageo Opp. Br. 19, ECF No. 254 (quoting *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115–16 (2014)). Maybe Diageo has a point. In this case, the federal regulators were assessing the efficacy of locating vitally important consumer health warnings. From that critically important <u>perspective</u>, the government–after careful review and analysis–allowed critically important health warnings to be placed on rear labels because: "consumers are accustomed to reading . . . back and side labels . . . on alcoholic beverages."[3] It is that same 'ordinary' consumer that would see not only the very different and informative rear labels on the parties' bottles but also the very different

---

unlikely to see [certain information on certain sides of the box]." *Id.* at 457. In contrast, consumers are likely to view the back, and Mr. Poret could have used a video or two to three images, as Mr. Ezell did, to simulate looking at each side individually. Yet, he chose to conceal some of the most distinctive part of the Redemption bottle in the survey. And Diageo's other cited cases from outside this circuit are similarly unpersuasive as Diageo did not show that they involved containers for which consumers are accustomed to looking at back labels and the plaintiff had claimed rights to a three-dimensional container shape.

[2] *See* Poret Opp. Servodidio Decl. Ex. 3 (at DFWS00036074), ECF No. 255-3 (purpose of the study was to "evaluate[]" the "Two label" designs on the front of the new and old packaging); Poret Opp. Servodidio Decl. Ex. 4 (Transcript of Deposition of Susan Kilgore) 277:9–278:15, ECF No. 255-4 ("Did you believe that presentation was appropriate *for the purposes of this study*? . . . Yes.") (emphasis added).

[3] Implementation of Alcoholic Beverage Labeling Act of 1988; Health Warning Statements (88f406p), T.D. ATF-294 (Mar. 1990).

design of the bottle from that perspective. Mr. Poret's analysis, however, could not capture this perspective of that "ordinary consumer" because his survey concealed the back of the bottle and rear label.[4] Because consumers read labels, the Poret Survey is inadmissible because it is disregarded this established fact.

Diageo claims that the differences in the Parties' back labels are not drastic enough to prevent confusion. It has no support for this assertion, however, because Mr. Poret improperly hid the back labels from the respondents in his survey and therefore failed to determine whether the label differences were important or not. By contrast, Deutsch's expert Mr. Ezell did not conceal the back label in his survey and he found only 1% confusion when respondents were allowed to see the test bottle in its entirety.

Any consumers who handle a Bulleit or Redemption bottle will not only see the identifying information as to the makers of the products on back labels, but they will also see and feel the different oval and concave shapes of the bottles, as well as the differences in the size, shape, color, type style, and brand names on the back label. *See infra* § II.A.3. Mr. Poret obviously tried to skew the results of his survey in favor of Diageo by deliberately violating the rule against trademark dissection and by preventing respondents from having the same experience of seeing the parties' complete bottles that they would have seen in the marketplace. Since Mr. Poret's biased survey will cause undue prejudice and mislead the jury, the survey should be excluded.

---

[4] We also note that the court in *POM* did not hold that consumers do not read labels and refused to dismiss a false advertising claim merely because the FDA regulates the labels of the products at issue. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115–16 (2014). The court did not address any specific finding as to consumer behavior made by federal regulators after a notice and comment period. *See id.* Thus, this case does not subvert the government's finding here that consumers do read the back label nor does it justify the concealment of those labels in a survey. Moreover, it is not the perspective of competitors that is relevant in evaluating confusion, but rather it is the perspective of consumers that matters.

2. *Poret's Front-View Only Survey Is Not Germane to Diageo's Claimed Rights in a Three-Dimensional Canteen-Shaped Bottle.*

In its trademark registration and in its complaint, Diageo claimed rights in the entire three dimensional canteen shape of its Bulleit bottle. In its Trademark Reg. No. 3075812, Diageo stated "The mark consists of three-dimensional configuration of a bottle that is used to contain the goods . . . ." *See* Complaint Ex. B, ECF No. 1-2. A bottle used to contain liquid is by definition three dimensional. Thus, Mr. Poret could not measure confusion with Diageo's alleged mark and trade dress because he showed only a front view of the Bulleit bottle. The Poret Survey could not measure confusion with the Bullet bottle any more than it could measure confusion with a two word mark like AMERICAN EXPRESS by asking survey respondents questions solely about the word AMERICAN. Because marks and trade dress must be considered in their entireties when evaluating confusion, the Poret Survey should have allowed respondents to see the parties' trade dress in their entireties.

