**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIAGEO NORTH AMERICA, INC., <br><br>             Plaintiff/Counterclaim Defendant, <br><br>             v. <br><br> W.J. DEUTSCH & SONS LTD. d/b/a <br> DEUTSCH FAMILY WINE & SPIRITS, and <br> BARDSTOWN BARREL SELECTIONS LLC, <br><br>             Defendants/Counterclaim Plaintiffs. | **Case No.** 1:17-CV-04259-LLS |

**AMENDED JOINT PRETRIAL ORDER**

In accordance with the stipulation and scheduling order endorsed by the Court on April 8, 2021 (ECF No. 289), Plaintiff/Counterclaim Defendant Diageo North America, Inc. ("Diageo") and Defendants/Counterclaim Plaintiffs W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits ("DFWS") and Bardstown Barrel Selections LLC ("Bardstown") (DFWS and Bardstown are collectively referred to as "Deutsch," and Deutsch and Diageo are collectively referred to as "the Parties") submit this Joint Pretrial Order.

## I.   AGREED FINDINGS OF FACT

1.   Plaintiff/Counterclaim Defendant Diageo is a Connecticut corporation with its main offices in New York, New York.

2.   Diageo directly and indirectly manufactures, advertises, distributes, and sells various alcohol beverages under various brand names, including BULLEIT, JOHNNIE WALKER, SMIRNOFF, BUCHANAN'S, SINGLETON, CAPTAIN MORGAN, CROWN ROYAL, GORDON'S, and TANQUERAY, among others.

1

3.      Defendant/Counterclaim Plaintiff DFWS is a New York corporation, founded in 1981, with its principal place of business in Stamford, Connecticut.

4.      DFWS directly and indirectly manufactures, advertises, distributes, and sells various alcohol beverages under various brand names including [yellow tail], Josh Cellars, Joseph Carr, The Calling, Barone Fini, Fleur de Prairie, Bib & Tucker Bourbon, Masterson's, and Redemption, among others.

5.      Defendant/Counterclaim Plaintiff Bardstown is a non-operating entity under common ownership with DFWS and is a Delaware limited liability company with the same address as DFWS.

6.      Bardstown is the owner of the Redemption trademark and label for whiskeys and has licensed the trademark and label to DFWS.  Bardstown and DFWS will be referred to collectively as "Deutsch" for all purposes in this trial.

7.      In or around 1999, Joseph E. Seagram & Sons ("Seagram"), began selling a redesigned version of the Bulleit Bourbon packaging shown below:



2

8.      In or around 2001, Diageo acquired any and all rights in the Bulleit brand and packaging from Seagram.

9.      On August 24, 2004, Diageo filed Application No. 78472619 to register the Bulleit packaging with the U.S. Patent and Trademark Office ("PTO").  The Application was signed under oath by Eliot Basner, counsel for Diageo.

10.      On April 4, 2006, the PTO accepted the Application and issued U.S Registration No. 3,075,812 in the name of Diageo (the "'812 Registration").  On March 30, 2012, the PTO stated that "the Section 15 declaration is acknowledged."

11.      Diageo is the owner of the '812 Registration.

12.      Diageo sells a line of American whiskey products using the Bulleit packaging shown below, including with respect to bourbon and rye products:



13.      In June 2015, Deutsch acquired the rights to the trademark Redemption for whiskey products, including rye and bourbon. The products sold in the bottle design shown below (the "Original Redemption Bottle Design"):



14.     Since November 2016 to the present, Deutsch has sold in interstate commerce a line of Redemption brand whiskey in a new bottle design shown below (hereinafter the "Products at issue" or the "Redemption Bottle Design"):



15.     Deutsch generated an estimated $27 million in revenue, before costs, from sales of the Products at issue from November 2016 through March 2019.[1]

## II.     PLAINTIFF/COUNTERCLAIM DEFENDANT'S PROPOSED FINDINGS OF FACT

### Plaintiff's Proposed Findings Related to Plaintiff's Claims

1.     In or around 1997, Seagram commissioned a re-design of the packaging for Bulleit bourbon (hereinafter, the "Bulleit Trade Dress"), hiring well-regarded designer Steven Sandstrom to create the design. (Bello Testimony; Sandstrom Testimony; Bulleit Testimony.)

2.     Per instructions from Seagram, Sandstrom intended to create a highly distinctive look and feel for the Bulleit Trade Dress compared to other spirit brands on the market. (Bello Testimony; Sandstrom Testimony; DIAGEO000074661.)



---

[1]     Per agreement between the Parties, the revenue and cost numbers will be updated prior to trial.

3.      There are countless alternative designs for whiskey and spirits packaging. (Saidman Tr. 83:9–16; Sooy Tr. 129:13–25, 188:5–189:22, 232:15–234:6; Thomason Tr. 260:21–261:10, 318:14–320:19; Provini Tr. 319:5–18; Kremer Tr. 119:3–10; Steffanci Tr. 241:24–242:2.)

4.      In creating the Bullet Trade Dress, Sandstrom intended to create a distinctive brand image; his design process was not driven by functional concerns. (Bello Testimony; Sandstrom Testimony; DIAGEO000074661.)

5.      Diageo has not touted any alleged functional advantages of the Bulleit Trade Dress in sales or advertising. (Bello Testimony; Sandstrom Testimony; *see, e.g.*, DIAGEO000000772–'774; DIAGEO000000841; DIAGEO000001185; DIAGEO000001970; DIAGEO000001984; DIAGEO000002000;      DIAGEO000002004;      DIAGEO000002038;      DIAGEO000044852; DIAGEO000045277;      DIAGEO000047618;      DIAGEO000048536;      DIAGEO000048907; DIAGEO000067340; DIAGEO000069081; DIAGEO000076020–'76030; DIAGEO000076373; DIAGEO000076795; DIAGEO000082095–'82128; DIAGEO000082178–'82202.)

6.      There are no cost savings associated with the manufacturing process; indeed, the Bulleit Trade Dress is more expensive to manufacture than many standard bottle designs due to, among other things, the shape of the bottle and the embossing. (Giuliani Testimony; Bello Testimony; Expert Testimony of Glenn May; Steffanci Tr. 424:9–19, 546:6–10; Thomason Tr. 282:18–283:4; Provini Tr. 174:6–24; Sooy Tr. 150:15–151:4.)

7.      The Bulleit Trade Dress is an inherently distinctive packaging design. (DIAGEO000081052;      DIAGEO000038052;      DIAGEO000062752;      DIAGEO000007298; DIAGEO000000772;      DIAGEO000002004;      DIAGEO000043401;      DIAGEO000042757; DIAGEO000007130;      DIAGEO000066240;      DIAGEO000081665;      DIAGEO000004401; DIAGEO000006789; DIAGEO000077498; DIAGEO000000072; DIAGEO000067523; Kilgore

Tr. 82:11–83:25, 139:4–142:3, 319:4–320:5, 321:2–323:10; KWS000033, at 8; DFWS00070594, at 25; DFWS00080611, at DFWS00080621; DIAGEO000020181; DFWS00082059; Kremer Tr. 110:3–17, 158:5–19, 162:20–163:18; DFWS00036076.)

8.      Diageo has received numerous awards for the design of the Bulleit packaging. (Bello Testimony; Sandstrom Testimony; Bulleit Testimony; DIAGEO000081052; DIAGEO000062752; DIAGEO000006789.)

9.      Since acquiring the Bulleit brand in 2001, Diageo has spent well over $100 million in advertising and promotion of Bulleit, including many advertisements and marketing campaigns prominently depicting the Bulleit Trade Dress. (Bello Testimony; DIAGEO000007298; DIAGEO000000772; DIAGEO000002004; DIAGEO000043401; DIAGEO000042757; DIAGEO000007130; DIAGEO000080295; DIAGEO000080296; DIAGEO000081704–'81734; *see also* Diageo's Proposed Finding of Fact No. 5 and the evidence cited therein.)

10.     Since 2016, Diageo has averaged over one million nine-liter cases of Bulleit whiskeys sold per year in the U.S. market.  Diageo's Bulleit whiskeys are among the highest selling whiskey products on the market; Bulleit Rye is the number one selling rye whiskey on the market, and Bulleit Bourbon is second among all premium bourbon brands on the market. (DIAGEO000004401; Bello Testimony; Steffanci Tr. 206:20–207:2.)[2]

11.     Deutsch's officers and employees admitted that Bulleit has "strong packaging," and that it was "amazing how much everyone loves the Bulle[i]t package." (DFWS00070594, at 25; Kilgore Tr. 83:6–85:20, 139:4–142:3, 246:6–247:2, 348:6–349:3; DFWS00071859; McCarthy Tr. 72:5–73:21, 127:22–129:13; DFWS00080621; DFWS00082059; Kremer Tr. 110:3–17, 158:5–19,

---

[2]      Per agreement between the Parties, Diageo will update sales and advertising numbers prior to trial.

162:20–163:18; DFWS00036076; Boone Tr. 158:28–159:14; DFWS00034032; Steffanci Tr. 142:19–145:11, 160:2–161:9, 293:3–15, 351:13–353:8; DFWS00040834; Thomason Tr. 222:13–224:12; DFWS00047936, at 5.)

12.     As a result of the sales, advertising, and promotion of the Bulleit Trade Dress for more than 20 years, the trade dress has come to be closely associated with the Bulleit brand image and it is a strong and famous package design. (DIAGEO000081052; DIAGEO000038052; DIAGEO000062752; DIAGEO000007298; DIAGEO000000772; DIAGEO000002004; DIAGEO000043401; DIAGEO000042757; DIAGEO000007130; DIAGEO000066240; DIAGEO000081665; DIAGEO000004401; DIAGEO000006789; DIAGEO000077498; DIAGEO000000072; DIAGEO000067523; Kilgore Tr. 82:11–83:25, 139:4–142:3, 319:4–320:5, 321:2–323:10; KWS000033, at 8; DFWS00070594, at 25; DFWS00080611, at DFWS00080621; DIAGEO000020181; DFWS00082059; Kremer Tr. 110:3–17, 158:5–19, 162:20–163:18; DFWS00036076.)

13.     In January 2016, Deutsch conducted consumer research to test new packaging designs for Redemption against other competitive products including Bulleit.  At that time, Deutsch's proposed designs retained the tall, cylindrical shape of the original Redemption packaging among other elements.  That research disclosed that consumers strongly preferred the design of Bulleit, which was recognized as the category leader with strong packaging. (Kremer Tr. 63:11–70:18; Kilgore Tr. 111:13–113:14, 134:14–137:14, 139:4–142:3; DFWS00080614–17, DFWS00080621.)

14.     As an immediate result of those findings, Deutsch changed its re-design strategy, and issued a new design brief which directed the lead designer to "recommend bottle designs using a wider, squatter more masculine bottle similar to Bulleit," and to incorporate "vintage" overall

elements, "rugged" and "vintage" labels, and a cork finish. DFWS00083055, at DFWS00083062; DFWS00057224.)

