# Exhibit A

# REDEMPTION BOURBON LIKELIHOOD OF CONFUSION STUDY
# EXPERT REPORT OF MATTHEW G. EZELL

### INTRODUCTION

1.      I am a partner in the marketing research and consulting firm of Ford Bubala & Associates, located in Huntington Beach, California, which has been engaged in commercial marketing research and consulting for the past forty-three years. My professional experience is further summarized below in paragraphs 25 through 31.

2.      In the instant matter, at the request of Arent Fox LLP, counsel for Defendants/Counterclaim Plaintiffs, W.J. Deutsch and Sons Ltd. d/b/a Deutsch Family Wine & Spirits and Bardstown Barrel Selections LLC ("Redemption"), I designed and caused to be conducted a survey to address the issue of likelihood of confusion. Specifically, this survey was designed to measure the degree, if any, to which the Redemption bourbon's revised packaging is likely to cause confusion as to the source, authorization or approval of, or business affiliation or business connection with, Diageo's Bulleit ("Bulleit").

3.      This likelihood of confusion survey, hosted by Issues & Answers Network, Inc. ("Issues & Answers"), employed an online protocol using an internet panel[1] created and maintained by Critical Mix.

4.      The likelihood of confusion survey conducted in this matter was designed to employ a scientific experimental survey design consisting of two survey cells: (1) a test or experimental survey cell designed to measure likelihood of confusion, if any, with respect to the source, authorization or approval of, or business affiliation or business connection of Redemption bourbon in its revised packaging with Bulleit; and (2) a control survey cell designed

---

[1] An internet panel consists of a large number of previously recruited volunteers who answer repeated surveys over the course of their panel membership.

to measure the extent of mismeasurement in the test cell survey results. As there was *de minimis* confusion, the control cell was not executed.

5.      In total, two hundred (200) test cell interviews were completed in this likelihood of confusion survey.

6.      The stimuli utilized in the survey's test cell were photographs of Redemption bourbon in its revised packaging.

7.      It is my opinion that the results of the survey conducted in this matter support a finding of no likelihood of confusion among the relevant universe of individuals who, in the next 6 months, are likely to purchase a bottle of bourbon. The survey results demonstrate that Redemption bourbon in its revised packaging is not likely to cause confusion as to the source, authorization or approval of, or business affiliation or business connection with Bulleit.

## SURVEY BACKGROUND

8.      Attached hereto as Exhibit A are the results of the survey which addressed the issue of likelihood of confusion. Exhibit A provides copies of the survey exhibits, the survey screeners and questionnaires, coded response tables, and a listing of the survey responses. The Appendices of Exhibit A contains the survey specifications, a sequential listing of survey responses, survey screenshots, a final sample disposition report, and electronic copies of the source data.

9.      The sample selection, questions, questionnaire design, and interviewing procedures employed in this survey were designed in accordance with the generally accepted standards and procedures in the field of surveys. The survey was also designed to meet the criteria for survey trustworthiness detailed in the Manual for Complex Litigation, Fourth.[2]

---

[2]     For the proffered poll or survey, "...Relevant factors include whether: the population was properly chosen and defined; the sample chosen was representative of that population; the data gathered were accurately reported;

10. I was responsible for the design of the survey as well as for the procedures to be followed in conducting the interviews. Data gathering was carried out, under the direction of Ford Bubala & Associates, by Issues & Answers, an independent survey organization which hosted the online survey using internet panelists obtained from the sample provider, Critical Mix. Data gathering for this survey was conducted from September 13–18, 2018.

11. The survey conducted in this matter was administered under a double-blind protocol. Specifically, not only were the respondents not informed as to the purpose or sponsor of the survey, but similarly, both the staff of Issues & Answers and the staff of Critical Mix were not informed as to the purpose or sponsor of the survey.

## SURVEY STRUCTURE

12. This survey employed an internet panel created and maintained by Critical Mix. Potential respondents were invited to fill out the screening portion of the interview to determine whether or not they met the defined universe for this survey. Subsequently, those potential respondents who met the universe definition were invited to complete the main survey.

