USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/1/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X

DIAGEO NORTH AMERICA, INC.,

                Plaintiff,

    - against -

W.J. DEUTSCH & SONS LTD. ET AL.,

                Defendants.

- - - - - - - - - - - - - - - - - - - -X

      17 Civ. 4259 (LLS)

      OPINION, ORDER

      & INJUNCTION

This is a case about two spirits distributors, Diageo North America and Deutsch Family Wine & Spirits, who sell whiskey in similarly designed canteen-shaped, embossed bottles with a label placed on the lower portion. The central issue is whether the trademark and trade dress rights of Diageo in its Bulleit Bottle Packaging Design are violated by Deutsch's Redemption Bottle Packaging. After an approximately three-week trial, on June 1, 2022, the jury rendered its verdict finding, in part, that the Bulleit Packaging Design Mark and Trade Dress are valid, protectable, and famous, and that Deutsch's Redemption Bottle packaging diluted the Bulleit Packaging Design under federal and New York law. The jury did not consider damages because it found that Deutsch's dilution was not willful.

Diageo now seeks a permanent injunction to prevent Deutsch's further use of the diluting Redemption bottle design and packaging. Dkt. No. 450. Deutsch opposes that issuance and further moves for Judgment as a Matter of Law or in the Alternative for a New Trial. Dkt. No. 453. For the reasons

1

explained below, Diageo's motion for a permanent injunction is granted and Deutsch's motion for Judgment as a Matter of Law or a New Trial is denied.

**FACTS**

The Court assumes that the parties know the full extent of the facts and will only recapitulate what is necessary.

Following the close of evidence in Diageo's affirmative case, Deutsch moved under Federal Rule of Civil Procedure 50(a) "for judgment as a matter of law based on the plaintiff's failure to meet their burden of proof on any of the causes of action that they've asserted in this case." Trial Tr. 1077:2-5; see Deutsch's Memorandum of Law in Support of its Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(a) ("Deutsch is moving for judgment as a matter of law on all of Diageo's claims for relief because it has failed to meet its burden of proof."). Conversely, at the close of Deutsch's affirmative case on its counterclaims, Diageo moved orally under Rule 50(a) for dismissal as a matter of law "with respect to Deutsch's counterclaims in this case for fraud, abandonment, and functionality." Trial Tr. at 1823:24-1824:1. Deutsch opposed the motion. See Trial Tr. 1823:11-1828:9 (addressing only Diageo's Rule 50(a) motion for denial of Deutsch's counterclaims).

2

The Court reserved decision on both motions and the case
was submitted to the jury. See Trial Tr. 1823:11-1828:9. The
jury found that defendants were not liable for trade dress
infringement or willful trade dress dilution but held Deutsch
liable for trade dress dilution under both federal and New York
law. Additionally, it found in Diageo's favor against Deutsch's
counterclaims and affirmative defenses of functionality,
abandonment, and fraud.

Accordingly, the Court ordered the parties to make any
additional submissions under Rule 50 or for an injunction by
July 21, 2022. Dkt. No. 421.

## DISCUSSION

### Renewed Motion for Judgment as a Matter of Law

In its renewed motion, Deutsch argues that it is entitled
to judgment as a matter of law under Rule 50(b) denying Diageo's
federal dilution claim, saying that the evidence at trial did
not demonstrate that the Bulleit Trade Dress was famous or that
it was famous prior to Deutsch's use of the Redemption
Packaging, and that the evidence was insufficient to establish
dilution by blurring. See Capri Sun GmbH v. Am. Beverage Corp.,
No. 19 CIV 1422, 2022 WL 976270, at *61 (S.D.N.Y. Mar. 31,
2022)("Federal trademark dilution claims require showing that
'(1) the mark is famous; (2) defendant's use of the mark is made
in commerce; (3) the defendant used the [junior] mark after the

3

[senior] mark is famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment.").

Deutsch similarly asserts that it is entitled to judgment as a matter of law denying Diageo's state dilution claim because there is insufficient evidence to show that the marks are similar. Id. at *64. ("Courts in the Second Circuit consider six factors to determine dilution by blurring under New York law: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark.).

Finally, Deutsch argues that it is entitled to judgment as a matter of law finding in favor of its counterclaims that the Bulleit Trademark and Trade Dress are invalid because they are functional, have been abandoned, and the trademark registration was obtained fraudulently.

**Legal Standards**

Under Rule 50(a), "before the submission of the case to the jury," a party may move for judgment as a matter of law, provided such motion "must specify the judgment sought and the law and the facts that entitle the movant to the judgment." F. R. Civ. P. 50(a)(2). The purpose behind Rule 50's strict timing and specificity requirements is "to give the claimant a fair

4

opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." Piesco v. Koch, 12 F.3d 332, 340 (2d Cir. 1993) (internal citation omitted); see also Tolbert v. Queens College, 242 F.3d 58, 76–77 (2d Cir. 2001) ("The motion must be sufficient to inform the opposing party of the precise issue as to which more evidence is needed in order to warrant its submission to the jury.").