In trade dress cases, it is common for surveys to show the entire product or multiple views of the product, as Mr. Poret did in cases involving a vehicle design and a bottle with a design on the inside back of the bottle. *See* Servodidio Decl. Ex. 2 (Dep. Tr. of Hal Poret ("Poret Dep. Tr.")) 94:9-95:13 (Mr. Poret created a survey with multiple images for the defendant in an infringement case), 245:5-14; 248:2-249:20 (Mr. Poret prepared a rebuttal report to defend against infringement claims arguing that multiple images should have been used), ECF No. 206-2.[5] Mr. Poret should have shown the Bulleit and Redemption bottles in their entireties in this case as well. Instead he

---

[5] Diageo attempts to distinguish Deutsch's cited cases by claiming that they had stimuli very different from the marketplace. *See* Diageo Opp. Br. 17-18 nn.5–7, ECF No. 254. Yet, Diageo merely confirms that these cases match the facts here as they involve surveys that improperly hid a portion of the mark or trade dress claimed by the party. *See id.* Here, Diageo claims rights in a trade dress and a bottle shape, which includes its back as well as its front. As in the cited cases, the Poret Survey hid the back of the bottle from consumers. Diageo had to seek cases outside the Second Circuit to find support for its devious survey while ignoring Deutsch's cited cases from this Court or the Second Circuit. *See Id.* at 18–19.

Page 5 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF/COUNTERCLAIM DEFENDANT'S SURVEY EXPERT HAL PORET

apparently concluded he could not meet Diageo's needs unless he concealed some of the key
elements from survey respondents, including the Parties' bottle shapes and back labels, which aid
in distinguishing one product from the other

> 3. *The Poret Front-View Only Survey Ignores Second Circuit Precedent and
> Diageo's Own Research that Spirits Consumers are Sophisticated and Take Their
> Time.*

By violating the anti-dissection rule and concealing the back label of the parties' bottles,
Mr. Poret and Diageo also intentionally ignored the Second Circuit's holding on the importance
of labels in trademark cases and the sophistication of spirits purchasers. In this Circuit, labels must
be considered in evaluating confusion and spirits consumers have been held to be sophisticated
and likely to take their time when looking at products. *See Star Indus., Inc. v. Bacardi & Co. Ltd.*,
412 F.3d 373, 390 (2d Cir. 2005), "[u]nhurried consumers in the relaxed environment of the liquor
store, making decisions about $12 to $24 purchases, may be expected to exhibit sufficient
sophistication to distinguish between Star's and Bacardi's [competitive spirits] products, *which
are differently labeled*." (emphasis added).[6] And as previously discussed, Diageo's own research

---

[6] Diageo failed to address this holding in its Opposition. On a related note, Diageo admits that labels matter but only
when they are very different. *See* Diageo Opp. Br. 20 n.8, ECF No. 254 (citing *id.*; *Nora Beverages, Inc. v.
Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001)). Yet, the labels in this case are drastically different
from one another, using different shapes, sizes, font, and clearly displaying different brand names in big lettering.
Furthermore, Diageo's cited cases all deal with tiny labels and names or outdated survey exclusion standards. *See
Samara Bros. Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 128 (2d Cir. 1998) (small neck label of clothing not
enough), *rev'd on other grounds*, 529 U.S. 205 (2000); *Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*,
No. 15-CV-1092 (JMF), 2015 WL 845711, at *6 (S.D.N.Y. Feb. 26, 2015) (finding the labels similar and using
the same name); *X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 624 (E.D. Va.
2001) (finding that the only difference was name of the product not the entire label); *compare NE OPCO, Inc. v.
Am. Pad & Paper Co. of Del.*, No. 06 Civ. 12988(SHS)(RLE), 2011 WL 1582946, at *2 (S.D.N.Y. Apr. 26, 2011)
(unpublished case using an old standard for survey exclusion: "the proper inquiry under Fed. R. Civ. P. 403 is
whether the survey is so far out of the realm of relevance that a jury should not even be permitted to consider it.")
*with Gucci Am., Inc. v. Guess?, Inc.*, 831 F. Supp. 2d 723, 738-39 (S.D.N.Y. 2011) (published case stating the
current standard for survey exclusion: "Finally, while errors in survey methodology usually go to weight of the
evidence, a survey should be excluded under Rule 702 when it is invalid or unreliable, and/or under Rule 403
when it is likely to be insufficiently probative, unfairly prejudicial, misleading, confusing, or a waste of time."),
*on reconsideration in part*, No. 09 CIV. 4373(SAS), 2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011).