15.     Deutsch learned during the market research process for the new Redemption packaging design (hereinafter, the "Accused Products" or the "Accused Redemption Packaging") and after its release in the market that consumers considered the appearance of the Accused Redemption Packaging to be similar to Bulleit.   (DFWS00085265; DFWS00085268; DFWS00085271; DFWS00085272; DFWS00085273; DFWS00084034; DFWS00031574.)

16.     The overall appearance of the Accused Products is similar to Bulleit, as both products are canteen shaped with a taper, broad shoulders, and a barrel chest, and have prominent embossing above the labels with arched text, convex dividers, borders on the label with parallel lines and black cork tops.  (Bello Testimony; DFWS00084034; DFWS00031574.)

17.     The Bulleit and Redemption products are both premium American whiskeys, and are sold at the same price point to the same target consumers in the same channels of trade, and, at Deutsch's request, are often placed directly next to each other on the store shelf. (DFWS00080752, at DFWS00080762–67; Kilgore Tr. 355:13–19; Steffanci Tr. 183:7–184:20; DFWS00070594,     at     25,     42;     DFWS0005725;     DFWS00063277;     DFWS60134; DIAGEO000075738; Expert Testimony of Martin Jones.)

18.     The Bulleit and Redemption products are sold at a variety of retail stores and on premise accounts nationwide.  The products are sold at retail at a relatively inexpensive price range of $20 to $40, to a wide range of consumers, including those who are inexperienced and unsophisticated. (DFWS00080752, at DFWS00080762; Kilgore Tr. 355:13–19; Steffanci Tr. 183:7–184:20; DIAGEO000017439.)

19.     There has been actual consumer confusion in the marketplace between the Bulleit Trade Dress and the Accused Products. (Parker Testimony; DIAGEO000078363; DIAGEO000078364; Schuler Tr. 33:5–11; Expert Testimony of Hal Poret.)

20.     Deutsch has intentionally infringed the Bulleit Trade Dress. (DFWS00083055, at DFWS00083062; DFWS00034343, at DFWS00034347; DFWS00053227, at DFWS00053233, DFWS00053236; DFWS00026937; Thomason Tr. 244:20–245:2, 249:8–18, 250:18–252:4, 287:10–288:14; DFWS00071815; Kilgore Tr. 319:11–323:10; DFWS00071065; Provini Tr. 300:6–302:24; Steffanci Tr. 450:20–451:2, 470:24–472:5; DFWS00052806.)

21.     Deutsch did not conduct a formal clearance search of PTO records prior to its release of the Accused Products. (Kilgore Tr. 42:21–25; Steffanci Tr. 471:6–10.)

22.     Deutsch generated over $27 million in revenue from sales of the Accused Products from November 2016 through March 2019, garnering over $12 million in profits from the sale of the Accused Products and demonstrating a sharp increase in the rate and volume of sales of Redemption compared to the rate of sales of the Original Packaging. (DFWS00155433; Expert Testimony of Bryan Van Uden.)[3]

23.     Diageo has incurred damages as a result of Deutsch's infringement in the form of lost sales, dilution of its valuable trademark, and lost goodwill as a result of Deutsch's sale of the Accused Products. Diageo's damages are based on the extensive evidence that Deutsch targeted Bulleit with directly competitive products sold at the same stores, at close to the same price, resulting in actual confusion. Diageo's damages may be measured in whole or in part based on Deutsch's profits. (Bello Testimony; Diageo's Proposed Findings of Fact Nos. 17–21 and

---

[3]     These numbers will be updated prior to trial per agreement between the Parties.

evidence cited therein; Expert Testimony of Bryan Van Uden and the documents cited in the Van Uden Report.)

### *Plaintiff's Proposed Findings of Fact Related to Defendants' Counterclaims*

24.     Diageo re-incorporates Plaintiff's Proposed Findings of Fact Nos. 1 through 22.

25.     The design features in the Bulleit Trade Dress are not essential to the use or purpose of the product; they generate additional costs and complexities associated with production.  (Bello Testimony; Giuliani Testimony; Expert Testimony of Glenn May; Steffanci Tr. 424:9–19, 546:6–10; Thomason Tr. 282:18–283:4; Provini Tr. 174:6–24; Sooy Tr. 150:15–151:4.)

26.     Other than Redemption, no other competitive spirits brand in use in the market has the same combination of features that make up the Bulleit Trade Dress such that it has a similar overall appearance to the Bulleit Trade Dress.  (Bello Testimony.)

27.     There are limitless alternative ways to convey a vintage, frontier, historical, or "American West" appearance without copying the specific elements of the Bulleit Trade Dress in a confusingly similar manner.  (DeSarno Tr. 24:14–25:7, 98:11–25; Thomason Tr. 145:10–20; Kilgore Tr. 192:18–194:4; Expert Testimony of Martin Jones; Bello Testimony.)

28.     Deutsch did not adopt the Accused Redemption Packaging due to functional concerns; the Accused Redemption Packaging costs more to manufacture than the Original Packaging and the new shape was not preferred by bartenders.  (DFWS00033732; Thomason Tr. 87:22–89:11; Steffanci Tr. 424:9–19.)

29.     On August 9, 2017, Berlin Packaging LLC, the company that designed the glass for the Accused Redemption Packaging, filed a design patent application for the Accused Redemption Packaging in which Deutsch personnel signed a statement affirming their belief that the Accused

Redemption Packaging, including its shape, is ornamental and thus non-functional. (DFWS00133074; DFWS00037263; Expert Testimony of Philip G. Hampton, II.)

30. Deutsch has admitted that the competitive set for Redemption, as an American whiskey product, includes other American whiskey brands such as Bulleit, High West, Templeton, Maker's Mark, and Rittenhouse. Many of the spirits brands Deutsch asserts in this case are outside the American whiskey competitive set, and are thus not relevant to consumer perception of Bulleit. (Steffanci Tr. 83:21–84:10; Kilgore Tr. 366:8–367:3; Bello Testimony; Expert Testimony of Martin Jones.)

31. Diageo monitors the release of third-party products that may be similar in their overall appearance to the Bulleit Trade Dress such that they could lead to consumer confusion, and takes action where appropriate. (Bello Testimony; Basner Testimony; Manginelli Tr. 38:19–40:3, 48:2–15; DIAGEO000077498; DIAGEO000000072; DIAGEO000067523.)

32. The Bulleit Trade Dress is a strong brand that has not lost its significance to consumers as a result of any similar third-party products or for any other reason. (*See* Diageo Proposed Findings of Fact Nos. 7–13 & 30 and the evidence cited therein.)

33. Elliot Basner, Diageo's Senior Counsel for Intellectual Property at the time, believed when signing the application to register the Bulleit Trade Dress that the Bulleit Trade Dress, including the shape of the antique bottle, was distinctive for use in connection with spirits. (Basner Testimony.)

34. After searching the records of the PTO for any similar bottle designs, the PTO Examining Attorney noted that he "found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d)," which precludes registration where there are other

registrations or applications that are confusingly similar to the proposed application. (DIAGEO000081458, at 48.)

35.     The PTO Examining Attorney issued an Office Action, which is an initial response that may be overcome by argument by the applicant.  In response to the Office Action, Diageo presented legal arguments supported by contemporaneous evidence that the Bulleit Trade Dress was entitled to registration without a disclaimer of the bottle shape.  (DIAGEO000081458; Expert Testimony of Philip G. Hampton, II.)

36.     Diageo's outside counsel, Robert Henley, who submitted the response to the Office Action, believed that the shape of the Bulleit bottle and the overall trade dress was unique and entitled to registration.  (Henley Testimony.)

37.     At the time Diageo's relevant statements were made to the PTO and at all times thereafter, Diageo's representatives believed that the Bulleit Trade Dress, including its antique canteen shape, was distinctive for spirits and whiskey in particular.  (Basner Testimony; Bello Testimony;      Henley      Testimony;      DIAGEO000062585;      DIAGEO000062576; DIAGEO000062590.)

38.     Diageo did not have a subjective intent to deceive the PTO at any point prior to, during, or after the application process.  (Basner Testimony; Bello Testimony; Henley Testimony; DIAGEO000062585; DIAGEO000062576; DIAGEO000062590.)

**III.    DEFENDANTS/COUNTERCLAIM PLAINTIFFS' PROPOSED FINDINGS OF FACT**

     **A.    Facts Supporting Deutsch's Declaratory Judgment Counterclaims for Non-Infringement, Invalidity, and Cancellation.**

          ***1.    Facts Showing Deutsch is Not Liable for Trademark or Trade Dress Infringement or Unfair Competition under 15 U.S.C. § 1114(1),***

***15 U.S.C. §1125(a), or the Common Law because Diageo's Bulleit
Bottle Design Mark is Generic and its Registration is Invalid.***

1.      After acquiring the Bulleit whiskey brand in 1999 from a company founded by Tom

Bulleit, Diageo's predecessor, Joseph E. Seagram & Sons (Seagram), wanted to adopt a new bottle

design for Bulleit based on a frontier whiskey theme, concept, or appearance. Seagram hired Steve

Sandstrom or Portland Oregon to redesign the Bulleit bottle, and he did so by copying an old bottle

found in an antique shop, altering it slightly to meet the 750ml size requirement, and putting the

Bulleit name on it in raised lettering. *See* Sandstrom Dep. Tr. at 65-67, 80-83, 90-91, 101-105;

Bulleit Dep. Tr. at 146, 148-149, 151, 228-229, 246-247; Bello, Diageo 30(b)(6) Depo. Tr. at 123-

124, 151; DeSarno Dep. Tr. at 139-144; PX 312 (DIAGEO000072441); DIAGEO000069853;

DFWS00103399; DFWS00159407; DIAGEO000000072.

2.      Sandstrom was not commissioned to create and did not create a new or unique

packaging design for the Bulleit bottle, was not well-regarded for designing bottles, and admitted

that he had never designed bottle packaging previously nor had any training in bottle design; so he

had no reputation in the field of packaging design. Sandstrom did not intend to create and did not

create packaging with a highly distinctive look and feel; rather he created a non-distinctive, bottle

with a generic frontier look and feel by copying a pre-existing functional, generic, round

shouldered, oval bottle with a shape that had been used for centuries, before, during, and after the

frontier era. See Sandstrom Dep. at 44.

3.      The shape Sandstrom chose was so common that it was being sold as a stock bottle

and was in use by the makers of Dr. McGillicuddy and many other spirits prior to its adoption by

Bulleit. The round shouldered oval bottle Sandstrom copied is identical in shape to many other

bottles, existing then and now which contain functional, generic embossing to emphasize and give

prominence to the surname Bulleit and the generic word whiskey. See facts in infra Section III.A.1.

4.      Sandstrom created nothing but instead copied a pre-existing bottle with a widely used, non-distinctive, generic shape, the configuration of which is driven purely by functional concerns and with commonly used embossing and font that is also completely functional. *See infra* Sections III.A.1. & III.D.1.

5.      Seagram directed Sandstrom to use clear glass instead of green glass for functional concerns: it wanted consumers to be able to see the color of the liquid. *See* DIAGEO000069853; PX 312 (DIAGEO000072441).

6.      Sandstrom said that the antique oblong bottle he used to design the Bulleit bottle would fit well in a saddlebag due to its oblong shape and that mobility was relevant to him. See DIAGEO000069853; DIAGEO000074640; Sandstrom Dep. Tr. at 144-145.