13. The universe for this survey consisted of males and females twenty-one (21) years of age or older who reported that they were likely, in the next 6 months, to purchase a bottle of bourbon.[3]

---

and the data were analyzed in accordance with accepted statistical principles...In addition, in assessing the validity of a survey, the judge should take into account the following factors: whether the questions asked were clear and not leading; whether the survey was conducted by qualified persons following proper interview procedures; and whether the process was conducted so as to ensure objectivity...." See Federal Judicial Center, Manual for Complex Litigation, Fourth, Section 11.493, at 102-104 (2004).

[3] Additionally, the survey universe was also restricted to respondents who: (1) were using a desktop computer, a laptop/notebook computer, or a tablet to read and answer the survey questions; (2) resided in the United States; (3) did not, nor did anyone else in their household, work for an advertising agency or a market research company; or a company that makes, sells, or distributes any alcoholic beverages; (4) agreed to answer the questions in the survey by themselves without the help or assistance of anyone else and without seeking information from any other source (e.g., internet search); (5) if they wore contact lenses or eyeglasses when using the device they were using, would wear them during the questionnaire; (6) selected the appropriate number from a list of four numbers,

14. The respondent selection procedure employed in this survey is referred to as a quota sampling method.[4] This method provided a respondent base that is generally representative of the age and gender distribution of male and female adults twenty-one (21) years of age or older who reported that in the next 6 months they were likely to purchase a bottle of bourbon. This age and gender distribution was based upon a kNOW omnibus survey conducted between September 5–6, 2018, among a nationally representative sample of approximately one thousand (966) individuals across the United States.[5]

15. As noted earlier, the likelihood of confusion survey conducted in this matter was designed to employ a scientific experimental survey design consisting of two survey cells: (1) a test or experimental survey cell designed to measure likelihood of confusion, if any, with respect to the source, authorization or approval of, or business affiliation or business connection of Redemption bourbon in its revised packaging with Bulleit; and (2) a control survey cell designed to measure the extent of mismeasurement in the test cell survey results. As there was *de minimis* confusion, the control cell was not executed.

---

demonstrating comprehension of survey instructions; and (7) reported they could clearly see the bottle and labels in the survey exhibit photographs.

[4]   Quota sampling is a method that uses known information about panel members (e.g., age, gender, geographic location, etc.) to generate demographically applicable samples.

[5]   Respondents in the kNOW omnibus survey were asked "In the past 6 months, have you purchased a bottle of bourbon?" Based on the age, gender, and geographic location of respondents who answered yes to this omnibus survey, quotas for the Ford Bubala survey were established as follows: approximately 60% male and 40% female; among males, approximately 38% 21 to 34, 48% 35 to 54, and 14% 55 or over; and among females, approximately 38% 21 to 34, 47% 35 to 54, and 15% 55 or over; and approximately 18% from the Northeast, 19% from the Midwest, 35% from the South, and 28% from the West.

16. Survey respondents in the test cell saw photographs of Redemption bourbon in its revised packaging. See below and Exhibit A, page 2.



SURVEY PROCEDURES AND QUESTIONS

17. Initially, potential respondents received an invitation to fill out the screening portion of the interview to determine whether or not they met the universe definition. See Exhibit A, pages 3-5. Subsequently, those respondents who met the universe definition (and whose demographics would not exceed established quotas) were invited to complete the main survey.

18. The introduction to the main questionnaire was as follows:

> In this survey, you are going to be shown photographs of a bottle of bourbon.
>
> Please understand that we are only interested in your opinions or beliefs; and if you don't have an opinion or belief or don't know the answer to a question, that is an acceptable answer.

See Exhibit A, page 6.

Next, respondents were shown Redemption bourbon in its revised packaging[6] and were instructed as follows:

> Please look at these photographs of a bottle of bourbon as you would if you were considering purchasing it. Please take as much time as you like looking at the photographs before continuing with the survey.