After the jury returns its verdict, the motion may be renewed under Rule 50(b), but "only on grounds that were specifically articulated before submission of the case to the jury." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 164 (2d Cir. 1998); Leniart v. Ellison, 761 F. App'x 47, 49 (2d Cir. 2019) (summary order) (citing Tolbert, 242 F.3d at 70) ("A party may renew the motion after an unfavorable verdict on the grounds specifically raised in the prior motion for judgment as a matter of law."). "[T]his procedural requirement may not be waived as a mere technicality." Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1155 (2d Cir. 1994). A Rule 50(b) motion that articulates new grounds for relief may be granted only to "prevent a manifest injustice in cases [w]here a jury's verdict is wholly without legal support." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999) (alteration in original) (internal quotations omitted); Kirsch, 148 F.3d at 164 ("As to any issue on which no proper Rule 50(b)

5

motion was made, JMOL may not properly be granted by the district court ... unless that action is required in order to prevent manifest injustice.").

Under Rule 50(b), "[a] district court may grant judgment as a matter of law only if it finds that 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party.'" Triolo v. Nassau Cnty., 24 F.4th 98, 105 (2d Cir. 2022) (quoting Fed. R. Civ. P. 50(a)(1)). A court must "'consider the evidence in the light most favorable to the party against whom the motion was made and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.'" Knox v. John Varvatos Enters. Inc., 512 F. Supp. 3d 470, 478 (S.D.N.Y. 2021) (quoting Tolbert, 242 F.3d at 70). "In performing this function, a court cannot 'assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe.'" Id. (quoting Tolbert, 242 F.3d at 70). "The movant's burden is 'particularly heavy' where, as here, the 'jury has deliberated in the case and actually returned its verdict.'" Triolo, 24 F.4th at 105 (quoting Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005)).

### Deutsch's Counterclaims

Deutsch alleges that it may move for Judgment as a Matter of Law under Rule 50(b) granting its counterclaims of functionality, abandonment, and fraud because it provided notice of such arguments and Diageo will not be prejudiced by the absence of formal notice in a 50(a) motion. Dkt. No. 467 (Reply) at 16.

But, under Rule 50(a), Deutsch only moved against Diageo's claims of dilution under federal and state law, claim of Deceptive Acts and Practices under state law, claims to any monetary relief, and claims of trademark infringement under federal and common law. See Deutsch's Memorandum of Law in Support of its Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(a). Deutsch did not move for judgment as a matter of law granting its counterclaims.

A "Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter." Lore v. City of Syracuse, 670 F.3d 127, 152 (2d Cir. 2012). Accordingly, Deutsch's 50(b) motion granting its counterclaims can be granted only if necessary to prevent manifest injustice. Id. ("As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice.") No manifest injustice

7

requires the granting of defendants' motion. Therefore,

Deutsch's Rule 50(b) motion for granting its counterclaims of

functionality, abandonment, and fraud is denied.

## **Federal Dilution**

### Fame

Viewing the evidence in the light most favorable to Diageo,

Deutsch does not show that the jury lacked an evidentiary basis

to find in favor of Diageo. Rather, Diageo presented compelling

evidence at trial that the Bulleit Packaging Design is

nationally famous and a reasonable trier of fact could and did

conclude that the Bulleit trade dress was famous before Deutsch

used the Redemption packaging: the Bulleit trade dress has been

in identical use for 21 years (Trial Tr. 78:25-79:5, 79:6-12,

118:14-121:1, 138:11-16 (Bello)); $56 million has been spent in

advertising during the five years prior to the introduction of

the competing Redemption packaging in 2016 (PX 338); advertising

campaigns featuring the Bulleit trade dress have appeared in

national print and digital magazines (PX 340), on billboards

located across the country (PX 341), in and at professional

arenas, sporting events, and festivals throughout the nation (PX

340, 448; Trial Tr. 128:23-129:17; 129:18-131:17 (Bello)), and

on social media, which reached over 100 million consumers (Trial

Tr. 126:23-127:18 (Bello); the Bulleit trade dress  has appeared

in television shows and movies from 2005 through 2019 (PX 355);

150 million dollars' worth of sales of Bulleit were made in Fiscal Year 2016 alone (PX 438); and Deutsch witnesses admitted "consumers already know and love" Bulleit (PX 71 (April 2016 email from former Deutsch Marketing Director Jennifer Thomason)). See Nabisco, Inc. v. PF Brands, Inc., 50 F. Supp. 2d 188, 203 (S.D.N.Y. 1999) (holding that the "extended duration and high volume of use tend to make the Goldfish mark distinct and famous"), aff'd, 191 F.3d 208 (2d Cir. 1999); Savin Corp. v. Savin Grp., 391 F.3d 439, 450 (2d Cir. 2004) (finding fame from $20 million in advertising in one year, annual revenues of $675 million, and "products and services, which are regularly featured in print advertisements, trade magazines, and tradeshow promotions"); Victorinox AG v. B & F Sys., Inc., 114 F. Supp. 3d 132, 139-40 (S.D.N.Y. 2015) (holding that the Swiss Army knife trade dress was famous when it received "extensive unsolicited media coverage," including "its appearance in the opening credits of the television series 'MacGyver'"), aff'd, 709 F. App'x 44 (2d Cir. 2017).

The jury was reasonable and had a legally sufficient evidentiary basis to find the Bulleit trade dress was famous before the introduction of the diluting Redemption packaging.

Dilution By Blurring

In assessing a claim for dilution by blurring, a factfinder may consider the following factors: (i) "The degree of

similarity between the mark or trade name and the famous mark";
(ii) "The degree of inherent or acquired distinctiveness of the
famous mark"; (iii) "The extent to which the owner of the famous
mark is engaging in substantially exclusive use of the mark";
(iv)"The degree of recognition of the famous mark"; (v) "Whether
the user of the mark or trade name intended to create an
association with the famous mark"; and (vi) "Any actual
association between the mark or trade name and the famous mark."
15 U.S.C. § 1125(c)(2)(B).