showed that its consumers are sophisticated and take their time in the whiskey aisle. *See* Deutsch's

R. 56.1 Statement of Undisputed Facts ¶¶ 254-256, 258, ECF No. 141.

B. The Poret Survey Should Be Excluded Because It Used an Improper Control, a Biased Survey Format, Respondents Who Were Not Confused, and an Under-Inclusive Universe of Respondents.

There are many additional flaws in the Poret Survey. First, Mr. Poret claims to have created

an artificial "control" bottle that supposedly removed the infringing elements of the Redemption

bottle and changed nothing else. *See* Diageo Opp. Br. 6, ECF No. 254. To be proper and effective,

a control must "retain as many non-infringing characteristics of the test stimulus as possible." Shari

S. Diamond, *Control Foundations: Rationale and Approaches*, Trademark and Deceptive

Advertising Surveys, 212 (Shari S. Diamond & Jerre B. Swann (eds.), American Bar Association

2012); *see also Nabisco v. Warner–Lambert Co.*, 32 F. Supp. 2d 690, 700 (S.D.N.Y. 1999); *Louis*

*Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 595 (S.D.N.Y. 2007) ("A control

product is one that is a non-infringing product which is similar to the products at issue.") (citation

and quotation marks omitted).[7] However, Mr. Poret made multiple unnecessary changes that again

skewed the results in Diageo's favor. Among other things, he gave the control bottle an elongated

neck even though Diageo claims no rights in that feature of the Bulleit bottle and does not allege

that the neck of the Redemption bottle is infringing. Mr. Poret also changed the shape of the

Redemption label despite the fact that Diageo has never claimed that Redemption's nearly square

label shape infringes the rectangular, wrap around Bulleit label.

---

[7] Diageo attempts to distinguish these cases by claiming that they have controls much worse than its own. *See* Diageo Opp. Br. 21–22, ECF No. 254. Yet, it cites no cases in support of its claim that the issues with its own control do not contribute to the same need to exclude the survey as misleading as in these cases. Its only case deals with word marks instead of trade dress. *See id.* (citing *Combe Inc. v. Dr. August Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 464 (E.D. Va. 2019)). And Diageo does not even attempt to distinguish Deutsch's many other cited cases, including two involving Mr. Poret. *See* Deutsch Br. 26–27 & n.34, ECF No. 207.

Page 7 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF/COUNTERCLAIM DEFENDANT'S SURVEY EXPERT HAL PORET

But for the improper changes in the control bottle, the noise level would have been higher.[8] This outcome would have made the level of confusion even lower than the minimal 15% achieved by Mr. Poret when he disregarded the rules.[9] And Mr. Poret changed essentially all of the claimed design elements on the control bottle despite Diageo's acquiescence in third party use of combinations of these elements. Thus, Mr. Poret's use of an improper control bottle designed to minimize confusion in the control group is another reason for excluding his survey.[10]

Second, Mr. Poret used the Squirt survey format, which produces misleading results if not done properly. Diageo claims Squirt is the <u>only</u> acceptable survey format here, yet it relies on cases where the plaintiff did not claim that its trade dress was famous. *See* Diageo Opp. Br. 11-12, ECF No. 254.[11] It cites one exception, but that case misapplied the Second Circuit's standard for