7.      Seagram redesigned the Bulleit bottle to look like an old, common embossed medicine bottle flask, rooted in whiskey history. See DeSarno Dep. Tr. at 139-144.

8.      Diageo has produced no evidence in discovery to support the claim that Jack Daniel's, Jim Beam, Maker's Mark and Wild Turkey were leading brands in 1999. See generally Diageo's Objections & Responses to Deutsch's Request for Production of Documents and Interrogatories.

9.      Maker's Mark produces Maker's 46 in a tapered oblong bottle, with clear glass, rounded shoulders, and a cork top. See DFWS00118214; DFWS00167821; DFWS00168894.

10.      In or around 1999 there were other long established whiskey brands in the U.S. market, including Seagram's Crown Royal, Seagram's Seven 7 Crown, Old Taylor, Jack Daniel's, Jim Beam, Maker's Mark and Wild Turkey, which sold whiskey in bottles having the three basic shapes: oblong, round and square. See DFWS00105936; DFWS00106145; DFWS00109016; DFWS00109364 ; DFWS00155378 ; DFWS00156924; see also facts in Section III.A.1.

15

11.     The new bottle was a minor variation original Bulleit bottle, which also had an oblong round shouldered flask shape with the word Bulleit displayed on the front label.

12.     Diageo obtained Registration Number 3,075,812 ("812 Registration") for a whiskey bottle design (the "Bulleit Bottle Design") containing the words "BULLEIT BOURBON FRONTIER WHISKEY" and a depiction of a bottle as shown in the drawing below for "alcoholic beverages, namely, distilled spirits." Diageo alleged that, "The mark consists of three-dimensional configuration of a bottle that is used to contain the goods, as well as a label design and protruding words and designs. The label design with ridged edges is claimed as a feature of the mark. The protruding words, BULLEIT BOURBON FRONTIER WHISKEY, the protruding line below BULLEIT BOURBON, and the four protruding dots below FRONTIER WHISKEY are all also claimed as features of the mark." The mark shown in '812 Registration excludes the shape of the cylindrical neck and cap as part of the mark by displaying them in dotted lines, and it does not contain any size restriction. *See* Diageo '812 Registration; Krugman Dep. Tr. at 281.



13.     In its Complaint, Diageo claimed that the following generic and functional elements comprise its alleged Bulleit Trade Dress or Bulleit Bottle Design:

      a.     Clear canteen-shaped glass bottle with rounded shoulders;

      b.     Embossed brand name above the label;

      c.     Arched text in the top line of the embossed brand name;

d.      Convex text divider between components of the embossed brand name

(e.g. "BULLEIT BOURBON" separated from "FRONTIER WHISKEY");

e.      Arrow-shaped text divider on the label;

f.      Border of parallel lines on the label; and

g.      Cork bottle cap with black top. *See* Diageo's Complaint; *see also* PX 399

(DFWS00015797).

14.      According to the *American Bottles and Flasks and Their Ancestry,* "[t]he bottle form for which the name flask is reserved [] is one whose cross-section is elliptical or ovate, whose convex or flat sides rise to a shoulder or taper directly into a narrow short neck, and whose capacity is rarely over a quart and usually not over a pint. This type may not have been introduced until the 1600s, and then presumably it was called a pocket bottle." Bottles with an oblong, flask shape have been used continuously since at least the 1700's, if not earlier. *See* DFWS00155407.

15.      All of the Bulleit Bottle Design features claimed by Diageo are generic because they are commonly used and serve cost saving or other functional purposes thereby making the design as a whole non-distinctive and incapable of acquiring distinctiveness or secondary meaning. *See infra* Section III.D.1. *See also* DFWS00157922; DFWS00153777; DFWS00157834; Sazerac Decl.; Bulleit Affdvt.; DFWS00101095; DFWS00153351; DFWS00139511; DFWS00164172; DFWS00154550; DFWS00154364; DFWS00162119; DFWS00139868; DFWS00139874; DFWS00153940; DFWS00157083; DFWS00157815; DIAGEO000080166; DIAGEO000080174; DIAGEO000080179; DIAGEO000080216; DIAGEO000080234; DIAGEO000080252; DIAGEO000080276; DFWS00100784; DFWS00100787; DFWS00171254; DFWS00157223; DFWS00107737; DFWS00107655; DFWS00148154; DFWS00139541; DFWS00166660; DFWS00166666; DFWS00139541; DFWS00166208;

DFWS00175271; DFWS00165263; DFWS00156924; DFWS00154103; 1990 Old Overholt Bottle & Registration; Elijah Craig 1987 trademark application; DFWS00133214; DFWS00133259; DFWS00135460; DFWS00135752; DFWS00135771; DFWS00135776; DFWS00136098; DFWS00136099; DFWS00136100; DFWS00136114; Updated Third Party Bottle Chart; Sooy Report Appx. A; PX 387 (DFWS00174577); PX 393 (BERLIN-00016_0004137); PX 410 (DIAGEO000081023).

16.     Diageo has promoted and advertised the bottle for its functionality/aesthetic functionality, including that it (1) fits in a saddle bag; (2) has the look and feel of an authentic medicine bottle; and (3) has promoted its use as a water bottle in a restaurant because the shape and shoulders make it easier to pour and the embossing helps identify the Bulleit brand name even with the label falling off or being removed. *See* DIAGEO000062590; DIAGEO000062585; DIAGEO000000115; DFWS00167019.

17.     Diageo has done relatively little advertising as part of its marketing strategy for Bulleit. *See* DIAGEO000017255; DIAGEO000033548.

18.     Diageo has touted the functional advantages of the Bulleit bottle design in its research, sales, and advertising. *See* DIAGEO000074640; DIAGEO000038197.

19.     The functional advantages of the Bulleit bottle are immediately apparent to any observer and need not be advertised. *See* Images of and actual Bulleit bottles.

20.     Diageo has not provided any documentary evidence showing the nature and amount of expenditures on "advertisements" or "marketing campaigns depicting the Bulleit trade dress." *See* Diageo's Responses to Deutsch's Requests for Production of Documents.

21.     Diageo has not used advertising that singles out or emphasizes the Bulleit bottle shape or other components of its alleged trade dress as defined in the complaint. *See* DIAGEO000066040.

22.     Documentary evidence shows that Diageo had a strategy to refrain from advertising the Bulleit product, and it has not spend much on Bulleit advertising compared to its competitors. *See* DIAGEO000017255; DIAGEO000033548.

23.     Stores will sell Bulleit online by focusing on the bright orange or green, slanted label, which are elements of the Bulleit bottle design that Diageo does not allege Redemption infringes. See DFWS00167016; DFWS00167044.

24.     Awards for "package design" have no bearing on the functionality of the Bulleit bottle design. Diageo has not received any awards that have recognized or cited the Bulleit Trade Dress as defined in the Complaint or any features of the functional Bulleit bottle design mark or trade dress that are at issue in this litigation. No awards mention the generic oval bottle shape, sans serif embossing, text dividers, clear glass, cork closures or the use of black on the top. See Diageo's Responses to Deutsch's Request for Production of Documents.

25.     Diageo never made substantially exclusive use of any of the features of the Bulleit Bottle Design because, long before and after the Bulleit Bottle Design was first used, hundreds of distilled spirits companies have sold their products in functional flask shaped containers having oblong or oval shapes, rounded shoulders, clear glass or plastic bottles, reverse tapers, embossed or raised lettering, arched text, text dividers, labels with borders, black tops, and cork closures. *See supra* facts in Sections III.A.1.

26.     Many third party bottles have dimensions that are very similar to the Bulleit Bottle Design including Plymouth gin, Manatawny whiskey, Highland Park whiskey, Fireball whiskey,

Myers's rum, Bib & Tucker whiskey, and Singleton whiskey. See Sooy Dep. Tr. at 218-219, 259-260; Sooy Report, Appx. A.

27.    The Bulleit Bottle Design is virtually identical in shape and size to stock bottles, such as the Philadelphia flask, which have been sold for decades by glass container companies. *See* DFWS00135762; DFWS00135425; DFWS00085638; DFWS00133214; DFWS00133259; DFWS00135460; DFWS00135752; DFWS00135771; DFWS00135776; DFWS00136098; DFWS00136099; DFWS00136100; DFWS00136114; DFWS00136382; DFWS00136391; Photographs of Stock Bottles.

28.    Diageo never enforced its alleged rights in the Bulleit Bottle Design and never objected to the use of any stock bottles or other third party spirits bottles, except those used for Manatawny and Dr. McGillicuddy's whiskey. Diageo dropped its objections to these bottles after the makers of these products made minor alterations to their designs. *See* Manginelli, Noah Spirits 30(b)(6) Dep. Tr. at 36-37; Henry, Sazerac 30(b)(6) Dep. Tr. at 19-20, 22, 26-29, 39-40, 42-43, 45-46; Zitelli, Edrington Americas 30(b)(6) Dep. Tr. at 36-38, 53-54; Bello, Diageo 30(b)(6) Dep. Tr. at 60, 66, 69-71, 99, 107-108, 113-114, 203-234; Basner Tr. at 20-21, 24-25, 46-49; Jones Dep. Tr. at 86-89; Giuliani Diageo 30(b)(6) Dep. Tr. at 83-85; DFWS00167863; DIAGEO000067266; Declaration of Noah Spirits: DFWS00155261; DFWS00155133 ; DIAGEO000078638; DIAGEO000067266; DIAGEO000077498; DIAGEO000074588; DIAGEO000074580; DIAGEO000078730; DIAGEO000078740; DIAGEO000078870; DIAGEO000075277; DIAGEO000078638; DIAGEO000080080; Decl. of Sazerac Company; Decl. of Edrington Americas; DIAGEO000000072; DIAGEO000067523; DFWS00140402; DFWS00168894; DIAGEO000017234; DIAGEO000077699; DIAGEO000077642; DIAGEO000077536; DFWS00153432; DFWS00158493; DFWS00166683; DFWS00175523; DFWS00175599;

DFWS00168587; DFWS00107737; DFWS00157876; DFWS00176067; DIAGEO000068240; DIAGEO000068501; DFWS00148090; DFWS00155421; DIAGEO000017234; *see also supra* facts in Section III.A.1.

29.     In its Complaint against Deutsch, Diageo admitted that the Bulleit Trade Dress was not original or distinctive by conceding that it had the overall 'vintage' look intended to indirectly evoke the rugged look and feel of the American Frontier. *See* Diageo Complaint.

30.     History, heritage, and authenticity are used by many manufacturers as emotional triggers for consumers of alcoholic beverages products, especially whiskey and many brands employ bottle designs that reference and draw inspiration from the same historical sets of flask shaped packaging elements that are most appealing to consumers. *See* DeSarno Dep. Tr. at 230-236; Jones Dep. Tr. at 83-89; Provini Dep. Tr. at 175-177, 322-323; DIAGEO000017439; KWS000007; DFWS00092792; DFWS00092796; DFWS00153544; DFWS00153412; DFWS00155129 ; Decl. of Sazerac Inc.; DFWS00153777; DFWS00115465; *see also supra* facts in Section III.A.1.