Subsequently, respondents were asked:

> Could you clearly see the bottle and labels in the photographs?

Only respondents who answered 'yes' to this question were allowed to continue. See Exhibit A, page 6.

Respondents were then asked:

> Q9.0   Who do you believe makes or puts out this bourbon? Please be as specific as possible.

See Exhibit A, page 6.

If the respondent provided a response, he/she was asked the basis for the belief with the question:

> Q9.1   Why do you say that?   Again, please be as specific as possible.

See Exhibit A, page 6.

Next, respondents were asked:

> Q10.0   What other brand or brands, if any, are made or put out by whoever you believe makes or puts out this bourbon? Please be as specific as possible.

See Exhibit A, page 7.

---

[6]   Each of the three photographs of the survey stimulus was presented with an instruction to "click to enlarge."

Again, if the respondent provided a response, he/she was asked the basis for the belief with the question:

> Q10.1  Why do you say that?  Again, please be as specific as possible.

See Exhibit A, page 7.

Next, respondents were asked:

> Q11.0  Do you believe this bourbon...
>
> _____ 1. <u>IS</u> being made or put out with the authorization or approval of any other brand or brands?
> _____ 2. is <u>NOT</u> being made or put out with the authorization or approval of any other brand or brands?[7]
> _____ 3. don't know or have no opinion?

See Exhibit A, page 8.

Respondents who indicated that they believed this bourbon is being made or put out with the authorization or approval of any other brand or brands[8] were asked:

> Q11.1  With what brand or brands?  Please be as specific as possible.

See Exhibit A, page 8.

---

[7]  To guard against any order bias, the first two alternatives in this list were rotated (i.e., approximately one half of the respondents saw the list with the first alternative being "<u>IS</u> being made or put out with the authorization or approval of any other brand or brands " and approximately one half of the respondents saw the list with the first alternative being "is <u>NOT</u> being made or put out with the authorization or approval of any other brand or brands").

[8]  The last two principal survey questions (i.e., question series 11.0 and question series 12.0) were designed to address likelihood of confusion as to authorization or approval or business affiliation or business connection and were also patterned after similarly accepted questions.  *See* J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, Vol. 6 §32:175, 9/2017.

Again, if the respondent provided a response, he/she was asked the basis for the belief with the question:

> Q11.2  Why do you say that?  Again, please be as specific as possible.

See Exhibit A, page 8.

Next, respondents were asked:

> Q12.0  Do you believe that whoever makes or puts out this bourbon...
>
> _____ 1.  HAS a business affiliation or business connection with any other brand or brands?
> _____ 2.  does NOT have a business affiliation or business connection with any other brand or brands?[9]
> _____ 3.  don't know or have no opinion?

See Exhibit A, page 9.

Respondents who indicated that they believed that whoever makes or puts out this bourbon has a business affiliation or business connection with any other brand or brands were asked:

> Q12.1  With what brand or brands?  Please be as specific as possible.

See Exhibit A, page 9.

Again, if the respondent provided a response, he/she was asked the basis for the belief with the question:

> Q12.2 Why do you say that?  Again, please be as specific as possible.

See Exhibit A, page 9.

---

[9] Again, to guard against any order bias, the first two alternatives in this list were rotated (i.e., approximately one half of the respondents saw the list with the first alternative being "HAS a business affiliation... " and approximately one half of the respondents saw the list with the first alternative being "does NOT have a business affiliation... ").

Respondents were then shown a screen that said:

>Thank you for your time and participation.

See Exhibit A, page 9.

## SURVEY RESULTS

19.     In the test cell, in response to Question series 9.0, two respondents or one percent (1.00%) of survey respondents reported that they believed that Redemption bourbon in its revised packaging is made or put out by Bulleit. See Exhibit A, Table 1, page 10.