To support its argument that the jury did not have a
sufficient evidentiary basis to find dilution by blurring,
Deutsch argues that there is insufficient evidence to support
the first (degree of similarity) and third (substantially
exclusive use) factors. Deutsch points to the facts that the
bottles are nonidentical with numerous differences and that
Diageo did not submit dilution survey evidence showing an
association between the bottles' packages in the minds of
consumers. It also argues that Diageo is not engaging in
substantially exclusive use of the mark because the Bulleit
trade dress has already been blurred by extensive third-party
use.

Deutsch's arguments ignore the evidence presented at trial
and ask the Court to substitute its (assumed) judgment for that
of the jury. The evidence, such as the bottles themselves,

pictures of the bottles on shelves, and testimony from consumers
and parties' witness, showed the jury the similarities and
dissimilarities between the bottles, and it came to a sensible
judgment that the bottles are similar enough to support a
finding that dilution by blurring would occur. See Miss
Universe, L.P. v. Villegas, 672 F. Supp. 2d 575, 593 (S.D.N.Y.
2009) ("Substantial similarity is not necessarily required, and
a lack of similarity is not necessarily dispositive.").

Diageo was not required to perform a dilution survey to
prove similarity. See Starbucks Corp. v. Wolfe's Borough Coffee,
Inc., 736 F.3d 198, 212–13 (2d Cir. 2013)(holding that although
a survey showing actual association is probative, proof of
actual association is not required). Diageo showed the bottles
were similar by presenting three incidents of actual association
by participants in Deutsch's focus group, in a Facebook page
comment, and by two consumers. While mere evidence of isolated
instances of "actual association" is insufficient, that evidence
in conjunction with the other evidence just mentioned suffices
for a reasonable fact finder to determine that the bottles are
similar.

Additionally, the jury was able to review a plethora of
third-party bottles to determine whether those bottles were
similar enough to the Bulleit Packaging Design to render use of
the design non-exclusive. The jury was within its right to

credit the evidence as it did, and the Court cannot weigh
conflicting evidence of third-party bottles to overcome its
verdict.

Deutsch's Renewed Motion for Judgment as a Matter of Law
against Diageo's claim for federal dilution is denied.

**NY State Law Dilution**

Deutsch argues that there is insufficient evidence to show
that there is a substantial similarity between the Bulleit Trade
Dress and the Redemption Packaging because "[t]he fact that they
found no likelihood of confusion or infringement necessarily
implies that the evidence failed to establish that the Bulleit
Trade Dress and the Redemption Packaging are similar enough to
support a finding of infringement in this case." Dkt. No. 456
(JMOL) at 22.

But New York law provides dilution may be found
"notwithstanding the absence . . . of confusion as to the source
of goods or services." N.Y. Gen. Bus. L. § 360-l. As discussed
above, there was ample evidence of the close similarity between
the Bulleit Trade Dress and the Redemption packaging, and such
evidence of similarity may be taken with some evidence of
instances of consumer confusion to show likelihood of dilution.
See ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners,
Inc., 2010 WL 10091076, at *23 (S.D.N.Y. Feb. 10, 2010) (holding
that the marks were substantially similar under New York's

dilution statute in part because, based on four affiants of actual confusion, "enough consumers were confused by the similarity of the marks for the Court to conclude that they are 'essentially the same'" and showed a likelihood of blurring), report and recommendation adopted, 2011 WL 182114 (S.D.N.Y. Jan. 13, 2011).

The jury was also presented with extensive evidence allowing it to find that the other factors used to assess dilution under New York law also were in Diageo's favor—such as the fact that the products are identical in type and the famous nature of the Bulleit Packaging Design. Accordingly, the evidence on dilution under New York law was sufficient to support the jury's finding and Deutsch's motion for judgment as a matter of law dismissing Diageo's claim of dilution under New York law is denied.

## New Trial

Deutsch moves for a new trial arguing that: the jury's verdict granting the federal and state dilution claims and denying the functionality, abandonment, and fraud counterclaims is against the weight of the evidence; the jury instructions were erroneous; and evidence was improperly excluded.

**Legal Standards**

Under Rule 59, a court may grant a new trial on some or all issues "after a jury trial, for any reason for which a new trial

has heretofore been granted in an action at law in federal court," F. R. C. P. 59(a)(1)(A), including that the verdict is against the weight of the evidence, Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012). A decision is against the weight of the evidence if the verdict is seriously erroneous or a miscarriage of justice. Id.; Ali v. Kipp, 891 F.3d 59, 64 (2d Cir. 2018) ("A trial court should not grant a motion for a new trial unless it is 'convinced that the jury ... reached a seriously erroneous result or that the verdict is a miscarriage of justice.'").

In contrast to a motion for judgment as a matter of law, on a motion for a new trial, a trial judge "'is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.'" Song v. Ives Labs, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992) (quoting Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir. 1983). "However, our precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility,' and may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'" Raedle, 670 F.3d at 418 (citations omitted).