---

[8] Diageo attempts to claim that courts accept higher noise rates like Diageo's control group's 25% confusion level, but it cites cases outside of this circuit. *See* Diageo Opp. Br. 22, ECF No. 254. It then attempts to distinguish Deutsch's case from this Court by claiming that it held that Squirt-type surveys were allowed a higher degree of noise. *See id.* Yet, a review of the cases cited herein shows that the court was referring to Squirt surveys that showed the plaintiff and defendant's product side-by-side instead of sequentially as Mr. Poret did. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 534–35 (S.D.N.Y. 2011) (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt. Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010); *Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1559 (S.D.N.Y. 1987)). And Diageo's citation to *Kargo Glob., Inc. v. Advance Mag. Publishers, Inc.*, No. 06 Civ. 550(JFK), 2007 WL 2258688, at *9–10 (S.D.N.Y. Aug. 6, 2007) is a distraction as the court did not find that a survey needed to have at least an 80% noise level to be impermissibly misleading.

[9] This outcome contradicts Diageo's claim that both cannot be true: that if the control was bad then the confusion level for the control bottle would not be as high. Yet, if the control had been improved, then there likely would have been a higher, not a lower confusion rate and thus the control noise would have shown a smaller percentage of people who confused the two bottles.

[10] Diageo claims that the other two bottles in the survey are somehow not considered "control" bottles and so would not "potentially incorporate[e] consumers' differential awareness of the well-known brand as opposed to the accused product." Diageo Opp. Br. 24, ECF No. 254. Yet, if respondents were more aware of these two brands than Redemption, it was likely clear to these respondents that they were being asked to match the third bottle, Redemption, as the one being similar to Bulleit since they already knew about the other two brands. Thus, it does not matter how similar or not they look to the Bulleit bottle, as Diageo claims, as any perceived similarity would be discounted by respondents who were already familiar with the brand. Furthermore, Diageo again failed to address several cases cited by Deutsch. *See* Deutsch Br. at 32–33 & n. 38, ECF No. 207.

[11] *See Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175, 194 (S.D.N.Y. 2008); *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2018 WL 2087239, at *1 (M.D. Fla. May 4, 2018) (unpublished); *Bodum USA, Inc. v. A Top New Casting, Inc.*, Case No. 16 C 2916, 2017 WL 6626018, at *10 (N.D. Ill. Dec. 28, 2017) (unpublished); *Nail All., LLC v. Poly-Gel L.L.C.*, Case No. 17-CV-01026-FJG, 2019 WL 5295501, at *4 (W.D. Mo. June 27, 2019) (unpublished).

Page 8 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE
PLAINTIFF/COUNTERCLAIM DEFENDANT'S SURVEY EXPERT HAL PORET

determining the similarity of the marks to decide which survey format to use,[12] and it is an outlier as this Court has since repeatedly found that the Eveready format can be used when the products are competitors in the same market.[13] Diageo also fails to explain why its own expert has previously used Eveready in cases involving competing products, *see* cases cited in Deutsch Br. 19, 21–22 nn.26-27, ECF No. 207, instead arguing in its brief that using Eveready is fine as long as the other side does not use a Squirt format that could be rejected or criticized. *See* Diageo Opp. Br. 14, ECF No. 254. Diageo next fails to explain why Mr. Poret previously praised Eveready as being non-suggestive. *See* Deutsch Br. 22, ECF No. 207.[14]

Diageo continually claims that the Parties' Bulleit and Redemption products are sold side-by-side when in fact it has no supporting evidence except for a few anecdotal and possibly staged photographs. In fact, there is no evidence showing how often, if at all, the products are displayed in proximity to one another. If the parties' products are sold next to each other, Diageo fails to explain why Mr. Poret did not present the bottles in an array all at once using the alternative Squirt

---

[12] *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.* ("*LVM*"), 525 F. Supp. 2d 558, 574 & 633 (S.D.N.Y. 2007) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006)).