> ### 2.     *Facts Showing Deutsch is Not Liable for Trademark or Trade Dress Infringement or Unfair Competition under 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), or the Common Law because There is No Likelihood of Confusion between the Current Redemption and Bulleit Bottle Designs.*

31.     Every claimed feature of the Bulleit Bottle Design and the Redemption bottle design adopted in 2016 (the "Current Redemption Bottle Design") is completely different, and, whether viewed separately or in their entirety, no feature is the same. Compared to the oval Bulleit Bottle Design, the Current Redemption Bottle Design has over 100 differences including the following: a hip flask shape with a concave rather than oval back; wider shoulders; narrower base; greater shoulder to heel taper; shorter height; heavier weight; shorter and wider neck; front and back labels that differ in size, shape, color, positioning, design, and font style; embossing with

different words displayed in a different size and style of lettering, in a horizontal line with additional words displayed in an oval shape around it, and with an embossed rye frond below the label. *See* Diageo 30(b)(6) Giuliani Diageo 30(b)(6) Dep. Tr. at 17, 86-88, 92-93, 132-133; Bello, Diageo 30(b)(6) Dep. Tr. at 46-47, 50-52, 93; Kilgore Dep. Tr. at 169-170, 179-180; Provini Dep. Tr. at 150-151; Steffanci Tr. at 278-280, 299-301, 309; Actual, Physical Bulleit & Redemption bottles and photographs; Chart showing over 100 differences; Third Party Bottle Chart & images of bottles; Plaintiff's Complaint; Defendant's Am. Counterclaims; Plaintiff's Answer; Sooy Report, Appx. A; DIAGEO000069853; Bulleit & Redemption bottles and images; PX 409 (DIAGEO000075738); PX 411 (DIAGEO000081024); PX 415 (DIAGEO000081025).

32.     There are over 100 separate and distinct differences between the Bulleit Bottle Design and the Current Redemption Bottle Design, beginning with the capitalized word marks BULLEIT and REDEMPTION, which are the most prominent features visible to consumers. See Bello, Diageo 30(b)(6) Dep. Tr. at 38-39; 42, 44-47, 50-52; Actual, Physical Bulleit & Redemption bottles; Sooy Report, Appx. A; Bulleit & Redemption bottles and images.

33.     Both the Redemption and Bulleit word marks are displayed multiple times on the bottle and front and back labels, and they are the main source identifiers for all of the parties' whiskey products, including bourbon, rye, high rye, and barrel strength products. See Actual, Physical Bulleit & Redemption bottles; Defendant's Am. Counterclaims; Plaintiff's Answer; Bulleit & Redemption bottles and images.

34.     Diageo has never used any words resembling Redemption in connection with  its Bulleit Bottle Design.

35.     Deutsch has never used any words resembling Bulleit in connection with its Redemption Bottle Design.

36.     The price points for Bulleit Barrel Strength and Bulleit 10-Year and 12 Year whiskey are high at over $40 or $50 per 750 ml bottle. See DFWS00158054; DFWS00167009; DFWS00167022.

37.     Redemption Rye Whiskey Rum Cask Finish and Redemption Wheated Bourbon sells for over $40.00 or $50.00 per 750 ml bottle and Redemption 9 year and 10 year old Barrel Proof sells for over $100 in that size(Add exhibits and witness testimony).

38.     The back label of spirits bottles is used to provide products source and other information to consumers, including health warnings and information the name and address of whiskey makers.

39.     The Bulleit and Redemption word marks are different in sight, sound, meaning, and connotation. See Actual, Physical Bulleit & Redemption bottles; Bulleit & Redemption bottles and images.

40.     The main label on the Current Redemption Bottle Design is square and centered on the front of the bottle, whereas the main label on the Bulleit Bottle Design is rectangular and wraps around the bottom portion of the bottle. *See* Diageo 30(b)(6) Giuliani Diageo 30(b)(6) Dep. Tr. at 132-133; Actual, Physical Bulleit & Redemption bottles; Bulleit & Redemption bottles and images.

41.     Diageo and Deutsch compete in the spirits segment of the alcoholic beverage market, which includes whiskey, gin, rum, vodka, tequila, brandy, and liqueurs, all of which can be found next to or in close proximity to Bulleit in retail stores and bars. And nearly all of these types of spirits are at least sometimes sold in oblong or flask shaped bottles. *See* Jones Dep. Tr. at 16, 21, 27, 34-36, 41, 49, 51-52, 122-125, 161-162, 246, 249, 263-264, 267, 269-270, 272-273, 325-326, 362-363; Kilgore Dep. Tr. at 90-91, 358-359; Bello 30(b)(6) Dep. Tr. at 258-260, 376-

378; DeSarno Dep. Tr. at 203-205; Thomason Dep. Tr. at 84-85; DFWS00168894; DFWS00168932–33; DFWS00140402; DFWS00140466; DFWS00169035; DFWS00160786; DFWS00160774; DFWS00160752; DFWS00168934.

42.     The facts obtained in discovery show that (a) the majority of consumers are not shopping exclusively for whiskey, (b) flavored whiskey buyers will migrate to unflavored whiskey, (c) most shoppers expect flavored whiskeys to be shelved alongside unflavored whiskeys and (d) consumers are exposed to the oblong or flask shape bottles in all spirits categories. *See* Jones Dep. Tr. at 122-125, 263-264, 267, 269-270, 272-273; DIAGEO000017439; DFWS0176177.

43.     The Bulleit Bottle Design shape and label do not have the memorability or uniqueness required for it to be an asset or a potential asset and very few brands have such memorable or unique bottle shapes. See DIAGEO000020181; DeSarno Dep. Tr. at 153, 158-160.

44.     Diageo performed quantitative research in 2016, which concluded that the elements identified in the Complaint as comprising the Trade Dress are not associated with the Bulleit brand or message and "the [Bulleit] bottle on its own did not have the memorability or uniqueness required for it to be an asset or a potential asset – and there are very few brands that do have a bottle that can do this." *See* DIAGEO000020181; DeSarno Dep. Tr. at 153, 158-160.

45.     Diageo's 2016 Quantitative Research concluded that the "only visual element" of the Bulleit bottle "[that operates] as an asset is the wordmark." See DIAGEO000063190; DeSarno Dep. Tr. at 153, 158-160.

46.     Diageo's 2016 quantitative research found that the only recognizable assets were the orange color and the Bulleit brand name. See DIAGEO000063190.

47.     Diageo has never used any advertising emphasizing the Bulleit bottle shape or other trade dress elements separate and apart from the Bulleit wordmark. See DIAGEO000066040.

48.     Diageo does not allege that the Redemption bottle design has used the Bulleit word mark or brand name, and the Redemption bottle design does not contain the words BULLEIT or FRONTIER.  *See*  Plaintiff/Counterclaim-Defendant's  Complaint;  Defendant/Counterclaim-Plaintiff's Am. Counterclaims; Plaintiff/Counterclaim-Defendant's Answer.

49.     Since Deutsch launched the Current Redemption Bottle Design in November 2016, it has received no misdirected communications or other evidence of actual confusion among consumers.  Between 2016 and 2019, Diageo has sold over 20 million 750mL bottles in the Bulleit Bottle Design and Deutsch has sold over 1.8 million 750ml bottles in the Current Redemption Bottle Design. See Van Uden Report Ex. 4; DFWS00155433.

50.     Neither of the two individuals identified by Diageo expressed actual confusion, nor did they identify any alleged similarity between any protectable features of the Bulleit bottle design and the Redemption bottle design. See Morris Parker Decl.; DIAGEO000078363; Schuler Dep. Tr. at 27-31, 33, 35, 78-80, 91-96, 104, 106-114.

51.     Morris Parker, admitted to routinely purchasing Redemption products in their old packaging. *See* Morris Parker Decl.; DIAGEO000078363.

52.     Parker testified about contacting Bulleit customer service to "inquire" about a new relationship between Bulleit and Redemption – evidently still distinguishing (not confusing) the Bulleit and Redemption brands and packaging. See Morris Parker Decl.; DIAGEO000078363.

53.     Andy Schuler provided testimony only after being paid to do so and conceded that he frequently confused alcohol beverage brands (at least a half dozen times) and admitted to purchasing Redemption (both before and after communicating with Diageo's lawyers about this

case) because of its sale price, and not the bottle design or any belief of a relationship to Bulleit. See Schuler Dep. Tr. at 27-31, 33, 35, 78-80, 91-96, 104, 106-114.

54.     Diageo has identified in discovery only two de minimus alleged instances of confusion among millions of bottle sales over a period of more than three years. *See* Van Uden Report Ex. 4; DFWS00155433.

55.     A likelihood of confusion survey was conducted by a reputable research firm using among a nationally representative sample of approximately one thousand individuals across the United States.  The survey replicated market conditions by showing respondents a complete view of the Redemption bottle, and it found that a negligible one percent of respondents gave answers indicating possible confusion with Bulleit. *See* Ezell Dep. Tr. at 159-160; Ezell Report.

56.     Bulleit uses a bright orange and green label for its bourbon and rye products, while Redemption uses dark brown and black labels. See Redemption & Bulleit Bottles & Images.

57.     Diageo's Bulleit trademark is displayed prominently at multiple locations on the front and back of the bottle.

58.     Before and soon after Deutsch acquired the Redemption whiskey brand in 2016, its employees recognized serious design flaws in the "Original Redemption Bottle Design," which made it prone to breakage and led consumers to believe it more closely resembled a container for olive oil or vodka than whiskey. Deutsch's research showed that a sampling of consumers did not like the Original Redemption Bottle Design because of its shape. *See* KWS000007; Provini Dep. Tr. at 135-136, 188; Kilgore Dep. Tr. at 345-348; Steffanci Dep. Tr. at 146-148; DeSarno Dep. Tr. at 162-164.

59.     After its acquisition of the Redemption Brand, as "one of the first steps in the expanded marketing of Redemption," Deutsch decided to "refresh" the Original Redemption

Bottle to make the brand's packaging look more craft and premium by changing the label and replacing the existing cylindrical bottle with an embossed flask shape with a concave back .  See Grow Decl. Ex. 270 (DFWS00025488 at '25493). See also Grow Decl. Ex. 193 (Provini Dep. Tr. at 107:24-108:8); Grow Decl. Ex. 202 (Boone Dep. Tr. at 100:22-101:4).

60.    The January 2016 research was qualitative in that it involved a limited number of participants so its findings cannot be applied to the general consuming public, and it merely shows that those consumers preferred the generic and functional round shouldered, oblong shape commonly used by numerous whiskey and spirits makers now and throughout history as opposed to other shapes. *See* KWS000007.

61.    Deutsch's 2016 focus group research found that "[a]lthough whiskey is consumed by both men and women, whiskey is perceived to be a masculine drink. This is a key characteristic of whiskey's heritage – a strong drink from the rugged Old West and, to a lesser extent, Prohibition. Therefore, the perception of masculinity is one of the prices of entry into the category . . . the [original] bottle shape was consistently associated with vodka (especially Ciroc), water (Voss), shampoo, and to a lesser extent wine, olive oil and tea. The bottle hass a feminine shape (tall, slim) which goes against whiskey category DNA. […]The new bottle shape should have a masculine feel to fit the category and complement the strong, bold attitude associated with the Redemption name and Prohibition era positions." *See* KWS000007.