TABLE 1
TEST CELL

Q9.0  Who do you believe makes or puts out this bourbon? Please be as specific as possible.
Q9.1  Why do you say that? Again, please be as specific as possible.

| Response Categories | Number | Percent (n=200) |
|---|---|---|
| 1. Bulleit | 2 | 1.00 |
| 2. Redemption/Deutsch/Indiana | 109 | 54.50 |
| 3. Other – brands* | 32 | 16.00 |
| 4. Other – not brands | 9 | 4.50 |
| 5. Don't know | 48 | 24.00 |
| Total | 200 | 100.00 |

\* No single brand in this category totaled more than 5.00%.

20.     In the test cell, in response to Question series 10.0, no additional survey respondents reported that they believed that Redemption bourbon in its revised packaging is another brand made or put out by Bulleit.  See Exhibit A, Table 2, page 28.

TABLE 2
TEST CELL

Q10.0  What other brand or brands, if any, are made or put out by whoever you believe puts out this bourbon?  Please be as specific as possible.
Q10.1  Why do you say that?  Again, please be as specific as possible.

|  | Response Distribution | | | |
| --- | --- | --- | --- | --- |
|  |  |  | Deduplicated | |
| Response Categories | Number | Percent | Number | Percent |
|  |  | (n=200) |  | (n=200) |
| 1. Bulleit | 1 | 0.50 | — | — |
| 2. Redemption/Deutsch/Indiana | 3 | 1.50 | — | — |
| 3. Other – brands* | 42 | 21.00 |  |  |
| 4. Other – not brands | 2 | 1.00 |  |  |
| 5. Don't know | 152 | 76.00 |  |  |
| Total | 200 | 100.00 |  |  |

* No single brand in this category totaled more than 5.00%.

- 10 -

21. In the test cell, in response to Question series 11.0, no additional survey respondents reported that they believed that Redemption bourbon in its revised packaging is being made or put out with the authorization or approval of Bulleit. See Exhibit A, Table 3, page 43.

TABLE 3
TEST CELL

Q11.0 Do you believe this bourbon...?
  1. <u>IS</u> being made or put out with the authorization or approval of any other brand or brands
  2. is <u>NOT</u> being made or put out with the authorization or approval of any other brand or brands
  3. don't know or have no opinion

Q11.1 With what brand or brands? Please be as specific as possible.
Q11.2 Why do you say that? Again, please be as specific as possible.

|  | Response Distribution | | | |
|---|---|---|---|---|
|  |  |  | Deduplicated | |
| Response Categories | Number | Percent (n=200) | Number | Percent (n=200) |
| Made or put out with authorization or approval | | | | |
| 1. Bulleit | 1 | 0.50 | — | — |
| 2. Redemption/Deutsch/Indiana | 2 | 1.00 | — | — |
| 3. Other – brands* | 28 | 14.00 | | |
| 4. Other – not brands | 4 | 2.00 | | |
| 5. Don't know/None | 34 | 17.00 | | |
| Subtotal | 69 | 34.50 | | |
| Not made or put out with authorization or approval | 59 | 29.50 | | |
| Don't know/No opinion | 72 | 36.00 | | |
| Total | 200 | 100.00 | | |

* No single brand in this category totaled more than 4.00%.

22. In the test cell, in response to Question series 12.0, no additional survey respondents reported that they believed that Redemption bourbon in its revised packaging has a business affiliation or business connection with Bulleit. See Exhibit A, Table 4, page 54.

TABLE 4
TEST CELL

Q12.0 Do you believe that whoever makes or puts out this bourbon…?
    1. <u>HAS</u> a business affiliation or business connection with any other brand or brands
    2. does <u>NOT</u> have a business affiliation or business connection with any other brand or brands
    3. don't know or have no opinion

Q12.1 With what brand or brands? Please be as specific as possible.
Q12.2 Why do you say that? Again, please be as specific as possible.