**Verdict Against Weight of Evidence**

14

### Diageo's Federal and State Dilution Claims

Even under Rule 59's different standards, Deutsch cannot show that the verdict is seriously erroneous or a miscarriage of justice. The jury's findings of fame and of likelihood of dilution under federal and state law are fact-intensive inquiries involving a variety of factors and, as discussed above, there was ample evidence to support the jury's verdict on those issues. See Can't Live Without It, LLC v. ETS Express, Inc., 373 F. Supp. 3d 434, 442-43 (S.D.N.Y. 2018) (denying motion for a new trial when the plaintiff put forward "ample evidence for the jury to find that it met its burden" of proving trade dress infringement and holding that even a "relatively close question" was not sufficient to find that the "jury's verdict was seriously erroneous or a miscarriage of justice" warranting a new trial).

Deutsch's motion for a New Trial on federal and state dilution is denied.

### Deutsch's Counterclaims

*Functionality*

Deutsch argues that each of the elements of the Bulleit Trade Dress, including the bottle's rounded shoulders, shape, cork closure, embossing, black cap, clear glass, label borders, arched text, and text dividers, has its separate utilitarian or aesthetic function.

15

That overlooks that the functionality of the trade dress must be assessed with respect to the trade dress as a whole. See, e.g., Cartier, Inc. v. Sardell Jewelry, Inc., 294 F. App'x 615, 620-21 (2d Cir. 2008) (holding "sound" the district court's conclusion that "it was improper for defendants to break the trade dress down into specific elements and call them functional, because plaintiffs' claim is that the combination and arrangement of those design elements comprise the trade dress at issue"); GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 280-81 (S.D.N.Y. 2018) ("Where the asserted trade dress extends to the overall look of the combination of features comprising a product or product line, the Court must evaluate the distinctiveness and functionality of those features taken together, not in isolation." (quotation marks omitted)).

Looking at the Bulleit Trade Dress as a whole, the evidence at trial was sufficient for the jury to find that the bottle design is not functional because of evidence that it: increases the cost of production, is not advertised as being functional, was not intended to be functional, and has many alternatives, such that competitors' ability to compete is not impaired. See, e.g., Trial Tr. 99:1-7 (Bello) ("This is a hard to pack bottle. It costs us money to bottle, it is difficult."); id. at 573:20-579:17 (Guiliani) (testifying how the Bulleit design increases the bottle's manufacturing costs); id. at 580:17-581:3

16

(Guiliani) (testifying that no aspect of the bottle is intended to make it easier to ship or to minimize the chance of breakage); id. at 99:19-100:3 (Bello) (calling it ridiculous to insinuate Bulleit advertised functional benefits of the design); id. at 286:10-287:3, 288:10-289:18 (Sandstrom) (testifying that his design process did not take account of whether the bottle would be easy to pour or whether elements of the bottle would make manufacturing it easier or more difficult); id. at 101:16-102:19 (Bello) (discussing the alternative bottle designs used by Crown Royal, Johnnie Walker, George Dickel, and Singleton).

Deutsch's motion for a New Trial on the counterclaim that the design is functional is denied.

*Abandonment*

Deutsch argues that the evidence introduced at trial overwhelmingly established that Diageo has tolerated numerous third-party competitors who have continuously used bottle packaging with features that are similar to or identical to those that Diageo claims as part of the Bulleit Design Mark and Trade Dress, both before and after the Bulleit bottle design was first used.

But the evidence shows that Diageo does not tolerate third-party use and protects its rights by pursuing enforcement actions when necessary. See Trial Tr. 145:10-159:2 (Bello) (discussing Diageo's enforcement actions against McGillicuddy

17

and Manatawny). The jury's conclusion finding no abandonment has evidentiary support and will not be disturbed.

Deutsch's motion for a New Trial on that issue is denied.

*Fraud*

Deutsch argues that the Bulleit Design Mark was obtained fraudulently because Diageo knew or should have known that its statement to the Trademark Office that the bottle shape was unique and not functional was false.

While the argument that Diageo should have known that the statements to the Trademark Office were false has force, there is too little evidence that its representatives did actually know that their representations were untrue. See MPC Franchise, LLC v. Tarntino, 826 F.3d 653, 659 (2d Cir. 2016) ("That is, to succeed on a claim that a trademark holder procured the mark by fraud, a plaintiff cannot merely show that the trademark holder 'should have known' that the application contained false statements of material fact."). Deutsch's argument that as the largest alcohol company in the world, Diageo must have been aware of third-party bottles with similar shapes and should have known of that the bottle's rounded shoulders serve a functional purpose does not establish that they actually knew it, especially when extensive evidence was adduced at trial that showed Diageo thought that its bottle shape was distinctive. See TX 1 at 40-41 (Diageo's outside counsel Robert Henley's

18

statement, in response to the Trademark Office's request to disclaim protection for the bottle shape in the registration application, that the Bulleit bottle shape was an inherently distinctive component of the mark and stood out in the beverage alcohol industry); Trial Tr. 572:15-573:11 (Guiliani) (the Bulleit bottle shape uses a proprietary custom mold and was designed to look different from other products on the market); id. 274:12-16 (Sandstrom)(same); Henley Dep. Tr. 167:3-8 ("[G]iven the bottle's unique shape, it[s] tapering, the type of high, high, short neck, wide shoulders, and somewhat barreling of the chest, so to speak, of the bottle design, I do remember it being—it being unique.").

Thus, the evidence on that question was divided and posed a classic case for resolution by a jury, and its verdict will not be disturbed.

Deutsch's motion for a New Trial is denied.