[13] *See, e.g.*, *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 451 & 452 n.9 (S.D.N.Y. 2017) (both products sold at malls); *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 362 (S.D.N.Y. 2015) (accepting Poret's *Eveready* survey for defendant for marks competing in the motivational speaking market); *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 338-339 (S.D.N.Y. 2013) (both products sold at beauty supply stores); *Elizabeth Taylor Cosmetics Co. Inc. v. Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238, 1246 (S.D.N.Y. 1987) (giving no weight to Squirt survey when the products were both sold in "first-tier" stores). Diageo attempts to distinguish these cases in its brief as involving products not in the same market, *see* Diageo Opp. Br. 13-14, ECF No. 254, even though they were. And these cases show that the Squirt format is not the only applicable format when the products are in the same market. Diageo also claims that an Eveready survey would "underestimate confusion," but relies on a case that involved a weak mark unlike Bulleit which Diageo claims to be strong. Diageo Opp. Br. 14, ECF No. 254 (citing *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 338–39 (S.D.N.Y. 2013)). Diageo refuses to concede that its own mark is weak, and thus Eveready is still the more appropriate format to use.

[14] Diageo points to recent Squirt surveys Mr. Poret allegedly has done for defendant clients. Yet, it fails to provide full details or his actual report in support so the court could determine whether these cases involved trade dress claims, the same Squirt survey format used here or the array format showing all products at once, and changes in the survey presentation such as a delay between showing the first mark and the other marks. There is also no indication whether the same objections were raised to the prior surveys as those raised by Deutsch in this case. And Mr. Poret lists over 100 cases and yet conducted the Squirt format in only 13 cases and only 8 times for the allegedly non-infringing party, which does not strengthen his claim that the Squirt surveys are reliable for defendants if used in less than 10% of his work. *See* Poret Decl. & Ex. 1, ECF Nos. 256, 256-1.

format. This is less suggestive as it avoids priming the respondent to know which bottles are being compared. Additionally, Diageo misconstrues Dr. Rappeport's testimony who said that the Squirt format is "an appropriate" format, as long as it is done correctly. *See* Rappeport Rebuttal Rep. 2, ECF No. 238-12. Dr. Rappeport did not claim that the Squirt format was the only appropriate format here and criticized the Poret Survey because it was not done correctly in that, among other things, it showed an unrealistic (dissected) view of Bulleit and other products. *See id.* at 2, 6 n.11. Thus, the improper design of Mr. Poret's Squirt survey in combination with the other flaws requires exclusion of the Poret Survey.[15]

Third, the survey responses in the Poret Survey show that respondents were confused due to the improper control bottle instead of similarities in the allegedly infringing design or trade dress elements claimed by Diageo. And while Diageo claims the invalid responses in Mr. Poret's survey should be counted, it claims that the Court should look at the Ezell's Eveready survey report's open ended answers to find errors. Once again, Diageo claims one standard for its expert but insists on applying a different standard for Deutsch's expert. Similarly, Diageo completely ignores the many cases cited by Deutsch holding that a review of verbatim answers can lead to removing non-confused respondents. *See* Deutsch Br. 35–36 & nn.40–42, ECF No. 207. For the few cases it does address, Diageo falsely claimed that Mr. Poret has not excluded respondents based on their

---

[15] Diageo claims that courts have not excluded surveys because they used the Squirt format (*See* Diageo Opp. Br. 13, ECF No. 254), but it misreads those cases. *See Saxon Glass Techs., Inc. v. Apple Inc.*, 393 F. Supp. 3d 270, 288 n.8 (W.D.N.Y. 2019) ("The *Eveready* survey, which is particularly apt where the plaintiff's senior mark is strong and widely-recognized, does not inform respondents what the senior mark is, but assumes that they are aware of the mark from their prior experience. The *Squirt* format, **on the other hand**, presents the respondent with both of the conflicting marks.") (emphasis added) (citation and quotation marks omitted), *aff'd*, 824 F. App'x 75 (2d Cir. 2020). *See also* Diageo Opp. Br. 15, ECF No. 254 (citing cases in other circuits with different standards and *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 597–600, & n.10 (S.D.N.Y. 2018) (refusing to exclude Squirt survey for a product that was not "top of the mind," like Diageo claims for its mark, and so an Eveready survey could not have been used)). And Diageo completely ignores several of Deutsch's cited cases that excluded Squirt surveys. *See* Deutsch Br. 20 n.24, ECF No. 207.