62.    The January 2016 Focus Groups tested the initial redesigns of the Original Redemption Bottle alongside a sampling of different third party rye brands that reflected a range of bottles currently in the market: High West (an embossed round bottle), Bulleit (an embossed oblong bottle), Templeton (a short round bottle), and Rittenhouse (a non-embossed round bottle). Competitive sets of bottles constantly changed. See KWS000007; Kilgore Dep. Tr. at 62.

63.     Deutsch created a new hip flask design for the Redemption bottle, the Current Redemption Bottle Design, that was different than any other on the market and research showed it was more appealing to customers than the old bottle. *See* Provini Dep. Tr. at 103-105, 176-177; 188-189, 199-201, 203-204, 211-215, 238; Thomason Dep. Tr. at 176-179.

64.     Deutsch's Redemption packaging brief stated that consumers responded to the flask shape but Deutsch did not want to mimic or copy Bulleit or anyone else. See DFWS00083059; Thomason Dep. Tr. at 183; Provini Dep. Tr. at 258, 315.

65.     The appendix to the Deutsch packaging brief included images of other brands also sold in generic flask bottles (like Bulleit) on the market now, including a replica medicine bottle sold as a wedding party favor. See DFWS00083059.

66.     Deutsch designers reviewed antique pre-Prohibition flask bottles, oblong flask shaped stock bottles, and other oblong flask glass bottles currently in the market. *See* DFWS00073433; DFWS00076205; Provini Dep. Tr. at 103-105, 176-177; 188-189, 199-201, 203-204, 211-215, 238; Thomason Dep. Tr. at 176-179.

67.     Unlike Seagram which merely copied a pre-existing bottle when it changed the Bulleit bottle, Deutsch decided to create its own proprietary bottle mold and told its packaging company to use as a general template the Bib & Tucker whiskey bottle with an oblong flask shape, concave back, rounded shoulders, embossed brand name, and a cork closure. See Provini Tr. at 233-235; Kilgore Dep. Tr. at 220-221; Thomason Dep. Tr. at 255-256, 264-265; PX 075 (DFWS00026937); DFWS00032807; PX 076 (DFWS00063533); PX 078 (DFWS00053227).

68.     Deutsch wanted the new Redemption bottle to look unique, and avoided copying any bottle. See Thomason Dep. Tr. at 183; Provini Dep. Tr. at 258, 315.

69.    Deutsch has never claimed trademark or trade dress rights in its Redemption bottle design and never applied to register it as a trademark. See Testimony of Deutsch witnesses.

70.    Diageo filed the lawsuit in bad faith for improper motives, namely to prevent competition from a smaller whiskey maker and to retaliate for the humiliation it suffered after being found to have deliberately infringed the Marker's Mark trade dress and after having been found to have induced a Deutsch employee to break his contractual relationship with Deutsch so that Deutsch could gain access to trade secrets. *See* Filings in *Deutsch v. McGill* and *Maker's Mark v. Diageo* lawsuits.

71.    The accused Redemption bottle is more different from Bulleit than the Dr. McGillicuddy's and Manatawny bottles that Diageo consented to as non-infringing or not likely to cause confusion. See images and physical copies of these bottles.

72.    Diageo and Deutsch have both sourced some of their whiskey from the same contract distiller, MGP Ingredients, Inc. in Lawrenceburg, Indiana, and the Current Redemption Bottle Design's packaging and product is not inferior in quality or in any other way as compared to Bulleit. See Steffanci Nov. 5, 2018 Dep. Tr. at 141-142; Bello Diageo 30(b)(6) Dep. Tr. at 77; DFWS00052039.

73.    Redemption has won several prestigious spirits awards, including a San Francisco Spirits Competition award in 2011 and a World Whiskies Award in 2015.

74.    Diageo's documents and research describe consumers of its Bulleit whiskey as sophisticated or experienced drinkers. *See* DFWS00024841; DIAGEO000017439; DIAGEO000063647; DIAGEO000038197.

75.     Purchasers of Bulleit and Redemption products are all adults, and there is no evidence as to the number of purchasers who are or are not experienced and unsophisticated. *See* Diageo's Resp. to Deutsch's Second Request for Interrogatory No. 15.

76.     Diageo's research shows that (1) whiskey is not an impulse item because the majority of whiskey shoppers are careful in that they spend from at least two to over five minutes in the whiskey aisle before making a purchase; (2) 54% of whiskey shoppers report more than 10 years of experience drinking whiskey; (3) the majority of consumers consider themselves experts and are not shopping exclusively for whiskey; (4) 64% of customers select their brand even before visiting the store; (5) over a third of consumers (36%) will leave a store if it does not carry their desired brand; and (6) Bulleit drinkers are well educated and don't buy unknown brands to save money. *See* DFWS00024841; DIAGEO000017439; DIAGEO000063647; DIAGEO000038197.

77.     Bourbon and rye whiskey products sold using the Bulleit Bottle Design and the Current Redemption Bottle Design are relatively expensive, selling at prices ranging from $18 – $80 and $20 – $70 per 750 mL bottle, respectively. *See* DFWS00167835; DFWS00158054; DFWS00158084; DFWS00158103; DFWS00158123; DFWS00158298; DFWS00158131; Dkt. 160; Apr. 12, 2019 Poret Rebuttal Report at 7-9, 11; Poret Dep. Tr. at 191, 195-198, 333; PX 412 (DIAGEO000081025); PX 417 (DIAGEO000081036).

78.     The Bulleit and Redemption bottles seldom appear directly next to each other on the same store shelf. Further, Bulleit is sold in some accounts that do not sell Redemption and Redemption is sold in some accounts that do not sell Bulleit. *See* DFWS00140402; DFWS00168673; DFWS00140466; DFWS00140511; DFWS00140527; DFWS00147922; DFWS00147929; DFWS00147936; DFWS00162766; DFWS00162959; DFWS00162998; DFWS00164973; DFWS00169035; DFWS00140402; DFWS00140422; DFWS00168021.

79.     Diageo attempts to have its Bulleit whiskey displayed next to Maker's Mark whiskey. *See* DIAGEO000017439; Bello Diageo 30(b)(6) Dep. Tr. at 323-324; DIAGEO000057816 DIAGEO000017439; Bello Diageo 30(b)(6) Dep. Tr. at 323-324.

80.     Diageo admitted that it does not determine where a product is sold, where it ends up on a shelf, or how much it costs; it can only recommend. Deutsch also does not have control over shelf placement; it can state preferences but Deutsch legally cannot sell Redemption as this decision is up to stores and bars. *See* Bello Diageo 30(b)(6) Dep. Tr. at 323, 421; DeSarno Expert Report at 12-16.

81.     Diageo tried to place Bulleit next to leading brands, such as Maker's Mark, knowing that more shoppers would then see their Bulleit  brand. See DIAGEO000017439; Bello Diageo 30(b)(6) Dep. Tr. at 323-324.

82.     Deutsch's target consumers are those that are "whiskey curious": people who consume and buy other spirits or alcoholic drinks that are open to trying bourbon or rye whiskey. See DFWS00042903; Kilgore Dep. Tr. at 90-91; Thomason Dep. Tr. at 84-85.

83.     Diageo's purported market categorization or segmentation of spirits by price point and product category (a) reflects *industry* terms that the *industry* uses for business purposes to track information and data; (b) does not cover all marketplaces and locations where the parties' spirits products are sold; (c) is not followed by all stores, bars, or accounts; (d) is not recognized or used by consumers; and (e) is not relevant to the question of consumers' perceptions or exposures, nor any likelihood of confusion, because consumers generally do not limit their purchases to one specific type of spirits or price point, instead they purchase an array of different types of alcoholic beverage products at different prices points for different occasions. *See* Jones Dep. Tr. at 132, 255-261, 267-272, 280-282; DeSarno Dep. Tr. at 280-282.

84.     From November 2016 through March 2017, the revenue for the Redemption brand, in the new bottle design, was $4,345,087. From April 2017 through March 2018, the revenue for the Redemption brand was $10,096,027. For April 2018 through March 2019, the revenue for the Redemption brand was projected to be $12,892,297. Deutsch's revenue from sales is an approximate number for fiscal year 2019. *See* DFWS00155433.

85.     Deutsch's profits have been minimal due to extensive costs incurred in launching its brand and having to defend itself against Diageo's frivolous infringement claims based on a trademark registration for portions of the Bulleit bottle design that it fraudulently procured by making false statements to the US Patent and Trademark Office concerning the alleged uniqueness of generic round shouldered oval bottle design. See DFWS00155433; DFWS00140390; DFWS00019362.

86.     Redemption sales are based on consumers liking the brand name and its transparency about its whiskey source. See DFWS00027609; DFWS00059534; DFWS00052039.

87.     Redemption's initial sales were lower due to supply constraints. See DFWS00027609.

88.     Diageo offered no evidence that it suffered any lost sales or damages in its initial disclosures and instead only indicated that it would seek equitable relief in the form of an award of Deutsch's profits. *See* Diageo's Initial Disclosures; Diageo's Resp. to Deutsch's First Request for Production of Documents No. 43 & 53.

89.     Diageo has offered no evidence that it suffered any loss or damage of any kind that was proximately caused by the sale of Redemption products or any the hundreds of other alcoholic beverage products sold in round shouldered, oblong bottles. *See* Diageo's Resp. to Deutsch's First Request for Production of Documents No. 45.

90.     Diageo's gross and net sales for each of its Bulleit products has increased each year. *See* DIAGEO000069801; Van Uden Damages Report, Ex. 4.

91.     Diageo's increase in sales was a result of increased interest in craft bourbon by consumers. *See* DeSarno Dep. Tr. at 96-97, 142; DIAGEO000057816; DIAGEO000038197.

92.     Any alleged harm to the Bulleit brand or decrease in the rate of growth of Bulleit sales result from increased competition from other spirits brands, its false advertisement as to where its whiskey was sourced, and from Hollis Bulleit's accusations of physical and sexual abuse by Tom Bulleit, founder of the brand. *See* DIAGEO000011514; Diageo 2016 Annual Report; Bello, Diageo 30(b)(6) Dep. Tr. at 414-417; DIAGEO000076299; DIAGEO000076299; DIAGEO000078220; DFWS00169448; DFWS00169487; DFWS00169492; DFWS00169495; DFWS00169503; DFWS00169505.

93.     Since 2009, rye whiskey has enjoyed a resurgence in the United States.  Grow Decl. Ex. 215 (DeSarno Report) at 7, 41-42; Grow Decl. Ex. 219 (DISCUS Report); Steffanci Decl. ¶ 11.

**B.      Facts Supporting Deutsch's Declaratory Judgment Counterclaims that Deutsch is Not Liable for Dilution under Federal or State Law.**

94.     Deutsch has never used any words resembling Bulleit on its Current Redemption Bottle Design. *See* Witnesses: Steffanci; Actual physical Redemption and Bulleit bottles and comparison photos; Defendant's Am. Counterclaims; Plaintiff's Answer; Photographs of Redemption and Bulleit bottles.