| Response Categories | Response Distribution | | Deduplicated | |
|---|---|---|---|---|
| | Number | Percent (n=200) | Number | Percent (n=200) |
| Has business affiliation or connection | | | | |
|   1. Bulleit | — | — | — | — |
|   2. Redemption/Deutsch/Indiana | 2 | 1.00 | 1 | 0.50 |
|   3. Other – brands* | 30 | 15.00 | | |
|   4. Other – not brands | 2 | 1.00 | | |
|   5. Don't know/None | 26 | 13.00 | | |
|     Subtotal | 60 | 30.00 | | |
| Does not have business affiliation or connection | 68 | 34.00 | | |
| Don't know/No opinion | 72 | 36.00 | | |
|     Total | 200 | 100.00 | | |

* No single brand in this category totaled more than 5.50%.

23.    In total in the test cell, in response to Question series 9 through 12, two respondents or one percent (1.00%) of survey respondents reported that they believed that Redemption bourbon in its revised packaging is made or put out by, is being made or put out with the authorization or approval of, or has a business affiliation or business connection with Bulleit.  See Exhibit A, Table 5, page 65.

| | | |
|---|---|---|
| TABLE 5 TEST CELL Composite Response Analysis Deduplicated Responses | | |
| | Response Distribution | |
| Response Categories | Number | Percent (n=200) |
| 1. Bulleit | 2 | 1.00 |
| 2. Redemption/Deutsch/Indiana | 110 | 55.00 |

## CONCLUSION

24.     It is my considered opinion, based upon my education, background, and professional experience, and based upon my review and analysis of the survey results, that the results support a finding of no likelihood of confusion.  The survey results evidence that Redemption bourbon in its revised packaging is not likely to cause confusion as to the source, authorization or approval of, or business affiliation or business connection with, Bulleit.

## QUALIFICATIONS

25.     Ford Bubala & Associates has been retained by a variety of firms engaged in the consumer product, industrial product, and service sectors of the economy to provide marketing consulting and research services.  Approximately one half of Ford Bubala & Associates' consultancies have involved the design and execution of marketing research surveys.

26.     During the past forty-three years, Ford Bubala & Associates has been retained in a number of litigation-related consultancies involving intellectual property matters, including matters before federal and state courts, the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office, and the International Trade Commission.

27.     I have been with Ford Bubala & Associates for approximately seventeen years. During the past nine years, I have participated in the design and execution of a variety of surveys relating to intellectual property matters, including trademark, false advertising, and other related matters.  Additionally, I am familiar with the tests for trustworthiness of properly conducted surveys or polls and the accepted principles of survey research, detailed in the Manual for Complex Litigation, Fourth.[10]

---

[10]     Supra note 2.

28. I am a member of the American Marketing Association (AMA), the American Association of Public Opinion Research (AAPOR), the Insights Association,[11] and the International Trademark Association (INTA).

29. Attached hereto as Exhibit B is a copy of publications that I have authored or co-authored in the last ten years.

30. Attached hereto as Exhibit C is a list of all trial and deposition testimony I have given in the last four years.

31. Attached hereto as Exhibit D is a copy of my professional history, describing my qualifications and professional background.

## MATERIALS CONSIDERED

32. I considered the following materials in designing and conducting the survey in this matter: Complaint; Defendants' Amended Answer, Affirmative Defenses, and Counterclaims; a bottle of Redemption bourbon; an image of a bottle of Redemption bourbon with Bates number DFWS00026124; and the relevant results of an online omnibus study conducted September 5-6, 2018 (See Exhibit A, Appendix F).

## COMPENSATION

33. Ford Bubala & Associates' fees for this engagement consist solely of billable time and expenses. Standard time is billed at the rate of $600.00 per hour for the services of a Partner and $300.00 per hour for the services of a Research Associate. Deposition and trial time are billed at the rate of $750.00 per hour plus expenses.

---

[11] The Marketing Research Association (MRA) and the Council of American Survey Research Organizations (CASRO) merged on January 1, 2017 to form the Insights Association.

- 15 -

34. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 7th day of February, 2019, in Huntington Beach, California.

_____
Matthew G. Ezell