### Claims of Improper Jury Instructions

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Dancy v. McGinley, 843 F. 3d 93, 116 (2d Cir. 2016). The error must be sufficiently serious to undermine "the very integrity of the trial." SCS Commc'ns Inc. v. Herrick Co., 360 F.3d 329, 343 (2d Cir. 2004) (quoting Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 61 (2d Cir.

2002)). The charge is adequate so long as it, "taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." <u>Newport Elecs., Inc. v. Newport Corp.</u>, 56 F. App'x 63, 65 (2d Cir. 2003); <u>e.g.,</u> <u>Schermerhorn v. Local 100, Transp. Workers Union of Am.</u>, 91 F.3d 316, 322 (2d Cir. 1996).

Under Federal Rule of Civil Procedure 51(c)(1), a party "who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Accordingly, "a party may not 'rely on her submission of proposed jury instructions that included a[ ] [requested] instruction' to preserve an objection." <u>Emamian v. Rockefeller Univ.</u>, 971 F.3d 380, 387 (2d Cir. 2020) (quoting <u>Caruso v. Forslund</u>, 47 F.3d 27, 31 (2d Cir. 1995) (alteration in <u>Emamian</u>). A party's failure to object to an instruction on the record may be excused when "the party's position has previously been made clear to the trial court and it was apparent that further efforts to object would be unavailing." <u>Id.</u>

The Court addresses in turn Deutsch's claims that the jury was wrongly given the following instructions:

- The Court instructed that "A trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation that the source of the

product is the owner of the trade dress." Jury Instructions 21:471-474.

Deutsch now objects to the term "general consuming public" and the lack of an instruction that niche market fame was insufficient to meet the standard. However, Deutsch did not object on the record to the use of "general consuming public." Moreover, "general consuming public" is the statutory language of 15 USC § 1125(c)(2)(A) and is sufficient to apprise the jury that it needed to consider the fame of the Bulleit Packaging Design beyond any niche market or limited set of consumers.

- The Court instructed that "If you determine that Diageo has proven by a preponderance of the evidence that the Redemption bottle dilutes the Bulleit Trade Dress and you determine that Deutsch's use of the packaging began after the Bulleit Trade Dress became famous, you must find that Deutsch diluted Diageo's trade dress in violation of federal law." Jury Instructions 22-23:510-515.

Deutsch now objects to the lack of an instruction that Diageo was required to establish that the Bulleit Design Mark or the Bulleit Trade Dress achieved the requisite level of fame before Deutsch began using its Redemption packaging. Deutsch did not make such an objection on the

record. The instruction explicitly required that Deutsch's use "began after the Bulleit Trade Dress became famous."

- The Court instructed that "to determine whether the accused Redemption packaging will cause a likelihood of dilution under New York General Business Law, you may consider the following factors: 1) Whether the Bulleit Trade Dress and Redemption Trade Dress are very similar. If they are not, then there is no dilution." Jury Instructions 23:517-22.

Deutsch objects and argues that the jury was not properly instructed that it was required to find that the Redemption packaging is so substantially similar to the Bulleit Trade Dress that consumers would view the marks as essentially the same. However, on the record, Deutsch did not object to the use of "very similar," which comports with the law of this Circuit. See Playtex Prod., Inc. v. Georgia-Pac. Corp., 390 F.3d 158, 167 (2d Cir. 2004) ("A plaintiff cannot prevail on a state or federal dilution claim unless the marks at issue are 'very' or 'substantially similar.'"); Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009) (quoting Playtex Prod., Inc., 390 F.3d 167).

- The Court instructed that the standard of proof for abandonment is clear and convincing evidence, which Deutsch objected to on the record arguing that the standard is

preponderance of the evidence. Nonetheless, the instruction provided the correct legal standard. See e.g., Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) ("abandonment, being the forfeiture of a property interest, should be strictly proved'); Emmpresa Cubana Del Tabaco v. Culbro Corp., 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002); Dual Groupe, LLC v. Gans-Mex LLC, 932 F. Supp. 2d 569, 574 (S.D.N.Y. 2013); J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed. 2021) (stating that "[t]he majority of courts" require that "evidence of the elements of abandonment must be clear and convincing").

- The Court instructed that "When considering whether the Bulleit bottle Trade Dress is functional, you must consider the entire trade dress as a whole." Jury Instructions 7:168-170. Deutsch objected on the record and argued that the functionality of each feature of the trade dress must be examined. Such an instruction would have been error. See, e.g., Cartier, Inc. v. Sardell Jewelry, Inc., 294 F. App'x 615, 620-21 (2d Cir. 2008); GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 280-81 (S.D.N.Y. 2018) ("Where the asserted trade dress extends to the overall look of the combination of features comprising a product or product line, the Court must evaluate the

23

distinctiveness and functionality of those features taken together, not in isolation.").

- The Court instructed that "In determining whether the Bulleit Trade Dress is functional, you may consider . . . (3) the availability to competitors of alternative design mark designs for the same kinds of products. If there are alternative designs (i.e., alternative combinations of elements that make up the design mark) available for the same kind of product, that is evidence of non-functionality." Jury Instructions 8:172-193.

Deutsch argues that it did properly object to this instruction on the record:

> MR. GROW: Well, again, I would propose where it says in determining whether the non-functional features of the Bulleit trade dress, in considering whether the non-functional features of the Bulleit trade dress, you may consider the following factors. There is no amount of advertising, there is no amount of intent or availability of an alternative designs that can save the invalidity of the bottle.  Trial Tr. at 1665:20-1666:1.