answers to open-ended questions when he has done just that in other cases. Diageo Opp. Br. 25-26, ECF No. 254.[16]

Finally, Diageo has no response to the fact that this Court has excluded other surveys with under-inclusive universes like the one used by Mr. Poret here. *See* Deutsch Br. 34–35, ECF No. 207. It claims that the Poret Survey universe is correct as the parties' products are "typically sold" for "$20 to $40,"[17] but it then objects to the criticism of Dr. Rappeport who faulted the Poret Survey for including respondents who purchase whiskey in a lower price range than what Diageo claims is typical. Diageo also objects to any argument that if the price range is going to be expanded beyond the "typical" purchase prices, it should have included all prices at which the Parties' products are sold in instead of Diageo's limited range. Diageo Opp. Br. 25, ECF No. 254. There is evidence in Mr. Poret's own rebuttal report that some Bulleit and Redemption products are sold for more than $40 yet he excluded potential purchasers in this range. *See* Poret Rebuttal Rep. 7-8, 11, ECF No. 206-4. Diageo claims that someone who purchases whiskey for only $40 per bottle or more should not be included because that's not the "usual" price for its product. With his improper pricing questions, Mr. Poret again attempted to skew the survey results in Diageo's favor by excluding potentially more cautious purchasers who typically pay more than $40 per bottle for whiskey and by including less discriminating or more easily confused respondents who typically pay less than $20 per bottle.[18]

---

[16] *See* Expert Report of Hal Poret, *In Matter of Car-Freshener Corp. v. Am. Covers, LLC*, No. 517CV00171, 2018 WL 8140766 (N.D.N.Y. Nov. 2, 2018) ("A review was conducted of all open-ended answers, including responses to this question and respondents who failed to follow instructions for this question, or gave other non-responsive or nonsense answers to open-ended questions *were removed from the final data*.") (emphasis added); (excluding the 1.3% of respondents who expressed confusion for unrelated reasons and found that this "results in *a zero level of confusion* with regard to what company respondents believe puts out the television") (emphasis added).

[17] Tellingly, Diageo offers no proof that the products are "typically sold" in this range.

[18] By failing to rebut any of Deutsch's cases on this point, Diageo also concedes that those willing to pay more for a product tend to be more sophisticated and so tend to be less confused. *See* Deutsch Br. 34 n.39, ECF No. 207.

Diageo claims that each of these flaws should simply go to the weight of the survey.[19] However, the failure to show the parties' full marks and full trade dress is a fatal flaw that warrants the complete exclusion of Mr. Poret's survey results and any opinion based on those results. The other flaws in the survey provide additional overwhelming grounds for exclusion.

### III.    CONCLUSION

For the reasons set forth above, the Poret Survey should be excluded as biased and completely unreliable, and Mr. Poret should be precluded from testifying about the biased results of the survey.

---

[19] Diageo's cited cases deal solely with methodology issues while the Poret Survey has issues going beyond methodology causing it to be more prejudicial than probative. *See A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 364 F. Supp. 3d 291, 326 (S.D.N.Y. 2019); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 227–28 (2d Cir. 1999).

Respectfully submitted,

Dated: January 26, 2021          By:   _____
                                       Michael A. Grow, *pro hac vice*
                                       1717 K Street, NW
                                       Arent Fox LLP
                                       Washington, DC 20006
                                       Tel.:  (202) 857-6000
                                       Fax:  (202) 857-6395
                                       Michael.Grow@arentfox.com

                                       Howard Graff
                                       Michael Cryan
                                       Eric Biderman
                                       Lindsay Korotkin
                                       Arent Fox LLP
                                       1301 Avenue of the Americas, Floor 42
                                       New York, NY 10019
                                       Tel.:  (212) 484-3900
                                       Fax:  (212) 484-3990
                                       Howard.Graff@arentfox.com
                                       Michael.Cryan@arentfox.com
                                       Eric.Biderman@arentfox.com
                                       Lindsay.Korotkin@arentfox.com

                                       *Attorneys for Defendants/Counterclaim Plaintiffs*
                                       *W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family*
                                       *Wine & Spirits and Bardstown Barrel Selections*
                                       *LLC*