95.     All of the Bulleit Bottle Design features that Diageo is seeking to protect are generic in that they are widely used by third parties and each feature serves a cost saving or other functional purpose. See supra facts in Section III.A.1, III.A.2, & III.D.1.

96.    Standard bottle designs or stock bottles will always be cheaper as a result of being mass produced, and the Bulleit bottle has a standard oblong oval shape. See Provini Dep. Tr. at 84; Bello Dep. Tr. at 159.

97.    The alleged Bulleit Trade Dress as defined in the Complaint is completely generic, functional, non-distinctive and incapable of acquiring distinctiveness and Diageo has never made substantially exclusive use of the trade dress elements individually or collectively. *See supra* facts in Sections III.A.1.

98.    Diageo provided no empirical evidence showing that the generic and functional features of the Bulleit trade dress, even in combination, have ever acquired the high degree of fame required for dilution protection, before or after Deutsch began using its Current Redemption Bottle Design. See Diageo's Objections & Responses to Deutsch's Request for Production of Documents No. 18, 48, & 50.

99.    Diageo provided none of the requisite evidence that the design features of the Current Redemption Bottle Design are substantially identical, individually or collectively, to the Bulleit Bottle Design, which is required for dilution protection. See Diageo's Objections & Responses to Deutsch's Request for Production of Documents No. 37.

100.    Diageo offered no evidence that Redemption whiskey or its Current Redemption Bottle Design is inferior in any way to Bulleit whiskey, and there is no other evidence that the sale of Redemption products in the Current Redemption Bottle Design has tarnished Diageo's Bulleit Bottle Design or goodwill in any way. *See* Diageo's Objections & Responses to Deutsch's Request for Production of Documents No. 23.

101.    Deutsch had never promoted its Redemption products in an unwholesome or unsavory context. *See* Testimony of Deutsch witnesses.  Diageo has offered no evidence that

customers perceive or that Deutsch portrays Redemption products in an as unwholesome or unsavory. *See generally* Diageo's Objections & Responses to Deutsch's Request for Production of Documents.

102.    Diageo has offered no evidence that any attributes of the Current Redemption Bottle Design have ever been associated in the minds of purchasers with Bulleit. *See generally* Diageo's Objections & Responses to Deutsch's Request for Production of Documents.

## C.    **Facts Supporting Deutsch's Declaratory Judgment Counterclaims Showing the Absence of Any Deceptive Acts or Practices under Section 349 of the New York General Business Law.**

103.    Diageo did not allege or offer any evidence of any action by Deutsch that created any danger to the *public's* health or safety or any risk of misleading consumer. And the Current Redemption Bottle Design poses no danger to consumers. *See* Diageo's Complaint.

## D.    **Facts Supporting Deutsch's Counterclaims for Non-Infringement, Invalidity, and Cancellation of the Bulleit Registration on Grounds of Functionality Pursuant To 15 U.S.C. §§ 1052(e)(5) and 1115(b)(8); Fraud Pursuant to 15 U.S.C. § 1115(b)(1); and Abandonment Pursuant to 15 U.S.C. §§ 1115(b)(2) and 1127.**

### 1.    *Facts Supporting the Invalidity of and Cancellation of the Bulleit Bottle Design Registration on Grounds of Functionality Pursuant to §§ 1052(e)(5) and 1115(b)(8).*

104.    Diageo admitted it has no exclusive rights in any of the following functional elements of the Bulleit Bottle Design: the canteen shape of the bottle, the clear glass used for the bottle, rounded shoulders, embossing on the glass, arched text, parallel border lines on a label, or cork closures. *See* Henley Dep. Tr. at 63-64, 87-88; Jones Dep Tr. at 194-196; Bello Diageo 30(b)(6) Dep. Tr. at 91-92; 234-237, 380-384; Krugman Dep. Tr. at 129; Diageo's '812 Registration and file history; Photographs of Bulleit bottle.

105.    Clear glass is functional because (1) it allows consumers to see the liquid in the bottle, including its color and (2) unlike plastic or metal, it is durable and non-reactive to changes

in climate or temperature. *See* DIAGEO000038197; Sandstrom Affidavit; Bulleit Affidavit; DFWS00132916; DFWS00132922; DFWS00175306.

106.    Oblong or flask bottles with tapered sides are functional in part because: (1) they have wider faces than round or square bottles, which permits product owners to display their trademarks in larger letters and on a single line; (2) they are easier to transport and can be placed in a pocket without undue bulging; (3) they take up less packaging space than round bottles, and are less expensive to package. *See* DFWS00132916; DFWS00135459; DFWS00135748; DFWS00133363; DFWS00167862; DFWS00167764; DFWS00155407; DIAGEO000074640; DFWS00136406.

107.    Most spirits sold in the United States are packaged in one of three basic bottle shapes: round, square, or oblong (oval or flask shaped). See Sooy Dep. Tr. at 84; Bello Diageo 30(b)(6) Dep. Tr. at 31, 237-238; Provini Dep. Tr. at 210; Sandstrom Dep. Tr. at 144; Giuliani Diageo 30(b)(6) Dep. Tr. at 87; Third Party Bottle Chart. See supra facts in Section III.A.1.

108.    The oval shape selected by Seagram for Bulleit is among the most common bottle designs in the spirits business and in many other industries. See Updated Third Party Bottle Chart; Report of T. Sooy; DFWS00135459; Bulleit Dep. Tr. at 35-36, 246-248.

109.    While other shapes exist, most are not realistic alternatives to oblong, round or square because they more costly, less functional, and less practical. *See supra* facts in Sections III.D.1.

110.    Deutsch's 2016 focus group research included anecdotal comments indicating a belief by some that "[a]lthough whiskey is consumed by both men and women, whiskey is perceived to be a masculine drink. This is a key characteristic of whiskey's heritage – a strong drink from the rugged Old West and, to a lesser extent, Prohibition. Therefore, the perception of

masculinity is one of the prices of entry into the category . . . the [original] bottle shape was consistently associated with vodka (especially Ciroc), water (Voss), shampoo, and to a lesser extent wine, olive oil and tea. The bottle has a feminine shape (tall, slim) which goes against whiskey category DNA. […]The new bottle shape should have a masculine feel to fit the category and complement the strong, bold attitude associated with the Redemption name and Prohibition era positions." *See* KWS000007.

111.   Other spirits makers have admitted that oblong or oval bottle shapes are functional by disclaiming exclusive rights in the shape in their trademark registrations. *See* DFWS00139541; DFWS00139511;   DIAGEO000068240;   DIAGEO000068501;   DFWS00157970; DFWS00155942;   DFWS00121390;   DFWS00156509;   DFWS00157886;   DFWS00156410; DFWS00155598; DFWS00155734; Px 284.

112.   During Prohibition and pre-Prohibition American history, whiskey was sold in generic medicine type bottles or functional oblong flask shaped bottles with round shoulders, and embossing on clear glass with cork closures. *See* DFWS00107655; DFWS00120262; DFWS00144653;   DFWS00085961;   DFWS00175324;   DFWS00175313;   DFWS00132919; DFWS00175875;   DFWS00146226;   DFWS00140538;   DFWS00159407;   DFWS00171156; DFWS00166950;   DFWS00156924;   DFWS00126095;   DFWS00152910;   DFWS00155390; DFWS00132867;   DFWS00135460;   DFWS00135752;   DFWS00136114;   DFWS00135776; DFWS00133259.

113.   Research shows that consumers expect and prefer oval flask designs for whiskey and spirits because of their masculine shape and association with the pre-Prohibition era and Old West in America. See Jones Dep. Tr. at 83-89; KWS000007.

114. Rounded shoulders are functional because: (1) they are resistant to breakage from the impact and vertical load associated with bottle filling, sealing, and storage processes; (2) they cost less to make than square shouldered bottles; and (3) they facilitate pouring. *See* Sooy Dep. Tr. at 44-45, 47-50, 133-134, 138-139, 233; DFWS00025620; SOOY000279; DFWS00175324; DFWS00175313; DFWS00132919.

115. Embossing the brand name above the label on bottles is functional because it allows consumers to see the brand name first and identifies source when labels are removed. See Provini Dep. Tr. at 320-322.

116. Embossing functions in an aesthetic way because it adds quality cues to a bottle design by enhancing the perception in terms of a premium appearance. See Kremer Dep. Tr. at 119, 126-127, 160; Sandstrom Dep. Tr. at 199; Steffanci Dep. Tr. at 565; KWS000007.

117. Embossing the brand name on bottles is functional because it aids product recognition by visually impaired consumers. *See* DFWS00147861; DFWS00144669; DFWS00144664; DFWS00175432; DFWS00175434; DFWS00175457; DFWS00175463; DFWS00175468; DFWS00175480; DFWS00175492; DFWS00175503; DFWS00175506; DFWS00175521.

118. Arched or curved text is functional because it allows the use of larger letters in a mark within a particular width as opposed to marks displayed straight or horizontally. See Witnesses: Provini & Sooy; Updated Third Party Bottle Chart; Photos of bottles with arched text.

119. Arched or curved text is aesthetically functional and is a preferred design format because it can match the curvature of the rounded shoulders. See Provini Dep. Tr. at 219-220, 302.

120. Text dividers are ornamentally or aesthetically functional as they serve to separate and highlight brand names or elements of text or labels. *See* Provini Dep. Tr. at 268-270, 323.

121.    Outlining around a label functions as a means of (1) framing and directing consumer's attention to the brand name and other label wording and (2) because it is common in the spirits industry. *See* Sandstrom Dep. Tr. at 213; DFWS00085585; DFWS00085537; DFWS00086100.

122.    The border around the Bulleit Bottle Design label is aesthetically functional because it suggests a historical period and resembles an old piece of metal type. The outer border of the Bulleit Bottle Design's label was copied from an old typographic reference book. See Sandstrom Dep. Tr. at 149-150, 213.

123.    Black caps are aesthetically functional because they indicate quality. See Witnesses: Provini; KWS000007.

124.    Use of the color black on bottle caps or closures is functional because it is one of only a few basic colors available for use on cork or other closures. See Sandstrom Dep. Tr. at 174, 183, 185, 196; Witnesses: Sandstrom & Provini.

125.    A cork closure is functional because (1) it has fewer manufacturing problems than screw caps, which can have leaking problems and it does not require corresponding finish threads on the bottle neck; (2) it expands when wet; (3) it does not risk metal corrosion from the alcohol; and (4) it permits the alcohol to breathe. *See* Sandstrom Dep. Tr. at 80, 209-210; May Dep. Tr. at 134-135, 138-140, 326-328; Sooy Dep. Tr. at 146-147; DFWS00132916; DFWS00175317; DFWS00042893; DFWS00175315; DFWS00175317.

126.    A cork closures is aesthetically functional because it is a quality indicator. Screw caps are considered to be cheap, non-premium, and low-end; consumers do not see them as artisanal, handcrafted, or small batch, which consumers prefer. *See* Kremer Dep. Tr. at 160; Provini Dep. Tr. at 135-136; 150-151; KWS000007.