Whatever thought that statement conveys, it is not an objection to using the availability of alternative designs as a factor in determining utilitarian functionality.

24

Accordingly, Deutsch did not properly preserve that objection. Further, the charge as given is correct.

- The Court instructed that "To find for Diageo on this claim [of unregistered trade dress infringement], you must conclude that Diageo has shown by a preponderance of the evidence that it owns a valid Bulleit Trade Dress. . . An unregistered trade dress is valid if it is (1) non-functional . . . In reaching a determination of whether the Bulleit Trade Dress is non-functional. . . you should consider the same factors . . . always aware that for this claim Diageo, not Deutsch, carries the burden of proof." Jury Instructions 15: 330-40.

    Deutsch for the first-time objects that the jury was not instructed that the burden of proving that an unregistered trade dress is not functional is on the plaintiff. In the final sentence, the Court stated that "Diageo, not Deutsch, carries the burden of proof."

- The Court instructed that to prevail on its fraud counterclaim Deutsch must prove that "Diageo knew that the representation was false." Jury Instructions 10:233.

    Deutsch objected on the record that it wanted the instruction "to read knew or had to have known." Trial Tr. 1670:16-17. The Court declined to give that instruction because "The law is clear that had to have known is not

knowing and is not punishable as knowing. Knowing is
something different. At least I'm following the cases that
say that. I think it makes more sense." Id. at 1670:23-
1671:3. To have given Deutsch's proposed instruction would
be error.

- The jury verdict form instructed that Deutsch had to prove
  that "Diageo obtained the Bulleit Trademark Registration
  through intentional fraud on the U.S. Patent and Trademark
  Office." Jury Verdict # 3.

  Deutsch now objects to that for the first time. Even
  had the objection been properly raised, the Court's full
  charge outlined the elements of fraud, and in context, the
  reference to "intentional fraud" plainly refers to the
  element of the claim that requires proof of intent to
  deceive the PTO. See Jury Charge at 10:227-11:239.
  Accordingly, there was not error in the instruction.

- Deutsch objects to the fact that no instruction was given
  concerning the distinction between Diageo's Registered
  Design Mark and its Unregistered Trade Dress. While Deutsch
  did not make this exact objection on the record, it made
  clear its position that the registered and unregistered
  trade dresses were separate and distinct sufficiently to
  save the point. See Trial Tr. at 1696:1-8 (counsel for
  Deutsch noting that "The way the instruction is written,

26

the way the verdict form is written, in the first paragraph, we're only addressing the registered mark which is not the same as the registered trade dress or the unregistered trade dress, and it is not the bottle package."); id. at 1632:4-1633:16; id. at 1643:18-1644:19; id. at 1646:16-1647:23; id. at 1662:23-24. Adopting the suggested phrase of "Bulleit design mark and trade dress," the Court and Deutsch's counsel went through the charge page by page, substituting that phrase chosen by counsel to make clear that the trademark and trade dress were separate items. Thus, Deutsch's objection to the lack of the instruction is unsubstantiated because "the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it.'" Newport Elecs., Inc., 56 F. App'x at 65.

None of Deutsch's present objections, timely or untimely, have merit.

### Evidentiary Rulings

Deutsch argues that three key exhibits were excluded from trial: a demonstrative display showing 100 differences between the bottles; a third-party stock bottle, the O.Berk Philadelphia flask bottle; and an antique Four Roses bottle.

"A district court has broad discretion over the admissibility of evidence at trial." Ojeda v. Metro.

Transportation Auth., 477 F. Supp. 3d 65, 77 (S.D.N.Y. 2020), aff'd, 41 F.4th 56 (2d Cir. 2022) (citing Kogut v. Cnty. of Nassau, 789 F.3d 36, 47 (2d Cir. 2015)). "[A]n erroneous evidentiary ruling warrants a new trial only when 'a substantial right of a party is affected.'" Lore, 670 F.3d at 155 (quoting Arlio v. Lively, 474 F.3d 46, 51 (2d Cir. 2007)). This means it must be "likely that in some material respect the factfinder's judgment was 'swayed by the error.'" Costantino v. David M. Herzog, M.D., P.C., 203 F.3d 164, 174 (2d Cir. 2000) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir. 1997)).

Deutsch certainly has not met this demanding standard. The exclusion of the demonstrative display did not sway the jury's judgment as they could see for themselves the differences between the Bulleit and Redemption trade dresses. Neither did the exclusion of the O.Berk Philadelphia flask bottle because it was cumulative of many other bottles already admitted to prove Duetsch's counterclaims.

The Court provided Deutsch with an opportunity to lay a foundation to show the antique Four Roses bottle was relevant to its fraud counterclaim. But Deutsch was unable to lay a foundation that Diageo knew of the bottle, making it irrelevant to the registration statement Diageo made to the Patent and Trademark Office. See Trial Tr. 1535:1-1540:2. A new trial is not warranted.

28

## Conclusion

The jury was properly instructed. Its verdict was a discriminating and reasoned appraisal of the evidence and will not be disturbed. It remains only to address the proper remedy.

### Permanent Injunction

The Federal Trademark Dilution Act provides that subject to the principles of equity, the owner of a trademark found to have been diluted "shall be entitled to an injunction . . . regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C.A. § 1125(c)(1); see id. § 1125(c)(5) ("In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title.").