     2.     *Facts Supporting the Invalidity of and Cancellation of the Bulleit Bottle Design Registration on Grounds of Fraud Pursuant to 15 U.S.C. § 1115(b)(1).*

127.    When Diageo had its in-house trademark attorney, signed the application for the Bulleit Bottle Design mark, Diageo made the material false statement stated under oath "that to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce." *See* DIAGEO000038015.

128.    After the USPTO examiner sent an office action to Diageo for the application for the '812 Registration requiring Diageo to disclaim the Bulleit Bottle Design shape by displaying it in broken dotted lines on the drawing of the mark , Diageo responded by disclaiming only the exclusive right to use the generic and functional neck and cap while simultaneously making the material false statement that the "bottle shape is unique and distinctive in the beverage alcohol industry. The bottle shape is readily identifiable and distinguishable from all others in the industry, and accordingly stands out as such on a store shelf or behind a bar even apart from the embossed wording and design elements. The design evokes an 1800s medicine bottle, and accordingly is inherently distinctive in the present context." *See* DIAGEO000038015.

129.    Diageo had actual knowledge that its statement about the alleged uniqueness of the oblong oval Bulleit Bottle Design shape was false because (1) it knew of stock bottles and other spirits bottles that had the same oblong oval shape; (2) it described the Bulleit Bottle Design in generic terms including oblong, canteen-shaped, and medicine bottle design (there is nothing unique or distinctive about shapes used for generic items like canteens or medicine bottles); (3) in January 2000, Diageo applied to register the same Bulleit Bottle Design in Canada and admitted that the shape was functional and generic by displaying it in dotted lines and by admitting that the particular three dimensional bottle shown in the drawing does not form part of the trademark; (4) in 2002, after Diageo acquired the Bulleit brand, Diageo's lawyers conducted a trademark search

for bottle designs, which showed many prior applications and registrations for marks containing oblong oval shapes very similar to Bulleit with rights in those shapes disclaimed; and (5) in November 2003, Diageo's outside counsel began working on trademark applications for spirits products, including Crown Royal, Seagram's Seven Crown, Seagram's VO, all of which were marketed in oblong flask bottle shapes. *See* DIAGEO000077699; DIAGEO000077642; DIAGEO000077536; DFWS00153432; DFWS00158493; DFWS00166683; DFWS00175523; DFWS00175599; DFWS00168587; DFWS00107737; DFWS00157876; DFWS00176067; DIAGEO000068240; DIAGEO000068501; DFWS00139511; DFWS00139541; DFWS00148090; DFWS00155421; DIAGEO000017234; DIAGEO000074661; DIAGEO000062585; DIAGEO000062590; DFWS00100241; DIAGEO000068240; DIAGEO000068501; DFWS00175833; DFWS00106145; DFWS00109016; DFWS00109364; DFWS00155378 ; DFWS00175949; DFWS00175743; DFWS00175831; DFWS00135460; DFWS00135752; DFWS00136114; DFWS00135776; DFWS00133259; DFWS00133214; DFWS00159407; *see supra* facts in Sections III.A.1.

130.    Diageo made the material false statements regarding the Bulleit Bottle Design shape, with an intent to deceive the PTO and with the goal of obtaining a registration despite knowing the statements were false, in response to an Office Action from the PTO refusing registration of the '812 Registration application unless Diageo disclaimed exclusive rights in the bottle shape. *See* DIAGEO000038015.

131.    After reviewing the material false statements made by Diageo regarding the alleged distinctiveness of the bottle shape, the PTO relied on Diageo's false statements and withdrew the refusal to register, published the application for the '812 Registration for opposition on January 10, 2006, and issued Registration No. 3,075,812 on April 4, 2006. *See* DIAGEO000038015.

132.    The USPTO Examiner stated that it would not register the Bulleit Bottle Design trademark shown in the application for the '812 Registration unless the bottle shape was disclaimed in dotted lines because the bottle shape was not unique, and it would have maintained the refusal but for the material false statements made by Diageo. See DIAGEO000038015.

133.    The PTO has rejected multiple applications for similarly shaped bottles on the grounds that they are non-distinctive or functional and required the applicants to disclaim the bottle shapes in order for their marks to be registered. *See supra* facts in Section III.D.1.

> ### 3. *Facts Supporting the Invalidity of and Cancellation of the Bulleit Bottle Design Registration on Grounds of Abandonment Pursuant to 15 U.S.C. §§ 1115(b)(2) and 1127.*

134.    Diageo has acknowledged the wide spread sale of bottles having the same features it seeks to protect in this case and that it has not objected to these. *See supra* facts in Section III.A.1.

135.    Diageo has openly acquiesced in the continued use of its Bulleit Bottle Design features by the owners of the Dr. McGillicuddy, Manatawny, Highland Park and other spirits which are sold in similar functional oblong flask shaped bottles with other features claimed by Diageo as part of the Bulleit trade dress design. See supra facts in Section III.A.1.

136.    Diageo has actual knowledge of relevant third party bottles because it has hired many of its employees and outside research consultants to conduct marketplace surveillance. *See supra* facts in Section III.D.2.

### E.    Facts Supporting Deutsch's Affirmative Defenses.

### 1.    *FIRST AFFIRMATIVE DEFENSE*

The Complaint should be dismissed, in whole or in part, for failure to state a cause of action against Defendants for which relief may be granted.

Deutsch's Proposed Findings of Fact.

1.    Diageo has admitted that every element of its alleged trade dress is functional, not subject to exclusive appropriation, generic, and unprotectable. *See* facts in Section III.D.1.

2.      Diageo has failed to plead the requisite elements to establish a protectable interest in the trade dress identified in its Complaint and cannot establish a likelihood of confusion; it has failed to state a claim on which relief can be granted. The Bulleit Trade Dress, as defined in the complaint, is not subject to protection, and Diageo cannot claim ownership rights therein because the defined trade dress is broader than what is covered by the '812 Registration. *See supra* facts in Sections III.A.1.

## 2.      SECOND AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief because Defendants used no source indicating words or designs and made no statements that either deceived or had the capacity to confuse or deceive a substantial segment of potential consumers.

Deutsch's proposed findings of fact:

1.      *See supra* facts in Sections III.A.2.

## 3.      THIRD AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief because Defendants caused no material deception or dilution that was likely to influence a consumer's purchasing decision.

Deutsch's proposed findings of fact:

1.      Diageo has not made proposed statements of fact in support of every element of its dilution claim.

     a.      *See generally* Diageo's Resp. to Deutsch's Request for Production of Documents and Interrogatories.

     b.      *See supra* facts in Section III.A.2 & III.B.

## 4.      FOURTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief because it has not been, and is not likely to be, injured as a result of any of Defendants' alleged statements.

Deutsch's proposed findings of fact:

1.      Diageo offered no evidence that it suffered any damages in its initial disclosures and instead only indicated that it would seek equitable relief in the form of an award of damages. *See* Diageo's Initial Disclosures.

2.      Diageo has offered no evidence that it suffered any loss or damage of any kind as a proximate cause of the sale of Redemption products or any the hundreds of other alcoholic beverage products sold in round shouldered, oblong bottles. *See* Diageo's Resp. to Deutsch's First Request for Production of Documents Nos. 43 & 53.

3.      Diageo's gross and net sales for each of its Bulleit products has increased each year. *See* DIAGEO000069801; Van Uden Damages Report, Ex. 4.

4.      Diageo's increase in sales was a result of increased interest in craft bourbon by consumers. *See* DeSarno Dep. Tr. at 96-97, 142; DIAGEO000057816; DIAGEO000038197.

5.      Any alleged harm to the Bulleit brand or decrease in the rate of growth of Bulleit sales is a result of increased competition from other spirits brands, its false advertisement of where its whiskey was sourced, and from Hollis Bulleit's accusations of physical and sexual abuse by Tom Bulleit, founder of the brand. *See* DIAGEO000011514; Diageo 2016 Annual Report; Bello, Diageo 30(b)(6) Dep. Tr. at 414-417; DIAGEO000076299; DIAGEO000076299; DIAGEO000078220; DFWS00169448; DFWS00169487; DFWS00169492; DFWS00169495; DFWS00169503; DFWS00169505.

6.      Diageo has failed to offer evidence that the invalid Bulleit Trade Dress ever achieved the requisite level of fame or that the Redemption bottle design and trade dress is sufficiently similar to the Bulleit bottle to qualify for dilution protection, nor has Diageo offered the factual evidence or expert testimony required to support a claim of dilution damages. *See generally* Diageo's Resp. to Deutsch's Request for Production of Documents and Interrogatories; *see also supra* facts in Section III.B.

### *5.      FIFTH AFFIRMATIVE DEFENSE*

Plaintiff is not entitled to relief because Defendants have not engaged in unfair, deceptive, untrue, or misleading advertising.

Deutsch's proposed findings of fact:

1.      Deutsch has never referenced Bulleit or otherwise made false or misleading statements in any of its Redemption advertisements to consumers. *See* Witnesses: Steffanci; Exhibits: Deutsch advertising

2.      Diageo never alleged in it is pleadings or elsewhere with the requisite specificity that Deutsch ever made any false or misleading statement about Bulleit products or Redemption products.  *See* Diageo Complaint.

### *6.      SIXTH AFFIRMATIVE DEFENSE*

Plaintiff is not entitled to relief because Defendants have not engaged in unlawful, unfair, or fraudulent business practices.

Deutsch's proposed findings of fact:

1.      Diageo has not sufficiently alleged that Deutsch engaged in unlawful, unfair, or fraudulent business practices. *See* Diageo's Complaint.

2.      *See supra* Sections III.A–D.

### 7.   SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, acquiescence, and estoppel.

**Deutsch's proposed findings of fact:**

1.   Diageo was not the first company to use oblong bottles with rounded shoulders, embossed lettering, clear glass, cork closures, black colored caps, labels with borders and text dividers, and Diageo has openly acquiesced in the use of all of these functional elements by others. *See supra* facts in Sections III.A.1 & III.A.2.

2.   In the few instances where Diageo has raised such objections, such as the Dr. McGillicuddy and Manatawny bottles, Diageo obtained no decision on the merits and instead reached settlement agreements in which it acquiesced in the continued use of each of the functional elements that comprise its generic unprotectable Bulleit Trade Dress. *See supra* facts in Sections III.A.1 & III.D.3.

### 8.   EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants acted in good faith and employed lawful, proper, and justified means to accomplish legitimate business objectives.

Deutsch's proposed findings of fact:

1.   The January 2016 research was <u>qualitative</u> in that it involved a limited number of participants so its findings cannot be applied to the general consuming public, and it merely shows that those consumers preferred the generic and functional round shouldered, oblong shape commonly used by numerous whiskey and sprits makers now and throughout history as opposed to other shapes. *See* KWS000007.