Similarly, under New York General Business Law, "(l)ikelihood of . . . dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered . . ., notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. Law § 360-1. The New York and federal statutes are similar in many respects and may be analyzed together. Nabisco, Inc. v. PF Brands, Inc., 50 F. Supp. 2d 188, 200 (S.D.N.Y.), aff'd, 191 F.3d 208 (2d Cir. 1999) ("Both

statutes permit a claim for dilution regardless of whether there is proof of consumer confusion.").

In short, the court should issue an injunction when a plaintiff has succeeded on the merits and has demonstrated that (1) it suffered irreparable harm; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants such a remedy; and (4) that the public interest would not be disserved by the issuance of an injunction. Moonbug Ent. Ltd. v. A20688, No. 21 CIV. 4313 (VM), 2022 WL 1239586, at *2 (S.D.N.Y. Apr. 26, 2022); see U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013).

**Irreparable harm**

Upon a finding of trademark dilution, a plaintiff seeking a permanent injunction "shall be entitled to a rebuttable presumption of irreparable harm."[1] 15 U.S.C.A. § 1116(a).

---

[1] Although the rebuttable presumption of irreparable harm was not enacted until the Trademark Modernization Act of 2020 (TMA), years after this litigation commenced but prior to the trial, the Second Circuit has held that intervening legislation applies to prospective requests for injunctive relief. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007). Moreover, the Second Circuit's warning that "unless Congress intended a 'major departure from the long tradition of equity practice,' a court deciding whether to issue an injunction must not adopt 'categorical' or 'general' rules or presume that a party has met an element of the injunction standard" is heeded. Salinger v. Colting, 607 F.3d 68, 78 n.7 (2d Cir. 2010). Here, Congress passed the TMA to confirm that "the historical practice of applying a rebuttable presumption of irreparable harm is the appropriate course for claims under the Lanham Act." H.R. Rep. No. 116-645, att 19 (2020).

Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will potentially lose goodwill and control over the reputation of its trademark. <u>See Kelly Toys Holdings, LLC v. alialialiLL Store</u>, No. 21 CIV 8434, 2022 WL 2072567, at *11 (S.D.N.Y. June 9, 2022); <u>U.S. Polo Ass'n, Inc.</u>, 800 F. Supp. 2d at 540. Goodwill is simply the intangible "business value of a company's brand and reputation" beyond the value of its tangible assets. 1 McCarthy on Trademarks & Unfair Competition § 2:19 (5th ed. June 2022 update).

As the jury has found that the Bulleit Trade Dress is diluted by the Redemption packaging, Deutsch seeks to rebut the presumption of irreparable harm by arguing that no evidence adduced at trial supported a showing of a loss of goodwill arising from Deutsch's use of the Redemption packaging or of erosion of the Bulleit Trade Dress by the Redemption packaging.

To the contrary, Diageo introduced evidence of both. Ample evidence showed a loss of goodwill and the whittling away of the distinctiveness of Bulleit packaging to the detriment of its reputation and its ability to signify to the public that it is a unique product, including Deutsch's design brief requesting a shape "similar to Bulleit" (PX 40 at DFWS00083062); comments made by participants in Deutsch's focus group and by consumers associating the brands because of the similarities in their

31

bottle designs (TX 5 at 1:07:15-1:07:31 (focus group participant stating that the proposed Redemption design is "just trying to be the Bulleit Rye bottle"); PX 103 (comment on Deutsch's Facebook post that the Redemption bottle "Looks a bit like Bulleit"); PX 425 (consumer phone call asking why Diageo was now using the Bulleit bottle for Redemption); Schuler Dep. Tr. 27:4-15, 33:5-34:10 (read into trial record) (consumer referring to the Redemption bottle as "Bulleit Redemption Bourbon" because he thought the brands were "linked" and Redemption was "an offshoot from what Bulleit had to offer")); survey evidence on the likelihood of confusion (Trial Tr. 591:24-592:10 (finding "a net confusion rate of 15 percent, which I found to be a significant level that I believe indicates a significant likelihood of real marketplace confusion with the Redemption bottle."), Id. at 611:11-613:3 ("33 percent said they think the Redemption product is made by the same company as Bulleit and an additional 7 percent said they think that the company that makes Redemption is affiliated with or sponsored or approved by the company that makes Bulleit. So it was a 40 percent total rate of connecting the Redemption product to Bulleit."); and a decline in sales (Id. at 144:25-145:7 (Bello) (testifying that when the Redemption packaging entered the market, Bulleit "went from growing 25, 28, high twenties, to basically 10 percent and then single digits. So it halved our growth, more than halved our

32

growth."), Id. at 855:8-13 (expert testimony that Deutsch earned "approximately $21.4 million" in profits from the sale of Redemption).

Therefore, in addition to the statutory presumption to which Diageo is entitled, the evidence at trial demonstrated that Diageo suffers irreparable harm due to the diluting Redemption Packaging.

**Inadequate Legal Remedies**

Where, as here, there is an absence of willful dilution, the sole remedy to a finding of dilution is an injunction prohibiting the use of the diluting packaging. See 15 U.S.C.A. § 1125(c)(1); 15 U.S.C.A. § 1116(a); N.Y. Gen. Bus. Law § 360-l; cf. John E. Andrus Mem'l, Inc. v. Daines, 600 F. Supp. 2d 563, 572 n.6 (S.D.N.Y. 2009) (citing United States v. State of New York, 708 F.2d 92, 93 (2d Cir. 1983) (finding injunctive relief appropriate when it was the only available remedy).