2.   Deutsch's 2016 focus group research found that "[a]lthough whiskey is consumed by both men and women, whiskey is perceived to be a masculine drink. This is a key characteristic of whiskey's heritage – a strong drink from the rugged Old West and, to a lesser extent, Prohibition. Therefore, the perception of masculinity is one of the prices of entry into the category . . . the [original] bottle shape was consistently associated with vodka (especially Ciroc), water (Voss), shampoo, and to a lesser extent wine, olive oil and tea. The bottle has a feminine shape (tall, slim) which goes against whiskey category DNA. […]The new bottle shape should have a masculine feel to fit the category and complement the strong, bold attitude associated with the Redemption name and Prohibition era positions." *See* KWS000007.

3.   The January 2016 Focus Groups tested the initial redesigns of the Original Redemption Bottle alongside a sampling of different third party rye brands that reflected a range of bottles currently in the market: High West (an embossed round bottle), Bulleit (an embossed oblong bottle), Templeton (a short round bottle), and Rittenhouse (a non-embossed round bottle). Competitive sets constantly change. *See* KWS000007; Kilgore Dep. Tr. at 62.

4. Deutsch's Redemption packaging brief stated that consumers responded to the flask shape but Deutsch did not want to mimic or copy Bulleit. *See* DFWS00083059; Thomason Dep. Tr. at 183; Provini Dep. Tr. at 258, 315.

5. The appendix to the Deutsch packaging brief included images of other brands also in generic flask bottles (like Bulleit) on the market now, including a replica medicine bottle sold as a wedding party favor. *See* DFWS00083059.

6. Deutsch designers reviewed antique pre-Prohibition flask bottles, oblong flask shaped stock bottles, and other oblong flask glass bottles currently in the market. *See* DFWS00073433; DFWS00076205; Provini Dep. Tr. at 103-105, 176-177; 188-189, 199-201, 203-204, 211-215, 238; Thomason Dep. Tr. at 176-179.

7. Deutsch decided to create its own proprietary bottle mold and told its packaging company to use as a general template the Bib & Tucker whiskey bottle with an oblong flask shape, concave back, rounded shoulders, embossed brand name, and a cork closure. *See* Provini Tr. at 233-235; Kilgore Dep. Tr. at 220-221; Thomason Dep. Tr. at 255-256, 264-265; DFWS00026937; DFWS00032807.

8. Deutsch wanted the new Redemption bottle to look unique, and avoided copying any bottle. *See* Thomason Dep. Tr. at 183; Provini Dep. Tr. at 258, 315.

9. *See supra* facts in Section III.A.2.

### *9.     NINTH AFFIRMATIVE DEFENSE*

Plaintiff's claims are barred, in whole or in part, because Defendants acted reasonably and in good faith based on all relevant facts and circumstances known to it at the time it so acted.

Deutsch's proposed findings of fact:

1. *See supra* Facts Supporting Deutsch's Eighth Affirmative Defense.

### *10.     TENTH AFFIRMATIVE DEFENSE*

Plaintiff's claims are barred, in whole or in part, because there is no reasonable likelihood of confusion in the marketplace.

Deutsch's proposed findings of fact:

1. *See supra* facts in Section III.A.2.

### *11.     ELEVENTH AFFIRMATIVE DEFENSE*

Plaintiff's claims are barred, in whole or in part, because the injuries and damages claimed were not legally or proximately caused by an act or omission of Defendants.

Deutsch's proposed findings of fact:

1. *See supra* Facts Supporting Deutsch's Fourth Affirmative Defense.

### 12.   TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages or economic harm as a result of the matters alleged in the Complaint.

Deutsch's proposed findings of fact:

1.     *See supra* Facts Supporting Deutsch's Fourth Affirmative Defense.

### 13.   THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for injunctive and other equitable relief are barred because it has an adequate remedy at law.

Deutsch's proposed findings of fact:

1.     *See supra* Facts Supporting Deutsch's Fourth Affirmative Defense.

### 14.   FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover the alleged damages, if any, because they are non-existent, uncertain, contingent, and speculative.

Deutsch's proposed findings of fact:

1.     *See supra* Facts Supporting Deutsch's Fourth Affirmative Defense.

### 15.   FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any relief in this action because its alleged bottle design mark and trade dress comprises matter that as a whole is functional, within the meaning of 15 U.S.C. §§ 1052(e)(5) and is functional within the meaning of 1115(b)(8), and its registration for its alleged mark and trade dress is invalid and should be cancelled on this ground.

Deutsch's proposed findings of fact:

1.     *See supra* facts in Sections III.D.1.

### 16.   SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any relief in this action because any rights it ever had in its alleged bottle design mark and trade dress have been abandoned, within the meaning of 15 U.S.C. §§ 1115(b)(2) and 1127, through a course of conduct including acquiescence in widespread third-party use that caused said mark and trade dress to lose any distinctiveness that may have ever existed. Diageo has acquiesced in third party use of all of the alleged elements or its Bulleit Bottle Design trademark and trade dress.  Diageo has never made substantially exclusive use of any of the features of its alleged mark and trade dress and, therefore, those features have never acquire secondary meaning. Accordingly, Plaintiff's registration and the alleged mark and trade dress shown therein are invalid and the registration should be cancelled on abandonment grounds.

Deutsch's proposed findings of fact:

1.     *See supra* facts in Sections III.A.1 & III.D.3.

### 17.    SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any relief in this action because any rights it may claim in its alleged bottle design mark and trade dress [registration] were procured fraudulently, within the meaning of 15 U.S.C. § 1115(b)(1), in that Plaintiff willfully and knowingly made material false claims and allegations regarding its alleged ownership of and exclusive right to use the functional features of said mark, the PTO relied on these willful false claims and allegations and but for those false statements the registration would not have been granted. Accordingly, said registration and the mark and trade dress shown therein are invalid and the registration should be cancelled on fraud grounds.

Deutsch's proposed findings of fact:

1.    *See supra* facts in Section III.D.2.

### 18.    EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the First Amendment in that Plaintiff is attempting to monopolize an idea or concept and to prevent Defendants from using common phrases such as "Pre-Prohibition," "whiskey revival" and "Saloon Style" and from displaying these and other words in embossed lettering on clear glass containers in which Plaintiff has no exclusive rights and which are not subject to exclusive appropriation.

Deutsch's proposed findings of fact:

1.    Diageo cannot prevent the use of words like Pre-Prohibition, Whiskey Revival, and Saloon Style which describe the oblong oval style of the Redemption bottle. *See supra* facts in Sections III.A.1 & III.D.1.

2.    Diageo cannot prevent the use of the use of an embossed flask because it is the symbol and a reference to the old west, a category cue for American whiskey, and a quality indicator to consumers. *See supra* facts in Sections III.A.1 & III.D.1.

3.    Diageo cannot prevent the use of the method of displaying words on a bottle through embossed lettering, printing on a paper label, or direct affixation to the bottle itself. *See supra* facts in Section III.D.1

4.    Deutsch use of the bottle design elements was an integral element of its "artistic expression rather than a willful attempt to garnish the trademark owner's goodwill for profit." *See* Provini Dep. Tr. at 111, 135-136, 320.

5.    Deutsch's use of the bottle design elements is not "explicitly misleading as to the source or the content of the work." *See supra* Section III.A.2.

### 19.    NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Defendants' allegedly infringing bottle design and label contains words such as "pre-prohibition," "whiskey revival" and "saloon style" that are used otherwise than as a mark and they constitute a fair use within the meaning of 15 U.S.C. § 1115.

Deutsch's proposed findings of fact:

1.      Deutsch did not use the bottle design elements as a symbol to attract public attention but as functional elements. *See supra* facts in Sections III.D.1.

2.      Deutsch made use of the bottle design elements in a descriptive sense because they were all, individually and in combination, commonly used. *See supra* facts in Sections III.A.1, III.A.2, & III.D.3.

3.      Deutsch made use of the bottle design elements in good faith. *See supra* facts in Sections III.A.2.

## IV.     JOINT EXHIBITS THE PARTIES AGREE MAY BE RECEIVED IN EVIDENCE

The Parties respectfully refer the Court to **Schedule 1** attached hereto for the parties' Joint Trial Exhibit List.

## V.     EXHIBITS TO WHICH THERE IS A DISPUTE AS TO ADMISSIBILITY

The Plaintiff/Counterclaim Defendant respectfully refers the Court to **Schedule 2** attached hereto for a list of exhibits it intends to introduce at trial, including those exhibits to which the Defendants/Counterclaim Plaintiffs have objected.

The Defendants/Counterclaim Plaintiffs respectfully refer the Court to **Schedule 3** attached hereto for a list of exhibits they intend to introduce at trial, including those exhibits to which the Plaintiff/Counterclaim Defendant has objected.

The Parties will continue to work to resolve objections to the admissibility of exhibits prior to trial.

## VI.     EXPERT WITNESSES

Plaintiff/Counterclaim Defendant intend to call upon the following expert witnesses to testify:

1)  Philip G. Hampton, II

2)  Martin A. Jones

3)  Glenn May

4)  Hal Poret

5) Bryan Van Uden

Defendants/Counterclaim Plaintiffs intend to call upon the following expert witnesses to testify:

1. Drew DeSarno

2. Matthew Ezell

3. Gary Krugman

4. Dr. Michael Rappeport

5. Robert Reilly

6. Perry Saidman

7. Thomas Sooy

## VII.  <u>JURY TRIAL AND ESTIMATE OF TRIAL TIME</u>

This action is a jury trial.

Subject to the Court's ruling on Diageo's Motions in limine and other evidentiary issues, Plaintiff/Counterclaim Defendant estimates it will need five to seven trial days for its case-in-chief, counterclaims defense, and rebuttal.

Subject to the Court's ruling on Deutsch's Motions in limine and other evidentiary issues, Defendants/Counterclaim Plaintiffs estimate they will need four to six trial days for their case defense and case-in-chief on their counterclaims.

**JENNER & BLOCK LLP**

By:   /s/ Gianni P. Servodidio
     Susan J. Kohlmann
     Gianni P. Servodidio
     Jacob D. Alderdice
     Allison N. Douglis
     919 Third Avenue
     New York, NY 10022
     Telephone:   (212) 891-1600
     Facsimile:   (212) 891-1699
     SKohlmann@jenner.com
     GServodidio@jenner.com
     JAlderdice@jenner.com
     ADouglis@jenner.com

     *Attorneys for Plaintiff/Counterclaim*
     *Defendant Diageo North America, Inc.*

**ARENT FOX LLP**

By:   /s/ Michael A. Grow
     Michael A. Grow (pro hac vice)
     Zachary Smith (pro hac vice)
     1717 K Street, NW
     Washington DC 20006
     Telephone:   (202) 857-6000
     Facsimile:   (202) 857-6395
     Michael.Grow@arentfox.com

     Howard Graff
     Michael Cryan
     Eric Biderman
     Lindsay Korotkin
     1301 Avenue of the Americas
     New York, NY 10019
     Telephone:   (212) 484-3900
     Facsimile:   (212) 484-3990
     Howard.Graff@arentfox.com
     Eric.Biderman@arentfox.com
     Lindsay.Korotkin@arentfox.com

     *Attorneys for Defendants/*
     *Counterclaim Plaintiffs*
     *W.J. Deutsch & Sons Ltd.*
     *d/b/a Deutsch Family*
     *Wine & Spirits and Bardstown*
     *Barrel Selections LLC*