Further, a plaintiff has no adequate remedy at law if, absent an injunction, the defendant is likely to continue diluting its trade dress rights. See Kelly Toys Holdings, 2022 WL 2072567, at *11 ("A showing that there is no adequate remedy at law 'is satisfied where the record contains no assurance against defendant's continued violation' of a plaintiff's rights."); Mattel, Inc. v. 1622758984, No. 18-CV-8821, 2020 WL 2832812, at *5 (S.D.N.Y. May 31, 2020). Deutsch's President has

publicly asserted in post-verdict press interviews that "nothing in this decision requires us to change anything about Redemption's packaging." Dkt. No. 451 (Memorandum of Law in Support of Motion for Permanent Injunction) at 2. Deutsch has also made no assurance that it will cease diluting the Bulleit trade dress.

The Court finds that remedies at law are inadequate to protect Diageo.

**The Balance of Hardships**

Deutsch argues that it will be irreparably crippled by the issuance of the requested injunction, which prohibits Deutsch from continuing to put into the market "additional diluting packaging or creating new advertising materials that feature the enjoined packaging," Dkt. No. 463 (Reply) at 7, because it would essentially be the "death knell of the brand" and cause Deutsch to lose approximately $33 million in annual revenues, Dkt. No. 459 (Opposition) at 15 & 17.

But a dilutor cannot complain about the loss of its ability to sell a diluting product. Cf. Mattel, Inc. v. 1622758984, No. 18-CV-8821, 2020 WL 2832812, at *5 (S.D.N.Y. May 31, 2020).

Further, Deutsch has available alternative packaging designs into which it can rebottle its existing inventory of whiskey, including the bottle used to package its upper-tier barrel-proof Redemption whiskey. TX 62; see N.Y.C. Triathlon,

LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 326-27
(S.D.N.Y. 2010) (finding that harm to defendant, "who has other
names and marks available to it," would not outweigh harm to
plaintiff). Changing the diluting Redemption packaging will not
disproportionately harm Deutsch's business, since approximately
97% of Deutsch's total sales are from non-infringing products.
Thus, the hardships imposed on Deutsch are not so great as to
outweigh the harm that is being done to Diageo absent an
injunction.

**The Public Interest**

Granting injunctive relief does not disserve the public
interest. Consumers have an interest in being assured that the
mark it associates with a product is not attached or associated
with other goods. N.Y.C. Triathlon, LLC, 704 F. Supp. 2d at 344
("The public has an interest in not being deceived – in being
assured that the mark it associates with a product is not
attached to goods of unknown origin and quality.").

Indeed, that public interest in the prevention of dilution
is shown by the passage of both federal and state legislation
providing for injunctive relief for that purpose.

Diageo's motion for a permanent injunction is granted.

**Injunction Terms**

"A district court has 'broad discretion to enjoin possible
future violations of law where past violations have been

35

shown.'" <u>City of New York v. Tavern on the Green Int'l LLC</u>, No.
17-CV-1376, 2021 WL 1316956, at *3 (S.D.N.Y. Apr. 7, 2021)
(quoting <u>United States v. Carson</u>, 52 F.3d 1173, 1184 (2d Cir.
1995)). Still, "injunctive relief must be 'narrowly tailored to
fit specific legal violations.'" <u>Coty Inc. v. Excell Brands,
LLC</u>, 277 F. Supp. 3d 425, 463 (S.D.N.Y. 2017)

    Accordingly, IT IS HEREBY ORDERED THAT:

1. Deutsch Family Wine & Spirits and Bardstown Barrrel
   Selections LLC, their agents, and any third parties who are
   in active concert or participation with the manufacture,
   sale, or promotion of Redemption who receive notice of this
   injunction are permanently restrained and enjoined
   nationwide from, directly or indirectly, manufacturing,
   selling, offering for sale, distributing, licensing,
   importing, exporting, advertising, promoting, displaying,
   or using in commerce, including in stores, online, and in
   physical, digital, or recorded advertisements or
   promotional materials, the Diluting Redemption Packaging at
   issue in this litigation and any other colorable imitation
   thereof, except for the product that on the date of entry
   of this Order has already been transferred to distributors,
   retail stores, bars, or restaurants. That product in the
   Redemption packaging that has been transferred by the date

of entry of this Order may continue to be sold, but none thereafter.

2. Defendants are directed to undertake a change to the Redemption glass bottle and packaging that will convey a substantially different commercial impression, but may retain those unchallenged aspects of the package like i) the brand name Redemption or terms such as "pre-prohibition" or "rye revival;" ii) the label, other than its border; iii) the embossed rye "frond;" and iv) the concave back of the bottle. If defendants do not create a meaningfully changed Redemption Packaging, such that it cannot dilute the Bulleit trademark and trade dress, Deutsch may be directed to use its present upper-tier barrel-proof Redemption whiskey bottles, with only minor changes sufficient to signify that the bottle does not contain its present premium product.[2]

3. This Court shall retain jurisdiction over the parties and the subject matter of this litigation for the purpose of interpretation, enforcement, or modification of this Permanent Injunction.

---

[2] The Court recognizes that this gives scant guidance about the individual elements of the acceptable trade dress, but it is not a judicial function to design an unobjectionable package. That has difficulties shown by the testimony of the main designer of the diluting bottle. Nonetheless the Redemption package must have no superficial, at a glance, resemblance to the Bulleit bottle.

So Ordered.

Dated:   New York, New York
         September 7, 2022

_____
LOUIS L. STANTON
U.S.D.J.